IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITES STATES ex rel. | | |
| CURTIS LOCKEY, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3-11-CV-354-O |
| | § | ECF |
| CITY OF DALLAS, et al., | § | |
| Defendants. | § | |

## CITY OF DALLAS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

## PURSUANT TO RULE 12(b)(6)

THOMAS P. PERKINS, JR.
Dallas City Attorney

Charles Estee
Assistant City Attorney
Texas Bar No. 17827020
charles.estee@dallascityhall.com

Peter B. Haskel
Senior Assistant City Attorney
Texas Bar No. 09198900
peter.haskel@dallascityhall.com

City Attorney's Office
1500 Marilla Street, Room 7B North
Dallas, Texas  75201
Telephone:      214-670-3519
Telecopier:     214-670-0622

Attorneys for Defendant City of Dallas

## TABLE OF CONTENTS

I.    OVERVIEW .................................................................................................. 1

II.   STANDARDS ................................................................................................ 2

III.  THE DUTY TO "AFFIRMATIVELY FUTHER FAIR HOUSING" ................................. 2

    A.    Governing Statutes ................................................................................ 2

    B.    HUD Regulations .................................................................................. 4

    C.    The 1996 HUD Guide ........................................................................... 5

IV.  COUNTS 1 AND 2 FAIL TO STATE A CLAIM ................................................... 6

    A.    Requirements to state a claim. ................................................................ 6

    B.    Relators' Claims ................................................................................... 7

    C.    Delay in Updating the AI ....................................................................... 8

    D.    Content of the Analysis of Impediments ..................................................... 8

    E.    Regulatory Enforcement ........................................................................ 11

    F.    Relators' Claims of City Zoning, Land Use, and Funding Policies ..................... 12

          1.     Creation of Affordable Housing ....................................................... 12

          2.     Low Income Housing Tax Credits ("LIHTC") ........................................ 13

          3.     Tax Incremental Financing Districts ("TIFs") ........................................ 14

          4.     Creation of Affordable Housing in Downtown Dallas .............................. 14

          5.     The Continental and Shamburger Projects .............................................. 16

          6.     LIHTC Moratorium ....................................................................... 16

          7.     Housing and Economic Recovery Act ("HERA") .................................... 17

          8.     Section 108 Interest Rates ................................................................ 17

          9.     Community Development Building Grants ("CDBG") ............................... 18

          10.    *Walker* ...................................................................................... 18

          11.    Southern and Northern Dallas ........................................................... 19

12. Hurricane Katrina .................................................................................... 20

V.    COUNT III FAILS TO STATE A CLAIM ....................................................... 21

VI.   COUNT IV FAILS TO STATE A CLAIM ....................................................... 22

VII.  LIMITATIONS BARS MUCH OF RELATORS' CLAIMS ........................................... 24

VIII. THE CITY IS NOT LIABLE FOR DHA ......................................................... 24

PRAYER .................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................ 26

# TABLE OF AUTHORITIES

## Cases

*Acevedo v. Nassau County, N.Y.,*
500 F.2d 1078 (2nd Cir. 1974) ................................................................. 6, 12

*Darst-Webbe Tenant Association Board v. St. Louis Housing Authority,*
417 F.3d 898 (8th Cir. 2005) .................................................................... 3

*Gallagher v. Magner,*
619 F.3d 823 (8th Cir. 2010) cert. denied 2012 WL 469885 (Feb. 14, 2012) .................... 3

*Hagood v. Sonoma County Water Agency,*
81 F.3d 1465 (9th Cir.1996) .................................................................... 7

*Hollinger v. Home State Mut. Ins. Co.,*
654 F. 3d 564 (5th Cir. 2011) .................................................................. 21

*Housing Authority of the City of El Paso v. City of El Paso,*
141 S.W.3d 663 (Tex. App.-El Paso 2004, no pet.) ............................................. 25

*Inclusive Communities Project, Inc. v. Tex. Dep't of Housing and Consumer Affairs,*
749 F. Supp. 2d 486, 492 (N.D. Tex. 2010) .................................................... 13

*Jones v. Alcoa, Inc.,*
339 F.3d 359 (5th Cir. 2003), cert. denied 540 U.S. 1161 (2004) ............................... 2

*McClure v. Biesenbach,*
402 F.Supp. 2d 753 (W. D. Tex. 2005) affirmed 355 Fed. Appx. 86 (5th Cir. 2009) ....... 16

*NAACP v. HUD,*
817 F.2d 149 (1st Cir. 1987) ................................................................. 6, 12

*Norris v. Housing Authority of the City of Galveston,*
962 F. Supp. 96, 98 (S.D. Tex. 1997) ......................................................... 25

*See U.S. ex rel. Davis v. Lockheed Martin Corp.,*
No. 4:09-CV-645-Y, 2010 WL 4607411, *6 (N.D. Tex. Nov. 15, 2011) ......................... 6

*U.S. ex rel. Aakhus v. Dyncorp, Inc.,*
136 F.3d 676 (10th Cir.1998) ................................................................. 21

*U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,*
Civil Action No. A 94-7316, 2000 WL 1207162, *19 (E.D. Pa. Aug. 24, 2000) .......... 21

*U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co.,*
668 F. Supp.2d 780 (E.D. La., 2009) (complaint re section 3729(a)(1)(G)
insufficient) ................................................................................. 23

iv

*U.S. ex rel. Dekort v. Integrated Coast Guard Systems,*
   705 F. Supp.2d 529 (N.D. Tex. 2010) ................................................................ 2

*U.S. ex rel. Drake v. NSI, Inc.,*
   736 F. Supp. 2d 489 (D.Conn.. 2010) ................................................................ 22

*U.S. ex rel. Farmer v. City of Houston,*
   523 F.3d 333 n.12 (5th Cir. 2008), cert. denied 559 U.S. 1012 (2008). ............ 7

*U.S. ex rel. King v. Solvay S.A.,*
   No. H-06-2662, 2011 WL 4834030, *52-56 (S.D. Tex. Oct. 12, 2011) ............ 24

*U.S. ex rel. Lamers v. City of Green Bay,*
   168 F.3d 1013 (7th Cir. 1999) ............................................................................ 7

*U.S. ex rel. Mastej v. Health Management Assoc., Inc.,*
   No. 2:11-cv-89-FtM-29DNF, 2012 WL 523623, *7-8 (M.D. Fla., Feb. 16, 2012) .......... 23

*U.S. ex rel. Porter v. HCA Health Services of Ok., Inc,*
   Civil Action No. 3:09-CV-0992; 2011 WL 4590791, *7-8
   (N.D. Tex., Sept. 30, 2011) ................................................................................ 23

*U.S. ex rel. Rett v. Columbia/HCA Healthcare Corp.,*
   251 F. Supp.2d 28 (D.D.C., 2003) .................................................................... 22

