# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel CURTIS LOCKEY AND CRAIG MACKENZIE** | § § § § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No. 3:11-cv-354-O** |
| **CITY OF DALLAS, TEXAS, et al.,** | § § § | |
| **Defendants.** | § § § § | |

## THE HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .............................................................................................................. 3

    A.   The Court should dismiss Relators' Amended Complaint since its allegations
        are based upon public disclosures and the Relators are not the original source ............. 3

    B.   The Court should dismiss all claims against DHA because the Amended
        Complaint lacks the specificity required by Rule 9(b) under FCA ............................. 16

    C.   Limitations bars much of Relators' Claims ................................................................. 18

    D.   DHA is not liable for the City of Dallas .................................................................... 18

III. CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bazan v. White,*
    275 F. Appx. 312 (5th Cir. 2008) ........................................................................ 16

*Rockwell Int'l Corp. v. United States,*
    127 S. Ct. 1397 (2007) ........................................................................................ 3

*Santos v. Reno,*
    228 F.3d 591 (5th Cir. 2000) .............................................................................. 3

*U.S. ex rel. King v. Solvay S.A.,*
    No. H-06-2662, 2011 WL 4834030, *52-56 (S.D. Tex. Oct. 12, 2011) ............... 18

*United States ex rel. Farmer v. City of Houston,*
    Civ. Act. No. H-03-3713, 2005 U.S. Dist. LEXIS 18387 (S.D. Tex. May 5, 2005) ............... 4

*United States ex rel. Findley v. FPC-Boron Employees,*
    105, F.3d 675 (D.C. Cir. 1997) ......................................................................... 15

*United States ex rel. Hebert v. Dizney,*
    295 Fed. Appx. 717 (5th Cir. 2008) .................................................................. 16

*United States ex rel. Jamison v. McKesson Corp.,*
    649 F.3d 322 (5th Cir. 2011) .......................................................................3, 4, 5

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,*
    360 F.3d 220 (1st Cir. 2004) ........................................................................16, 17

*United States ex rel. O'Keeffe v. Sverdup Corp.,*
    131 F. Supp. 2d 87 (D. Mass. 2001) ............................................................... 2, 5

*United States ex. Rel. Ondis v. City of Woonsocket,*
    587 F.3d 49 (1st Cir. 2009) ........................................................ 3, 5, 6, 13, 14, 15

*United States ex rel. Precision Co. v. Koch Indus., Inc.,*
    971 F.2d 548 (10th Cir. 1992) .......................................................................... 13

*United States, ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.,*
    384 F.3d 168 (5th Cir. 2004) .................................................... 3, 4, 5, 6, 12, 13, 14

*United States ex rel. Russell v. Epic Healthcare Mgmt. Group,*
    193 F.3d 304 (5th Cir. 1999) ............................................................................ 16

*United States ex rel. Springfield Terminal Rwy Co. v. Quinn,*
   14 F.3d 645 (D.C. Cir. 1994) ........................................................................................... 5

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,*
   125 F.3d 899 (5th Cir. 1997) ...................................................................................16, 17

## STATUTES

31 U.S.C. § 3730(b)(2) ................................................................................................. 4, 12

31 U.S.C. § 3730(b)(2)-(4) ................................................................................................. 2

31 U.S.C. § 3730(e)(4) ....................................................................................................... 3

31 U.S.C. § 3730(e)(4)(A) ........................................................................................4, 6, 12

31 U.S.C. § 3730(e)(4)(B) ................................................................................................ 14

31 U.S.C. § 3731(b) .......................................................................................................... 18

## RULES

Fed. R. Civ. P. Rule 9(b) ...................................................................................2, 16, 17, 19

Fed. R. Civ. P. Rule 9(b), 12(b)(1) and 12(b)(6) ...................................................................... 1

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................ 16

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel CURTIS LOCKEY AND CRAIG MACKENZIE** § § § § § § § | |
| **Plaintiffs,** § § § | |
| **v.** § § § | **Civil Action No. 3:11-cv-354-O** |
| **CITY OF DALLAS, TEXAS, et al.,** § § § | |
| **Defendants.** § § § § | |

**THE HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

---

## I.     INTRODUCTION

Defendant The Housing Authority of the City of Dallas, Texas ("DHA") moves to dismiss all Counts of the *qui tam* Amended Complaint in this False Claims Act ("FCA") action brought by Relators Curtis Lockey and Craig MacKenzie ("Relators") pursuant to Fed. R. Civ. P. Rule 9(b), 12(b)(1) and 12(b)(6).

