IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA WALKER, et al., | § | CIVIL ACTION NO. |
| | § | |
| vs. | § | |
| | § | 3:85-CV-1210-R |
| U.S. DEPARTMENT OF | § | |
| HOUSING AND URBAN | § | |
| DEVELOPMENT, et al. | § | CLASS ACTION |

ORDER APPROVING AGREED
SETTLEMENT VOUCHER IMPLEMENTATION PLAN AND BUDGET - 2007

The Court has reviewed the Agreed Settlement Voucher Implementation Plan and Budget - 2007 submitted by the parties on June 29, 2007. The Court has noted the comment in the filing that Plaintiffs do not agree to the reporting requirement in Section X based on plaintiffs' assertion that the language contradicts the controlling language in the DHA Agreed Final Judgment, Section 8 and Section 19 and that Plaintiffs do not agree that the amounts in the "Sources" statement in the proposed DHA budget, exhibit 2 are accurate. However, the Court further takes note that Plaintiffs request the Court to approve the Plan.

It is therefore ordered, adjudged, and decreed that the Agreed Settlement Voucher Implementation Plan and Budget - 2007 submitted on June 29, 2007 is hereby approved.

Signed this 10th day of July, 2007.

_____
JERRY BUCHMEYER
SENIOR UNITED STATES DISTRICT JUDGE

EXHIBIT
B-6

Appendix 467

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 2 9 2007

CLERK, U.S. DISTRICT COURT
By _____ NB
Deputy

**DEBRA WALKER et al.**
     **Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT
OF HOUSING AND URBAN
DEVELOPMENT et al.,**
     **Defendants.**

**CIVIL ACTION NO.**

**3:85-CV-1210-R**

**CLASS ACTION**

### SUBMISSION OF AGREED SETTLEMENT
### VOUCHER IMPLEMENTATION PLAN AND BUDGET–2007

By Order dated May 17, 2007, the Court has ordered Plaintiffs' counsel and the

Dallas Housing Authority to submit a final agreed upon Settlement Voucher

Implementation Plan and Budget.  Attached as Exhibit A if the Agreed Settlement

Voucher Implementation Plan and Budget – 2007, with Exhibit 1 (Eligible Census

Tracks) and Exhibit 2 (Budget).  The parties request that the Court approve the Plan as

soon as possible to allow DHA to begin implementing the Plan for the benefit of the

Plaintiff class.

Plaintiffs do not agree to the reporting requirement in Section X based on

plaintiffs' assertion that the language contradicts the controlling language in the DHA

Agreed Final Judgment, Section 8 and Section 19. DHA disagrees with assertion.

Plaintiffs do not agree that the amounts in the "Sources" statement in the

proposed DHA budget, exhibit 2 are accurate.

Despite these disagreements, the parties ask the Court to approve the proposed

Plan and Budget for 2007.

Respectfully submitted,

*Katie Anderson*

**Robert H. Thomas**
State Bar No. 19867000
**Kevin J. Maguire**
State Bar No. 12827900
**Katie Anderson**
State Bar No. 00789631

**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, TX 75202-3794
(214) 651-4300
(214) 651-4330 Fax

**ATTORNEYS FOR DEFENDANT
THE HOUSING AUTHORITY FOR
THE CITY OF DALLAS**

*Michael M. Daniel*

**Michael M. Daniel**
State Bar No. 05360500
**Laura B. Beshara**
State Bar No. 02261750

**DANIEL & BESHARA, P.C.**
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 29th day of January, 2007, a copy of the foregoing Submission of Agreed Settlement Voucher Implementation Plan and Budget – 2007, with Exhibits was sent to counsel for Plaintiffs.

_Katie Anderson_

**KATIE ANDERSON**

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA WALKER et al. | ' | |
| Plaintiffs, | ' | |
| | ' | |
| v. | ' | CIVIL ACTION NO. |
| | ' | |
| UNITED STATES DEPARTMENT | ' | 3:85-CV-1210-R |
| OF HOUSING AND URBAN | ' | |
| DEVELOPMENT et al., | ' | CLASS ACTION |
| Defendants. | ' | |

## AGREED SETTLEMENT VOUCHER IMPLEMENTATION PLAN AND BUDGET–2007

Section I.     <u>Introduction</u>

The U.S. Department of Housing and Urban Development (HUD) has provided the Housing Authority of the City of Dallas, Texas (DHA) 3,205 vouchers pursuant to HUD's *Settlement Stipulation and Order* entered March 8, 2001 in the U.S. District Court, Northern District of Texas, Dallas Division ("*Settlement Stipulation*"). These vouchers will replace 3,205 public housing units DHA is required to develop in Predominantly White Areas as stipulated in the *Remedial Order Affecting DHA*, entered February 7, 1995.

This Settlement Voucher Implementation Plan (Plan) is created pursuant to the *Order Approving Plan for DHA's Implementation of HUD Settlement as DHA's Section 8 Substitution Plan*, entered April 26, 2001 (*Substitution Plan*). The *Substitution Plan* requires DHA to submit an annual Plan for implementing the *Substitution Plan*, together with a proposed budget. On February 1, 2007, the Court took evidence and heard oral argument concerning objections to *DHA's Amended Proposed Settlement Voucher Implementation Plan and Budget*. The Court ordered each party to submit proposed findings of fact and conclusions of law on the remaining contested issues. After careful consideration of all parties' submissions and oral argument, the Court issued Memorandum Opinion and Order on May 17, 2007.

The *Substitution Plan* requires DHA to inform, counsel, encourage, and assist class members to move to Predominantly White Areas, as defined in Section II of this Plan. The Settlement Voucher Program (Program) is available to class members to provide additional benefits not found in the Section 8 Housing Choice Voucher (HCV) Program. Class members that elect to take a Settlement Voucher are defined in this Plan as Settlement Voucher Program Participants (Participants).

The 3,205 Section 8 Housing Choice Vouchers are designated as Walker Settlement Vouchers and constitute a pool of Section 8 vouchers available to class members on DHA's HCV Program and Waiting List. These vouchers are subject to the regulations set forth for the Section 8 HCV

1

Program as outlined in 24 CFR, Part 982 and are administered pursuant to the terms and conditions set forth in this Plan.

Section II.   <u>Objective</u>

DHA administers the Program by assisting class members who participate in the Program in leasing housing of their choice in Predominantly White Areas and offers financial incentives to owners who make their rental properties in Predominantly White Areas available to Participants. A Predominantly White Area is defined as an area where either (a) a census tract that, according to the most recent decennial census, (i) has a black population at or below the average black population of the City of Dallas, (ii) has no public housing other than scattered site single family homes, and (iii) has a poverty rate at or below the average for the City of Dallas; or (b) a census tract that the Plaintiffs and DHA agree should be treated as a Predominantly White Area. DHA will use the data from the 2000 U.S. Census to determine Predominantly White Areas. DHA will use the listing of current Eligible Census Tracts attached as Exhibit 1.

Section III.   <u>Funding</u>

The funding committed for counseling services and financial assistance under HUD's *Settlement Stipulation* includes three pools of funds which equaled $9,650,000. DHA has used or will use all of these funds for the implementation of this Program.

    A.   Mobility Counseling Fund

    HUD made available $4.5 million of Mobility Counseling Funding to DHA to provide counseling to class members participating in the Program. DHA was granted access to $2,202,549 of its program reserves (Mobility Counseling Reserves) to fund this account and an additional $2,297,451 was provided by HUD to satisfy the total commitment of Mobility Counseling Funding. DHA has received $1,988,572 of Mobility Counseling Funds and $704,077 of Mobility Counseling Reserves, which have been used for Mobility Counseling. DHA currently has $1,807,351 remaining available under this funding allocation for mobility counseling. DHA shall use these funds for mobility counseling for the Program.

    B.   Regional Opportunity Counseling Funds

    HUD made available $1.945 million of Regional Opportunity Counseling Funds to DHA to provide mobility counseling required under this Program. DHA has received $778,000 and currently has $1,167,000 available under this funding allocation for mobility counseling. DHA has used or will use all of these funds solely for mobility counseling for members of the class in this case and in accordance with the terms of the *Settlement Stipulation. See Settlement Stipulation,* ¶ 8.