*U.S. ex rel. Smart v. Christus Health,*
   626 F. Supp. 647 (S.D. Tex. 2009) ..................................................................... 9

*U.S. ex rel. Yannacopolous v. General Dynamics,*
   636 F. Supp. 2d 739 (N.D. Ill. 2009) ................................................................ 23

*United States ex rel Steauy v. Cardinal Health, Inc.,*
   625 F.3d 262  n. 1 (5th Cir. 2010) ....................................................... 6, 21, 22

*Walker v. City of Mesquite,*
   169 F.3d 973 (5th Cir. 1999) ......................................................................... 18

*Walker v. U.S. Dep't of Housing and Urban Dev.,*
   734 F. Supp. 1289 (N.D. Tex. 1989) ................................................................ 18

*Wang v. FMC Corp.,*
   975 F.2d 1412 (9th Cir. 1992) ............................................................................ 7

**Statutes**

31 U.S. C. § 3729(a)(4) ...................................................................................... 21

31 U.S.C. § 3729(a)(1)(A) ................................................................................... 6

31 U.S.C. § 3729(a)(1)(B) ........................................................................................... 6

31 U.S.C. § 3729(a)(1)(D) ......................................................................................... 22

31 U.S.C. § 3729(a)(1)(G) ................................................................................... 22, 23

31 U.S.C. § 3729(a)(7) ............................................................................................... 22

31 U.S.C. § 3731(b) ................................................................................................... 24

42 U.S.C. § 5301 ....................................................................................................... 18

42 U.S.C. § 5304 (e) ................................................................................................... 3

42 U.S.C. § 5304(b) .................................................................................................... 2

42 U.S.C. § 5311(a) .................................................................................................... 3

42 U.S.C. § 5311(c) ................................................................................................... 12

42 U.S.C. §§ 5304 (e) ............................................................................................... 11

Tex. Tax Code § 2306.6703(a)(4) ............................................................................. 13

Tex. Tax Code § 311.001 *et seq* ............................................................................. 15

**Other Authorities**

Federal Claim Act, § 3729(a)(4) ............................................................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1

Fed. R. Civ. P. 9(b) .................................................................................................... 1

Tex. Loc. Gov't Code, § 392.011 ............................................................................. 25

Tex. Loc. Gov't Code § 392.031(b) .......................................................................... 25

Tex. Loc. Gov't Code § 392.051 ............................................................................... 25

Tex. Loc. Gov't Code § 392.061 ............................................................................... 25

Tex. Loc. Gov't Code § 392.065 ............................................................................... 25

**Regulations**

21 C.F.R. 91.225 ......................................................................................................... 4

24 C.F.R. 570.483(b) ........................................................................................................... 18

24 C.F.R. 91.220 ..................................................................................................................... 4

24 C.F.R. 91.225(a) ................................................................................................................. 8

24 C.F.R. 91.225(a) ................................................................................................................. 4

24 C.F.R. 91.5, 91.15 .............................................................................................................. 4

24 C.F.R. 91.500 ................................................................................................................ 4, 11

24 C.F.R. 91.520 ..................................................................................................................... 4

24 C.F.R. 91.520(h) .......................................................................................................... 5, 11

24 C.F.R. 91.525(a) ........................................................................................................... 5, 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES ex rel.** | § | |
| **CURTIS LOCKEY, et al** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3-11-CV-354-O** |
| | § | **ECF** |
| **CITY OF DALLAS, et al.,** | § | |
| **Defendants.** | § | |

**CITY OF DALLAS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

**PURSUANT TO RULE 12(b)(6)**

TO THE HONORABLE COURT:

Defendant, City of Dallas (the "City"), files this brief in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim.

## I.     OVERVIEW

Relators allege that the City falsely certified that it would "affirmatively further fair housing" ("AFFH") as a condition to receiving Community Development and Building Grants ("CDBG") and other funds.  Relators do not assert that the City did not use the monies it received as it represented it would.  Instead, Relators assert that a City document called an analysis of impediments ("AI") did not conform to the "guidance" suggested in a 1996 HUD Fair Housing Planning Guide.  Relators allege that the AI failed to "properly include and analyze" various information, including events that occurred after the AI was prepared.  They make other conclusory claims which focus on the creation of affordable housing rather than fair housing. Relators have failed to allege a claim under the False Claim Act.  Additionally, Relators have failed to allege any such violation with the particularity required by Fed. R. Civ. P. 9(b).

Relators allege at most the City's non-compliance with suggested planning protocols of the Department of Housing and Urban Development ("HUD") but Relators seek to deprive the City of the opportunity granted to it under applicable law to correct any claimed deficiencies after due notice from HUD.  The False Claims Act is not an appropriate vehicle for policing technical compliance with administrative guidelines.  A more basic and fatal flaw is that Relators do not allege any misuse of federal funds or any knowing material false statement, a false representation, a false promise, or a false certification to the United States.  Even where misstatements are alleged, the pleadings are fatally ambiguous and fail to show any material misrepresentations.   In addition, many of the allegations on which the Complaint attempts to rely are time-barred.

## II.    STANDARDS

FED. R. CIV. P. 9(b)'s particularity requirements for fraud as it relates to allegation under the False Claim Act and the standards for dismissal pursuant to FED. R. CIV. P. 12(b)**(6)** concerning a False Claim Act complaint have been summarized by the Court  in  *United States ex rel. Dekort v. Integrated Coast Guard Systems,* 705 F. Supp.2d 519, 529-30 (N.D. Tex. 2010). A claim may also be dismissed under Rule 12(b)(6) because of a statute of limitations where it is evident from the plaintiff's pleading that the claim is time barred and the pleading fails to raise some basis for tolling.  *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003), cert. denied 540 U.S. 1161 (2004).

## III.    THE REGULATORY FRAMEWORK FOR THE DUTY TO "AFFIRMATIVELY FUTHER FAIR HOUSING"

### A.    Governing Statutes

The obligation to AFFH is derived from 42 U.S.C. § 5304((b) which states that a grantee will receive CDBG funding "only if the grantee certifies to the satisfaction of the Secretary that

… the grant will be conducted and administered in conformity with the Civil Rights Act and the Fair Housing Act, and the grantee will affirmatively further fair housing". The term "affirmatively further fair housing" is not statutorily defined. In *Darst-Webbe Tenant Association Board v. St. Louis Housing Authority*, 417 F.3d 898, 907 (8th Cir. 2005), the court described Department of Housing and Urban Development's ("HUD") obligation to AFFH as a broad general statutory mandate and a review of HUD's action was not a review to determine whether HUD had in fact achieved tangible results in furthering opportunities for fair housing but rather the review was to assess whether HUD exercised broad authority in a manner that demonstrates consideration of and an effort to achieve such result. In *Gallagher v. Magner,* 619 F.3d 823, 839 (8th Cir. 2010) cert. denied 2012 WL 469885 (Feb. 14, 2012), the court in *dicta* observed that a city's duty to affirmatively further fair housing had no independent significance, citing cases holding that AFFH mirrors obligations of the Fair Housing Act.