Relators filed their Complaint in this Court on February 22, 2011 and amended that Complaint ("Amended Complaint") on January 30, 2012 without ever serving its Original Complaint on Dallas and DHA.  Relators allege no relationship with either Dallas or DHA. Neither Relator alleges he was ever an employee of either defendant nor in an "insider" position where he was able receive private information about how DHA carries out its housing policies. Declaration of MaryAnn M. Russ, Ex. B, App'x at 383-396 (hereafter "Russ Declaration"). Relator Curtis Lockey does not even reside in Texas.  (Amd. Compl. ¶10)  As such, Relators are

not the type of plaintiff that the FCA contemplates and do not "fit the paradigm of the inside whistleblower." *United States ex rel. O'Keeffe v. Sverdup Corp.*, 131 F. Supp. 2d 87, 93 (D. Mass. 2001) (distinguishing between an "inside whistleblower" and "gadfly outsider").

Not only has DHA instituted internal mechanisms to ensure that it fulfils all of its obligations, but DHA has been under the watchful eye of this Court since 1985 to ensure DHA satisfies its obligations under the programs it administers and to affirmatively further fair housing. (Russ Declaration, App'x B at 383). DHA's operations have also been favorably reviewed by the Office of Fair Housing and Equal Opportunity.

The United States Government ("Government") reviewed Relators' Complaint, pursuant to 31 U.S.C. § 3730(b)(2)-(4) for approximately nine months. The Government declined to intervene.

Even though Relators have no relationship to DHA, and DHA has operated its housing programs under the direction of this Court, Relators seek to recover treble damages, with their own personal share ranging between $620 Million and $1.24 Billion. (Amd. Compl. ¶¶ 152-154; Prayer for Relief).

This Court lacks jurisdiction over this matter since Relators' claims in its Amended Complaint are based upon public disclosures and the Relators were not the original source of those disclosures as they lack independent and direct knowledge of the allegations. Moreover, Relators have failed to allege with the required specificity to meet the Rule 9(b) pleading requirements and their claim should be dismissed.

## II.   ARGUMENT

**A.   The Court should dismiss Relators' Amended Complaint since its allegations are based upon public disclosures and the Relators are not the original source**

To succeed on a FCA claim, a relator must clear the jurisdictional, public disclosure bar. 31 U.S.C. § 3730(e)(4); *United States ex. Rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 53 (1st Cir. 2009). "That bar is designed to foreclose *qui tam* actions in which a relator, instead of plowing new ground, attempts to free-ride by merely repastinating previously disclosed badges of fraud." *Ondis*, 587 F.3d at 53. That is, ". . . the bar seeks to prevent 'parasitic suits.'" *Id.*

Fifth Circuit courts consider three questions when making a jurisdictional inquiry under the FCA. *United States, ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004). "(1) [W]hether there has been a 'public disclosure' of allegations or transactions, (2) whether the *qui tam* action is based upon such publicly disclosed allegations, and (3) if so, whether the relator is the original source of the information." *Id.*

The burden of establishing jurisdiction is on the party seeking to invoke federal jurisdiction. *Santos v. Reno*, 228 F.3d 591, 594 (5th Cir. 2000). The burden to show that a relator is not barred by the public disclosure-original source rule continues throughout all steps of the litigation. *Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1406-07 (2007). "In regard to the first two steps of the public disclosure bar under the FCA, however, that rule would require the relator to prove a negative: that there are no public disclosures of allegations or transactions upon which his action is based." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011). Since requiring a party to prove a negative presents a difficulty, defendants may identify documents that show the allegations are in the public domain. *See id.* The relator then has the burden to demonstrate that those documents could not "plausibly

contain allegations or transactions upon which the relator's action is based" and that jurisdiction exists. *See id.*

Here, the FCA unequivocally precludes Relators' parasitic claims. The Relators fail to allege facts in their Amended Complaint to establish subject matter jurisdiction in this Court under the public disclosure-original source rule. All of the allegations in their Amended Complaint are regurgitations of HUD published guidelines, census data, publicly disclosed reports, information disclosed by news media, and other information disclosed in statutory sources. Relators lack direct and independent knowledge of the allegations against DHA and cannot sustain a FCA claim in this Court.