2

C.      Additional Administrative Fees

HUD agreed to provide a one-time payment of an additional $1,000 in administrative fees ("Extraordinary Fees") for each of the 3,205 vouchers provided for this Program. The funding is provided to pay per-unit bonuses to landlords with units in Predominantly White Areas and provide financial assistance to Participants for the payment of application fees. The funding may also be used to pay for mobility counseling. DHA has received $2,038,000 under this allocation and will request another $1,167,000 as leases are executed. DHA has expended but not received reimbursement for $167,000 for administrative fees. DHA has used or shall use all of the Additional Administrative Fees in the Program as follows: pay per-unit bonuses to landlords of units in a Predominantly White Area who agree to participate, for the first time, in the Program; payment of apartment lease application fees; and payment for security deposits, moving expenses, and utility expenses. *See Settlement Stipulation*, ¶ 9. DHA has requested written consent from HUD to allow use of these monies for additional purposes to serve the Plaintiff class, specifically to assist Participants overcome the Rent Burden created by reductions in HUD's Fair Market Rents.

D.      Expenditures for Incentives

To date DHA has spent $1,767,103 to provide incentives to landlords and Participants under this Program. DHA will allocate $1,437,897 to pay landlord incentives and assist Participants with security deposits, moving expenses, and utility deposits.

Section IV.   Issuance of Settlement Vouchers

The vouchers issued in this Program came in two allocations of funding. The first allocation of 2,105 vouchers was received by DHA in 2001. The second allocation of 1,100 vouchers was received by DHA in 2006. To date, DHA has leased 2,205 Settlement Vouchers under the terms and conditions of HUD's *Settlement Stipulation* and will lease the remaining 1,000 vouchers under the terms and conditions of this Plan. DHA shall begin processing class members for use of the remaining 1,000 vouchers as soon as possible but no later than 60 days after the date the Court approves this Agreed Settlement Voucher Implementation Plan and Budget.

A.      The Waiting List

DHA will issue 1,000 Settlement Vouchers to applicants on the HCV Waiting List. *The Substitution Plan* limits participation in the Program to African Americans and such eligibility shall be determined by the race of the Head of Household. DHA has one waiting list for the Section 8 HCV Program and all African Americans on this waiting list are eligible to participate in the Settlement Voucher Program.

B.      Selection from the Waiting List

3

**Appendix 474**

DHA screens all applicants for Settlement Voucher Program admission in accordance with its Section 8 HCV Administrative Plan (500-1) and selects eligible applicants for admission according to the date and time of their application.

C.     Orientation & Eligibility Briefing

Before the final allocation of vouchers is issued, class members will be identified from the Section 8 HCV Waiting List and informed in writing of the benefits and limitations of the Settlement Voucher Program.   Applicants interested in receiving additional information will be invited to attend an orientation and eligibility briefing, at which they will receive a Section 8 Program Selection Form.  Applicants attending the orientation will be briefed on the following:

1.     History of the Program

DHA will provide information on the history of public housing in Dallas as outlined in the third opinion of the North District Court, entered September 22, 1989.

2.     Purpose of the Program

DHA will provide information on the importance and purpose of the Program in providing desegregative housing opportunities to African American participants.

3.     Benefits of the Program

DHA will provide information on the benefits of the Settlement Voucher Program.  Such benefits include but are not limited to the:

     a.  opportunity to live in good quality, safe neighborhoods with access to good schools and employment prospects;
     b.  monetary assistance to defray the cost of application fees, security deposits, utility deposits and moving expenses;
     c.  higher payment standards to defray the cost of higher rents;
     d.  assistance and counseling in locating housing;
     e.  financial incentives to prospective landlords; and
     f.  post-move and follow-up services.

4.     Limitations of the Program

DHA will provide information on the limitations of Program.  Such limitations include but are not limited to the following conditions:

     a.  Settlement Vouchers must always used in Predominantly White Areas;

4

b. Participants must find housing in the Predominantly White Areas of Collin, Dallas, Denton, Ellis, Kaufman, Rockwall or Tarrant Counties;

c. Participants *will not* be able to use their vouchers to move outside of these areas under the portability feature of the HCV Program;

d. Landlords in Predominantly White Areas generally have more stringent screening criteria and may be unwilling to lease to anyone with a criminal background or poor credit and/or rental history;

e. Class members may encounter illegal discrimination in their search for housing.

Applicants electing not to participate in the Settlement Program will remain on the HCV Waiting List by application date and time. Applicants that lease in the Settlement Program will be removed from the HCV Waiting List.

D.    Briefing

DHA will brief Participants in small group settings and provide information regarding the Settlement Program, DHA policies and procedures, and other information pertinent to increasing the success in locating housing in Predominantly White Areas.

1.    Briefing Packet

DHA will provide each Participant the standard Section 8 Briefing Packet and the Participant may choose from 25 amenity packages that summarize the features of the following Predominantly White Areas within DHA's jurisdiction.

a.    Addison
b.    Balch Springs
c.    Carrollton
d.    Cedar Hill
e.    Coppell
f.    DeSoto
g.    Duncanville
h.    Farmers Branch
i.    Far North Dallas
j.    Garland
k.    Grand Prairie
l.    Grapevine
m.    Irving
n.    Lancaster
o.    Lewisville
p.    Mesquite
q.    Northeast Dallas
r.    Southwest Dallas
s.    Plano

5

t.  Richardson
u.  Rowlett
v.  Southeast Dallas
w.  Sachse
x   Seagoville
y.  Wylie

The amenity package includes information outlining the following:

a.  Employment opportunities
b.  Public safety
c.  Transportation
d.  Storage facilities
e.  Childcare
f.  School district evaluations
g.  Texas Assessment of Knowledge Skills (TAKS) results
h.  Adult education resources
i.  Resident employment and training
j.  Shopping
k.  Social services
l.  Health care
m.  Publicly reported environmental hazards
n.  Services and opportunities

2.  Search Period

Each Participant will be issued a "permit" which authorizes them to search for suitable housing in Predominantly White Areas for 30 days. During the search period DHA will offer assistance in the areas indicated below.

a.  One-on-one counseling to evaluate problems encountered during their initial housing search;
b.  Assistance in negotiating with creditors and former landlords;
c.  Individual tours to specific locations and assistance in completing applications for housing;
d.  Identification of units that fit specific needs of Participant's family; and
e.  Negotiations with potential landlords on behalf of the Participant

3.  Extensions

If Participants are unable to locate housing within the initial 30 days, DHA will provide the Participants with 30 additional days to search for housing upon request. Participants may receive a maximum of three 30-day extensions totaling 120 days to search for and locate housing in a Predominantly White Area.

6

4.  Expirations and Terminations

A Settlement Voucher Participant who is unable to obtain housing within 120 days or who voluntarily withdraws from the Settlement Voucher Program will have their Settlement Voucher Permit withdrawn and will retain his/her position on the HCV Waiting List by application date and time.

E.  Mobility

The Area of Operation for Landlord recruitment and mobility services includes the City of Dallas, Dallas County, the City of Plano, and the City of Red Oak. However, nothing in this Plan precludes DHA from making an effort to de-concentrate poverty by promoting, encouraging, and providing housing opportunities in Predominantly White Areas within Collin, Denton, Ellis, Kaufman, Rockwall and Tarrant counties. The Settlement Voucher may be used to lease units in eligible census tracts located in the seven counties of Collin Dallas, Denton, Ellis, Kaufman, Rockwall and Tarrant. Participants who locate housing outside of DHA's Area of Operation may be allowed to use the portability feature of the Voucher, provided the receiving housing authority agrees to administer the voucher with a Payment Standard up to 125% of the current Fair Market Rent (FMR) and also agrees not to absorb the Voucher. Except as otherwise provided herein, the mobility counseling services and financial incentives offered by this Plan (application fee assistance, security deposit assistance, child care, credit counseling, fair housing education and assistance, and moving expenses) will be administered by DHA for the final allocation of Settlement Voucher Participants.

F.  Payment Standards

HUD authorized DHA to establish a Payment Standard up to 125% of the current FMR for the Program. DHA has established a payment standard of 125% of the current FMR of the Program. HUD authorized the applicable higher payment standard amount to remain in effect for any Settlement Voucher held by any class member provided the voucher is used in a Predominantly White Area. This payment standard is applicable for the initial move and subsequent relocation of the Participants provided they remain in a Predominantly White Area. Participants leasing outside of a Predominantly White Area will permanently lose the benefits of their enhanced vouchers. *See Settlement Stipulation*, ¶ 6.

Section V.  <u>Landlord Outreach and Recruitment</u>

DHA will provide an extensive program of outreach to recruit landlords with units in Predominantly White Areas in DHA's Area of Operation. *See Substitution Plan*, ¶ 9(c).