42 U.S.C. § 5304 (e) states HUD will annually make reviews and audits necessary and appropriate to determine whether a grantee has carried out its activities and its certifications in accordance with the requirements and primary objectives of the statute and other applicable law. Based on the reviews and audits the Secretary can adjust, review or withdraw assistance or take other appropriate action. *Id.*

42 U.S.C. § 5311(a) provides that if HUD, after reasonable notice and opportunity to be heard, concludes that a recipient of CDBG funding has failed to comply substantially with the provisions of the chapter HUD may terminate, reduce, or limit the payments until there is no longer any such failure to comply. HUD may also refer the matter to the United States Attorney General with a recommendation that an appropriate civil action be instituted. *Id.*, § 5311(b). A grantee that receives a notice of termination, reduction, or limitation of payment may file with

the appropriate court of appeals, a petition for review of the HUD's action, and court's jurisdiction is exclusive. *Id*, § 5311(c).

## B.      HUD Regulations

Under the federal regulations, a grantee seeking CDBG and similar funding is required to submit a Consolidated Plan to HUD. The Plan serves as a comprehensive affordable housing strategy, community development plan, and submission of funding requests under CDBG and other similar programs for the upcoming five years. *See* 24 C.F.R. 91.5, 91.15. It includes an assessment of the housing needs, homeless needs, housing market analysis, and identifies barriers to affordable housing. It also includes a strategy to address affordable housing and other needs and issues. *Id*. HUD reviews the Consolidated Plan and may disprove and require revision. 24 C.F.R. 91.500.

Additionally, each jurisdiction is required to submit annual action plans. 24 C.F.R. 91.220. An action plan serves as an application for the federal funds and provides a budget of how the funds are planned to be used. As part of the annual plan, the jurisdiction is required to provide the certificate to AFFH. 21 C.F.R. 91.225.

The AFFH certification is defined as requiring the jurisdiction to "conduct an analysis to identify impediments to fair housing choice within the jurisdiction, take appropriate actions to overcome the effects of any impediments identified through that analysis, and maintain records reflecting the analysis and actions in this regard." 24 C.F.R. 91.225(a).

Within 90 days after the close of a program year, the grantee is required to submit annual performance reports to HUD referred to as a Consolidated Annual Performance and Evaluation Report ("CAPER"). 24 C.F.R. 91.520. The CAPERs include an evaluation of the grantee's progress in meeting specific objectives of providing affordable housing, reducing homelessness, action taken to AFFH, and detailing the actual use of the federal funds. HUD reviews the

CAPER to determine if it is satisfactory.   24 C.F.R. 91.520(h).   HUD may withdraw and reallocate funding if, after notice and opportunity to be heard, it concludes a satisfactory CAPER was not submitted.  *Id*.  Additionally, HUD annually reviews the performance of each grantee to assess the management of funds, compliance with the consolidated plan, accuracy of action plans, extent of progress, and compliance with agreements and the requirements of law.   24 C.F.R. 91.525(a).

## C.    The 1996 HUD Guide

In 1996, HUD published the Fair Housing Planning Guide ("Guide") to assist grantees in preparing their AIs.   The Guide defines "impediments to fair housing choice" as actions, omissions, or decisions taken because of race, color, religion, sex, disability, familial status, or national origin which restrict housing choices or actions, omissions, or decisions which have the effect of restricting housing choices on the basis of race, color, religion, sex, disability, familial status, or national origin.  (City Appx. at 215).

The Guide notes that the purpose of the AI is to serve as a basis for fair housing planning; provide information to policy makers, administrative staff, housing providers, lenders, fair housing advocates; and assist in building public support for fair housing efforts.  (City Appx. at 215).   The Guide states it "is designed to offer guidance".   It uses terms and phrases such as "should", "suggested", "encouraged", and "recommends".   (City Appx. at 206, 212, 213, 216, 218, 221, 223, 225, 228, 233, 292, 293, 306).   The Guide provides samples and examples of possible portions of AIs.  All are short.  An example of a state's AI is attached and it is 14 pages long.  (City Appx. at 274-288).    The examples of descriptions of impediments and proposed actions are brief and general, usually consisting of just a few sentences.  (City Appx. at 250-255, 260-264, 266-269, 296-302).

The 1996 Guide states that the AI will generally not be submitted but may be reviewed by to HUD.  (City Appx. at 231-232).  If HUD determines the AI is substantially incomplete or actions taken were plainly inappropriate, HUD will notify the grantee and provide the grantee the opportunity to comment.  *Id*.  If, HUD determines the AFFH certification is inaccurate, HUD will reject the certification.  The Guide concludes, "HUD will work with the jurisdiction to determine actions necessary to make the certification accurate and the Consolidated Plan complete."  *Id*.

Nothing in 42 U.S.C. § 5304((b), the regulations, or the Guide states that the duty to AFFH includes a duty to create affordable housing.   *See also NAACP v. HUD*, 817 F.2d 149, 156 (1st Cir. 1987) (policy to provide fair housing is not mandate to provide housing); *Acevedo v. Nassau County, N.Y.*, 500 F.2d 1078, 1082 (2nd Cir. 1974) ("The Fair Housing Act does not impose any duty upon a governmental body to construct or to plan for, approve and promote any housing.").

## IV.    COUNTS 1 AND 2 FAIL TO STATE A CLAIM

**A.    Requirements to state a claim.**

Relators assert violation of 31 U.S.C. § 3729(a)(1)(A) and (B)).   However, the prior versions of the statue, 31 U.S.C. § 3729(a)(1), and (2), apply to all conduct prior to May 20, 2009.  *See U.S. ex rel. Steauy v. Cardinal Health, Inc.,* 625 F.3d 262, 267, n. 1 (5th Cir. 2010). Under either version of the two sections the threshold elements are the same: 1. a false statement or fraudulent course of conduct that, 2. was made or carried out with the requisite scienter, 3. was material, and 4. caused the government to pay money out.  *See U.S. ex rel. Davis v. Lockheed Martin Corp.,* No. 4:09-CV-645-Y, 2010 WL 4607411, *6 (N.D. Tex. Nov. 15, 2011). Time, place, content of the false representation, the identity of the person making the representations, and what was obtained must be alleged.   *Id*.   Falsity does not mean "scientifically untrue"; it means "a lie" and requires an objective falsehood.  *See Wang v. FMC*

*Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992).   Mere contractual or regulatory non-compliance does not support a claim. *U.S. ex rel. Farmer v. City of Houston,* 523 F.3d 333, 340, n.12 (5th Cir. 2008), cert. denied 559 U.S. 1012 (2008).   The False Claims Act is a fraud prevention statute and alleged violations of agency regulations are not fraud unless the violator knowingly lies to the United States.   *Id*.   If the regulations are thoroughly unclear, the elements of knowledge and falsity cannot be met.   *Id.*   Further, differences in interpretation growing out of a disputed legal question are not false under the False Claim Act. *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1477-78 (9th Cir. 1996).   The Act is not an appropriate vehicle for policing technical compliance with administrative regulations. *U.S. ex rel. Lamers v. City of Green Bay,* 168 F.3d 1013, 1020 (7th Cir. 1999).