1.      **The allegations and transactions contained in Relators' Amended Complaint were publicly disclosed prior to Relators' filing of their Amended Complaint**

The FCA defines public disclosure as a "disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigations, or from the news media." 31 U.S.C. § 3730(e)(4)(A). The Fifth Circuit considers allegations publicly disclosed when: (1) the basis of the allegation is contained in government audits and investigations; (2) allegations are based on information procured through the Freedom of Information Act (FOIA) or Texas Public Information Act (TPIA); (3) allegations were disclosed to the government, even by the Relator, prior to the filing of the Amended Complaint pursuant to Section 3730(b)(2); (4) allegations were disclosed in civil or criminal litigation where the United States was a party; or (5) allegations were disclosed by the news media.[1] *Reagan*, 384 F.3d at 174-75; *United States ex*

---

[1] These examples are not exhaustive of what the Fifth Circuit considers a public disclosure, but are merely illustrative examples of how the allegations in Relators' Amended Complaint are barred as public disclosures.

*rel. Farmer v. City of Houston*, Civ. Act. No. H-03-3713, 2005 U.S. Dist. LEXIS 18387, *1, *10-11 (S.D. Tex. May 5, 2005) (See Ex. A-17, App'x at 371-377 ).

The actual allegation of fraud need not be disclosed to trigger the jurisdictional bar. If the allegation of fraud rests on the interpretation of publicly disclosed facts, then the disclosure element has been satisfied. *See United States ex rel. O'Keeffe v. Sverdup Corp.*, 131 F. Supp. 2d 87, 94 (D. Mass. 2001). When disclosures reveal both the misrepresented state of facts and the true state of facts, so that an inference of fraud may be drawn, then a public disclosure has occurred. *See Ondis*, 587 F.3d at 54; *Reagan* 384 F.3d at 174-75. Likewise, a "[p]ublic disclosure need not name particular defendants so long as they alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation." *McKesson Corp.*, 649 F.3d at 329.

Federal courts apply an "X plus Y" analysis to determine if an allegation of fraud has been publicly disclosed. *United States ex rel. Springfield Terminal Rwy Co. v. Quinn*, 14 F.3d 645, 654-55 (D.C. Cir. 1994); *see also O'Keeffe*, 131 F. Supp. 2d at 94. Under the FCA,

> If $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed. Under the framework, X stands for the allegedly false set of facts set forth in the claim at issue, and Y is a proxy for the allegedly true set of facts. Thus, when X [the false set of facts] and Y [the true set of fats] surface publicly . . . there is little need for *qui tam* actions, and the claim will be barred unless the relator qualifies as an original source.

*Id.* (internal quotations and citations omitted). Here, both the submissions to HUD ("X" in the formula above), and the events that allegedly show the submissions to be false ("Y"), were public disclosures before Relators filed their Amended Complaint.

In *Ondis*, the First Circuit affirmed a dismissal of a FCA claim brought by a developer against the city for defrauding HUD. *Ondis*, 587 F.3d at 52. There, the relator alleged the city had defrauded HUD by certifying that the city promoted affordable housing through its Section 8 voucher program, but instead exercised a "true policy" of eliminating affordable housing from the city. *Id.* Since the claim was premised upon false certifications to HUD, and the only way that relator could know of the false certifications was through a FOIA request, the court dismissed the claim since the response to the FOIA request was a public disclosure for purposes of Section 3730(e)(4)(A). *Id.* at 55-56.

The Fifth Circuit addressed the public disclosure bar in a FCA claim involving false reporting and false certifications to Medicare. *Reagan*, 384 F. 3d at 172. There, the relator was the former executive director of University Park Hospital ("UPH"). *Id.* The relator alleged that she became suspicious that UPH had been submitting false reports to receive Medicare funding. *Id.* The district court dismissed her claim, determining her allegations were based on public disclosures. *Id.* Specifically, the court determined that the relator's allegations were publicly disclosed in a state court lawsuit, through Blue Cross and Blue Shield of Texas ("BCBS") and the United States Department of Health and Human Services ("HHS") investigation, and in documents obtained by relator's FOIA request. *Id.* at 174.