A.  Landlord Outreach

7

DHA will conduct outreach to landlords with properties in Predominantly White Areas of DHA's Area of Operation and provide the landlords with information about the HCV Program and DHA's Settlement Program.

**B.      Bonus Incentive Payments**

DHA will use its Extraordinary Fees outlined in Section III, C. of this Plan to provide per-unit bonuses to landlords who agree to make their unit(s) available in this Program. Such incentives will be provided until Extraordinary Fees are exhausted. *See Substitution Plan*, ¶ 10(c).

**1.      New Units**

DHA will pay bonus incentive payments to owners with new properties in Predominantly White Areas. Bonus payments are equal to one-half of one month's rent and are paid within 30 days of execution of the HAP contract.

**2.      Rent Burden**

DHA may pay bonus incentive payments up to $1,000 to landlords to counteract the impact of reduced Fair Market Rents. Such bonus payments will be a one time payment in an amount sufficient to reduce the gross rent for the unit to an amount less than the payment standard.

**Section VI.     Mobility Services to Participants**

DHA will offer mobility counseling and services designed to address the barriers that class members encounter when searching for housing in Predominantly White Areas. Vouchers are issued in 30-day increments to ensure consistent contact between the DHA counselor and Participant. While the Participant is ultimately responsible for finding housing under this Program, DHA will make reasonable efforts to find housing for every Participant issued a voucher under this program.

**A.      Transportation**

Transportation will be encouraged and provided for visits to available units in Predominantly White Areas within DHA's Area of Operation and to sign rental applications and lease forms. *See Substitution Plan*, ¶ 9 (f).

**B.      Application Fee Assistance**

DHA will provide assistance with completing rental applications forms and other forms necessary to lease units. DHA will make assistance available to pay rental housing application fees for a Participant searching for housing in Predominantly White Areas. Application fee assistance will be limited to $100 in the aggregate for any one Participant. Payment of the application fee assistance is limited to available funding

8

**Appendix 479**

provided by Extraordinary Fees and will be made directly to the owner or reimbursed to the Participant, at the option of the Participant. *See Substitution Plan,* ¶ 9(b).

C.    Security Deposit Assistance

Upon request and execution of the housing assistance payment contract, DHA will provide assistance to Participants to pay security deposits. The amount of this assistance will be based upon the size of the unit shown on the Settlement Voucher. The payment will be equal to the lesser of the deposit charged by the owner or the following:

1.    One Bedroom: up to $200
2.    Two Bedrooms: up to $250
3.    Three Bedrooms: up to $500
4.    Four Bedrooms: up to $600

DHA will not pay Security Deposit Assistance on behalf of a Participant for amounts that are higher than what is charged to unassisted tenants in the private rental market. Payment for security deposit assistance will be made directly to the owner or reimbursed to the Participant, at the option of the Participant.

The owner may deduct from the Security Deposit Assistance, the amount for which the Participant is legally liable under the lease and in accordance with the Texas Property Code, Section 92.104. Upon relocation, the owner is required to provide an itemized statement to the Participant setting out the cost of repairs, if any, and an explanation of all amounts deducted from the security deposit. The refund of the Security Deposit Assistance will be made directly to the Participant who will not be eligible to receive additional Security Deposit Assistance. *See Substitution Plan,* ¶ 9(b).

Financial assistance for security deposits is limited to available funding provided through Extraordinary Fees.

D.    Child Supervision

Supervision will be provided in the DHA playroom for Participants who are touring properties and conducting business in DHA's Administrative Offices during regular business hours and one Saturday per month. The playroom is available for "potty-trained" children over two years of age. *See Substitution Plan,* ¶ 9 (f).

E.    Housing Referrals

1.    DHA will make available to Participants a list of property owners/agents who represent and/or own properties in Predominantly White Areas. DHA's obligation to conduct owner outreach is limited to owners located in DHA's Area of Operation.

9

2.      DHA will make available to Participants a list of properties in Predominantly White Areas that are known to be available for lease. DHA's obligation to conduct outreach for properties is limited to properties located in DHA's Area of Operation.

3.      DHA will provide Participants with referrals to specific landlords known to have properties in Predominantly White Areas. DHA's obligation to conduct outreach for specific landlords is restricted to landlords in DHA's Area of Operation.

*See Substitution Plan,* ¶ 9(d).

F.      Credit Counseling

Landlord with units in Predominantly White Areas may be reluctant to lease to Participants with poor credit or rental history. DHA will work with the Participant to identify and resolve derogatory credit and/or rental history that could impact the Participants ability to find housing using the Settlement Voucher. Serious credit or rental issues may be impossible to resolve during the term of the permit, and applicants with serious credit and/or rental issues will be identified during the orientation. Such applicants will be encouraged to wait for a HCV; however the ultimate decision will rest with the potential Participant. *See Substitution Plan,* ¶ 10(b).

G.      Fair Housing

DHA will cooperate with public and private fair housing organizations in combating illegal discrimination against class members participating in the Program. Participants will be provided with information to assist them in recognizing housing discrimination in their search for housing such as refusal to rent to families with children, unreasonable credit or rental history requirements, high income requirements, unreasonable security deposit requirements, and the refusal to accept Section 8. DHA will assist Participants in the filing of fair housing complaints with HUD and the City of Dallas Fair Housing Office if a Participant believes he or she has been subjected to housing discrimination in violation of Title VII of the Fair Housing Act. *See Substitution Plan,* ¶ 9(g).

H.      Identification of Rental Units

DHA will provide relevant neighborhood information for any areas of interest within DHA's Area of Operation to class members in the Program. *See Substitution Plan,* ¶ 9(e).

DHA will assist in negotiations with landlords on behalf of Participants. DHA will negotiate with landlords for a specific, appropriate unit for Participants searching for housing for longer than 60 days. DHA shall consider the preference and needs of the Participant's family when identifying specific units for making a housing referral. *See Substitution Plan,* ¶ 10(a).

10

I.      Moving Expenses

Upon request, DHA will provide Moving Expense assistance of $300 per family to Participants leasing housing in Predominantly White Areas. Financial assistance for security deposits is limited to available funding provided through Extraordinary Fees.

Section VII.   Leasing Activity

A.      Initial Leasing

Participants are provided a temporary permit which authorizes them to search for housing. When a Participant locates housing in a predominantly White Area that meets Housing Quality Standards, and the rent offered by DHA or the receiving housing authority is acceptable to the landlord, the permit will be cancelled, the Settlement Voucher will be issued and a Housing Assistance Payment Contract will be executed with the landlord. As provided by HUD regulation, DHA shall include a provision in the Housing Assistant Payment contract for each unit assisted pursuant to the Program set out in this Plan that DHA will pay late fees if DHA's portion of the contract rent is not timely paid.

B.      Lease Renewal

The initial lease agreement will be for 12-months. Month-to-month lease renewals are automatic unless the lease is cancelled by the tenant or the landlord after the first year.

C.      Lease Terminations and Relocations

At the end of the initial lease term or any subsequent lease period, Participants may request to move as provided in the Section 8 HCV Administrative Plan (500-1). Participants are required to remain in Predominantly White Areas after the end of the initial lease term. Participants requesting to relocate outside of a Predominantly White Area will permanently lose the benefits of the 125% of the current FMR payment standard. Settlement Vouchers will be re-issued to eligible class members when Participants move out of a Predominantly White Area and switch to the regular HCV Program. Settlement Vouchers will not be re-issued when Participants withdraw from the HVC Program entirely in which case the vouchers will "be subject only to the requirements of the ACC [Annual Contribution Contract] and the statutes and regulations that govern the Section 8 program." *Settlement Stipulation*, ¶4.

Participants moving within the Predominantly White Areas will continue to receive the benefit of the higher payment standard. The application fee, moving related expenses and security deposit assistance are available for the initial lease only.

11

**Appendix 482**

D.    Interchanging Vouchers

Settlement Vouchers will be made available when a class member is relocating and requests to move to a Predominantly White Area and DHA determines the benefit of the enhanced payment standard is needed to facilitate the relocation; or if a class member living in a Predominantly White Area is faced with relocation because increasing rents in the market area has created a "rent burden" on the part of the family.

Section VIII.    Post-Move Services

A.    Home Visit

DHA will visit the Participant's home within 90-days of leasing to access the Participant's satisfaction with her/his new neighborhood and provide transitional guidance.