B.    **Relators' Claims**

Relators claim that the City submitted false certifications that it would affirmatively further fair housing to obtain CDBG and similar funding.   Relators make global allegations about the sufficiency of the City's AI and assert that any deficiency renders the certification false. Relators have tried to isolate a few examples of the AI that they assert are defective yet ignore the rest of the AI and disregard that its purpose was for planning.   Further, none of the specific claimed defects were objective falsehoods, material, or made with the requisite intent.   Further, Relators also assert vague allegations of City action over twenty years that encouraged discriminatory practices.   These allegations likewise fail to allege objective falsehoods and false or material statements made with the required intent.     Collectively and separately, the allegations have failed to state a claim under the False Claim Act.   There is certainly no particularity as to the alleged fraud of the City.   The City will separately address each of the allegations.

### C.      Delay in Updating the AI

Relators allege that the City failed to timely update its AI between 1998 and 2007.  (Am. Compl., ¶¶ 63, 66).  There is no statutory or regulatory requirement to update AIs.  The regulations only state that each jurisdiction "will conduct *an* analysis to identify impediments". 24 C.F.R. 91.225(a).  (emphasis added).  The Guide states, "HUD *suggests* that jurisdictions conduct or update their AI at least once every 3 to 5 years" and grantees "are *encouraged* to update their AIs consistent with this Guide."  (City Appx. at 213) (emphasis added).  There are no allegations that the delay in updating was done with the intent to obtain funds that the City would not have otherwise received.  Realtors seek millions of dollars from the City not based on a false statement but on an alleged failure to follow a suggestion.  No falsity or required intent is possible.  Further, Relators do not allege that the delay in updating the AI was material.  Relators have failed to allege a false claim based on the delay in updating the 1998 AI.

### D.      Content of the Analysis of Impediments

Relators attack the content of the AI.  Initially, Relators allege that the AI does not include a housing affordability strategy.  (Am. Compl., ¶55).  However, the Guide suggests that this should be included in the Consolidated Plan.  (City Appx. at 234).  Relators allege the Consolidated Plan does not include this but just a review of the table of contents of the plan reveals otherwise.  (City Appx at 352-353, 363-365).  Moreover, to support their claim, Relators rely on a City created document, the Mayor's Task Force on Affordable Housing, which clearly detailed an affordable housing strategy.  (Am. Compl., ¶ 55; City Appx. at 1138-1221).  The pleadings establish the lack of falsity, materiality, and intent.

Relators next claim that the AI does not include assessments of a review of laws and regulations, how they affect housing, the conditions affecting fair housing choice, and an assessment of affordable, accessible housing as suggested by the Guide.  (Am. Comp., ¶¶ 58-59).

However, elsewhere, they allege the AIs "amount to assessments of affordable housing needs." (Am. Compl., ¶ 64). The Guide states the process of creating an AI involves the assessments, it does not state that the AI must include a comprehensive discussion of the results of the assessment. (City Appx. at 214). Moreover, the 2007 AI includes a 16 page section titled "Public Policies, Practices and Programs Involving Housing and Housing Related Activities" where there is a review of the City zoning, building, and housing codes. (City Appx. at 102-117). In the section there is also reference to the 2006 forwardDallas! Comprehensive Plan. (City Appx. at 110-111). The forwardDallas! plan is described as policy plan, implementation plan, and monitoring program. It notes that one of the key initiatives is "make quality housing more accessible" and the focus of that initiative is to "create housing options that answer the needs of the City's diverse population." (*Id*.). Relators' pleadings fail to allege falsity, materiality, and intent and that failure is confirmed by a simple comparison of the AI to the Guide.

Relators admit and rely on the information in the AI about the racial and ethnic distribution of the City's population and demographic changes. (Am. Compl., ¶¶ 69-80, 82). They nonetheless claim the City failed to analyze or take appropriate actions based on the information, "the author(s) did not recognize the significance of these observations" and the "failed to properly include and analyze" the information. (Am. Compl., ¶¶ 69, 80, 82).[1] The AI included sections titled "Degrees of Segregation by Race and Ethnicity" which summarizes the minority distribution, "Median Home Values in Racial and Ethnic Concentrated Areas", and "Median Rental Housing Costs in Low and Moderate Income Census Tracts and Racially

---

[1] As to one of these generalized allegations, Relators assert it is based "on information and belief." (Am. Compl., ¶ 82). Relators have failed to state the facts that support that belief. *See U.S. ex rel. Smart v. Christus Health,* 626 F. Supp. 647, 696 (S.D. Tex. 2009).

Impacted Census Tracts".   (City Appx. at 31-34).   It also included a summary of the racial composition of the City's census tracts and had maps that displayed the distribution.  (City Appx. at 15-25, 35-46).   Additionally, the AI summarizes the City past actions  including the handling of over 600 fair housing complaints since the last AI, collecting over $500,000 as a result of settlement of claims, providing ongoing fair housing education and outreach, and providing a detail review of lending practices that impact housing choice.  (City Appx. at 119, 123-124, 126-155).   As the AI notes, the forwardDallas! Plan also includes information and proposed actions to address housing needs.  (City Appx. at.110-111).   Relators' pleadings fail to allege falsity, materiality, and intent and that failure is confirmed by a simple review of the AI.   Moreover, here and with several other instances, Relators allege a knowing failure "to properly include and analyze" information.    Whether  information  was  included  or  not  does  not  render  the certifications false or allege an objective falsehood, materiality, or intent.

Relators claim that the AI failed to include an assessment of "community resistance" as contemplated by the Guide.  (Am. Compl., ¶ 65).   Relators do not allege that community resistance then existed as an impediment.   Nonetheless, the City included its past and proposed actions to address any possible community resistance through the past and ongoing fair housing education  and  outreach.   (City Appx. at 123-124).   If that resistance reached a level of discrimination,  the  AI  described  its  past  and  proposed  action  in  dealing  with  fair  housing complaint.  (City Appx. at 118-123).    Relators' pleadings fail to allege falsity, materiality, and intent and that failure is confirmed by a simple review of the AI.

Relators fault the 2007 AI for identifying the fact that DHA's tenant population was 86% African-American  and  for  not  receiving  other  information  from  DHA.   (Am. Comp., ¶ 81). Relators claim the City "failed to properly include and analyze" the information.  (Am. Compl., ¶

81). The AI observed that the tenant population make-up was disproportionate to the Dallas population and recommended that DHA enhance its outreach to increase the racial/ethnic diversity of the DHA tenant population.(City Appx. at 75, 100). The AI identified and addressed the claimed impediment. Relators' pleadings fail to allege falsity, materiality, and intent and that failure is confirmed by a simple review of the AI.