In the instant case, there is no question that Relators' claims are based upon public disclosures. Relators assert defendants fail to meet their affirmatively furthering fair housing ("AFFH") obligation because, in their opinion, there are not enough housing units North of Interstate-30, and DHA failed to document in its Public Housing Plan ("PHP") how impediments such as the racial identities of DHA's clients and the locations of the housing units and Section 8 Housing Choice Vouchers ("Section 8 Vouchers") impedes AFFH. Relators reach their

conclusion by regurgitating the HUD Guide, a document not only in the Government's possession, but actually created by the Government.   Relators then cite to census data and demographic data about DHA's clients and locations of DHA housing units, all information that has been publicly disclosed.   DHA's Annual Plan and Updated Five Year Plan in the Government's possession and were publicly available through publication on DHA's website. Based solely on a review of this public data, Realtors conclude that DHA submitted false certifications because its PHPs do not identify the location of public housing units and Section 8 Housing Choice Vouchers as an impediment in its PHP.   The allegations in Relators' Amended Complaint were in the public domain, were public disclosures, and the Government was aware of the "true facts" as alleged by Relators.   Therefore, Realtors' claims are barred by the public disclosure bar.

> ### *a.   Concentration of housing units in minority areas in the City of Dallas ("The North-South Gap")*

Relators' Amended Complaint asserts that defendants failed to meet their AFFH obligation because defendants funded affordable housing in areas that were predominately populated by minorities. (See Amd. Compl. ¶¶ 122-127, 130).   These allegations are based on public disclosures, mainly Government reports including census data reported by the United States Census Bureau, newspaper articles that discuss the same subject, and civil court pleadings.

### *Disclosed in Government Reports*

Realtors site to the *Westchester County* case throughout its Amended Complaint, but even the Relators in that case were not so bold as to assert a claim based mostly on regurgitation of demographic data available in U.S. Census Bureau Reports. (Ex. A-1, App'x at 6-41).   In *Westchester*, relator categorized census data and documents received through public records and

obtained by general research separately than the set of facts learned in private, and did not seek to defend census data reports from the public disclosure bar.

*Disclosed in Newspapers*

Second, news sources have already reported on the divide of funding between the Northern and Southern Sectors.  For example, in an August 2, 2010 editorial, the Dallas Morning News reported that a "newly released report reveals" that the "southern half of the city still has the lion's share of total subsidized housing and more than its fair share of DHA-owned units." (Ex. A-2, App'x at 42-43).  As part of its editorial series "Bridging Dallas' North-South Gap," the newspaper reported on the split in bond funding which the northern and southern parts of the city received and listed the number of permanent supportive housing units located in northern Dallas districts and southern Dallas districts.  *Id.*

The Dallas Observer has also extensively covered the location of subsidized housing in Dallas.  As part of his July 30, 2010 article, reporter Robert Wilonsky provided a PowerPoint presentation, which included data for all of the locations of DHA Owned Housing Units, Low Income Housing Tax Credit ("LIHTC") units, Section 8 Housing Choice Voucher locations, and planned project based assistance PSH units.  (Ex. A-3, App'x at 44-45).  It also provided the total number of permanent supportive housing units and privately developed LIHTC units not subsidized by DHA vouchers.  The article sorted this data by City Council district.

On October 4, 2010, Patrick Michels for the Dallas Observer published comments from DHA's president MaryAnn Russ where she discussed at City Hall the distribution of public housing.  (Ex. A-4, App'x at 46).  She noted that West Dallas did have a lot of the city's subsidized housing, "It's less than it used to be, but it's still a high concentration."

One of the reasons for the divide in housing that DHA has acknowledged and considers in its housing plan is the "NIMBY" affect in North Texas. For instance, in Felicia McCarthy's February 24, 2000 article for the Dallas Observer titled "Poor vs. poorer" it was highlighted how North Dallas communities protest, and even sue, when DHA attempts to place public housing in their communities. (Ex. A-5, App'x at 47-49).