B.    Outreach Survey

DHA will conduct outreach surveys to evaluate the outcomes of services and benefits offered under the DHA's Settlement Program. *See Substitution Plan,* ¶ 9(j). The survey will gather the following information:

1.    The Participant's opinion of the mobility services DHA provided;

2.    The Participant's opinion of the housing choices encountered;

3.    The Participant's reason for particular housing selection;

4.    The positive or negative attributes of the housing area selected;

5.    The types of transportation utilized during the housing search and after leasing;

6.    The importance of the proximity of family and friends to the housing area selected;

7.    The access to shopping, medical facilities, churches and schools;

8.    The changes in employment status as a result of a move; and

9.    The improvements in scholastic achievements or educational opportunities.

Section IX.    Cooperation with Housing Administrator

12

The Inclusive Communities Project (ICP) was appointed as the Housing Fund Administrator for the Walker Trust Fund. The Trust Fund was created and is maintained to work for the creation and maintenance of thriving racially and economically inclusive communities, expansion of fair and affordable housing opportunities for low-income families, and redress for policies and practices that perpetuate the harmful effects of discrimination and segregation. ICP currently provides mobility services, including financial assistance to Participants and manages the Walker Referral program.

In accordance with DHA's *Agreed Final Judgment* entered December 21, 2004, DHA will make good faith efforts to provide the Inclusive Communities Project with access to its Section 8 briefings and waiting lists as part of ICP's management of the Walker Referral program and the Housing Fund programs providing mobility assistance to class members.

Section X.    Reporting Activities

DHA will monitor certain activities of Participants and submit reports to document compliance with the *Settlement Stipulation* until such time as the final allocation of Settlement Vouchers has been leased under this Program. The last Annual Report of activities related to the Program will be submitted for the year in which the last of the final allocation of Settlement Vouchers is orginally issued to a Participant.

A.    Monthly Reporting

A monthly report submitted to counsel for the plaintiffs in the Walker litigation will include the following information:

1.    The names and addresses of landlords in Predominantly White Areas who refuse to participate in the Section 8 Program and the reason for the refusal;

2.    A spreadsheet in a computer-readable format, utilizing data from DHA's S8R5680 report, as of the end of the previous month, all HAP contracts active in each census tract;

3.    The names, addresses and telephone numbers of Participants unable to lease a unit in a Predominantly white areas for more than sixty (60) days after being issued a permit to search for housing;

4.    Any barriers or impediments to the implementation of this Plan, the 2001 *Substitution Plan*, or the requirements of the *Settlement Stipulation,* including recapture, disallowance or refusal by HUD to make available any funds under the this order; and

5.    The address set out in separate cells to include street address, unit number, city, state and zip code; bedroom size; contract rent; utility allowance; total tenant payment amount; landlord name; date of last reexamination;

13

and census tract information for active Participants leasing unit in Predominantly White Areas.

6. The following information for each tenant obtaining a unit through the Settlement Voucher Program in a computer readable format: name, race, address, move-in date, landlord name, contract rent, utility allowance, Total Tenant Payment, census tract location of the unit.

7. The following information for each person exceeding sixty (60) days in the Program in a computer readable format: name, race, unit size needed, initial date on which the Participant received a Permit to search for housing in a Predominantly White Area, number of days the Participant has search for housing in a Predominantly White Area, and current status;

8. The following information on each landlord who refuses to participate in the Section 8 Program in a computer readable format: name, address, phone number of the landlord and specific person communication refusal, and reason for refusal; name, address, phone number, census tract location of units; and name of DHA employee to whom the refusal was communicated;

9. The name, address, telephone number, address of the potentially available units, and contact person for each landlord contacted for the purpose of recruiting participation in DHA's Section program and the results of the contact; and

10. The following information on each household participating in the Program in a computer readable format: name, race, unit size needed, initial date on the housing opportunity program, number of days on the program, the date and type of each form of mobility service, including financial assistance provided by DHA to the household and post-move mobility counseling services, the name, address, and census tract location of each unit the household attempts to rent and the result of each attempt, whether or not the household withdrawn from the program and the reason for the withdrawal.

B.  Annual Reports

An annual report that will include the following with respect to the Settlement Voucher Plan:

1. Receipt and expenditure of funds under the approved budget;

2. Implementation of the Settlement Voucher Plan;

14

**Appendix 485**

3. The number of Settlement Voucher Plan Participants in the Program for more than sixty (60) days who have not been able to enter into a lease in a Predominantly White Area;

4. The identity of any landlords in Predominantly White Areas refusing to participate in the Section 8 Program during the year;

5. The annual total and cumulative total of units participating in the Settlement Voucher Program sorted by census tract and race of household; and

6. Any barrier or impediments to implementation of this Settlement Voucher Plan including the recapture, disallowance, or refusal to make available any of the funds from the *Settlement Stipulation*.

C. Information Available Upon Request

DHA shall maintain the following information and make it available for inspection and copying by plaintiffs' counsel upon request.

1. All correspondence between HUD and DHA on issues affecting units on the Settlement Voucher Program, all documents and reports submitted by DHA to HUD containing information about these units, all responses by HUD to DHA documents and reports pertaining to the Settlement Program.

D. Annual Audit

"DHA shall obtain an annual audit of its receipt and expenditure of the funds provided by the Settlement Stipulation and Order. The audit shall meet the same standards required for the Independent Public Accountant Audit of HUD funds. The audit shall include examination of DHA's compliance with the court approved budgets and this Order. The funds provided by the Settlement Stipulation and Order may be used to pay for this audit." *Substitution Plan*, ¶ 17.

E. Annual Survey

DHA will retain independent contractors to conduct annual surveys of Participants using accepted statistical sampling methods to determine: (i) the effects of participation in the Program on the Participant households (ii) the Participants' satisfaction with the services provided and the housing received, and (iii) possible improvements to the Settlement Voucher Program. DHA and the Plaintiffs will attempt to agree on the selection of contractors to conduct the surveys and on the content of the surveys. The Court will resolve issues on which agreement cannot be reached.

F. Budget and Staffing Requirements

15

**Appendix 486**

The proposed operating budget for 2007 is attached as Exhibit 2.

16

# EXHIBIT "1"

| | | City of Dallas % Black | City of Dallas % below poverty | | | # of PW tracts = |
|---|---|---|---|---|---|---|
| City of Dallas | | 25.80% | 17.80% | | | 671 |
| 2000 U.S. Census tract | County | % Black or African American SF1 Table P7 | % with income in 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | If "Predominantly White" for Settlement Voucher eligibility, then "PW", if not, then NOT |
| 1 | Dallas | 3.07% | 4.27% | TRUE | No | PW |
| 2.01 | Dallas | 0.59% | 2.77% | TRUE | No | PW |
| 2.02 | Dallas | 0.87% | 2.26% | TRUE | No | PW |
| 3 | Dallas | 3.38% | 4.09% | TRUE | No | PW |
| 4.01 | Dallas | 8.18% | 28.23% | FALSE | No | NOT |
| 4.03 | Dallas | 1.40% | 16.10% | TRUE | No | PW |
| 4.04 | Dallas | 4.96% | 18.96% | FALSE | No | NOT |
| 4.05 | Dallas | 38.44% | 40.25% | FALSE | No | NOT |
| 5 | Dallas | 5.69% | 22.09% | FALSE | No | NOT |
| 6.01 | Dallas | 6.08% | 25.06% | FALSE | No | NOT |
| 6.03 | Dallas | 3.55% | 14.06% | TRUE | No | PW |
| 6.04 | Dallas | 2.69% | 5.82% | TRUE | No | PW |
| 7.01 | Dallas | 2.79% | 10.61% | TRUE | No | PW |
| 7.02 | Dallas | 2.15% | 13.18% | TRUE | No | PW |
| 8 | Dallas | 6.39% | 22.56% | FALSE | No | NOT |
| 9 | Dallas | 2.89% | 28.54% | FALSE | No | NOT |
| 10.01 | Dallas | 2.29% | 8.57% | TRUE | No | PW |
| 10.02 | Dallas | 1.99% | 9.23% | TRUE | No | PW |
| 11.01 | Dallas | 4.41% | 11.48% | TRUE | No | PW |
| 11.02 | Dallas | 1.67% | 6.44% | TRUE | No | PW |
| 12.02 | Dallas | 24.35% | 22.32% | FALSE | No | NOT |
| 12.03 | Dallas | 1.59% | 19.16% | FALSE | No | NOT |
| 12.04 | Dallas | 1.10% | 24.52% | FALSE | No | NOT |
| 13.01 | Dallas | 4.12% | 14.62% | TRUE | No | PW |
| 13.02 | Dallas | 5.29% | 23.66% | FALSE | No | NOT |
| 14 | Dallas | 6.57% | 25.02% | FALSE | No | NOT |
| 15.02 | Dallas | 8.19% | 35.32% | FALSE | No | NOT |
| 15.03 | Dallas | 7.31% | 39.22% | FALSE | No | NOT |
| 15.04 | Dallas | 13.11% | 28.22% | FALSE | No | NOT |
| 16 | Dallas | 45.13% | 27.89% | FALSE | No | NOT |
| 17.01 | Dallas | 100.00% | 0.00% | FALSE | No | NOT |
| 17.02 | Dallas | 6.68% | 10.70% | TRUE | No | PW |
| 18 | Dallas | 3.13% | 8.73% | TRUE | No | PW |
| 19 | Dallas | 18.28% | 11.34% | TRUE | Yes | NOT |
| 20 | Dallas | 11.16% | 40.83% | FALSE | No | NOT |
| 21 | Dallas | 0.00% | 100.00% | FALSE | No | NOT |
| 22 | Dallas | 21.96% | 22.44% | FALSE | No | NOT |
| 24 | Dallas | 4.15% | 29.73% | FALSE | No | NOT |
| 25 | Dallas | 41.14% | 32.55% | FALSE | No | NOT |
| 27.01 | Dallas | 95.01% | 53.81% | FALSE | No | NOT |
| 27.02 | Dallas | 95.36% | 37.45% | FALSE | No | NOT |