Relators complain about the inclusion of statements in the AI by housing advocates that participated in a survey that were critical of fair housing in the City. Relators assert that the City "has not synthesized the observation into the AI as impediments". (Am. Compl., ¶ 83). The allegation is nothing more than a complaint about the form and labeling of the disclosure of information. Nothing in the paragraph asserts a false statement, a false representation, a false promise, or a false certification to the United States.

Relators complain that the 2007 AI appears to be an edited version of prior AIs, based on boiler plate, was not a valid updated AI. (Am. Compl., ¶ 84). There are no allegations as to why the AI was not valid other than the reasons stated above. There is no requirement as to the form of an AI. Nothing in the paragraph asserts a false statement, a false representation, a false promise, or a false certification to the United States.

## E. Regulatory Enforcement

Relators' claim is, at best, one of regulatory non-compliance. The governing statute and regulations, as well as the Guide, provide means for regulatory enforcement. 42 U.S.C. §§ 5304 (e), 5311(a); 24 C.F.R. 91.500,.520(h), .525(a). By seeking a false claim, Relators have deprived the City of the procedural protections and potential of corrective action that would otherwise been available if the United States indeed believed there were any violations. The City was entitled to rely upon the statutory framework, HUD regulations, and the Guide in concluding that its actions were in full compliance with the CDBG requirements and that the City would be

given notice and an opportunity to correct any failure to comply.  Relators do not allege that HUD ever determined that the City's AI was defective or incomplete, the City's actions inappropriate, or its certifications inaccurate.  Relators' pleadings establish the lack of the requisite knowledge of falsity.

Equally important, the statutory framework provides an exclusive jurisdiction procedure to address non-compliance, even substantial non-compliance, with the requirements of the CDBG statute, including the certifications to affirmatively further fair housing. 42 U.S.C. § 5311(c).  Relators seek to circumvent this procedure to assert alleged regulatory non-compliance as a false claim.  HUD has never asserted a violation and if it had, the City would have had the opportunity to take remedial action to address any claimed failure to comply with the statute, regulations, or the 1996 Guide.

**F.       Relators' Claims of City Zoning, Land Use, and Funding Policies**

Relators make a general claim that the City has encouraged discriminatory practices through its zoning, land use, building codes, funding, location of affordable housing, and structure of the housing subsidy programs.  (Am. Compl., ¶¶ 86-87).  Relators then make a series of conclusory allegations about the City.  (Am. Compl., ¶¶ 89-115). None support a false claim and none are alleged with the required particularity.

**1.       Creation of Affordable Housing**

Relators make several allegation related to the claimed failure to create more affordable housing.  (*See* Am. Compl., ¶¶ 95-97, 102, 104, 109, 110, 113).  None of these allegations relate to fair housing.  AFFH does not impose an obligation to create affordable housing.  *See NAACP v. HUD*, 817 F.2d at 156; *Acevedo v. Nassau County, N.Y.*, 500 F.2d at 1082.  But even if AFFH could be equated with creating affordable housing, nothing in these allegations asserts a failure

to produce affordable housing or any false statements, representations, claims, promises, or certifications by the City to the United States.

### 2.    Low Income Housing Tax Credits ("LIHTC")

Relators claim that the City was somehow responsible for the placement of LIHTCs projects that resulted in more LITHC projects being built in southern Dallas than in northern Dallas. (Am. Compl., ¶¶ 90-93, 106, 125). The LIHTC program is a federal tax credit program intended to spur investment in the development of low income housing. *See Inclusive Communities Project, Inc. v. Tex. Dep't of Housing and Consumer Affairs*, 749 F. Supp. 2d 486, 492 (N.D. Tex. 2010). The Texas Department of Housing and Consumer Affairs ("TDHCA") is responsible for administering the program in Texas and "TDHCA is the sole entity with authority to award tax credits to developers, its decisions directly affect the availability and geographical distribution of low-income housing." *Id.* at 496. As a matter of law, the City did not cause the distribution of the LIHTC projects.

The City notes that in 2003, the Texas legislature added § 2306.6703(a)(4) of the Texas Tax Code which made an LIHTC applicant ineligible for municipalities with twice the state average of units per capita supported by housing tax credits unless the applicant had prior approval of the governing body and included a written letter of support from the governing body. Relators make no allegation that this provision was applicable or improperly used. Further Relators' pleadings establish the provision's inapplicability. Relators complain about LIHTC's constructed from 1998 to 2008. (Am. Compl., ¶ 90). However, they admit that the relevant time period began in February, 2005 and the first certification at issue would have been in August 2005. (Am. Compl., ¶¶ 17, 146). Relators allege that the City declared a moratorium on LIHTC production in the summer of 2005 that prevented production of LIHTCs for more than three

years.  (Am. Compl., ¶ 112).  Based on Relators' pleadings no LIHTCs were produced in either south or north Dallas.  None are identified.

Nothing in the paragraph asserts a false statement, a false representation, a false promise, or a false certification to the United States.  Additionally, the allegations lack the required specificity.  Not a single LIHTC project or City action is identified.  The Court should dismiss Relators' claims regarding LIHTCs.

### 3.   Tax Incremental Financing Districts ("TIFs")

Relators complain of "the minimal funding provided for affordable housing" by the City's TIFs.  (*See* Am. Compl., ¶¶ 95-97, 102).    Yet, as Relators pleadings acknowledge, the City's TIF policies budget millions of dollars to create affordable housing, without regard to other policy requirements to provide affordable housing.  Relators also claim there is a difference in the designated funding for affordable housing based on whether the TIF district is in north or south Dallas.  (Am. Compl. ¶¶ 96-97).  Without regard to the accuracy of the allegations, Relators do not allege that the difference is based on anything improper.  Indeed, the difference may be attributable to the nature of the TIF, the land and properties within it, or host of other factors.  Nothing in these paragraphs asserts a false statement, a false representation, a false promise, or a false certification to the United States.  Likewise, there is no particularity.

### 4.   Creation of Affordable Housing in Downtown Dallas

Relators present an assortment of allegations related to a claimed failure to produce affordable housing in downtown and a failure to "properly include" the information in the AI. (Am. Comp., ¶¶ 98, 100, 101, 102, 104, 109, 110, 113).  Relators make no allegations as to why affordable housing should be placed in downtown.  No impediment to fair housing is identified. Further their pleadings belie their contention.  While complaining about the lack of production of

affordable housing in downtown, each program and project identified had its purpose as to create downtown affordable housing.