### *Disclosed in Court Proceedings*

Third, the composition of census tracts and the corresponding locations of affordable housing units in Dallas has long been at issue in the public eye and discussed at length in multiple federal proceedings. In *Walker v. HUD*, this Court already sifted through this public data in its in-depth analysis of racial segregation in Dallas.

This Court is also aware of the distribution of Section 8 Vouchers in the County of Dallas based on the recent litigation brought by the Inclusive Communities Project, Inc. ("ICP"). In two different claims, ICP sued HUD and the Texas Department of Housing and Community Affairs ("TDHCA") over the availability and distribution of Section 8 housing. (Ex. A-6, App'x at 50-75); (Ex. A-7, App'x at 76-133); (Ex. A-8, App'x 134-163). At Appendix page 58, ICP cited DHA's March 2006 Section 8 occupancy report that gave statistics for where Section 8 Voucher households were located based off of the racial demographic of the census tract. (Ex. A-6, App'x at 58). In that lawsuit, ICP brought its claim against TDHCA for making "discriminatory decisions that have disproportionately denied tax credits for units in predominantly White areas." *Id.* ICP represented DHA Section 8 Voucher holders. Thus, all allegations regarding impediments caused by the location of Section 8 Housing (e.g. ¶¶ 125, 129, 130) are subject to public disclosures and have been in the public domain at least as early as July 17, 2008.

Likewise, ICP sued HUD seeking equitable relief compelling HUD to "consider and further fair housing opportunities for minority participants in the Section 8 program . . ." (App'x at 166). This Court's proceedings fully apprised the Government of the distribution of Section 8 vouchers in Dallas, the availability of those vouchers in predominantly White rental housing markets, and the distribution of the Section 8 vouchers impact on AFFH. (Ex. A-8, App'x at 173); (Ex. A-9, App'x at 164-179).

Finally, since 2004, DHA has been under Court Order in *Walker* to affirmatively further fair housing by, among other things, using 3,205 settlement vouchers in eligible census tracts that met racial and poverty guidelines, assist class members in finding housing in eligible census tracts, providing funding to assist with same, and providing monthly reports to plaintiffs' counsel on the location of units where settlement vouchers are used. (Ex. A-18, App'x at 378-382).

> **b.** **_Waitlists for DHA housing units and closing of Section 8 Housing Choice Voucher Waitlist_**

DHA's waitlists for Section 8 and Public housing has also been publicly disclosed as an unmet need. The PowerPoint presentation, included in Wilonsky's July 30, 2010 Dallas Observer article, highlights Dallas' "Unmet Need and Scarcity" including that DHA currently had more than 27,000 households on waiting lists. (*See* Ex. A-3, App'x at 45-6).

> **c.** **_Revitalization and New Construction at Turner Courts and Frazier Courts_**

In Paragraphs 127 through 128, Relators criticize DHA for revitalizing Turner Courts and Frazier Courts suggesting that it was improper and fraudulent for DHA to invest in these distressed properties rather than choose to demolish and build anew its "Little Mexico" property. (Amd. Compl. ¶¶ 127, 128). Not only is Relators' argument misguided, these allegations are also based upon public disclosures.

The revitalization of Turner Courts and Frazier Courts was the subject of multiple news reports and was therefore publicly disclosed. For instance, Robert Wilonsky, wrote an article entitled "Change is Gonna Come" where he highlighted the "real progress" in the Frazier Courts development that was funded by DHA and private developers. (Ex. A-10, App'x at 180-189). The revitalization project at Turner Courts and its HUD funding was also publicly disclosed. (Ex. A-11, App'x at 190); (Ex. A-12, App'x at 191).

Relators' allegations about Little Mexico were also publicly disclosed. The value of the Little Mexico was the subject of multiple newspaper articles in 2006 when there was a dispute over selling Little Mexico, a valuable DHA property. (Ex. A-13, App'x at 192-194); (Ex. A-14, App'x at 195-196). Those articles, and the general public discussion, identified Little Mexico as a valued property in DHA's portfolio.

### d.    HUD Guidelines

The majority of Relators' Amended Complaint consists of references to the HUD, Fair Housing Planning Guide ("HUD Guide") (Ex. A-15, App'x at 197-366) (See Amd. Compl. ¶¶ 45-50, 54-58, 60-61, 106-107). The HUD Guide is published by the Government and clearly in its possession. As well, the relevant portions of the HUD Guide are referenced throughout the *Westchester* court documents and are public disclosures. (Ex. A-15, App'x at 197-366).