7 county eligible tracts                10/16/2006                1



Appendix 489

| City of Dallas | | City of Dallas % Black | City of Dallas % below poverty | | | # of PW tracts = |
|---|---|---|---|---|---|---|
| City of Dallas | | 25.80% | 17.80% | | | 671 |
| 2000 U.S. Census tract | County | % Black or African American SF1 Table P7 | % with income in 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | If "Predominantly White" for Settlement Voucher eligibility, then "PW", if not, then NOT |
| 29 | Dallas | 81.39% | 43.71% | FALSE | No | NOT |
| 31.01 | Dallas | 17.69% | 9.98% | TRUE | No | PW |
| 32.01 | Dallas | 45.85% | 58.75% | FALSE | No | NOT |
| 33 | Dallas | 13.55% | 43.63% | FALSE | No | NOT |
| 34 | Dallas | 73.29% | 44.44% | FALSE | No | NOT |
| 35 | Dallas | 92.89% | 38.41% | FALSE | No | NOT |
| 37 | Dallas | 96.13% | 30.01% | FALSE | No | NOT |
| 38 | Dallas | 97.43% | 36.22% | FALSE | No | NOT |
| 39.01 | Dallas | 94.38% | 43.18% | FALSE | No | NOT |
| 39.02 | Dallas | 86.37% | 43.83% | FALSE | No | NOT |
| 40 | Dallas | 85.63% | 39.64% | FALSE | No | NOT |
| 41 | Dallas | 74.51% | 53.56% | FALSE | No | NOT |
| 42.01 | Dallas | 5.14% | 19.56% | FALSE | No | NOT |
| 42.02 | Dallas | 8.87% | 19.16% | FALSE | No | NOT |
| 43 | Dallas | 12.76% | 36.02% | FALSE | No | NOT |
| 44 | Dallas | 4.09% | 3.69% | TRUE | No | PW |
| 45 | Dallas | 3.40% | 21.37% | FALSE | No | NOT |
| 46 | Dallas | 4.00% | 25.06% | FALSE | No | NOT |
| 47 | Dallas | 1.99% | 28.13% | FALSE | No | NOT |
| 48 | Dallas | 4.75% | 32.56% | FALSE | No | NOT |
| 49 | Dallas | 78.03% | 32.91% | FALSE | No | NOT |
| 50 | Dallas | 7.21% | 26.75% | FALSE | No | NOT |
| 51 | Dallas | 2.80% | 12.63% | TRUE | No | PW |
| 52 | Dallas | 2.18% | 23.96% | FALSE | No | NOT |
| 53 | Dallas | 2.03% | 16.69% | TRUE | No | PW |
| 54 | Dallas | 52.11% | 22.41% | FALSE | No | NOT |
| 55 | Dallas | 79.02% | 22.82% | FALSE | No | NOT |
| 56 | Dallas | 39.67% | 25.78% | FALSE | No | NOT |
| 57 | Dallas | 74.25% | 28.90% | FALSE | No | NOT |
| 59.01 | Dallas | 86.87% | 17.65% | FALSE | No | NOT |
| 59.02 | Dallas | 83.10% | 20.52% | FALSE | No | NOT |
| 60.01 | Dallas | 35.90% | 25.59% | FALSE | No | NOT |
| 60.02 | Dallas | 50.97% | 26.09% | FALSE | No | NOT |
| 61 | Dallas | 61.86% | 20.68% | FALSE | No | NOT |
| 62 | Dallas | 39.18% | 20.77% | FALSE | No | NOT |
| 63.01 | Dallas | 14.87% | 12.76% | TRUE | No | PW |
| 63.02 | Dallas | 5.34% | 14.82% | TRUE | No | PW |
| 64 | Dallas | 2.83% | 19.77% | FALSE | No | NOT |
| 65.01 | Dallas | 2.95% | 15.73% | TRUE | No | PW |
| 65.02 | Dallas | 2.97% | 13.11% | TRUE | No | PW |
| 67 | Dallas | 2.27% | 27.49% | FALSE | No | NOT |

7 county eligible tracts                    10/16/2006                                    2

Appendix 490

| | | City of Dallas % Black | City of Dallas % below poverty | | | # of PW tracts = |
|---|---|---|---|---|---|---|
| City of Dallas | | 25.80% | 17.80% | | | 671 |
| 2000 U.S. Census tract | County | % Black or African American SF1 Table P7 | % with Income in 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | If "Predominantly White" for Settlement Voucher eligibility, then "PW", If not, then NOT |
| 68 | Dallas | 11.22% | 16.50% | TRUE | No | PW |
| 69 | Dallas | 14.26% | 30.68% | FALSE | No | NOT |
| 71.01 | Dallas | 1.67% | 4.74% | TRUE | No | PW |
| 71.02 | Dallas | 56.05% | 17.81% | FALSE | No | NOT |
| 72.01 | Dallas | 4.49% | 27.40% | FALSE | No | NOT |
| 72.02 | Dallas | 3.44% | 33.53% | FALSE | No | NOT |
| 73.01 | Dallas | 0.30% | 4.82% | TRUE | No | PW |
| 73.02 | Dallas | 3.97% | 3.53% | TRUE | No | PW |
| 74 | Dallas | 0.70% | 0.70% | TRUE | No | PW |
| 75 | Dallas | 1.15% | 5.09% | TRUE | No | PW |
| 76.01 | Dallas | 0.75% | 2.42% | TRUE | No | PW |
| 76.04 | Dallas | 1.07% | 1.01% | TRUE | No | PW |
| 76.05 | Dallas | 1.03% | 2.56% | TRUE | No | PW |
| 77 | Dallas | 0.34% | 2.48% | TRUE | No | PW |
| 78.01 | Dallas | 1.13% | 3.80% | TRUE | No | PW |
| 78.04 | Dallas | 45.52% | 14.30% | FALSE | No | NOT |
| 78.05 | Dallas | 27.13% | 10.19% | FALSE | No | NOT |
| 78.06 | Dallas | 30.08% | 20.39% | FALSE | No | NOT |
| 78.09 | Dallas | 22.74% | 17.73% | TRUE | Yes | NOT |
| 78.1 | Dallas | 27.22% | 13.14% | FALSE | No | NOT |
| 78.11 | Dallas | 46.92% | 13.27% | FALSE | No | NOT |
| 78.12 | Dallas | 1.05% | 7.67% | TRUE | No | PW |
| 78.13 | Dallas | 23.61% | 8.11% | TRUE | No | PW |
| 78.14 | Dallas | 41.97% | 16.41% | FALSE | No | NOT |
| 78.15 | Dallas | 21.11% | 28.28% | FALSE | No | NOT |
| 78.16 | Dallas | 33.99% | 19.03% | FALSE | No | NOT |
| 78.18 | Dallas | 18.61% | 24.98% | FALSE | No | NOT |
| 78.19 | Dallas | 26.52% | 24.76% | FALSE | No | NOT |
| 79.02 | Dallas | 3.96% | 6.08% | TRUE | No | PW |
| 79.03 | Dallas | 7.52% | 8.06% | TRUE | No | PW |
| 79.05 | Dallas | 8.94% | 13.73% | TRUE | No | PW |
| 79.06 | Dallas | 0.59% | 2.48% | TRUE | No | PW |
| 79.07 | Dallas | 6.78% | 9.71% | TRUE | No | PW |
| 79.08 | Dallas | 6.44% | 10.27% | TRUE | No | PW |
| 80 | Dallas | 0.44% | 2.93% | TRUE | No | PW |
| 81 | Dallas | 1.59% | 5.10% | TRUE | No | PW |
| 82 | Dallas | 14.01% | 9.66% | TRUE | No | PW |
| 84 | Dallas | 7.32% | 20.17% | FALSE | No | NOT |
| 85 | Dallas | 16.73% | 20.45% | FALSE | No | NOT |
| 86.03 | Dallas | 51.04% | 33.94% | FALSE | No | NOT |
| 86.04 | Dallas | 78.60% | 52.05% | FALSE | No | NOT |