For example, Relators complain about the Intown Housing Program yet acknowledge that the program created affordable housing in the downtown area. (Am. Compl., ¶ 109).[2]   Relators vaguely imply some impropriety with the sale or conversion of four projects yet elsewhere reference the 2002 Mayor's Task Force on Affordable Workforce Housing.   That report recommended the sale.  (Am. Comp., ¶ ¶ 55, 109; City Appx. at 1198, 1220).

Likewise, Relators admit the Atmos project will create affordable housing in the downtown.  They complain that the original plan concentrated the affordable units in one of four buildings but ignore that affordable units are to be produced. (Am. Compl., ¶¶ 98, 100, 101).

Relators complain about the original parameters of the Downtown Mortgage Assistance Program but admit it was intended to assist low-income families purchase housing in downtown. They merely complain it had not produced units within six months from its adoption until the AI was published. (Am. Comp., ¶¶ 110, 113; City Appx. at 60, 65, 1328-1330).

Relators claim the Downtown Connection TIF's policy discourages production of affordable units and is contrary to the HUD's requirements for federally funded housing.  (Am. Compl., ¶ 102).  TIFs are creatures of state law, they are not governed by federal law, HUD's national objective has no application, and there is no requirement by state law that any affordable housing be created.  Tex. Tax Code § 311.001 *et seq*.  Relators' pleadings admit a City policy that encourages that 30% of the housing units be affordable

Finally, Relators allege an unidentified person(s) "indicated" that affordable housing was not part of the vision for downtown.  (Am. Compl., ¶ 104).   Even statements by members of the

---

[2] Relators assert that only 199 affordable units were created in "Downtown Dallas".  As the AI notes, the program was not limited to the Central Business District.  (City Appx. at 61, 69).

governing body are not binding on the City.  *See McClure v. Biesenbach*, 402 F. Supp. 2d 753, 762 (W. D. Tex. 2005) affirmed 355 Fed. Appx. 86 (5th Cir. 2009).

Relators fail to allege how the policies, programs, and projects that encourage the production of affordable housing units in downtown are an impediment to fair housing let alone part of a false certification.  Not any of the actions are alleged to be false or fraudulent or even in conflict with affirmatively furthering fair housing.  Nothing in these paragraphs alleges a false claim.  Additionally, the allegations do not allege any type of claimed fraud with the required specificity.  Relators make a general allegation of discriminatory polices but fail to identify the policies.  (Am. Compl., 104).  They fail to allege a specific false promise, false claim, false statement, false action, improper payment.  They fail to identify any specific action or person. They do not even allege who made statement to them about the vision of downtown. The allegations concerning affordable housing in downtown should be dismissed.

### 5.    The Continental and Shamburger Projects

Again complaining about the lack of affordable units, Relators complain about the creation of such units.  Relators complain that two projects were improper because the mix of the affordable units would discriminate on the basis of familial status since only studio or one bedroom units were designated as affordable.  (Am. Compl., ¶ 99).  The plan was to create affordable housing that would not otherwise exist and Relators do not allege that the housing would not have been open to families. They just allege bigger units were needed.   Not any of the actions are alleged to be false or fraudulent.

### 6.    LIHTC Moratorium

Relators complain that there was no production of affordable units for three years under the LIHTC program because of a City moratorium and the 2007 AI failed to include and analyze this information.  (Amended Compl., ¶ 112).  The moratorium was city wide.  This claim is

related to a purported failure to create affordable units and has nothing to do fair housing. Nothing in the paragraph asserts a false statement, a false representation, a false promise, or a false certification to the United States.

### 7.   Housing and Economic Recovery Act ("HERA")

Relators allege that the 2007 AI failed to mention events that occurred in 2010. (Am. Compl., ¶ 114). No type of fraud is alleged. Moreover, the allegation is that the Dallas Housing Finance Corporation, a non-party, transferred a portion of the HERA bond allocation back to the Texas State Affordable Housing Corporation. This is a claim related to a purported failure to create affordable units and has nothing to do fair housing. Moreover, Relators do not allege any affordable units could have been produced given HERA's time restriction and the then existing market conditions. Nothing in the paragraph asserts a false statement, a false representation, a false promise, or a false certification to the United States. Finally, the allegations do not allege any type of claimed fraud with the required specificity.

### 8.   Section 108 Interest Rates

Relators allege that the 2007 AI failed to mention a policy concerning interest rates charged to developers receiving Section 108 loan guarantee funds that was adopted in 2009. (Am. Compl., ¶ 115). No type of fraud is alleged.   This is a claim related to a purported failure to create affordable units and has nothing to do fair housing. Moreover, Relators do not allege that the extra interest rate actually had any impact or effect. They have failed to identify a single project or development that did not occur because of the interest rates. Nothing in the paragraph asserts a false statement, a false representation, a false promise, or a false certification to the United States.   Finally, the allegations do not allege any type of claimed fraud with the required specificity.

## 9.      Community Development Building Grants ("CDBG")

Relators fault the City for directing the allocation of CDBG funds and other unidentified community development resources into CDBG eligible census tracts which are high minority, low income areas of the City. (Am. Compl., ¶ 103).[3]  Relators' allegations ignore that the one of national objectives of CDBG and HUD regulations is to make improvements in low income areas. *See* 42 U.S.C. §5301; 24 C.F.R. 570.483(b).

Relators have not alleged that any action had any impact on fair housing choice. Nothing in the allegations asserts or supports a false statement, a false representation, a false promise, or a false certification to the United States.   There are no allegations to support any element of a violation of the False Claim Act.   Additionally, the allegations do not allege any type of claimed fraud with the required specificity.  Not a single allocation or policy is specified in any manner.

## 10.     Walker

Relators allege that the AI "failed to properly disclose and analyze the impact of historical discrimination" and findings "as established" in the *Walker* case. (Am. Compl., ¶ 105, 108).  There were no findings against the City.  In a single order, the City was joined as a party, held bound to a consent decree entered by DHA and HUD, and had partial summary judgment entered against it.  *See Walker v. U.S. Dep't of Housing and Urban Dev.*, 734 F. Supp. 1289 (N.D. Tex. 1989).  Rather than litigate and appeal that decision, the City entered into a consent decree that specifically denied liability.  (City Appx. at 374).  Moreover, in *Walker v. City of Mesquite*, 169 F.3d 973, 985 (5th Cir. 1999), the Fifth Circuit held that DHA, HUD, and the City of Dallas no longer discriminated against black families in DHA's public housing programs and

---

[3] Paradoxically, the Relators allege elsewhere that the City has not devoted enough resources to these areas.  (Am. Compl., ¶ 107).

were "active participants in crafting and implementing remedial measures to eliminate the vestiges of past discrimination." Also, the AI does reference *Walker*. (City Appx. at 62, 76, 118). There are no allegations to support any element of a violation of the False Claim Act. Additionally, the allegations do not allege any type of claimed fraud with the required specificity. Not a single "impact" or "finding" that should have been included in the AI is identified.