### e.    Allegations of False Claims

The allegations of submission of false claims was publicly disclosed in 2010 when Jim Schutze covered the topic in the Dallas Observer. In Jim Schutze's June 10, 2010 article "City Hall Had Better Look Over Its Shoulder Because HUD is Ready to Kick Some Fair-Housing Butt" Schutze criticizes Dallas City Hall for potentially submitting false claims to HUD. (Ex. A-

16, App'x at 367-370). Schutze states that he is "trying to figure out whether Dallas City Hall has scammed [HUD] out of hundreds of millions of dollars over the years by submitting what the law calls 'false claims.'" *Id.* He points out that the heart of the controversy is that Dallas has submitted AFFH certifications to obtain grant funding. *Id.* Further, the article discusses the analysis of impediments requirement and insinuates that the defendants have failed to meet that requirement. *Id.* "For example, the city has to certify that it has studied all of the things that could stand in the way of the creation of fair and affordable housing and that it has developed strategies for getting past those hurdles." *Id.*

Even if the Relators supplied the information to Schutze for his article, this article still constitutes a public disclosure. The Fifth Circuit recognizes that disclosure by the relator, prior to filing a suit, still constitutes a public disclosure. *Reagan*, 384 F.3d at 175. The *Reagan* court only allowed those disclosures that were filed as part of the initial Amended Complaint and in compliance with 31 U.S.C. § 3730(b)(2) to be excluded from application of the public disclosure rule. *Id.* Indeed, the investigations that the *Reagan* relator reported to the government prior to filing her FCA Amended Complaint were considered public disclosures for purposes of the jurisdictional bar. *Id.*

### f.      FOIA Request

Finally, any of the allegations in Relators' Amended Complaint which are based on responses to a public information request are also barred by the public disclosure rule. Treating responses to an FOIA request as a report for purposes of Section 3730(e)(4)(A) is the majority rule. *Odnis*, 587 F.3d at 56-57. The Fifth Circuit adopted that majority rule in *Reagan*. *Reagan*, 384 F.3d at 175. The Court should continue to apply this rule in the instant case.

2.    **The allegations in the Amended Complaint are "based upon" public disclosures**

Relators' allegations in their Amended Complaint are based upon the public disclosures discussed above.  An Amended Complaint is based upon public disclosures when the supporting allegations are similar to or the same as those that have been publicly disclosed regardless of whether the relator obtained its information from that source.  *See Ondis*, 587 F.3d at 57.  An FCA *qui tam* action even partly based upon public allegations or transactions is nonetheless "based upon" such allegations or transactions.  *Reagan*, 384 F.3d at 176 (quoting *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992)).

In *Ondis*, the relator insisted that his *qui tam* claim was based upon his independent investigation of the claim and a representation made to him by the mayor about the city's true affordable housing policy.  *Ondis*, 587 F.3d at 58.  The allegations in his Complaint tracked disclosures in HUD's FOIA response.  *Id.*  Even though the relator asserted that he became aware of the information through his own investigation, the fact that the public disclosures were similar to his allegations satisfied the "based upon" test under the majority rule.  *Id.*

Here, Relators' claims are certainly based upon, in a significant part, public disclosures including the numerous newspaper articles, court documents, federal reports, and other disclosures discussed above.  Even if Relators assert that their knowledge was independent of these public disclosures, the similarities of the information contained within the public disclosures and the allegations of Relators' Amended Complaint are significant.  Thus, Relators' Amended Complaint was "based upon" the public disclosures discussed above.

### 3.    The Original Source Exception does not apply

The Relators are not original sources under the FCA.  An original source is one who "has direct and independent knowledge of the information on which the allegations are based."  31 U.S.C. § 3730(e)(4)(B).  Relators must prove that they have both direct <u>and</u> independent knowledge of the allegations in their Amended Complaint.  *See Ondis*, 587 F.3d at 58-59.