7 county eligible tracts                    10/16/2006                    3

| | City of Dallas % Black | City of Dallas % below poverty | | | # of PW tracts = |
|---|---|---|---|---|---|
| City of Dallas | 25.80% | 17.80% | | | 671 |

| 2000 U.S. Census tract | County | % Black or African American SF1 Table P7 | % with income in 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | If "Predominantly White" for Settlement Voucher eligibility, then "PW", if not, then NOT |
|---|---|---|---|---|---|---|
| 87.01 | Dallas | 93.71% | 27.52% | FALSE | No | NOT |
| 87.03 | Dallas | 79.63% | 28.05% | FALSE | No | NOT |
| 87.04 | Dallas | 91.35% | 39.13% | FALSE | No | NOT |
| 87.05 | Dallas | 85.54% | 26.45% | FALSE | No | NOT |
| 88.01 | Dallas | 95.36% | 19.82% | FALSE | No | NOT |
| 88.02 | Dallas | 91.26% | 34.26% | FALSE | No | NOT |
| 89 | Dallas | 84.10% | 28.99% | FALSE | No | NOT |
| 90 | Dallas | 33.83% | 25.90% | FALSE | No | NOT |
| 91.01 | Dallas | 32.67% | 19.39% | FALSE | No | NOT |
| 91.03 | Dallas | 43.82% | 28.76% | FALSE | No | NOT |
| 91.04 | Dallas | 28.66% | 19.78% | FALSE | No | NOT |
| 91.05 | Dallas | 19.05% | 19.89% | FALSE | No | NOT |
| 92.01 | Dallas | 27.35% | 18.74% | FALSE | No | NOT |
| 92.02 | Dallas | 16.40% | 23.84% | FALSE | No | NOT |
| 93.01 | Dallas | 11.69% | 22.14% | FALSE | No | NOT |
| 93.03 | Dallas | 20.47% | 24.98% | FALSE | No | NOT |
| 93.04 | Dallas | 71.18% | 42.77% | FALSE | No | NOT |
| 94.01 | Dallas | 2.99% | 15.42% | TRUE | No | PW |
| 94.02 | Dallas | 0.64% | 3.49% | TRUE | No | PW |
| 95 | Dallas | 0.55% | 5.38% | TRUE | No | PW |
| 96.03 | Dallas | 3.41% | 2.63% | TRUE | No | PW |
| 96.04 | Dallas | 11.36% | 10.62% | TRUE | No | PW |
| 96.05 | Dallas | 7.56% | 10.04% | TRUE | No | PW |
| 96.07 | Dallas | 2.54% | 4.31% | TRUE | No | PW |
| 96.08 | Dallas | 10.07% | 9.83% | TRUE | No | PW |
| 96.09 | Dallas | 1.00% | 0.59% | TRUE | No | PW |
| 96.1 | Dallas | 8.24% | 24.09% | FALSE | No | NOT |
| 96.11 | Dallas | 7.69% | 10.53% | TRUE | No | PW |
| 97.01 | Dallas | 5.44% | 7.73% | TRUE | No | PW |
| 97.02 | Dallas | 3.53% | 2.44% | TRUE | No | PW |
| 98.02 | Dallas | 4.05% | 17.19% | TRUE | No | PW |
| 98.03 | Dallas | 14.15% | 18.40% | FALSE | No | NOT |
| 98.04 | Dallas | 8.28% | 25.64% | FALSE | No | NOT |
| 99 | Dallas | 12.23% | 28.76% | FALSE | No | NOT |
| 100 | Dallas | 42.22% | 42.99% | FALSE | No | NOT |
| 101.01 | Dallas | 60.46% | 34.87% | FALSE | No | NOT |
| 101.02 | Dallas | 4.10% | 21.74% | FALSE | No | NOT |
| 102 | Dallas | 76.36% | 78.61% | FALSE | No | NOT |
| 104 | Dallas | 69.98% | 64.89% | FALSE | No | NOT |
| 105 | Dallas | 67.96% | 32.37% | FALSE | No | NOT |
| 106.01 | Dallas | 4.69% | 26.27% | FALSE | No | NOT |

7 county eligible tracts                    10/16/2006                    4

Appendix 492

| | | City of Dallas % Black | City of Dallas % below poverty | | | # of PW tracts = |
|---|---|---|---|---|---|---|
| City of Dallas | | 25.80% | 17.80% | | | 671 |
| 2000 U.S. Census tract | County | % Black or African American SF1 Table P7 | % with income in 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | If "Predominantly White" for Settlement Voucher eligibility, then "PW", if not, then NOT |
| 106.02 | Dallas | 14.01% | 36.31% | FALSE | No | NOT |
| 107.01 | Dallas | 1.39% | 21.28% | FALSE | No | NOT |
| 107.03 | Dallas | 18.39% | 16.05% | TRUE | No | PW |
| 107.04 | Dallas | 17.86% | 36.41% | FALSE | No | NOT |
| 108.01 | Dallas | 26.54% | 17.75% | FALSE | No | NOT |
| 108.02 | Dallas | 22.10% | 26.63% | FALSE | No | NOT |
| 108.03 | Dallas | 62.05% | 14.31% | FALSE | No | NOT |
| 109.01 | Dallas | 81.90% | 19.63% | FALSE | No | NOT |
| 109.02 | Dallas | 91.27% | 26.44% | FALSE | No | NOT |
| 110.01 | Dallas | 85.31% | 7.12% | FALSE | No | NOT |
| 110.02 | Dallas | 82.77% | 4.87% | FALSE | No | NOT |
| 111.01 | Dallas | 90.70% | 9.11% | FALSE | No | NOT |
| 111.03 | Dallas | 53.37% | 12.43% | FALSE | No | NOT |
| 111.04 | Dallas | 90.89% | 16.34% | FALSE | No | NOT |
| 111.05 | Dallas | 92.99% | 27.76% | FALSE | No | NOT |
| 112 | Dallas | 79.20% | 13.72% | FALSE | No | NOT |
| 113 | Dallas | 96.12% | 13.03% | FALSE | No | NOT |
| 114.01 | Dallas | 95.19% | 38.41% | FALSE | No | NOT |
| 114.02 | Dallas | 80.55% | 21.35% | FALSE | No | NOT |
| 115 | Dallas | 70.92% | 62.19% | FALSE | No | NOT |
| 116.01 | Dallas | 55.90% | 21.54% | FALSE | No | NOT |
| 116.02 | Dallas | 7.20% | 18.54% | FALSE | No | NOT |
| 117.01 | Dallas | 37.11% | 15.79% | FALSE | No | NOT |
| 117.02 | Dallas | 14.06% | 17.65% | TRUE | No | PW |
| 118 | Dallas | 41.65% | 19.79% | FALSE | No | NOT |
| 119 | Dallas | 41.75% | 13.28% | FALSE | No | NOT |
| 120 | Dallas | 55.54% | 23.82% | FALSE | No | NOT |
| 121 | Dallas | 52.20% | 18.22% | FALSE | No | NOT |
| 122.04 | Dallas | 25.28% | 9.67% | TRUE | No | PW |
| 122.06 | Dallas | 49.21% | 15.08% | FALSE | No | NOT |
| 122.07 | Dallas | 60.36% | 19.52% | FALSE | No | NOT |
| 122.08 | Dallas | 22.55% | 35.08% | FALSE | No | NOT |
| 122.09 | Dallas | 28.10% | 20.34% | FALSE | No | NOT |
| 122.1 | Dallas | 54.21% | 24.78% | FALSE | No | NOT |
| 122.11 | Dallas | 61.19% | 29.74% | FALSE | No | NOT |
| 123.01 | Dallas | 24.01% | 23.75% | FALSE | No | NOT |
| 123.02 | Dallas | 33.88% | 24.06% | FALSE | No | NOT |
| 124 | Dallas | 4.10% | 6.79% | TRUE | No | PW |
| 125 | Dallas | 7.71% | 10.63% | TRUE | No | PW |
| 126.01 | Dallas | 25.80% | 10.22% | TRUE | No | PW |
| 126.02 | Dallas | 34.08% | 13.88% | FALSE | No | NOT |