### 11.    Southern and Northern Dallas

Relators allege that the City has not employed a strategy of improving conditions in southern Dallas and the only improvements made are to add low income housing. (Am. Compl., ¶ 107). They further allege that the City has not employed a strategy to provide affordable housing in more economically advantaged areas. (*Id.*). They then accuse the City of not including the information in the AI. The allegations are so vague that it is impossible to tell what Relators claim should have been included. Moreover, even the vague allegations are false on their face. The AI references the forwardDallas! Plan. (City Appx. at 110-111). It is described as the comprehensive planning document and included as its key initiatives to "enhance the economy" "make quality housing more accessible" and to "encourage new development patterns." (*Id.*). The Consolidated Plan and forwardDallas! plan were the appropriate documents to address these issues.

Additionally, Relators elsewhere acknowledge the City's efforts. They quote a portion of the 2007 AI in which a survey participant states the City should broaden beyond South and Southwest Dallas. Relators then observe "This is likely a reference to the enormous resources that have been invested in …the 'Southern Sector' but not in …the 'Northern Sector'." (Am. Comp., ¶ 83). Relators admit to the City's efforts to improve southern Dallas. As to the location of affordable housing, there are no allegations except as to LIHTCs and as discussed above, the

decision to grant or deny a LIHTC is made by the State.  Not any of the actions are alleged to be false or fraudulent or even in conflict with affirmatively furthering fair housing.  Nothing in the paragraph asserts or supports a false statement, a false representation, a false promise, or a false certification to the United States.

Furthermore, Lockey's arguments as to LIHTCs, CDBG funds, and southern/northern Dallas try to impose a Hobson's choice on the City.  If the City provides assistance to minority areas to improve the quality of housing choices, then it will be accused of not doing enough to promote affordable housing in non-minority areas.  If the City attempts to promote affordable housing in non-minority areas, then it will be accused of not doing enough to improve the minority areas.  Relators do both.  They claim the City has not done enough for southern Dallas but fault the City for using CDBG funds in southern Dallas and investing enormous resources in southern Dallas but not in northern Dallas.  (Am. Compl., ¶¶ 83, 90-93, 103, 106, 107, 125).  The allocation of limited resources to complex issues and competing interests is a difficult decision. That is why such allocations, through an open and public process, are made by elected officials who fairly represent the various constituencies of the City.  Again, there are no allegations to support any element of a violation of the False Claim Act.

Additionally, the allegations do not allege any type of claimed fraud with the required specificity.  Not a single act or policy is specified in any manner.

### 12.  Hurricane Katrina

Relators claim that the impact of the 2005 Hurricane Katrina should have been included in 2007 AI.  (Am. Compl., ¶ 111).  There are no allegations related to how the event two years earlier related to fair housing. Contrary to Relators' implication, there was little long term

effect.[4]  Relators have not alleged that this event had any short term or long term impact on fair housing choice.   Nothing in the paragraph asserts, even in a conclusory manner, a false statement, a false representation, a false promise, or a false certification to the United States.  For the very same reason, there are no allegations of fraud with the required particularity.

## V.   COUNT III FAILS TO STATE A CLAIM

In Count III, Relators allege a violation of 31 U.S.C. § 3729(a)(1)(D).  (Am. Compl., ¶¶ 171-177).   However, the 2009 amendment to this section of the Federal Claim Act is not applicable and the claim must be evaluated under the pre-2009 version of the Act, § 3729(a)(4) because the amendment was not retroactive.  *See Steaury,* 625 F.3d at 267, n. 1.

At a minimum, the elements to a claim under this provision are: (1) possession, custody, or control of property or money used, or to be used, by the government, (2) delivery of less property than the amount for which the person receives a certificate or receipt, (3) with intent to defraud or willfully to conceal the property.  *U.S. ex rel. Aakhus v. Dyncorp, Inc.,* 136 F.3d 676, 681 (10th Cir.1998).[5]   Relators have failed to allege, even in a conclusory fashion, all of the elements for this claim.  *Id. See also U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,* Civil Action No. A 94-7316, 2000 WL 1207162, *19 (E.D. Pa. Aug. 24, 2000) (count under § 3729(a)(4) dismissed for failure to allege that government issued any kind of receipt to defendant for property delivered by the defendant).

Even if the 2009 amended version of the statute is used, the result would be unchanged. Under the amended version, a person violates the Act if that person "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or

---

[4] Based on the U.S. Census, the City's total population only grew by 9,236, less than 1%, between 2000 and 2010. (City Appx. at 1640-1641).   The court may take judicial notice of U.S. Census data.  *Hollinger v. Home State Mut. Ins. Co.,* 654 F. 3d 564, 571-72 (5th Cir. 2011).
[5] Other cases hold that a plaintiff must also establish that the United States suffered damages.  *Id.*

causes to be delivered, less than all of that money or property." 31 U.S.C. § 3729(a)(1)(D). Again, there are no factual allegations that the City had possession, custody, or control of property or money used or to be used by the United States or that the City knowingly delivered less than all of the property or money to the United States. There is no allegation of any delivery of anything by the City to the United States.

Even if the conclusory allegations could be construed as alleging all of the elements, the allegations still fail to provide sufficient specificity. *See U.S. ex rel. Rett v. Columbia/HCA Healthcare Corp.,* 251 F. Supp.2d 28, 36 (D.D.C., 2003). Relators only make the conclusory claim that the City withheld or failed to return received monies, has control of money or financial instruments, converted monies for uses other than their intended purposes, converted monies for improper purposes, and failed to deliver money owed to the United States. (Am. Compl., ¶¶ 172-177). Relators do not identify the monies, financial instruments, the withholding, the non-return, the City's control, the conversion, the intended purposes, the improper purposes, the basis by which monies are owed, that the United States has requested its return, or a single instance of knowingly false withholding. Relators have failed to state a claim under former or current version of the statute or alternatively have failed to allege a claim under former or current of the statute with the required particularity. Count III should be dismissed.

## VI.    COUNT IV FAILS TO STATE A CLAIM

Relators allege a so-called "reverse false claim" under 31 U.S.C. § 3729(a)(1)(G). (Am. Compl., ¶¶ 178-188). The applicable statute is the pre-2009 amendment version, 31 U.S.C. § 3729(a)(7) because the amendments were not retroactive. *See Steaury,* 625 F.3d at 267, n. 1. However, under either version, Relators have failed to state a claim.[6]

---

[6] *See U.S. ex rel. Drake v. NSI, Inc.,* 736 F. Supp. 2d 489, 496 (D. Conn. 2010) (noting that the amendment did not alter the substantive elements of a claim under section 3729(a)(7).

Under a reverse false claim, there is no payment by the United States to a defendant, rather there is an improper reduction of the defendant's liability to the United States. *Dekort,* 705 F. Supp. 2d at 548. Under this section, a claim only arises if the defendant owes a payment obligation to the United States and submits a false claim or statement to avoid the payment obligation. *Id.,* at 548-49. Other than conclusory allegations, there are no allegations of a false record or statement, a payment obligation, or avoidance of that obligation.