### a.    *Relators lack direct knowledge of the allegations in their Amended Complaint*

The Fifth Circuit has adopted the plain meaning of the term "direct" which "requires 'knowledge derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others.'"  *Reagan*, 384 F.3d at 177(citing Webster's New International Dictionary 650 (3d ed. 1961)).  "Knowledge that is based on research into public records, review of publicly disclosed materials, or some combination of these techniques is not direct."  *Ondis*, 587 F.3d at 59 (citing *Reagan*, 384 F.3d at 178-79).

Here, Relators' claims are based just on that – knowledge from public records and review of publicly disclosed materials.  Each of its allegations are basically a recitation of the HUD Guidelines, census tract data, information covered in news articles, records from FOIA requests, civil court pleadings, and reports that the defendants publicly published.  Courts do not consider Relators to have direct knowledge when their allegations are merely a patchwork of previously disclosed information, available to anyone with the internet or the ability to attend public meetings and request public records.

The only allegation in Relators' entire Amended Complaint that adds anything original to the information that was contained in public records and public disclosures was a statement from an unnamed "Agent or employee[] of the City"  where that unnamed person claimed that "low

income housing is not a part of the vision for Downtown Dallas . . ."  (Amd. Compl. ¶ 104).

Relators do not contend that this statement was made by a DHA official, nor do Relators recite

any specifics of the statement.   Moreover, the relator in *Ondis* raised similar allegations about

statements made by the mayor, and the First Circuit still found that he lacked direct knowledge

of the allegations in his Complaint.   *Ondis*, 587 F. 3d at 52, 59.   Thus, Relators are not the

original source since they lack direct knowledge of the allegations in their Amended Complaint.

> ### *b.*     *Relators lack independent knowledge of the allegations in their Amended Complaint*

The Relators lack independent knowledge of the allegations in their Amended Complaint.

"[A] relator whose knowledge is dependent upon the public disclosure of allegedly fraudulent

transactions cannot be said to have independent knowledge of the fraud."  *Odnis*, 587 F.3d at 59.

"If a relator merely uses his or her unique expertise or training to conclude that the material

elements already in the public domain constitute a false claim, then a *qui tam* action cannot

proceed."  *Id.* at 59 (quoting *United States ex rel. Findley v. FPC-Boron Employees*, 105, F.3d

675, 688 (D.C. Cir. 1997)).   That is, "[e]xpertise that enables a relator to understand the

significance of publicly disclosed information, without more, is insufficient to qualify him as an

original source."  *Id.*

Here, Relators' allegations that the defendants had submitted false claims or certifications

to the government rest solely on public disclosures and reports already in the possession of the

government.    Relators provide no support in their Amended Complaint that they have

independent knowledge of the allegations in their Amended Complaint.   Instead, their Amended

Complaint is replete with instances where it is clear that the Relators lack direct and independent

knowledge of the allegations.   For example, Relators do not indicate knowledge of who from

DHA submitted a certification to HUD or when such certification was submitted.  The Relators fail to satisfy the original source requirement and therefore, because their allegations are based upon public disclosures, lack jurisdiction in this Court.  The Court should dismiss Relators' entire Amended Complaint since each of the four counts is based on an alleged FCA claim and each claim is barred by the public disclosure bar.

**B.     The Court should dismiss all claims against DHA because the Amended Complaint lacks the specificity required by Rule 9(b) under FCA**

Relators' Amended Complaint has not met the Rule 9(b) specificity requirements and should be dismissed.  The Rule 9(b) heightened pleading requirement applies to FCA claims. *Bazan v. White*, 275 F. Appx. 312, 312 (5th Cir. 2008).  Under Rule 9(b), "a [relator] must include the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *United States ex rel. Hebert v. Dizney*, 295 Fed. Appx. 717, 721 (5th Cir. 2008) (quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir. 1999)). This requirement is known as the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997).  Since, each of the four counts are FCA claims, each of the four counts must meet the heightened Rule 9(b) pleading requirement. *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004); *Thompson*, 125 F.3d at 903.  Thus, Rule 9(b) pleading requirements apply to all four counts in Relators' Amended Complaint.

Rule 9(b) requirements of specificity are substantive and material pleading requirements, and a pleading which fails to comply with those requirements fails to state a claim upon which relief can be granted under Rule 12(b)(6).  *See United States ex rel. Russell v. Epic Health Care*

*Mgmt Group,* 193 F.3d 304, 308 (5th Cir. 1999) ("A dismissal for failure to comply with Rule 9(b) is a dismissal on the pleadings for failure to state a claim."); *Thompson*, 125 F.3d at 901.