7 county eligible tracts                    10/16/2006                                      5

| 2000 U.S. Census tract | County | City of Dallas % Black / % Black or African American SF1 Table P7 | City of Dallas % below poverty / % with income In 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | # of PW tracts = 671 / If "Predominantly White" for Settlement Voucher eligibility, then "PW", if not, then NOT |
|---|---|---|---|---|---|---|
| City of Dallas | | 25.80% | 17.80% | | | |
| 127.01 | Dallas | 6.17% | 11.41% | TRUE | No | PW |
| 127.02 | Dallas | 6.62% | 6.18% | TRUE | No | PW |
| 128 | Dallas | 4.10% | 8.13% | TRUE | No | PW |
| 129 | Dallas | 3.36% | 5.29% | TRUE | No | PW |
| 130.04 | Dallas | 2.36% | 3.95% | TRUE | Yes | NOT |
| 130.05 | Dallas | 17.52% | 5.68% | TRUE | No | PW |
| 130.06 | Dallas | 35.00% | 14.04% | FALSE | No | NOT |
| 130.07 | Dallas | 20.94% | 9.69% | TRUE | No | PW |
| 130.08 | Dallas | 13.61% | 6.86% | TRUE | No | PW |
| 130.09 | Dallas | 30.25% | 7.00% | FALSE | No | NOT |
| 131.01 | Dallas | 0.64% | 2.30% | TRUE | No | PW |
| 131.02 | Dallas | 0.51% | 4.51% | TRUE | No | PW |
| 131.03 | Dallas | 12.41% | 12.90% | TRUE | No | PW |
| 132 | Dallas | 2.31% | 4.57% | TRUE | No | PW |
| 133 | Dallas | 0.68% | 1.23% | TRUE | No | PW |
| 134 | Dallas | 0.77% | 1.60% | TRUE | No | PW |
| 135 | Dallas | 0.68% | 1.84% | TRUE | No | PW |
| 136.05 | Dallas | 1.58% | 1.25% | TRUE | No | PW |
| 136.06 | Dallas | 5.38% | 5.19% | TRUE | No | PW |
| 136.07 | Dallas | 2.46% | 2.40% | TRUE | No | PW |
| 136.08 | Dallas | 1.69% | 0.75% | TRUE | No | PW |
| 136.09 | Dallas | 15.28% | 7.91% | TRUE | No | PW |
| 136.1 | Dallas | 6.91% | 12.59% | TRUE | No | PW |
| 136.11 | Dallas | 1.87% | 1.16% | TRUE | No | PW |
| 136.12 | Dallas | 7.04% | 6.37% | TRUE | No | PW |
| 136.13 | Dallas | 10.73% | 12.57% | TRUE | No | PW |
| 136.14 | Dallas | 9.28% | 12.59% | TRUE | No | PW |
| 136.15 | Dallas | 12.44% | 11.80% | TRUE | No | PW |
| 136.16 | Dallas | 7.31% | 10.03% | TRUE | No | PW |
| 136.17 | Dallas | 2.83% | 4.42% | TRUE | No | PW |
| 136.18 | Dallas | 1.64% | 3.27% | TRUE | No | PW |
| 136.19 | Dallas | 1.61% | 0.94% | TRUE | No | PW |
| 137.04 | Dallas | 7.20% | 6.18% | TRUE | No | PW |
| 137.11 | Dallas | 1.42% | 16.16% | TRUE | No | PW |
| 137.12 | Dallas | 1.80% | 4.98% | TRUE | No | PW |
| 137.13 | Dallas | 1.98% | 18.78% | FALSE | No | NOT |
| 137.14 | Dallas | 2.72% | 18.23% | FALSE | No | NOT |
| 137.15 | Dallas | 4.25% | 2.31% | TRUE | No | PW |
| 137.16 | Dallas | 3.55% | 5.30% | TRUE | No | PW |
| 137.17 | Dallas | 4.92% | 10.23% | TRUE | No | PW |
| 137.18 | Dallas | 4.51% | 12.87% | TRUE | No | PW |

7 county eligible tracts                    10/16/2006                                        6

**Appendix 494**

| City of Dallas | County | City of Dallas % Black | City of Dallas % below poverty | | | # of PW tracts = |
|---|---|---|---|---|---|---|
| City of Dallas | | 25.80% | 17.80% | | | 671 |
| 2000 U.S. Census tract | County | % Black or African American SF1 Table P7 | % with income in 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | If "Predominantly White" for Settlement Voucher eligibility, then "PW", if not, then NOT |
| 137.19 | Dallas | 4.98% | 9.59% | TRUE | No | PW |
| 137.2 | Dallas | 7.60% | 5.58% | TRUE | No | PW |
| 137.21 | Dallas | 5.88% | 1.23% | TRUE | No | PW |
| 137.22 | Dallas | 12.13% | 5.40% | TRUE | No | PW |
| 137.23 | Dallas | 4.86% | 3.35% | TRUE | No | PW |
| 137.24 | Dallas | 0.00% | #DIV/0! | #DIV/0! | No | PW |
| 137.25 | Dallas | 13.56% | 4.69% | TRUE | No | PW |
| 138.01 | Dallas | 12.88% | 9.30% | TRUE | No | PW |
| 138.03 | Dallas | 1.83% | 2.17% | TRUE | No | PW |
| 138.04 | Dallas | 4.81% | 5.63% | TRUE | No | PW |
| 139.01 | Dallas | 1.24% | 8.85% | TRUE | No | PW |
| 139.02 | Dallas | 2.48% | 5.06% | TRUE | No | PW |
| 140.01 | Dallas | 2.24% | 4.66% | TRUE | No | PW |
| 140.02 | Dallas | 4.06% | 7.42% | TRUE | No | PW |
| 141.03 | Dallas | 34.40% | 16.57% | FALSE | No | NOT |
| 141.09 | Dallas | 7.45% | 3.20% | TRUE | No | PW |
| 141.1 | Dallas | 13.87% | 6.10% | TRUE | No | PW |
| 141.12 | Dallas | 33.78% | 7.83% | FALSE | No | NOT |
| 141.13 | Dallas | 26.23% | 10.81% | FALSE | No | NOT |
| 141.14 | Dallas | 24.62% | 12.50% | TRUE | No | PW |
| 141.15 | Dallas | 11.39% | 6.98% | TRUE | No | PW |
| 141.16 | Dallas | 28.18% | 8.67% | FALSE | No | NOT |
| 141.17 | Dallas | 33.33% | #DIV/0! | #DIV/0! | No | NOT |
| 141.18 | Dallas | 3.47% | 2.34% | TRUE | No | PW |
| 141.19 | Dallas | 1.79% | 0.18% | TRUE | No | PW |
| 141.2 | Dallas | 1.36% | 1.02% | TRUE | No | PW |
| 141.21 | Dallas | 8.95% | 8.43% | TRUE | No | PW |
| 141.22 | Dallas | 3.23% | 1.44% | TRUE | No | PW |
| 141.23 | Dallas | 2.46% | 1.99% | TRUE | No | PW |
| 141.24 | Dallas | 4.43% | 1.73% | TRUE | No | PW |
| 141.25 | Dallas | 9.28% | 5.39% | TRUE | No | PW |
| 141.26 | Dallas | 3.08% | 0.23% | TRUE | No | PW |
| 142.01 | Dallas | 2.40% | 2.68% | TRUE | No | PW |
| 142.03 | Dallas | 6.65% | 7.85% | TRUE | No | PW |
| 142.04 | Dallas | 7.73% | 18.82% | FALSE | No | NOT |
| 143.02 | Dallas | 4.29% | 5.27% | TRUE | No | PW |
| 143.04 | Dallas | 9.48% | 6.26% | TRUE | No | PW |
| 143.06 | Dallas | 8.13% | 10.98% | TRUE | No | PW |
| 143.07 | Dallas | 3.58% | 4.32% | TRUE | No | PW |
| 143.08 | Dallas | 8.85% | 14.67% | TRUE | No | PW |
| 143.09 | Dallas | 25.95% | 16.58% | FALSE | No | NOT |