To the extent that the allegation is meant to claim that the City failed to refund the false claims asserted in this lawsuit, no violation is alleged. Recasting a false claim based on payment to a defendant as a reverse false claim based on a failure to refund the false claim is redundant and not actionable. *See U.S. ex rel. Porter v. HCA Health Services of Ok., Inc,* Civil Action No. 3:09-CV-0992*; 2011 WL 4590791, *7-8 (*N.D. Tex., Sept. 30, 2011). To the extent they assert a claim based on overpayment, there is no liability for retention of overpayments prior to the 2009 amendment to the Act. *U.S. ex rel. Yannacopoulos v. General Dynamics,* 636 F. Supp. 2d 739, 752 (N.D. Ill. 2009).

Additionally, Relators have failed to allege this claim with the required particularity. (*See* Am. Compl., ¶¶ 178-188). There are no allegations identifying the obligation supposedly owed by the City, the money or property that the City should have paid, the legal basis by which such obligation was created, the false statement or record material to the unidentified obligation, the overpayment received by the City, the conversion of funds for improper uses, or the basis for a refund. *See U.S. ex rel. Mastej v. Health Management Assoc., Inc.,* No. 2:11-cv-89-FtM-29DNF, 2012 WL 523623, *7-8 (M.D. Fla., Feb. 16, 2012) (conclusory allegations re section 3729(a)(1)(G) insufficient); *U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co.,* 668 F. Supp.2d 780, 811-12 (E.D. La., 2009) (complaint re section 3729(a)(1)(G) insufficient).

Relators have failed to state a reverse false claim under the prior or current version of the statute or alternatively have failed to allege a reverse false claim under the prior or current version of the statute with the required particularity.  Count IV should be dismissed.

## VII.   LIMITATIONS BARS MUCH OF RELATORS' CLAIMS

The False Claim Act has a six year statute of limitations.  31 U.S.C. § 3731(b).  Since the United States elected not to intervene, Relators are not entitled to the tolling available to the United States and are bound by the six year statute of limitations.  *See   U.S. ex rel. King v. Solvay S.A.*, No. H-06-2662, 2011 WL 4834030, *52-56 (S.D. Tex. Oct. 12, 2011).

Relators allege that the relevant period starts six years prior to the filing of the suit, February 22, 2005, yet allege that there were false certifications starting from 2004.  (Am. Comp., ¶¶ 17, 146).  Further, while the certifications concern future conduct, Relators premise their false claims on events prior to the certifications.  For example, Relators assert claims related to the 1993 and 1998 AIs, (Am. Compl., ¶¶ 59, 63, 64, 65, 84); the City's TIF districts, (Am. Compl., ¶¶ 95-97, 102); LIHTC projects built as long ago as 1999,  (Am. Compl. ¶¶ 90-94, 106-107); the *Walker* case terminated in 2003, (Am. Compl., ¶¶ 105, 108); and the Intown Housing Program,  (Am. Compl., ¶ 109).   Relators seek to hold the City liable for its certifications to AFFH based on alleged actions that are time-barred.  Any claim related to a certification made six years prior to the filing of this lawsuit and any claim based on events occurring prior to any certification after February 22, 2005 is time barred and should be dismissed.

## VIII.   THE CITY IS NOT LIABLE FOR DHA

Relators allege that City and DHA acted in concert and each Defendant is liable for the full amount of damages and penalties.  (Am. Comp., ¶ 22; at 40).  Relators have failed to allege any elements necessary for a conspiracy allegations and also have failed to alleged with

particularity any conspiracy, agreement, or overt acts.  *Farmer* 523 F.3d at 343; *Dekort,* 705 F. Supp. 2d at 548.

Apparently, Relators attempt to attribute liability to the City on the basis that the DHA is an agent of the City. (Am. Compl., ¶¶ 13, 16).  DHA is a separate "public body corporate and politic" with its own governmental powers. *See* Tex. Loc. Gov't Code, § 392.011, .051, .031(b), .061, .065.  Any contention that a city is liable for the actions of the housing authority because the mayor appointed the commissioners has been rejected as "ill-conceived and unpersuasive." *Norris v. Housing Authority of the City of Galveston*, 962 F. Supp. 96, 98 (S.D. Tex. 1997).  *See also Housing Authority of the City of El Paso v. City of El Paso*, 141 S.W.3d 663, 667-68 (Tex. App.-El Paso 2004, no pet.).  Further, the Court may also take judicial notice that the United States has admitted that the City does not control the actions of the DHA in the indictment in *U.S. v. Don Hill, et al,* No. 3:07-CR-289-R (N.D. Tex.) ("Although it was governed by a five-member board of commissioners appointed by the mayor, the City had no other involvement in DHA operations.")  (City Appx. at 280).

Any allegation of conspiracy, joint and several liability, acting in concert, agency, or that the City is liable for any claimed damages caused by DHA should be dismissed. Alternatively, whatever the basis for liability may be, it has not been alleged with any particularity.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the City requests that the Court grant in whole, or alternatively in part, its motion to dismiss for failure to state a claim.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY
CITY OF DALLAS, TEXAS


B   s/Charles Estee
    CHARLES ESTEE
    Assistant City Attorney
    State Bar of Texas No. 06673600
    PETER B. HASKEL
    Senior Assistant City Attorney
    State Bar of Texas No. 09198900
    7BN Dallas City Hall
    1500 Marilla Street
    Dallas, Texas 75201
    Telephone – 214/670-3519
    Telecopier – 214/670-0622


## CERTIFICATE OF SERVICE

I certify that on March 16, 2012, I electronically filed the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas using the electronic case failing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means.

*Via Hand Delivery*
Hal K. Gillespie
Gillespie, Rozen & Watsky, P.C.
3402 Oak Grove Avenue
Dallas, Texas 75204
*Counsel for Plaintiffs/Relators*

*Via Certified Mail No. 7006 0100 0003 1302 9684*
Michael Allen
Stephen Hayes
Relman, Dane & Colfax, PLLC
1225 19th Street, N. W., Suite 600
Washington, D.C. 20036-2456
*Counsel for Plaintiffs/Relators*

***Via Hand Delivery***
Earsa Jackson
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, Texas  75202
*Counsel for Defendant Dallas Housing Authority*

***Via Certified Mail No. 7006 0100 0003 1302 9667***
Gerald Bright
Walker Bright PC
100 North Central Expressway, Suite 800
Richardson, Texas  75080
*Counsel for Defendant Dallas Housing Authority*

***Via Certified Mail No. 7006 0100 0003 1302 9660***
Colin D. Speaker
Asst. U. S. Atty.
801 Cherry St., Suite 1700
Unit 4
Fort Worth, Texas  76102
*Attorney for United States*


  s/ Charles Estee
CHARLES ESTEE