Given the unique purpose of the FCA, courts strictly enforce the Rule 9(b) pleading requirements and refuse to allow a relator to proceed on "general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery." *Karvelas*, 360 F.3d at 231.

In *Karvelas*, a relator's FCA claims were dismissed for failure to state a claim because his claims did not meet the particularity pleading requirements under Rule 9(b).  *Id.* at 223. There, an employee pled certain fraudulent schemes that the defendants employed to defraud the government but failed to identify specific "dates or content of any particular false or fraudulent claim," failed to provide "identification numbers or amounts charged," failed to identify "the individuals involved in the improper billing," or "allege with particularity any certification of compliance with federal regulations . . ." *Id.* at 233.  Therefore, the court upheld the dismissal of relator's claim for failing to state a claim.

Here, Relators' Amended Complaint is flawed in many ways. Significantly, in support of their allegations, Relators failed to identify who submitted the certification, when the certification was submitted, how much money was fraudulently received from a submission, and how any alleged claim made by DHA was false.  The pleading merely identifies that a procedure exists where DHA could potentially submit a false claim to the government, but fails to identify any of the Rule 9(b) pleading requirements. Courts have routinely dismissed claims for alleging only that a scheme exists under which someone could submit a false claim, but without providing the specifics of "who, what, when, where and how" a false claim was submitted.  *See Karvelas*,

360 F.3d at 231.   Relators have failed to answer "who, what, when, where, and how of the alleged fraud" and all of their fraud-based claims against DHA should be dismissed.

## C.       Limitations bars much of Relators' Claims

The False Claim Act has a six year statute of limitations. 31 U.S.C. § 3731(b). Since the United States elected not to intervene, Relators are not entitled to the tolling available to the United States and are bound by the six year statute of limitations.  *See U.S. ex rel. King v. Solvay S.A.*, No. H-06-2662, 2011 WL 4834030, *52-56 (S.D. Tex. Oct. 12, 2011).

Relators seek to hold the DHA liable for its certifications to AFFH based on alleged actions that are time-barred. Any claim related to a certification made six years prior to the filing of this lawsuit and any claim based on events occurring prior to any certification after February 22, 2005 is time barred and should be dismissed.

## D.       DHA is not liable for the City of Dallas

Relators allege that City and DHA acted in concert and each Defendant is liable for the full amount of damages and penalties. (Am. Comp., ¶ 22). Relators have failed to allege any elements necessary for a conspiracy claim and also have failed to alleged with particularity any conspiracy, agreement or overt acts.   DHA is a separate entity from the City and is not responsible for the actions of the City.  (Russ Declaration, Ex. B, App'x at 384-385)   Any allegation of conspiracy, joint and several liability, acting in concert, agency, or that DHA is liable for any claimed damages caused by the City should be dismissed.  Alternatively, whatever the basis for liability may be, it has not been alleged with any particularity.

### III.    CONCLUSION

For these reasons, Defendant DHA asks the Court to grant Defendant's motion to dismiss

Relators' suit for lack of subject-matter jurisdiction.  Alternatively, since Relators failed to plead

their FCA claims with the particularity as required by Rule 9(b), the Court should dismiss

Relators' suit.

Respectfully submitted,


/s Gerald Bright (by permission)
Gerald Bright
Walker Bright PC
100 North Central Expressway, Suite 800
Richardson, Texas  75080
(972) 744-0192
(972) 744-0067 (Facsimile)


/s Earsa R. Jackson
Katie Anderson
State Bar No. 00789631
Earsa R. Jackson
State Bar No. 24007428
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
214.651.4300
214.651.4330 (Facsimile)

**ATTORNEYS FOR THE HOUSING
AUTHORITY OF THE CITY OF DALLAS,
TEXAS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that on the 19th day of March, 2012, a true and correct copy of the foregoing was forwarded to all known counsel via the U.S. District Court, Northern District of Texas electronic case files system in compliance with the Federal Rules of Civil Procedure.

/s Earsa R. Jackson
_____

Earsa R. Jackson