7 county eligible tracts                    10/16/2006                                          7

| City of Dallas | | City of Dallas % Black | City of Dallas % below poverty | | | # of PW tracts = |
| --- | --- | --- | --- | --- | --- | --- |
| City of Dallas | | 25.80% | 17.80% | | | 671 |
| 2000 U.S. Census tract | County | % Black or African American SF1 Table P7 | % with income in 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | If "Predominantly White" for Settlement Voucher eligibility, then "PW", if not, then NOT |
| 143.1 | Dallas | 13.25% | 4.29% | TRUE | No | PW |
| 144.03 | Dallas | 29.14% | 10.65% | FALSE | No | NOT |
| 144.05 | Dallas | 3.06% | 9.20% | TRUE | No | PW |
| 144.06 | Dallas | 3.85% | 10.71% | TRUE | No | PW |
| 144.07 | Dallas | 25.87% | 11.14% | FALSE | No | NOT |
| 144.08 | Dallas | 15.95% | 7.63% | TRUE | No | PW |
| 145.01 | Dallas | 2.57% | 3.90% | TRUE | No | PW |
| 145.02 | Dallas | 5.33% | 19.72% | FALSE | No | NOT |
| 146.01 | Dallas | 4.16% | 6.83% | TRUE | No | PW |
| 146.02 | Dallas | 8.42% | 24.08% | FALSE | No | NOT |
| 146.03 | Dallas | 6.92% | 17.29% | TRUE | No | PW |
| 147.01 | Dallas | 5.39% | 19.08% | FALSE | No | NOT |
| 147.02 | Dallas | 4.24% | 18.08% | FALSE | No | NOT |
| 147.03 | Dallas | 6.24% | 14.44% | TRUE | No | PW |
| 148.01 | Dallas | 5.34% | 14.40% | TRUE | No | PW |
| 148.02 | Dallas | 2.72% | 17.23% | TRUE | No | PW |
| 149.01 | Dallas | 5.30% | 21.40% | FALSE | No | NOT |
| 149.02 | Dallas | 4.91% | 17.87% | FALSE | No | NOT |
| 150 | Dallas | 4.17% | 15.22% | TRUE | No | PW |
| 151 | Dallas | 4.35% | 10.68% | TRUE | No | PW |
| 152.02 | Dallas | 2.87% | 17.00% | TRUE | No | PW |
| 152.04 | Dallas | 4.13% | 8.79% | TRUE | No | PW |
| 152.05 | Dallas | 7.41% | 15.91% | TRUE | No | PW |
| 152.06 | Dallas | 5.09% | 12.20% | TRUE | No | PW |
| 153.03 | Dallas | 7.55% | 15.05% | TRUE | No | PW |
| 153.04 | Dallas | 5.91% | 11.37% | TRUE | No | PW |
| 153.05 | Dallas | 9.70% | 8.52% | TRUE | No | PW |
| 153.06 | Dallas | 5.34% | 7.13% | TRUE | No | PW |
| 154.01 | Dallas | 10.40% | 5.20% | TRUE | No | PW |
| 154.03 | Dallas | 14.09% | 13.19% | TRUE | No | PW |
| 154.04 | Dallas | 8.24% | 13.12% | TRUE | No | PW |
| 155 | Dallas | 11.03% | 27.50% | FALSE | No | NOT |
| 156 | Dallas | 2.31% | 17.40% | TRUE | No | PW |
| 157 | Dallas | 1.40% | 12.45% | TRUE | No | PW |
| 158 | Dallas | 1.38% | 13.11% | TRUE | No | PW |
| 159 | Dallas | 2.33% | 19.35% | FALSE | No | NOT |
| 160.01 | Dallas | 4.20% | 16.28% | TRUE | No | PW |
| 160.02 | Dallas | 9.56% | 19.53% | FALSE | No | NOT |
| 161 | Dallas | 47.32% | 26.56% | FALSE | No | NOT |
| 162.01 | Dallas | 6.95% | 13.91% | TRUE | No | PW |
| 162.02 | Dallas | 10.74% | 15.55% | TRUE | No | PW |

7 county eligible tracts                    10/16/2006                                        8

Appendix 496

| | City of Dallas % Black | City of Dallas % below poverty | | | # of PW tracts = |
|---|---|---|---|---|---|
| City of Dallas | 25.80% | 17.80% | | | 671 |
| 2000 U.S. Census tract | County | % Black or African American SF1 Table P7 | % with income in 1999 below poverty level Table P87 | Meets 2001 population requirements for Predominantly White | Does DHA public housing disqualify otherwise eligible tract? | If "Predominantly White" for Settlement Voucher eligibility, then "PW", if not, then NOT |
| 163.01 | Dallas | 5.41% | 11.87% | TRUE | No | PW |
| 163.02 | Dallas | 6.65% | 23.93% | FALSE | No | NOT |
| 164.01 | Dallas | 17.14% | 4.23% | TRUE | No | PW |
| 164.04 | Dallas | 20.66% | 4.96% | TRUE | No | PW |
| 164.06 | Dallas | 12.07% | 9.17% | TRUE | No | PW |
| 164.07 | Dallas | 11.56% | 7.85% | TRUE | No | PW |
| 164.08 | Dallas | 13.48% | 7.71% | TRUE | No | PW |
| 164.09 | Dallas | 12.67% | 4.10% | TRUE | No | PW |
| 164.1 | Dallas | 17.47% | 1.79% | TRUE | No | PW |
| 164.11 | Dallas | 12.32% | 7.00% | TRUE | No | PW |
| 165.01 | Dallas | 37.05% | 15.26% | FALSE | No | NOT |
| 165.02 | Dallas | 18.56% | 6.47% | TRUE | No | PW |
| 165.09 | Dallas | 18.05% | 4.27% | TRUE | No | PW |
| 165.1 | Dallas | 46.90% | 6.48% | FALSE | No | NOT |
| 165.11 | Dallas | 60.04% | 6.29% | FALSE | No | NOT |
| 165.13 | Dallas | 23.69% | 1.35% | TRUE | No | PW |
| 165.14 | Dallas | 39.33% | 0.97% | FALSE | No | NOT |
| 165.15 | Dallas | 7.03% | 5.01% | TRUE | No | PW |
| 165.16 | Dallas | 24.36% | 16.53% | TRUE | No | PW |
| 165.17 | Dallas | 27.45% | 4.56% | FALSE | No | NOT |
| 165.18 | Dallas | 23.16% | 4.63% | TRUE | No | PW |
| 165.19 | Dallas | 8.58% | 1.29% | TRUE | No | PW |
| 166.05 | Dallas | 18.25% | 19.90% | FALSE | No | NOT |
| 166.06 | Dallas | 46.31% | 4.82% | FALSE | No | NOT |
| 166.07 | Dallas | 83.34% | 12.07% | FALSE | No | NOT |
| 166.1 | Dallas | 69.05% | 6.06% | FALSE | No | NOT |
| 166.11 | Dallas | 44.35% | 1.62% | FALSE | No | NOT |
| 166.12 | Dallas | 43.68% | 3.98% | FALSE | No | NOT |
| 166.13 | Dallas | 32.65% | 9.59% | FALSE | No | NOT |
| 166.14 | Dallas | 41.34% | 8.21% | FALSE | No | NOT |
| 166.15 | Dallas | 46.55% | 8.00% | FALSE | No | NOT |
| 166.16 | Dallas | 21.69% | 5.57% | TRUE | No | PW |
| 166.17 | Dallas | 31.34% | 1.91% | FALSE | No | NOT |
| 166.18 | Dallas | 37.86% | 5.18% | FALSE | No | NOT |
| 166.19 | Dallas | 50.97% | 10.47% | FALSE | No | NOT |
| 166.2 | Dallas | 43.04% | 6.57% | FALSE | No | NOT |
| 167.01 | Dallas | 97.03% | 16.46% | FALSE | No | NOT |
| 167.03 | Dallas | 26.45% | 15.58% | FALSE | No | NOT |
| 167.04 | Dallas | 69.20% | 6.04% | FALSE | No | NOT |
| 167.05 | Dallas | 68.98% | 13.17% | FALSE | No | NOT |
| 168.02 | Dallas | 17.78% | 6.77% | TRUE | No | PW |

7 county eligible tracts                     10/16/2006                                        9