

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
Fort Worth Regional Office, Region VI
Office of Public Housing
801 Cherry Street, Unit #45, Ste. 2500
Fort Worth, TX 76102
www.hud.gov

MaryAnn Russ, Executive Director
Housing Authority of Dallas
3939 Hampton Rd
Dallas, TX 75212

Dear Ms. Russ:

SUBJECT:  Approval of PHA Plan for FYB01/01/10, tx009v01

This letter is to inform you that the subject PHA Plan is technically approved.  This approval does not constitute an endorsement of the strategies and policies outlined in the Plan.

This approval letter including all other documentation supporting the plan must be maintained in a file and made available for review and inspection at the principal office of the PHA during normal business hours.

As you are aware, the Plan included a Capital Fund Program Annual Statement for the upcoming year. Until the grant award process, and environmental review of the proposed activity is finalized, funds will not be available for draw down.  In the event funds have been approved for account 1406, please be advised that these funds must be used for Operations and not for Capital Improvements.

In providing assistance to families under programs covered by this Plan, your PHA will comply with the rules, standards and policies established, as provided in 24 CFR Part 903 and other applicable regulations.

If you have any questions or need further assistance regarding your PHA Plan, please contact your specialist.

Sincerely,

Justin R. Ormsby
Director
Office of Public Housing

Original: Troy Broussard
cc:       MaryAnn Russ
          Tim Lott
          Bill Manning
          Richard Betz

**EXHIBIT**
B-10

Appendix 537

**Dallas Housing Authority**
**2011 Annual Plan,**
**Status Report for 2010 – 2014 Five-Year Plan, and**
**Annual and Five-Year Capital Fund Budget**

**Table of Contents**

PHA 5-Year and Annual Plan

A.    5.2      Goals and Objectives

B.    6.0      PHA Plan Elements

C.    7.0      HOPE VI, Mixed-Finance Modernization or Development, Demolition and/or
               Disposition, Conversion of Public Housing, Homeownership Programs, and
               Project-Based Section 8

D.    8.1      Capital Fund Program Annual Statement/Performance and Evaluation Report

E.    8.2      Capital Fund Program Five-Year Action Plan

F.    9.0      Housing Needs

G.    9.1      Strategy for Addressing Housing Needs

H.    10.0a    Progress in Meeting Mission and Goals

I.    10.0b    Definition of "Significant Amendment" and "Substantial
               Deviation/Modification"

J.             Certifications

K.             Resident Advisory Board (RAB) Comments

L.             Challenged Elements

M.             Form HUD-50075.1, Capital Fund Program Annual Statement/Performance and
               Evaluation Report

| **PHA 5-Year and Annual Plan** | **U.S. Department of Housing and Urban Development**<br>**Office of Public and Indian Housing** | **OMB No. 2577-0226**<br>**Expires 4/30/2011** |
|---|---|---|

| 1.0 | **PHA Information**<br>PHA Name: _____ Housing Authority of the City of Dallas, Texas _____ PHA Code: _____ TX009 _____<br>PHA Type: ☐ Small   ☐ High Performing   ☒ Standard   ☐ HCV (Section 8)<br>PHA Fiscal Year Beginning: (MM/YYYY): _____ January 2011 |
|---|---|
| 2.0 | **Inventory** (based on ACC units at time of FY beginning in 1.0 above)<br>Number of PH units: __3,381__     Number of HCV units 18,169 _____ |
| 3.0 | **Submission Type**<br>☐ 5-Year and Annual Plan     ☒ Annual Plan Only     ☐ 5-Year Plan Only |
| 4.0 | **PHA Consortia**     ☐ PHA Consortia: (Check box if submitting a joint Plan and complete table below.) |

| Participating PHAs | PHA Code | Program(s) Included in the Consortia | Programs Not in the Consortia | No. of Units in Each Program | |
|---|---|---|---|---|---|
| | | | | PH | HCV |
| PHA 1: | | | | | |
| PHA 2: | | | | | |
| PHA 3: | | | | | |

| 5.0 | **5-Year Plan.** Complete items 5.1 and 5.2 only at 5-Year Plan update. |
|---|---|
| 5.1 | **Mission.** State the PHA's Mission for serving the needs of low-income, very low-income, and extremely low income families in the PHA's jurisdiction for the next five years:<br><br>*The Housing Authority of the City of Dallas, Texas provides quality, affordable housing to low-income families and individuals through the effective and efficient administration of housing assistance programs and by creating and cultivating opportunities for program participants to achieve self-sufficiency and economic independence.* |
| 5.2 | **Goals and Objectives.** Identify the PHA's quantifiable goals and objectives that will enable the PHA to serve the needs of low-income and very low-income, and extremely low-income families for the next five years. Include a report on the progress the PHA has made in meeting the goals and objectives described in the previous 5-Year Plan.<br><br>*Please see Attachment A, 5.2 Goals and Objectives, and Attachment H, 10.0a. Progress in Meeting Mission and Goals.* |
| 6.0 | **PHA Plan Update**<br>(a) Identify all PHA Plan elements that have been revised by the PHA since its last Annual Plan submission:<br>(b) Identify the specific location(s) where the public may obtain copies of the 5-Year and Annual PHA Plan. For a complete list of PHA Plan elements, see Section 6.0 of the instructions.<br><br>*a.  Please see Attachment B, 6.0a. PHA Plan Elements.*<br>*b.  Copies of DHA's 5-Year and Annual PHA Plan are available in the DHA Development Department located at the Central Office, 3939 N. Hampton Road, Dallas, Texas, and at each DHA AMP. Additionally, the 5-Year and Annual PHA Plan will be made available on DHA's website, dhadal.com.* |
| 7.0 | **Hope VI, Mixed Finance Modernization or Development, Demolition and/or Disposition, Conversion of Public Housing, Homeownership Programs, and Project-based Vouchers.** *Include statements related to these programs as applicable.*<br><br>*Please see Attachment C, 7.0 HOPE VI, Mixed Finance Modernization or Development, Demolition and/or Disposition, Conversion of Public Housing, Homeownership Programs, and Project-based Vouchers.* |
| 8.0 | **Capital Improvements.** Please complete Parts 8.1 through 8.3, as applicable. |
| 8.1 | **Capital Fund Program Annual Statement/Performance and Evaluation Report.** As part of the PHA 5-Year and Annual Plan, annually complete and submit the *Capital Fund Program Annual Statement/Performance and Evaluation Report,* form HUD-50075.1, for each current and open CFP and CFFP financing.<br><br>*Please see Attachment D, 8.1 Capital Fund Program Annual Statement/Performance and Evaluation Report.* |
| 8.2 | **Capital Fund Program Five-Year Action Plan.** As part of the submission of the Annual Plan, PHAs must complete and submit the *Capital Fund Program Five-Year Action Plan,* form HUD-50075.2, and subsequent annual updates (on a rolling basis, e.g., drop current year, and add latest year for a five year period). Large capital items must be included in the Five-Year Action Plan.<br><br>*Please see Attachment E, 8.2 Capital Fund Program Five-Year Action Plan.* |

Appendix 538

| 8.3 | **Capital Fund Financing Program (CFFP).**<br>☐ Check if the PHA proposes to use any portion of its Capital Fund Program (CFP)/Replacement Housing Factor (RHF) to repay debt incurred to finance capital improvements. |
|---|---|
| 9.0 | **Housing Needs.** Based on information provided by the applicable Consolidated Plan, information provided by HUD, and other generally available data, make a reasonable effort to identify the housing needs of the low-income, very low-income, and extremely low-income families who reside in the jurisdiction served by the PHA, including elderly families, families with disabilities, and households of various races and ethnic groups, and other families who are on the public housing and Section 8 tenant-based assistance waiting lists. The identification of housing needs must address issues of affordability, supply, quality, accessibility, size of units, and location.<br><br>*Please see Attachment F 9.0 Housing Needs.* |

| 9.1 | **Strategy for Addressing Housing Needs.** Provide a brief description of the PHA's strategy for addressing the housing needs of families in the jurisdiction and on the waiting list in the upcoming year. **Note: Small, Section 8 only, and High Performing PHAs complete only for Annual Plan submission with the 5-Year Plan.**<br><br>*Please see Attachment G, 9.1 Strategy for Addressing Housing Needs.* |
|---|---|
| 10.0 | **Additional Information.** Describe the following, as well as any additional information HUD has requested.<br><br>(a) Progress in Meeting Mission and Goals. Provide a brief statement of the PHA's progress in meeting the mission and goals described in the 5-Year Plan.<br>(b) Significant Amendment and Substantial Deviation/Modification. Provide a PHA's definition of "significant amendment" and "substantial deviation/modification"<br><br>*a. Please see Attachment H, 10.0a. Progress in Meeting Mission and Goals.*<br>*b. Please see Attachment I, 10.0b. Definition of "Significant Amendment" and "Substantial Deviation/Modification."* |

| 11.0 | **Required Submission for HUD Field Office Review.** In addition to the PHA Plan template (HUD-50075), PHAs must submit the following documents. Items (a) through (g) may be submitted with signature by mail or electronically with scanned signatures, but electronic submission is encouraged. Items (h) through (i) must be attached electronically with the PHA Plan. **Note:** Faxed copies of these documents will not be accepted by the Field Office.<br><br>(a) Form HUD-50077, *PHA Certifications of Compliance with the PHA Plans and Related Regulations* (which includes all certifications relating to Civil Rights)<br>(b) Form HUD-50070, *Certification for a Drug-Free Workplace* (PHAs receiving CFP grants only)<br>(c) Form HUD-50071, *Certification of Payments to Influence Federal Transactions* (PHAs receiving CFP grants only)<br>(d) Form SF-LLL, *Disclosure of Lobbying Activities* (PHAs receiving CFP grants only)<br>(e) Form SF-LLL-A, *Disclosure of Lobbying Activities Continuation Sheet* (PHAs receiving CFP grants only)<br>(f) Resident Advisory Board (RAB) comments. Comments received from the RAB must be submitted by the PHA as an attachment to the PHA Plan. PHAs must also include a narrative describing their analysis of the recommendations and the decisions made on these recommendations.<br>(g) Challenged Elements<br>(h) Form HUD-50075.1, *Capital Fund Program Annual Statement/Performance and Evaluation Report* (PHAs receiving CFP grants only)<br>(i) Form HUD-50075.2, *Capital Fund Program Five-Year Action Plan* (PHAs receiving CFP grants only)<br><br>*a-e Please see Attachment J, Certifications.*<br>*f. Please see Attachment K, Resident Advisory Board (RAB) Comments.*<br>*g. Please see Attachment L, Challenged Elements.*<br>*h. Please see Attachment M, Form HUD-50075.1, Capital Fund Program Annual Statement and Performance and Evaluation Report.*<br>*i. Please see Attachment E, 8.2 Capital Fund Program Five-Year Action Plan.* |
|---|---|

**Dallas Housing Authority**
**FY 2010 PHA 5-Year and Annual Plan**

**Attachment A**
**5.2 Goals and Objectives**

**5.2.1.   Increase the availability of decent, safe, and affordable housing**

**5.2.1.a. Expand the supply of assisted housing**
**Objectives:**
- Apply for additional rental vouchers
- Reduce public housing vacancies
- Leverage private or other public funds to create additional housing opportunities
- Acquire or build units or developments

**5.2.1.b. Improve the quality of assisted housing**
**Objectives:**
- Improve public housing management (PHAS score)
- Improve voucher management (SEMAP score)
- Increase customer satisfaction
- Concentrate on efforts to improve specific management functions (e.g. public housing finance, voucher unit inspections, etc.)
- Renovate or modernize public housing units
- Demolish or dispose of obsolete public housing
- Provide replacement public housing
- Provide replacement vouchers

**5.2.1.c. Increase assisted housing choices**
**Objectives:**
- Provide voucher mobility counseling
- Conduct outreach efforts to potential voucher landlords
- Reduce voucher payment standards
- Continue voucher homeownership program
- Implement other homeownership programs as practical
- Implement public housing site-based waiting lists
- Convert public housing to vouchers

**5.2.2.   Improve community quality of life and economic vitality**

**5.2.2.a. Provide an improved living environment**
**Objectives:**
- Implement measures to deconcentrate poverty by bringing higher income public housing households into lower income developments
- Implement measures to promote income mixing in public housing by assuring access for lower income families into higher income developments
- Implement public housing security improvements
- Reserve up to 20% of the Section 8 Housing Choice Vouchers for Project-Based assistance that will provide housing for families with special needs.

**5.2.3.   Promote self-sufficiency and asset development of families and individuals**

**5.2.3.a. Promote self-sufficiency and asset development of assisted households**
**Objectives:**
- Increase the number and percentage of employed persons in assisted families
- Provide or attract supportive services to improve assistance recipients' employability
- Provide or attract supportive services to increase independence for the elderly or families with disabilities

**5.2.4.   Ensure Equal Opportunity in Housing for all Americans**

**5.2.4.a. Ensure equal opportunity and affirmatively further fair housing**
**Objectives:**
- Undertake affirmative measures to ensure access to assisted housing regardless of race, color, religion, national origin, sex, familiar status, and disability
- Undertake affirmative measures to provide a suitable living environment for families living in assisted housing, regardless of race, color, religion, national origin, sex, familial status, and disability
- Undertake affirmative measures to ensure accessible housing to persons with all varieties of disabilities regardless of unit size required
- Reserve up to 20% of the Section 8 Housing Choice Vouchers for Project-Based assistance which will provide housing for families with special needs
- Comply with the Violence Against Women and Justice Department Reauthorization Action of 2005 (VAWA)

**5.2.5.   Promote resident employment and business opportunities**

**5.2.5.a. Promote resident employment and business opportunities**
**Objectives:**
- Continue to operate a Section 3 Training and Employment program
- Encourage independent contractors to hire Section 3 residents
- Actively solicit resident owned businesses for contracts

**Dallas Housing Authority**
**FY 2010 PHA 5-Year and Annual Plan**

**Attachment B**
**6.0.a. PHA Plan Elements**

6.1     **Eligibility, Selection and Admissions Policies, including Deconcentration and Wait List Procedures**

<u>**Public Housing**</u>

DHA's policies governing tenant eligibility, selection and admission including admission preferences for the public housing program are included in the *Dallas Housing Authority Admissions and Continued Occupancy Policy for Low Rent Housing,* relevant portions of which are provided below.

**Dallas Housing Authority Admissions and**
**Continued Occupancy Policy for Low Rent Housing**
(excerpt)

<u>**II. Eligibility and Intake**</u>

A.     <u>Applications</u>

1.   DHA will accept and process applications (including transfer applications) in accordance with applicable HUD Regulations and DHA's **Procedure on Intake and Processing**. Except for qualification for preferences, DHA will make its initial determination of eligibility assuming that the facts certified to by the applicant in the preliminary application are correct, although all those facts will be verified later in the application process.

2.   Every application file for admission to low rent housing shall include the date and time of application; lottery number (if applicable); applicant's race and ethnicity; eligibility determination; when eligible, the apartment size(s) for which eligible; preference, if any; and the date, location, identification, and circumstances of each vacancy offered and accepted or refused.

3.   The following information will be verified according to HUD's regulatory requirements at **24 CFR part 5** and DHA's **Procedure on Verification**, to determine qualification for admission to DHA's housing: **24 CFR § 960.259**

   a.   Family composition, demographics and type (Elderly/Disabled/Near elderly /Non-elderly)

   b.   Annual Income

   c.   Assets and Asset Income

   d.   Deductions from Income

   e.   Preferences

   f.   Social Security Numbers of all Family Members

   g.   Applicant Screening Information (including tenant and criminal history)

   h.   Citizenship or immigration status

**Appendix 542**

4.  Enterprise Income Verification (using Federal databases) or third party written information that is mailed, faxed or transmitted electronically between DHA and the verification source are the required form of documentation. Any other form of verification requires a note to the file explaining its use. **24 CFR § 960.259**

5.  Individuals applying for admission must submit a pre-application by telephone, electronically or in person at any other site authorized by DHA to receive applications, or, if they are a person with a disability, may submit an application by mail.

6.  If an applicant needs assistance in completing any aspect of the application process because of a disability, DHA will assist the applicant as needed to ensure equal access to DHA's programs.

7.  Applicants providing false information regarding Family Income, composition, preferences or other circumstances affecting their eligibility or rent level will be rejected. If the Applicant has been assigned a unit, the lease will be terminated and DHA will pursue any and all lawful civil claims and criminal actions, including the recoupment of back rent.

8.  DHA will periodically update each waiting list sublist by contacting all applicants in writing[1] in accordance with DHA's **Procedure on Updating the Waiting List**.

9.  If an applicant's preference status changes while on the waiting list, the applicant's position on the list will be adjusted in accordance with DHA's **Procedure on Application Intake and Processing**.

10. If the head of an applicant household dies while the family is on the waiting list, and the family includes another adult, DHA will change the application to make the other adult the new applicant so long as the family reports the death within 30 days.

B.  Closing and Re-opening the Waiting List

1.  Waiting lists will be opened and closed in accordance with DHA's **Procedure on Opening and Closing Waiting Lists**. Applicant names will be removed from the waiting list only in accordance with DHA's **Procedure on Removing Applicants from the Waiting List**. **24 CFR § 960.206**

C.  Affirmative Fair Housing Marketing and Outreach Procedures

1.  When the waiting list is open DHA will conduct affirmative marketing as needed to ensure that the waiting list includes a mix of Applicants with races, ethnic backgrounds, ages and disabilities proportionate to the mix of those groups in the eligible population of its area of operation. DHA will review the factors regularly to determine the need for and scope of marketing efforts.

2.  All marketing efforts will include outreach to those least likely to apply. DHA may designate sites for accepting applications. DHA staff will be available at these sites to assist Applicants in completing the housing application documents. If additional applications are required to attain any of the objectives established in this Policy, DHA will engage in outreach efforts directed toward potential Applicants who might fulfill the need.

---

[1]   Or by the method designated at initial application by applicants with disabilities.

3. The method used for Affirmative Marketing is described in **Procedure on Affirmative Marketing**.

D. Income Targeting Requirements

DHA will ensure that 40 percent of Families admitted to public housing in any year have incomes at or below 30 percent of the area median income. HUD establishes income limits and revises them annually to ensure that federal rental assistance is provided only to low-income families. Except under limited circumstances, the Applicant Family's Annual Income must not exceed the applicable income limit that HUD establishes and publishes for each county or Metropolitan Statistical Area (MSA) in the country. The income limits are based on the median income of the geographic area for which the limit is established, and are adjusted for family size.

E. Qualifying for Admission

It is DHA's policy to admit **only** applicants who can be verified to be qualified[2] according to all the following criteria

1. Are a Family[3], as defined in Section XIII of this policy;

2. Meet HUD requirements on citizenship or immigration status; **24 CFR § 5.5 (subpart E)**

3. Have an Annual Income (as defined in Section XI of this document) at the time of admission that does not exceed the income limits (maximum incomes by family size and housing type established by HUD) posted in DHA offices. **24 CFR § 960.102**

4. Provide acceptable documentation of Social Security numbers for all family members or do not contest their immigration status; 24 **CFR § 5.216**

5. Meet the Applicant Selection Criteria in these policies, including completing a DHA-approved pre-occupancy orientation session if required; 24 **CFR § 960.202 & 203**

6. Are not already adequately housed in any Authority-owned dwelling unit. Applicants who are listed on a current DHA lease and live in a unit meeting occupancy standards are not qualified for admission.

7. Owe no money to DHA or any other housing authority in connection with any Federal housing program;

8. Do not have a history of misusing or abusing alcohol in any way that interferes with the health, safety, or rights of others, or

   a. demonstrate to DHA's satisfaction that the family member who formerly abused alcohol longer abuses or misuses alcohol and:

   b. have successfully completed a supervised alcohol rehabilitation program licensed and approved by Texas Commission on Alcohol and Drug Abuse (TCADA)[4]; or

   c. are participating in a supervised alcohol rehabilitation program.

---

[2] The term "qualified" refers to applicants who are both eligible and able to meet the applicant selection standards. This term is taken from the 504 regs: **24 CFR § 8.3** definition of "Qualified Individual with Disability".

[3] A family can be a single person.

[4] If the Applicant entering DHA's program is from another state, DHA will verify the Applicant has successfully completed a state approved supervised program from the Applicant's state of origin

9. For <u>Multifamily Section 8 project-based units and Low Income Housing Tax Credit properties **ONLY**</u>, no assistance will be provided to any single person who is enrolled as a student in an institution of higher education, **unless that student**

    a.  Is over the age of 24,

    b.  Is a veteran of the United States Military service,

    c.  Is married,

    d.  Has a dependent child,

    e.  Is a person with disabilities receiving Section 8 assistance as of 11/30/2005,

    f.  Is individually eligible or has parents who, individually or jointly, are eligible on the basis of income to receive Section 8 assistance.

10. Screening applicants who claim mitigating circumstances

    a.  If negative information is received about an applicant, DHA shall consider the time, nature, and extent of the applicant's conduct and factors that might indicate a reasonable probability of favorable future conduct. To be considered, mitigating circumstances must be verifiable. **24 CFR § 960.203(d).**

    b.  DHA will consider whether individuals with negative behavior in their recent past can document that they have been rehabilitated.

F.   <u>Admission to Efficiency Units</u>

During the eligibility interview for the Public Housing Elderly/Disabled Sites Program, if both an efficiency unit and a 1-bedroom unit are available, the Applicant will receive the efficiency unit offer.

G.   <u>Applicant Selection Criteria</u>

1. The following list of criteria will be reviewed to determine whether Applicant Families qualify for admission. All applicants shall be screened in accordance with HUD's regulations and sound management practices. During screening, DHA requires applicants to demonstrate ability to comply with the essential provisions of the lease: **24 CFR§ 960.202 – 205**

    a.  to pay rent and other charges (e.g. utility bills) as required by the lease in a timely manner;

    b.  to care for and avoid damaging the apartment and common areas;

    c.  to use facilities and equipment in a reasonable way;

    d.  to create no health, or safety hazards, and to report maintenance needs;

    e.  not to interfere with the rights and peaceful enjoyment of others, and to avoid damaging the property of others;

    f.  not to engage in prohibited criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents or staff; and not to engage in drug-related criminal activity; and

    g.  to comply with necessary and reasonable rules and program requirements of HUD and the DHA.

2. DHA will determine each applicant family's ability to comply with the essential lease requirements in accordance with DHA's **Procedure on Applicant Screening**.

    a.  Any costs incurred to complete the application process and screening will by paid

by DHA.

    b. Applicants who owe money to DHA or any other housing authority will not be admitted to the program until their debt is paid in full. **24 CFR §960:203**

3. DHA's screening process will review the following information for each Applicant family (including certain data specific to every adult family member):

    a. Applicant's prior rental history (or other history if there is no rental history) must demonstrate the applicant family's ability and willingness to comply with necessary and reasonable standards of behavior;

    b. Applicant and must satisfy in full any overdue accounts or indebtedness owed to DHA or any other housing authority by any adult family member;

    c. The Applicant's lease must not have been terminated for cause by DHA and, if a Section 8 program participant, the Applicant's voucher must not have been terminated within the previous 5 years, except that the period shall be 7 years for a drug related eviction or termination;

    d. Applicant must have a history of reasonably good performance in meeting rent and utility payment obligations[5], and no record of eviction from housing or termination from residential programs in the past 5 years for failure to meet financial obligations;

    Former residents will not have their application rejected if the debt owed to DHA was discharged by a bankruptcy court;

    e. DHA's standards on criminal activity require that neither the Applicant nor any adult family member:

        1) Has been convicted of manufacturing or producing methamphetamine on the premises of HUD-assisted housing. HUD regulations require that DHA permanently bar any individual with such a conviction;

        2) Is subject to a lifetime registration requirement under a State sex offender registration program. HUD regulations require that DHA permanently bar any individual subject to such requirements;

        3) Has been evicted because of drug-related criminal activity from housing assisted under the U.S. Housing Act of 1937 or convicted of drug-related criminal activity for a minimum of 7 years beginning on the date of such eviction or conviction. This requirement may be waived if:

            a) The eviction/conviction was for drug use or possession and since the eviction/conviction, the relevant member of the Applicant Family has successfully completed a supervised drug rehabilitation program licensed and approved by the TCADA. To demonstrate completion, the Applicant must provide a certificate of completion issued by the TCADA agency responsible for treatment. If the Applicant entering DHA's program is from another state, DHA will verify the Applicant has successfully completed a state approved supervised program from the Applicant's state of origin; or

---

[5] Exceptions can be made when the amount of rent plus utilities exceeds 50 percent of the applicant's adjusted monthly income.

      b)  the circumstances leading to the eviction no longer exist (for example, the individual involved in drugs is no longer a member of the family).

      c)  This waiver is not available to a person who was evicted for selling, trafficking, producing or manufacturing illegal substances.

4) Is currently engaged in the illegal use of controlled substances, or engaging in conduct that presents a pattern of illegal use of controlled substances.

This requirement may be waived if the Applicant demonstrates to DHA's satisfaction that the relevant member of the Applicant Family no longer engages in the illegal use of the controlled substance(s) (see Section e.7.a) below).

5) Has a history of engaging in crimes to persons or property and/or other criminal acts that would adversely affect the health, safety or welfare of other residents or DHA personnel;

6) Has ever been convicted of arson or any crime of violence against a child.

7) Is on parole or probation for drug-related crimes, violent crimes or crimes that threaten the health, safety and/or general well being of the community. The evidence of probation or parole for the aforementioned crimes maybe waived if the following criteria applies:

      a)  An Applicant is currently on probation or parole for an offense (except regulatory exclusions) that occurred prior to the seven-year time-frame, and the Applicant can provide documentation from their probation or parole officer that all conditions of probation or parole are being met satisfactorily with no violations.

      b)  An Applicant has completed probation or parole for an offense (except regulatory exclusions) that occurred prior to the seven-year timeframe, and the Applicant can provide documentation from their probation or parole officer that all conditions of probation or parole have been met satisfactorily with no violations.

8) Applicant must have no history of misrepresenting information relative to eligibility, income, allowances, family composition or rent;

9) Applicant must have no history in the past 5 years of disturbing neighbors, destroying property, or negative living and housekeeping habits at prior and/or current residences that may adversely affect the health and welfare of other residents;

4.  For admission to a property/units targeted to vulnerable homeless applicants only, the screening criteria with respect to criminal history shall focus only on the Federally mandated exclusions of persons convicted of manufacturing methamphetamines on the premises of Federally assisted housing and persons required for their lifetimes to register as sex offenders. Beyond these two criteria, a criminal history shall not be used to exclude individuals so long as they are willing and able to refrain from violent actions that would be a threat to others.

H.   <u>Determination of Eligibility and Notification of Applicants</u>

1.  Once DHA receives a completed application, the unverified income eligibility of the Applicant will be determined by DHA.

2.  Applicant screening and verification of income, family composition, citizenship/immigration status, social security numbers, preferences and allowances will not take place until the Applicant is within estimated 120 days of receiving a unit offer. DHA's **Procedure on Verification of Information** will be used to verify all information related to eligibility for admission, receipt of subsidy and rent.

3.  Each eligible Applicant will receive written notification of his/ her eligibility and of the approximate date he or she will be offered housing. A copy of this notification will be retained in the Applicant's file.

4.  Each Applicant determined to be ineligible will be notified in writing of the reason(s) for the determination of ineligibility and the Applicant's right to submit a written request for an informal hearing within fourteen (14) calendar days of the date of the notice.

    a.  DHA will provide the Applicant with a copy of any information (including criminal history) DHA used to determine the Applicant ineligible upon written request.

    b.  The review and hearing procedures are described in DHA's **Procedure on Informal Hearings.**

5.  Applications withdrawn by the Applicant, ineligible applications, and the notice of ineligibility will be retained in DHA files for at least three (3) years following the date of the withdrawal of the application.

I.  The Preference System for Public Housing units

Preferences establish the order of applicants on the waiting list. Every applicant must still meet DHA's Selection Criteria before being offered an apartment. Preferences will be granted to applicants who are otherwise qualified and who, at the time of the offer (immediately prior to execution of a lease), are verified to meet one of the definitions of the preferences described below. **24 CFR § 960.206**

1.  Local Preferences

    There are 5 local preferences in effect. An applicant will qualify for a preference if he/she qualifies in one or more of the following categories (which are defined Chapter XIII, Definition of Terms):

    a.  Vulnerable homeless persons:   For admission to buildings/units with full supportive services only, a preference shall be granted to vulnerable homeless individuals as identified by the Metropolitan Dallas Homeless Alliance. Additionally, persons with disabilities from other DHA properties who can remain as residents with the benefit of supportive services will be given a preference to transfer to such property.

        Vacant ready units at Cliff Manor and 25 percent of all efficiency units at Brooks Manor, Park Manor, and Lakeland Manor shall be offered to vulnerable homeless persons/couples.  In addition, up to 8 units at Audelia Manor, Cedar Springs, Little Mexico, Hamptons, Villa Creek, Kingsbridge Crossing, Barbara Jordan, Roseland Townhomes and Estates, Frazier Fellowship, Wahoo and Mill City shall be made available to formerly homeless families so long as supportive services are available under a memorandum of agreement.

    b.  Formerly homeless families at Pebbles Park:  Homeless families housed at Pebbles Park whose situations have been sufficiently stabilized to qualify for

admission to public housing will be given an admission preference.

   c.  <u>Disaster Preference</u>:  Applicants displaced by a Federally declared disaster, or a disaster to a DHA-assisted unit will qualify for this preference if they apply within 90 days from the date the disaster is declared (and the waiting list is open at that time).  They will be admitted in the following order:

      1)  Existing public housing residents and HCV program participants

      2)  Applicants who were not previously living in assisted housing but who meet all other application criteria.

   d.  <u>Working Families</u>:  Applies to up to one half of any year's admissions at non-elderly developments only. (Families whose sole adult members are elderly individuals or persons with disabilities at these properties will automatically be awarded this preference).   A family will qualify for this preference if they have at least one adult member who is employed at least 30 hours per week in the 6 months prior to admission.

Any family that is admitted because they qualify for this preference and, in the 12 months following admission, voluntarily leaves employment (30 hours a week) shall be considered to have committed program fraud.  Such a family's lease will be terminated.

If there are insufficient working families to fill up to one half of the year's admissions, units will not be held vacant and non-preference waiting list families will be admitted.

   e.  <u>Mixed population building preference</u>[6]

      1)  In buildings designed for occupancy by Elderly and Disabled families (Brooks Manor, Park Manor, Cliff Manor, Audelia Manor, Forest Green Manor, Lakeland Manor), applications from single persons who qualify under the definitions of Elderly Family, Disabled Family and Displaced Person will be ranked higher than those of single persons who are not elderly, disabled or displaced.

      2)  Roseland Gardens and Lakewest Senior properties are designated for occupancy by Elderly Families.  Only families whose head, spouse or sole member is a person aged 55 years old or older may be admitted to these properties and no families with children may be admitted.

2.  Except as indicated below, these preferences are of equal weight and an applicant may qualify under any of the above categories.

3.  Families that do not qualify for one of these preferences and all applicants to multifamily properties will be categorized as "no-local-preference" applicants;

4.  Sorting among applicants with equal Local preferences will be by date and time of application or lottery number (whichever system is in effect).

J.    <u>Factors other than Preferences that affect selection of Applicants</u>

1.  <u>Accessible units</u>:  For UFAS accessible units, resident and applicant families that include a member with a disability who is verified to need the features of such units

---

[6] This preference shall not apply to units in General Occupancy properties.

shall be given preference for admission over a family that does not include a member with such a disability. Further, persons needing more features of a specific unit will be given preference over persons needing fewer features of the units available.

When a UFAS accessible unit becomes available, it shall be offered first to a current resident who needs the features of the unit and second (if there are no residents who need the features and will accept a transfer) to an applicant family with a member who needs the accessibility features.

2. Income targeting: At least 40 percent of pubic housing admissions in every year shall be families of Extremely Low Income (as defined in Chapter XIII, Definition of Terms).

3. Deconcentration: If at any time, one of DHA's public housing properties has an average tenant income greater than 15 percent higher than the Authority-wide average income, extremely low and very low income applicants will be targeted for admission until it is within 15 percent of the Authority-wide average income. This requirement neither requires nor permits the transfer of families to achieve deconcentration goals.

K. Records Management

Information received by DHA from any agency regarding drug treatment and criminal background shall be handled as required by HUD regulations.

All criminal records are maintained in a secured environment in the Applications and Assignments Division. Once the purpose for which the records were obtained is completed, the records are permanently destroyed by shredding.

L. Occupancy Guidelines:  **HUD Notice of Policy, Dec. 18, 1998 Federal Register**

1. Apartments shall be occupied by families of the appropriate size. This policy maintains the usefulness of the apartments, while preserving them from excessive wear and tear and underutilization.

**Minimum and Maximum-Number-of-Persons-Per Unit Standard**

| Number of Bedrooms | Min Persons/Unit | Max Persons/Unit |
|---|---|---|
| | (Largest Unit Size) | (Smallest Unit Size) |
| 0BR | 1 | 1 |
| 1BR | 1 | 2 |
| 2BR | 2 | 4 |
| 3BR | 3 | 6 |
| 4BR | 5 | 8 |
| 5BR | 7 | 10 |

2. The following principles govern the size of apartment for which a family will qualify. Generally two people are expected to share a bedroom. The guidance below explains how DHA determines unit sizes to be assigned, but each family, not DHA, decides exactly who shares a bedroom. Units will be so assigned that:

a. Children age four and under will be assigned a bedroom with any other child or a parent, regardless of age or sex;

b. Children between the ages of five and seventeen and adults will be assigned separate bedrooms, although the actual use of bedrooms is determined by the family.

**Appendix 550**

    c.   Two children between the ages of five and seventeen of the same sex will be assigned one bedroom;

    d.   Two children between the ages of five and seventeen of the opposite sex will be assigned separate bedrooms, <u>although the actual use of bedrooms is determined by the family.</u>

    e.   Two adults (eighteen and older) of the same sex are assigned one bedroom;

    f.   Two adults (eighteen and older) of opposite sex who are spouses or co-heads are assigned one bedroom;

    g.   Adults (eighteen and older) of opposite sex who are not spouses or co-heads of household are assigned separate bedrooms <u>although the actual use of bedrooms is determined by the family</u>

    h.   A single head of household parent will be assigned a separate bedroom from his/her child over age five, <u>although the actual use of bedrooms is determined by the family</u>.

    i.   Exceptions to the largest permissible apartment size may be made when verified to be needed as a reasonable accommodations for a person with disabilities.

    j.   An unborn child will be counted as a person in determining apartment.

    In determining unit size

    a.   DHA will count for unit size determination a child who is temporarily away from the home because the child has been placed in foster care, kinship care, or is away at school, so long as it can be documented that the child will be living with the family if they are admitted.

    b.   A live-in aide may be assigned a bedroom.  Single elderly or disabled residents with live-in aides will be assigned one or two bedroom units (not efficiency units). One bedroom units in designated elderly properties will be leased first to couples or single persons with live-in aides.

    c.   DHA reserves the right to relax these Occupancy Standards at hard-to-lease properties, subject to prior HUD approval.

    d.   The Local Housing Code of two persons per bedroom is the standard for the smallest apartment a family may be offered [7].

    e.   The largest apartment size that a family may be offered would be one bedroom per family member, considering family size and composition.

## III.    Tenant Selection and Assignment Plan

A.    <u>Organizing the Applicant Waiting List</u>

    1.   Site-based Waiting Lists

        DHA has established site-based waiting lists using the method described below in

---

[7] Individual apartments with very small or very large bedrooms or other specific situations that inhibit or encourage lower or higher levels of occupancy may be permitted to establish lower or higher occupancy levels so long as the occupancy levels will not discriminate on the basis of familial status.

paragraph C:

   a.  All mixed finance properties have site-based waiting lists as do the Section 8 multifamily and Project-based properties.

   b.  An applicant may apply for admission to up to 3 properties with open waiting lists or may request "first available unit", which will place his/her name on every waiting list that is open at the time of application and has an eligible unit.

   c.  When an applicant is processed for admission he/she will be removed from all waiting lists whenever he/she receives a unit offer or is denied admission due to ineligibility or failure to meet screening standards.

   d.  Certain public housing properties are occupied only by the transfer of eligible residents who are high performing residents, including but not limited to those participating in the Family Self Sufficiency Program.  These properties include the following:

     1)  Conner Drive,

     2)  Scattered Site homes,

     3)  Single Family Homes (TX 9-29, TX 9-30, TX 9-37, TX 9-40 and TX 9-42),

     4)  Frankford Townhomes,

     5)  Villas at Hillcrest and

     6)  any single family homes to be developed in the future

   e.  Although applications may be accepted at each authorized site, they will continue to be processed centrally and all offers will be made centrally.  Further, the central intake and placement office will monitor any increases in racial or ethnic concentration caused by site-based waiting list choices.

   f.  The preferences described earlier in this Policy will be used to establish the order of each site-based waiting list and all applicants will retain their initial date and time of application in the conversion.

**B.**   <u>Making Unit Offers to Transferees and Applicants</u>

   1.  Transferees will receive offers of housing before applicants from the waiting list.

   2.  In all offers DHA shall not discriminate on grounds of race, color, sex, religion, national origin, disability or familial status.  Also, see the DHA **Procedure on Transfers**.

   3.  Specifically, the following order of offers applies:

     a.  Emergency transfers;  **24 CFR § 966.4 (h)**

     b.  Administrative transfers in the following category order:

       1)  Priority 1: DHA actions that require a unit to be vacated.  Such actions could include renovation, revitalization, demolition or disposition of the building or complex;

       2)  Priority 2:  Reasonable accommodations for residents with disabilities  **24 CFR § 8.4**

       3)  Priority 3:  Unit too large or too small for resident family **24 CFR § 966.4(c)**

       4)  Priority 4:  Resident Incentive/ Family Self Sufficiency transfers

     c.  New Admissions from the waiting list;

   4.  To assure equal opportunity and nondiscrimination on grounds of race, color, sex,

**Appendix 552**

religion, national origin, disability or familial status, PLAN "A", the one-offer plan, will be used to make apartment offers to applicants or transferees from waiting lists. **24 CFR § 1.4(2)(ii)**

5. The first qualified applicant or transferee in sequence on the waiting list is made one offer of an apartment of appropriate size and type.

6. An applicant/transferee must accept the vacancy offered or be removed from the waiting list unless the applicant refuses the offer with Good Cause. (see DHA's **Procedure on Good Cause for Refusal of Unit Offers**)

7. DHA will first match the apartment available to the highest ranking applicant for an apartment of that size, type and special features (if any). Preferences will then be used to determine the order of selection from the waiting list. If two applicants need the same type and size of apartment and have the same local and ranking preference status, the applicant with the earliest date and time of application will receive the earlier offer. **24 CFR § 960.206(c).**

8. If an applicant family's size changes while on the waiting list, the family should contact DHA so they can be placed on the correct sublist by unit size. If DHA discovers that a change in family size means that a family cannot be processed for a certain vacant unit, the family will be transferred to a list for the correct size of unit. Some sites may not have units of the size needed by the family and the family will be permitted to select a different site or up to 3 sites.

9. When application processing is delayed because of missing verifications, a family's application will be suspended until the necessary verifications are received. This means that a person who is lower on the waiting list may receive a unit offer before a person who is higher on the waiting list. As soon as the necessary verification(s) are received, the suspended application will be placed back on the waiting list in its former position. If a delay is caused by the family not supplying the necessary information within the time frame requested, the application will be withdrawn and removed from the waiting list.

10. The applicant must accept any apartment offered within two (2) calendar days of the later of the date the offer is communicated (by phone, mail, or the method of communication designated by an applicant with disabilities) or the date they are shown the apartment or an equivalent apartment. The family will be given two opportunities to view the unit.

11. If the applicant does not accept the unit offer within two (2) calendar days, he/she will be withdrawn from the waiting list. Applicants may not re-apply for public housing for 12 months from the date when they either refused a unit offer or failed to respond to a unit offer.

12. All offers made over the phone will be confirmed by first class letter[8].

    a. If more than one apartment of the appropriate size and type is available, the first apartment to be offered will be the apartment that is or will be ready for move-in first.

    b. If two units are ready for move-in on the same day, the first apartment to be offered will be the apartment that became vacant first.

13. Names will be removed from the waiting list in accordance with DHA's **Procedure**

---

[8] Or by the communication method requested by an applicant with disabilities

           **on Removing Applications from the Waiting List**.

C.    <u>Accessible Units</u>

    1.    Before offering a UFAS accessible apartment to a non-disabled applicant, DHA will offer such units:

        a.    First, to a current public housing resident with a disability that requires the greatest numbers of the special features of the vacant apartment. **24 CFR § 8.27(1) (a)**

        b.    Second, to an eligible qualified applicant on the waiting list having a disability that requires the greatest number of special features of the vacant apartment. **24 CFR § 8.27(1) (b)**

    2.    When offering an accessible/adaptable apartment to a non-disabled applicant, DHA will require the applicant to agree to move to an available non-accessible apartment within 30 days when a current resident or an applicant with a disability needs the apartment. This requirement is also reflected in the lease. **24 CFR § 8.27 (2)**

    3.    If an applicant family includes a member with a visual or hearing impairment, the DHA will retrofit the unit to be offered to the family to make it fully accessible for the family member's disability.

D.    <u>Administering the Applicant and Transfer Waiting Lists</u>

    1.    Applications for admission and transfer to non-tax credit public housing properties will be processed centrally by the Intake and Placement Department. Initial intake, waiting list management, screening, and assigning of housing (including transfers) will be made from the Intake and Placement office[9]. Offers may be made in person, in writing or by phone from the central office.

E.    <u>Transfers</u>

DHA has three possible types of transfers: Emergency, Administrative and Resident-Incentive. The definition of each is found in the Transfer section.

    1.    Transfers take precedence over new admissions.

    2.    Tenants on the transfer list may refuse transfer offers for the "good cause" reasons cited above without losing their position on the transfer list.

    3.    Tenants who refuse a transfer offer without good cause will be removed from the transfer list and tenants whose transfers are mandatory are subject to lease termination. **24 CFR § 955.4(c)**

    4.    Tenants may use the DHA Grievance Procedure if they are refused the right to transfer or if DHA is requiring them to transfer and they do not want to do so. **24 CFR § 966.50**

F.    <u>Monitoring Tenant Selection and Assignments</u>

Detailed records of units offered, including the location, date, and circumstances for each acceptance, or refusal of an offer will be maintained and monitored using the DHA **Procedure on Monitoring Tenant Selection and Assignment**.

---

[9] The exception to this policy is that Mixed Finance properties are administered by the property managers at those sites.

**Appendix 554**

G.    Fair Housing

1.    Complaints: DHA will respond to all complaints received from Applicants and tenants who believe that their rights under the Fair Housing Act have been violated. A written record of each complaint including the date, name of the person making the complaint, names of all person(s) involved, investigation of the facts, record of the hearing, and the final decision regarding the complaint will be maintained by DHA. Each complainant will be furnished a written notice of the decision or action taken.

2.    Applicants will be advised of their right to file a complaint with the HUD Fair Housing and Equal Opportunity Office. Information outlining how to file complaints with HUD is posted in the Applications and Assignments office and at all DHA housing developments.

Source: Excerpt from *Dallas Housing Authority Admissions and Continued Occupancy Policy for Low Rent Housing, May 2010.*

**Section 8 Housing Choice Voucher Program**

DHA's policies governing eligibility, selection and admission including admission preferences for the Section 8 Housing Choice Voucher Program are included in the *Dallas Housing Authority Administrative Plan for Housing Voucher Programs,* relevant portions of which are provided below.

**Dallas Housing Authority**
**Administrative Plan for Housing Voucher Programs**
(excerpt)

**Section IV.  Admission Standards**

Applicants must meet basic eligibility requirements listed below at the time of selection from the Waiting List; otherwise, the Applicant shall be determined ineligible and removed from the list. Applicants determined ineligible shall be entitled to an informal review of their file if they request such review as described in this Administrative Plan.

**A.       Eligibility Criteria**

Income Eligibility:

A Family is eligible for assistance under the Section 8 Program if, at the time they receive assistance, the Family meets one of the standards listed below:

1.    has been continuously assisted under the 1937 Housing Act with no breaks in assistance exceeding six consecutive months;

2.    qualifies as a Very Low-Income Family (including Extremely Low-Income) under HUD'S approved Income Limits;

3.    qualifies as a Lower Income Family (other than Very Low-Income) and is displaced by Rental Rehabilitation or Development activities assisted under section 17 of the1937 Housing Act (**42 U.S.C.**), or as a result of activities under the Rental Rehabilitation Demonstration Program;

4.    qualifies as a Moderate Income Family and is displaced while living in housing covered by the Low-Income Housing Preservation and Resident Homeownership Act of 1990; or

**Appendix 555**

5. qualifies as a Low-Income Family for assistance as a non-purchasing Family residing in a HOPE 1 (public housing homeownership) or HOPE 2 (homeownership of multi-family units) Project under Section 8 of the 1937 Housing Act (**42 U.S.C.**).

General Eligibility

DHA shall consider all Applicants for admission who, at the time of eligibility determination, meet all of the following conditions and requirements established by HUD:

1. Family:  The Applicant must qualify and document their status as a Family, Elderly Family, Disabled Family, or a Single Person as defined herein.  Families of more than one person must submit documentation that they comply with DHA's definition of "Family"

2. Income:  The Family's Annual Income must be documented and may not exceed the HUD-determined Income Limits for the Family size.

3. Citizenship or Eligible Immigration Status:  DHA shall provide housing assistance to United States citizens and eligible non-citizens.  A household with at least one ineligible member is considered a "Mixed Family".  At least one Family member must be a documented U.S. citizen or eligible non-citizen.  The subsidy standard shall be based on the actual household member(s) and the housing assistance payment (HAP) will be prorated to assist only the eligible members of the Family.

4. Families must provide the following documents for each member as evidence of citizenship or eligible immigration status:

   a. United States Citizens

      1) A written and signed Declaration for each Family member;

      2) A United States passport; or

      3) Birth Certificate or Certificate of Naturalization.

   b. Non-Citizen

      1) A written and signed Declaration for each Family member;

      2) A signed Verification Consent Form; and

      3) One of the original U.S. Immigration and Naturalization Services documents listed on the Declaration.

5. Documentation of Full Time College Students of Non-Parental/Guardian Households

   DHA shall provide assistance to independent Full Time College Students of legal age or an emancipated Minor under state law that meet the following criteria as stated in **PIH Notice 2005-16**:

   a. Each college student within a household must provide a written/signed certification that the student does or does not anticipate receiving financial support from the student's parent(s) or guardian(s) and the amount of support;

   b. The college student must have established a household separate from his/her parents or legal guardians for at least one year prior to applying to housing choice voucher program and must provide evidence of separate households by supplying the address information that predates the student's application by a minimum of one year;

**Appendix 556**

    c.   The college student must not be claimed as a dependent by parent(s) or legal guardian(s) on their Internal Revenue Services (IRS) tax return; and

    d.   The college student must be income eligible.

**B.   Criminal History Check**

DHA shall conduct a criminal background check for every member of the Applicant's Family age 18 and over. DHA shall screen to ensure that no member of the Family has engaged in criminal activity that threatened the health and safety of the public or in drug related criminal activity.

DHA shall not approve admission of Applicants with criminal backgrounds whose presence may compromise the health, safety, welfare and/or peaceful enjoyment of the housing by other residents.

To avoid admitting such Applicants, DHA shall examine the activity of all applicable members of the Applicant's Family for a period of seven (7) years prior to the date of the admission into the program. DHA shall take reasonable steps to ensure that neither the Applicant nor any member of the Applicant's family who will be included on the lease:

1.   is currently using illegal drugs or have a history of engaging in the illegal use of controlled substances in the past 7 years. This requirement may be waived if the Applicant demonstrates to DHA's satisfaction that he or she no longer engages in the illegal use of the controlled substance(s). This waiver is not available to individuals engaged in selling, producing or manufacturing illegal substances.

2.   has a history of criminal activity involving crimes of violence to persons or property and/or other criminal acts that would adversely affect the health, safety or welfare of other residents or DHA personnel in the past 7 years.

3.   has a history of incarceration, parole or probation for drug related crimes, violent crimes or crimes that threaten the health, safety and/or general well being of the community in the past 7 years.

4.   DHA may waive the criminal history requirement for Applicants participating in special programs targeting special needs populations such as persons who were formerly incarcerated, homeless persons and families, veterans and/or disabled persons.

**C.   Additional HUD Eligibility Criteria**

DHA shall use the following standards to deny admission and/or terminate assistance to applicants and participants in the Section 8 Program.

1.   <u>Drug Related Eviction</u>: DHA shall review residential history to determine if the Family has lived in federally assisted housing, and deny admission if any Family member was evicted from a federally assisted housing unit for drug related or violent criminal activities within seven (7) years of the application date. An exception may be made if the member responsible for the eviction is no longer a member of the household due to long-term imprisonment or death.

2.   <u>Illegal Drug Use</u>: DHA shall deny admission to any Family if there is a reason to believe that a Family member uses or sells illegal drugs or is engaged in drug-related criminal activity; or that a Family member's use or pattern of use of illegal drugs will threaten the health, safety, or right to peaceful enjoyment of the premises by other residents. This requirement may be waived if the Family demonstrates to DHA's satisfaction that he or she no longer engages in the illegal use of the

controlled substance(s). This waiver is not available to individuals engaged in selling, producing or manufacturing illegal substances.

3. <u>Conviction for Methamphetamine Production</u>: DHA shall permanently deny admission to Families if a member has been convicted for the manufacture of Methamphetamine (also known as speed) in Federally assisted housing.

4. <u>Sex Offenders</u>: DHA shall permanently deny admission to Families if a member is required to register as a lifetime sex offender. DHA will use the services of state and private agencies to check national registers to ensure that such sex offenders are not admitted to the program.

5. <u>Alcohol Abuse</u>: DHA shall deny admission if there is reason to believe that any Family member has a pattern of abusing alcohol that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents. This requirement may be waived if the Family demonstrates to DHA's satisfaction that he or she no longer abuses or misuses alcohol and:

   a. has successfully completed a supervised alcohol rehabilitation program licensed and approved by the Texas Commission on Alcohol and Drug Abuse (TCADA) or other State program if Applicant is from another State; or

   b. is participating in a supervised alcohol rehabilitation program.

6. <u>Violent Criminal Activity</u>: DHA shall deny admission to any Family if there is reason to believe that a Family member engaged in any of the following acts:

   a. Crimes involving physical force, such as forcible rape, murder, robbery, assault and battery through use of a weapon; aggravated assault, domestic violence (as the individual who committed the violence, not the victim) or

   b. Any activity involving the use of weapons against persons or property.

7. <u>Crimes That Threaten the Peace, Health and Safety of Others</u>: DHA shall deny admission to any Family if there is reason to believe that a member of the Family has engaged in any activity that threatens the peace, health and safety of others. Such crimes include but are not limited to:

   a. Voluntary Manslaughter - the unlawful taking of human life under circumstances falling short of willful or deliberate intent to kill.

   b. Kidnapping - taking and carrying away a human being by force and against his will.

   c. Mayhem - inflicting an injury that permanently renders the victim less able to fight offensively or defensively; dismemberment or disablement of a limb; or bodily disfigurement.

   d. Burglary - unlawful entry to a building or occupied structure for the purpose of committing a crime.

   e. Arson - starting a fire or explosion with the purpose of destroying a building or occupied structure of another; or destroying or damaging any property to collect insurance for the loss.

   f. Terrorist Threats – threatening to commit any crime of violence with the purpose of terrorizing another or causing evacuation of a building, place of assembly, or facility of public transportation.

g.  Prostitution - offering to engage, agreeing to engage or engaging in sexual conduct for a fee, or soliciting another in a public place to engage with him/her in sexual conduct for hire

**D.     Other Admission Requirements - Debts Owed to DHA**

1.  Applicants to the Section 8 program must be free of any debts to DHA or another housing authority before being admitted to the program.

2.  Families participating in DHA rental assistance programs may not be indebted to DHA or another housing authority as a result of unreported income, overpaid assistance, utility reimbursement over-subsidy, vacancy loss, damages, and/or unpaid rental claims.  In some instances, participants may be  permitted to repay their debt in installments. (see Section VIII, Part C)

**E.     Public Housing and Former Program Participants**

Applicants moving from DHA public housing developments shall be screened using the same procedures as Applicants from the Waiting List.  Additionally, the record of former Section 8 participants will be researched for possible program violations.  The following violations are grounds for denial of admission:

1.  While participating in the Section 8 Program, the Family violated any Family Obligation, as set forth in **24 CFR 982.551** as amended.  An exception may be granted if the Family member who violated the Family Obligation is not a current member of the household.

2.  No Family member may have committed fraud, bribery, or any other corrupt or criminal act in connection with any federal housing program.

3.  The Family must have paid any outstanding debt owed DHA or another housing authority as a result of prior participation in any federal housing program.

4.  Families entering the Section 8 Program from DHA conventional housing programs must be in good standing under the terms of DHA lease.  The rent and other payments due under the lease must be current, and there must be no evidence of lease violations that would constitute grounds for termination.

5.  Families assessed a debt to DHA, prior to Section 8 HAP being executed on their behalf will be required to pay the public housing debt in full.  If a Family is unable to pay a debt in excess of $500, the Family may be offered the opportunity to enter into an agreement to repay the amount owed.  Under such an agreement, DHA will require payment of 25% of the debt at the execution of the agreement, and offer the Family a promissory note to repay the remaining balance within twelve (12) months.  Failure to make payments under the agreement is grounds for program termination.

6.  No Family member may have been evicted from public housing for non-payment of rent during the past 60 months.

7.  No Family member may have engaged in or threatened abusive or violent behavior toward DHA personnel during the past 60 months.

**Section V.     Admitting Applicants to the Voucher Program**

**A.     When Applications are Accepted**

Applications for the Section 8 Program are accepted periodically when the number of applicants already on the waiting list are insufficient to fill projected slots in the coming 12 months. Specific dates, times and locations for accepting non-preference applications are announced by public notice in area newspapers, on local radio stations and posted in DHA Administrative Offices.

**B.     How the Waiting List is Organized**

DHA will use a lottery system to place families on the non-preference HCV Waiting List. When using the lottery system, DHA shall post the time and date of lottery selection and the number of applicants that will be selected by the lottery. This notice shall be posted with the announcement of the opening of the Waiting List. Applicants placed on the HCV Waiting List using a lottery system will be randomly assigned a number and the application will be placed on the HCV Waiting List in order of the assigned numbers and according to DHA Preference(s). Applicants that are selected shall be informed in writing of their selection and placement on the HCV Waiting List. Applicants that are not selected by the lottery will not be placed on the Waiting List and will have to reapply when the Waiting List is re-opened.

Project-based voucher properties that were developed using Low Income Housing Tax Credits will have separate waiting lists, maintained jointly by DHA and the property owner at the property. Continuously assisted persons being relocated from public housing properties shall have first preference for admission to PBV properties. Individuals on the HCV waiting lists will have an opportunity to apply for admission to Project-based voucher properties.

**C.     The Application**

The application constitutes the basic record of Applicants applying for admission, therefore, Applicants must supply complete and true information. The application, together with all other materials relating to the Applicant's eligibility will be placed and retained in the Applicant's file.

**D.     Opening the Waiting List**

DHA may periodically open the HCV Waiting List to target only admissions for categories of Families that meet specific preferences or funding criteria. DHA may limit the number of applications accepted for targeted admissions in order to meet program objectives. DHA may target information about this limited opening to individuals in the qualifying groups.

**E.     The Walker Settlement Voucher Waiting List**

DHA will maintain a separate Special Admissions Waiting List for applicants that are eligible for the Walker Settlement Voucher program. These applicants will not be added to the HCV Waiting List but are eligible to apply for the HCV Waiting List when open. Applying for the HCV Waiting List will not affect the applicant's status on the Special Admissions Waiting List. DHA may use a lottery system to place families on the Special Admissions Walker Settlement Voucher Waiting List and may limit the number of families placed on the list. Each applicant will be randomly assigned a number based on the lottery; this number will NOT be based on the date or time of application. The applicants selected in the lottery will be placed on the Special Admissions Waiting List in

order of the randomly assigned number. DHA will not apply Preference(s) to the Special Admission Waiting List. Applicants that are selected will be informed in writing of their selection and placement on the Special Admissions Waiting List.

**F.**   **Completion of Applications**

1. Applications for the Housing Choice Voucher Program may be taken electronically, by telephone, or at designated DHA facilities. The application or pre-application constitutes the basic record of Applicants applying for admission therefore DHA shall only accept completed applications. The application, together with all other materials relating to the Applicants' eligibility shall be placed in the Applicants' file.

2. Applicants who need assistance in completing their applications or who need an alternative method of communication because of disabilities will be furnished with such assistance or alternative communication method.

**G.**   **Continuously Assisted Families/ "Special Admissions"**

Certain families are issued vouchers or project-based voucher units, outside the context of the waiting list. These families:

1. are being relocated from the Authority's public housing properties or Low Income Housing Tax Credit properties in which DHA is participating that are being demolished, undergoing substantial capital improvements, modernization, or rehabilitation or change in use, or who are being relocated pursuant to agreements already in place between DHA and the tax credit property ownership entity; or

2. have lost assisted housing or are about to lose assisted housing because a private owner receiving project-based Section 8 assistance opts out of, chooses not to renew the HAP contract or fails quality inspections, requiring that their HAP contract be cancelled; or

3. are receiving assistance in a Section 8 SRO program and the owner of the program fails inspections, intends to opt out, not renew, or reduce the program size.

A family qualifies for one of these vouchers when they receive notice that they will have to move for one of the reasons cited above. Eligible families will be issued vouchers in an order based on date on which they receive notice to move.

Generally, DHA will receive replacement housing vouchers to assist these families, but if the process of obtaining these vouchers is delayed, the families will be issued vouchers to prevent their becoming homeless.

**H.**   **Administration of the Waiting List**

1. Organization of the Waiting List

   At a minimum, the HCV Waiting List will include the following information:

   a. The Applicants' name, address, phone number;

   b. The names, relationship to head, sex and age of family members who will live in the assisted unit;

   c. The number of bedrooms for which the Family initially qualifies in accordance to DHA occupancy standards;

   d. The date and time of application or if selected by lottery, the date of lottery pull;

   e. Qualification for any local preferences, if applicable; and

      f.   Racial and ethnic designation of the Head of Household.

   2.   Updating the Section 8 Waiting List

When waiting time for applicants for housing will average more than twenty-four (24) months, DHA may confirm Applicants' continued interest in the Housing Choice Voucher Program and update the Waiting List accordingly. DHA shall contact Applicants at their last known address to determine the continued interest in the program. Applicants not responding to the inquiry within thirty (30) calendar days, or responding negatively, will be removed from the Housing Choice Voucher Waiting List. Once Applicants are removed from the Waiting List, they will be required to re-apply for assistance when the waiting list is open.

   3.   Suspension of Applications

When it becomes evident that the number of eligible Applicants on the Housing Choice Voucher Waiting List has increased to the extent that there is no reasonable prospect of housing additional Applicants within 36 months, the President and CEO may suspend the taking of further applications. Such suspension will be announced publicly. DHA may also close the Waiting List for administrative purposes. During such periods, DHA may continue to accept applications from Applicants qualifying for targeted funding for specific programs.

**H.**    **Selection from the Waiting List: The HCV Program**

Applicants that are on the HCV Waiting list prior to January 1, 2009 will be selected on a first come, first served basis according to the date and time the completed applications were received. No Admissions preferences will apply to these Applicants.

Applicants added to the HCV Waiting list after January 1, 2009 will be selected in the following order:

   1.   So long as available funding permits re-issuance of turnover vouchers, families involuntarily displaced from their current housing due to governmental action or federally designated natural disaster. Families qualifying for this preference shall have a first priority over all other Families applying for housing;

   2.   So long as available funding permits re-issuance of turnover vouchers, individuals graduating from the foster care program administered by the Texas Department of Protective and Regulatory Services shall have second priority preference over all other Families applying for housing; and

   3.   So long as available funding permits re-issuance of turnover vouchers, currently or formerly homeless applicants who are ready to move to project or tenant-based voucher housing providing permanent supportive housing to the homeless shall have third preference over all other Families applying for housing; and

   4.   Applicants that do not meet any Admissions Preferences will be considered non-preference applicants.

   5.   Within each group, applicants will be processed in lottery number order.

Applicants applying for or qualifying for a specific category of special use vouchers (e.g. Veterans Administration Supportive Housing [VASH] or Family Unification Program [FUP], or Mainstream) may be selected ahead of higher placed Applicants on the HCV Waiting List that do not qualify for the targeting funding.

The final determination of eligibility is made when the Applicants are selected from the HCV Waiting List, and the Applicants income and Family composition is verified.

1.  Documentation to Determine Eligibility:  All adult members of Applicant families are required to sign HUD's Form 9886, <u>Authorization to Release Information Privacy Act Notice</u> and disclose the social security number and card for each Family member 6 years of age and older.   If a social security number has never been issued for a Family member, the member must obtain a social security number.  The parent or guardian of a child or disabled adult must sign a certification statement for each person.

    If a Family member does not have the original Social Security card issued by the Social Security Administration, DHA will accept photo identification and verification of the number from the Social Security Office.

2.  Documentation of Familial Relationship:  Families, as defined in Section of this Plan, must be able to document their relationship as follows:

    a.   Birth Certificates;

    b.   Certificates of birth issued by a physician, midwife or hospital;

    c.   Verification of adoption

    d.   Guardianship or custody documents issued by a magistrate or judge;

    e.   Award Letters showing benefits paid on behalf of a minor or disabled adult;

    f.   Documents from school systems or doctors demonstrating kinship care;

    g.   Prior year's tax returns showing sharing of expenses;

    h.   Proof of living arrangements and sharing of expenses.

**I.     Admissions Preferences**

Admissions Preferences will not apply to families that applied prior to January 1, 2009 or special admissions applications.

**J.     Income Targeting**

In accordance with Income Targeting requirements established by HUD, seventy-five percent (75%) of the new admissions to the Section 8 Program each year from the waiting list will have incomes at or below thirty percent (30%) of the area median income (extremely low income applicants).

These applicants will be selected before other eligible applicants on an as needed basis to ensure the income targeting requirement is met.

It is not anticipated that it will be necessary to skip higher income families on the waiting list to achieve federally mandated income targeting requirements because the majority of families on the waiting list are extremely low income families.

Non-waiting list admissions are not subject to income targeting requirements.   This would include continuously assisted families displaced from public housing, families issued vouchers because of project-based program REAC failures or owner opt outs, etc.

**K.    Special Programs for the Homeless**

DHA will set aside no fewer than 25% of its turnover vouchers each month until a total of 700 is reached for competitive award of tenant-based or project-based vouchers for permanent supportive housing for the homeless.

**L.    Determination of Ineligibility and Informal Review**

1.  Review for Determination of Ineligibility:  DHA shall notify all Applicants found ineligible for assistance that they have been denied assistance. Applicants shall be notified in writing of the reason(s) for the determination and the right to request an Informal Review of the determination.  Upon request, Applicants will be allowed to review a copy of relevant documentation regarding the determination.

    a.  Applicants who wish to contest a denial of assistance shall have the opportunity to submit information and evidence to the Vice President of Voucher Programs for an Informal Review of the denial determination. An informal review does not involve a hearing – it is a review of the material present in the applicant's file to ensure that a correct decision about the applicant's status has been made.

    b.  The request for an Informal Review must be made in writing within ten (10) calendar days from the date of the written denial of assistance.  An Applicant that fails to request the Informal Review within ten (10) calendar days will be ineligible for a review and the denial shall stand. The Informal Review shall be scheduled within twenty calendar days of the Applicant's request.

    c.  The Vice President of Voucher Programs or his/her designee shall conduct the informal review of the file, and any additional information presented by the Applicant for consideration.

    d.  The outcome of the Informal Review shall be recorded in the Applicant's file.  If it is determined that the Applicant is eligible, the Family's name will be placed on the Section 8 Waiting List without loss of position during the period of ineligibility, or issued a voucher, whichever is appropriate.  The Vice President of Voucher Programs will notify the Applicant of the outcome, in writing, within five (5) calendar days after the Applicant's review.

2.  Reviews for Applicants after the Issuance of a Voucher:  The Vice President of Voucher Programs or his/her designee will review matters presented by Applicants who have been issued vouchers when no HAP has yet been paid on their behalf.

3.  Matters Not Subject to Informal Review by Applicants:  DHA shall not grant file reviews for matters to:

    a.  DHA's discretionary administrative determinations or to consider general policy issues or class grievances;

    b.  DHA's determination of Family's unit size under DHA subsidy standards;

    c.  DHA's determination not to approve leasing a unit under the Section 8 Program, or approve a proposed lease;

    d.  DHA's determinations that unit selected does not comply with HQS;

    e.  DHA's determination that a unit selected is not in accordance with HQS because of the size of the Family;

    f.  DHA's refusal to extend Families' voucher past the maximum time allowed under DHA policy;

**Appendix 564**

g.   DHA's determination of rent reasonableness;

h.   DHA's schedule of utility allowances; and

i.   DHA's decision not to approve a unit or tenancy.

DHA is not bound by any decision that is in conflict with HUD regulations or DHA policy.   The President and CEO or his/her designee, may review all decisions to ensure compliance with HUD regulations and DHA policy.

**M.   Briefing and Issuance of Vouchers**

DHA briefs all Families entering the Section 8 Housing Choice Voucher Program for the first time, relocating Families, and Families porting into Dallas (Section 8 participants that transfer from another housing authority).

1.   Conducting a Briefing:   Briefing attendance is mandatory. Applicants/tenants will receive written notification of the date, time and location of the scheduled briefing. Applicant must call 24 hours prior to the schedule briefing to reschedule. A maximum of two (2) appointments shall be granted per applicant/tenant.   Any Applicant that does not attend one of the two sessions shall have his/her application withdrawn.   Applicants whose applications are withdrawn are not entitled to an Informal review.  Briefings may be conducted in group sessions or individually.

DHA may conduct individual briefings as a reasonable accommodation if needed by persons with disabilities.

Briefings may be conducted in the evenings and on weekends to accommodate applicants who work.

2.   Briefing Information: In addition to the HUD-required information provided during the briefings, DHA strongly encourages Section 8 Families to seek housing in non-poverty areas by providing:

a.   information or access to the addresses of units available to Section 8 Families, as well as the Landlords' name, and telephone numbers;

b.   information on individual units available for lease;

c.   individual counseling and information about public transportation to view units;

d.   information on neighborhood amenities, including information on crime, schools, day care, health care and public transportation; and

e.   counseling to Families on program matters, and in instances of alleged program discrimination.

**N.   Promoting Housing Opportunities**

DHA seeks to increase the participation of Landlords with units located outside of areas with a high concentration of low-income Families.   To accomplish this goal, DHA conducts outreach to Landlords with properties in low-poverty areas and encourages them to accept voucher holders.  The local media, professional real estate organizations, Apartment Listing Network and the Cole Indices are used as resources to increase the interest of private Landlords within DHA jurisdiction.

As part of this outreach effort, DHA prepares and distributes information packets, brochures, leaflets, and handouts outlining the benefits of the Section 8 Program. DHA provides Landlords with information regarding HUD regulations, Section 8 Program guidelines, fair housing, Housing Quality Standards, and other Landlord related issues.

In addition, DHA conducts Landlord workshops, corporate briefings, property visits, and initiates telephone contact with Landlords owning housing units in low-poverty areas.

A low poverty census tract is defined as a census track where the poverty rate is at or below 17.8%, or at or below the overall poverty rate for the principal operating area of DHA, whichever is greater.   DHA uses the most recent decennial Census data to determine the poverty rate and provides a listing of the eligible census track areas to landlords and to clients in the briefing packets and in vacancy listings.  This is the same targeting required by the Federal Court in the Walker settlement agreement.

The methodology used in promoting de-concentration of Section 8 Housing Choice Voucher holders is outlined in the Landlord Services Procedures

**N.**     **The Term of Vouchers**

Section 8 vouchers expire 90 days from the date of issuance. DHA will not extend the voucher term except as a reasonable accommodation to persons with disabilities.

Class Members participating in the Walker Settlement Program and actively searching for housing in Predominantly White Areas will be given one hundred twenty (120) days to find suitable housing.

Families shall be considered successful in their housing search should they submit a Request for Tenancy Approval (RFTA) prior to the expiration date on the Section 8 Voucher.  The Family may submit only one RFTA at a time.  Once the documents are received, DHA shall suspend (i.e., toll) the term of the Family's voucher.  Should the Family be required to resume their search for housing (e.g., because the unit selected fails inspection), the Family shall be allowed to resume their search for housing using the remainder of the time left on the voucher.

The voucher shall be withdrawn if the Family fails to lease suitable housing during the term of the voucher.  Expiration or withdrawal of a voucher does not preclude the Family from completing a new application for the HCV Waiting List, provided DHA has not suspended taking applications for the Section 8 program.

Source: Excerpt from *Dallas Housing Authority Administrative Plan for Housing Voucher Programs, May 2010.*

## 6.2     Financial Resources

| Sources | Original Funding | Estimate of Remaining Funding as of January 1, 2011 | Planned Use |
|---|---|---|---|
| **Public Housing Resources** | | | |
| **Federal Resources – 2011 Grants** | | | |
| Public Housing Operating Fund | NA | $18,612,000 | public housing operations |
| Public Housing Capital Fund | NA | $6,492,000 | public housing capital improvements |
| **Subtotal – 2010 Grants** | | **$25,104,000** | |
| | | | |
| **Public Housing Dwelling Rental Income** | | | |
| Rental Income | NA | **$8,050,000** | public housing operations |
| | | | |
| **Other Income** | | | |
| Excess Utilities | NA | $500,000 | public housing operations |
| Non-Dwelling | NA | $60,000 | public housing operations |
| Miscellaneous Charges | NA | $195,000 | public housing operations |
| Late Charges | NA | $40,000 | public housing operations |
| **Subtotal Other Income** | | **$795,000** | |
| | | | |
| **Federal Resources  - Prior Year Grants** | | | |
| Capital Fund Program | $6,491,782 | $6,491,782 | public housing capital improvements |
| 2009 ARRA Formula Funds TXS00950109 | $8,815,293 | $800,000 | public housing capital improvements |
| 2009 Capital Fund Program | $6,491,782 | $5,900,000 | public housing capital improvements |
| 2008 Capital Fund Program TX21P00950108 | $6,964,193 | $2,500,000 | public housing capital improvements |
| 2007 Resident Opportunity and Self Sufficiency Program – Family and Homeownership TX009REF072A007 | $500,000 | $125,000 | first-time homebuyer program for families residing in FSS designated sites |
| 2009 Resident Opportunity and Self Sufficiency Program TX009RFS183A009 | $54,796 | $35,000 | service delivery model for public housing |
| 2009 Resident Opportunity and Self Sufficiency Program | $471,094 | $425,000 | service delivery model for public housing |
| 2009 HOPE VI Program | $22,000,000 | $22,000,000 | revitalization of the Turner Courts public housing community |
| 1998 HOPE VI Program TX21URD009I198 | $34,907,186 | $2,944,125 | revitalization of the Roseland Homes community |
| 1991 Public Housing Development Program TX21P009033 | $8,992,440 | $399,543 | development of public housing units |

**Appendix 567**

| Sources | Original Funding | Estimate of Remaining Funding as of January 1, 2011 | Planned Use |
|---|---|---|---|
| 1992 Public Housing Development Program TX21P009034 | $5,450,150 | $5,450,150 | development of public housing units |
| 1992 Public Housing Development Program TX21P009038 | $1,400,000 | $1,105,194 | development of public housing units |
| 1991 – 1992 Public Housing Development Program TX21P009042 | $2,507,900 | $999,410 | development of public housing units |
| **Subtotal – Prior Year Grants** | | **$49,175,204** | |
| | | | |
| **Total Resources for Public Housing** | | **$83,124,204** | |
| | | | |
| **Section 8 Program Resources** | | | |
| Annual Contributions for Section 8 Tenant-Based Assistance | NA | $140,000,000 | payments to landlords |
| Section 8 Tenant-Based Administration Fee | NA | $11,000,000 | administrative fee |
| Section 8 Disability Voucher | NA | $700,000 | payments to landlords |
| Section 8 Disability Voucher | NA | $60,000 | administrative fee |
| Section 8 VASH Vouchers | | $700,000 | payments to landlords |
| Section 8 VASH Vouchers | | $60,000 | administrative fee |
| Section 8 Single Room Occupancy | NA | $250,000 | payments to landlord - Prince of Wales Apartments |
| Section 8 Shelter Plus Care | NA | $150,960 | payments to landlord – Hillcrest House |
| **Total Resources for Section 8 Program** | | **$152,920,960** | |
| | | | |
| **Total Resources** | | **$236,045,164** | |

**6.3     Rent Determinations**

<u>**Public Housing**</u>

DHA's policies governing rent determination for the public housing program are included in the *Dallas Housing Authority Admissions and Continued Occupancy Policy for Low Rent Housing,* relevant portions of which are provided below.

**Dallas Housing Authority Admissions and
Continued Occupancy Policy for Low Rent Housing**
(excerpt)

<u>X.  Flat Rents (Public Housing only)</u>

A.     <u>Flat Rents</u>

    1.   Flat rents are market-based rents.

    2.   Flat rents vary by apartment size and type and also by development location.

    3.   Flat rents do not have a utility allowance.  An apartment with resident-paid utilities will have a lower flat rent than the same apartment with project-paid utilities.

    4.   DHA will take the following information into account in developing its Flat Rent Schedule:

        a.   Rents of non-assisted rental units in the immediate neighborhood

        b.   Whether utilities are resident-paid or project-paid

        c.   Size of DHA's units compared to non-assisted rental units from the neighborhood

        d.   Age, type of apartment and condition of DHA's units compared to non-assisted rental units from the neighborhood

        e.   Land use in the surrounding neighborhood

        f.   Amenities (childcare, laundry facilities, playgrounds, community rooms, social services, education/ job training programs, etc.) at DHA's properties and in the surrounding neighborhood

        g.   Crime in DHA's developments and the surrounding neighborhood

        h.   Quality of local schools serving each DHA development

        i.   Availability of public transportation at each DHA development

        j.   Availability of accessible units for persons with mobility impairments.

B.     <u>Annual Update of Flat Rents</u>

    1.   DHA shall review the Flat Rent structure annually and adjust the rents as needed.

    2.   Flat rents may either be increased or decreased based on the market rents as described above.

    3.   When a resident chooses Flat rent, his/her rent shall be adjusted only at the next annual reexamination rather than at the point the Flat rent may change.

C.     <u>Choice of Rent</u>

    1.   Once each year, beginning with admission and continuing at each annual

**Appendix 569**

reexamination, each family is offered a choice between paying the income-based rent and the Flat rent applicable to the unit they will be occupying.

2. Because of the way the Federal law is written, choice of Flat rent may only be offered at admission and annual reexamination.

D. Recertification of Families on Flat Rents

Families paying flat rents are required to recertify income only every three years, rather than annually, although they are still required to participate in an Annual Reexamination in order to ensure that apartment size is still appropriate and Community Service requirements (if applicable) are met. **24 CFR § 960.257 (a)(2)**

E. Hardship Reduction in Flat Rents

1. If a resident who opted for Flat Rent experiences a decrease in income, Management will perform an Interim Reexamination of Income.

2. If the reduction in income will last more than 30 days, Management will reduce rent to the income-based rent based on verified income information. **24 CFR § 960.253 (f)**

3. If the Resident's income rises again before the annual reexamination, the resident must pay the income-based rent until the next annual reexamination.

## XI. Determining Income and Rent

A. Annual Income **24 CFR § 5,609**

DHA shall use HUD's definition of Annual Income. Should this definition be revised, HUD's definition, rather than that presented below shall be used.

Annual income is the anticipated total income from all sources, including net income derived from assets, received by the family head and spouse (even if temporarily absent) and by each additional family member including all net income from assets for the 12-month period following the effective date of initial determination or reexamination of income, exclusive of income that is temporary, non-recurring, or sporadic as defined below, or is specifically excluded from income by other federal statute. Annual income includes but is not limited to:

1. The full amount, before any payroll deductions, of wages and salaries, overtime pay, commissions, fees, tips and bonuses, and other compensation for personal services;

2. The net income from operation of a business or profession, including any withdrawal of cash or assets from the operation of the business. Expenditures for business expansion or amortization of capital indebtedness shall not be used as deductions in determining the net income from a business. An allowance for the straight line depreciation of assets used in a business or profession may be deducted as provided in IRS regulations. Withdrawals of cash or assets will not be considered income when used to reimburse the family for cash or assets invested in the business;

3. Interest, dividends, and other net income of any kind from real or personal property. Expenditures for amortization of capital indebtedness shall not be used as deductions in determining net income. An allowance for the straight line depreciation of real or personal property is permitted. Withdrawals of cash or assets will not be considered income when used to reimburse the family for cash or assets invested in the property;

4. If the Family has Net Family Assets in excess of $5,000, Annual Income shall include the <u>greater of</u> the actual income derived from all Net Family Assets or a

percentage of the value of such Assets based on the current passbook savings rate as determined by HUD;

5. The full amount of <u>periodic</u> payments received from social security, annuities, insurance policies, retirement funds, pensions, disability or death benefits, and other similar types of periodic receipts [See B. 14. below for treatment of delayed or deferred periodic payment of social security or supplemental security income benefits.];

6. Payments in lieu of earnings, such as unemployment and disability compensation, worker's compensation, and severance pay (But see paragraph B. 3. below concerning treatment of lump-sum additions as Family assets.);

7. All welfare assistance payments (Temporary Assistance to Needy Families, General Assistance) received by or on behalf of any family member;

8. Periodic and determinable allowances, such as alimony and child support payments, and regular cash and non-cash contributions or gifts received from agencies or persons not residing in the dwelling made to or on behalf of family members; and

9. All regular pay, special pay, and allowances of a family member in the Armed Forces. (See paragraph B. 7. below concerning pay for exposure to hostile fire.)

B.   <u>Excluded Income</u>   **24 CFR § 5.609**

Annual Income does not include the following:

1. Income from the employment of children (including foster children) under the age of 18 years;

2. Payments received for the care of foster children or foster adults (usually individuals with disabilities, unrelated to the resident family, who are unable to live alone);

3. Lump sum additions to family assets, such as inheritances, insurance payments (including payments under health and accident insurance, and worker's compensation), capital gains, one-time lottery winnings, and settlement for personal property losses (but see paragraphs 4 and 5 above if the payments are or will be periodic in nature);

   (See paragraphs 14. and 15 below for treatment of delayed or deferred periodic payments of social security, supplemental security, or Veterans Administration income benefits.)

4. Amounts received by the family that are specifically for, or in reimbursement of, the cost of medical expenses for any family member;

5. Income of a live-in aide, provided the person meets the definition of a live-in aide;

6. The full amount of student financial assistance paid directly to the student or the educational institution;

7. The special pay to a family member serving in the Armed Forces who is exposed to hostile fire;

8. Certain amounts received that are related to participation in the following programs:

   a. Amounts received under HUD funded training programs (e.g. Step-up program: excludes stipends, wages, transportation payments, child care vouchers, etc. for the duration of the training);

    b.  Amounts received by a person with disabilities that are disregarded for a limited time for purposes of Supplemental Security Income and benefits that are set aside for use under a Plan to Attain Self-Sufficiency (PASS);

    c.  Amounts received by a participant in other publicly assisted programs that are specifically for, or in reimbursement of, out-of-pocket expenses incurred (special equipment, clothing, transportation, child care, etc.) to allow participation in a specific program;

    d.  Incremental earnings and/or benefits resulting to any family member from participation in qualifying state of local employment training program (including training programs not affiliated with the local government), and training of family members as resident management staff. Amounts excluded by this provision must be received under employment training programs with clearly defined goals and objectives, and are excluded only for a limited period as determined in advance by the DHA;

9.  Temporary, non-recurring, or sporadic income (including gifts);

10.  Reparation payments paid by foreign governments pursuant to claims filed under the laws of that government by persons who were persecuted during the Nazi era;

11.  Earnings in excess of $480 for each full-time student 18 years old or older (excluding the head of the household and spouse);

12.  Adoption assistance payments in excess of $480 per adopted child;

13.  The incremental earnings and benefits to any resident 1) whose annual income increases due to employment of a family member who was unemployed for one or more years previous to employment; or 2) whose annual income increases as the result of increased earnings by a family member during participation in any economic self sufficiency or other job training program; or 3) whose annual income increases due to new employment or increased earnings of a family member during or within six months of receiving state-funded assistance, benefits or services, will not be increased during the exclusion period. For purposes of this paragraph, the following definitions apply:

    a.  State-funded assistance, benefits or services means any state program for temporary assistance for needy families funded under Part A of Title IV of the Social Security Act, as determined by the DHA in consultation with the local agencies administering temporary assistance for needy families (TANF) and Welfare-to-Work programs.  The TANF program is not limited to monthly income maintenance, but also includes such benefits and services as one-time payments, wage subsidies and transportation assistance – provided that the total amount over a six-month period is at least $500.

    b.  During the 12 month period beginning when the disabled member first qualifies for a disallowance, the DHA must exclude from Annual Income any increase in income as a result of employment.  For the 12 months following the exclusion period, 50% of the income increase shall be excluded.

    c.  Regardless of how long it takes a resident to work for 12 months (to complete the first exclusion) or the second 12 months (to qualify for the second exclusion), the maximum period for the disallowance (exclusion) is 48 months.

    d.  The disallowance of increased income under this section is only applicable to current disabled residents and will not apply to applicants who have begun

working prior to admission (unless their earnings are less than would be earned working ten hours per week at minimum wage, under which they qualify as unemployed).

14. Deferred periodic payments of supplemental security income and social security benefits that are received in a lump sum payment;

15. Deferred payments of VA disability benefits that are received in a lump sum payment;

16. Amounts received by the family in the form of refunds or rebates under state or local law for property taxes paid on the dwelling unit;

17. Amounts paid by a State agency to a family with a developmentally disabled family member living at home to offset the cost of services and equipment needed to keep the developmentally disabled family member at home;

18. Amounts specifically excluded by any other Federal Statute from consideration as income for purposes of determining eligibility or benefits under a category of assistance programs that includes assistance under the United States Housing Act of 1937. (A notice will be published by HUD in the Federal Register identifying the benefits that qualify for this exclusion. Updates will be published and distributed when necessary.)

The following is a list of benefits excluded by other Federal Statute:

a. The value of the allotment provided to an eligible household for coupons under the Food Stamp Act of 1977; **7 USC 2017 (h)**

b. Payments to volunteers under the Domestic Volunteer Service Act of 1973; **42 USC 5044 (g), 5088**

Examples of programs under this Act include but are not limited to:

— the Retired Senior Volunteer Program (RSVP), Foster Grandparent Program (FGP), Senior Companion Program (SCP), and the Older American Committee Service Program;

— National Volunteer Antipoverty Programs such as VISTA, Peace Corps, Service Learning Program, and Special Volunteer Programs;

— Small Business Administration Programs such as the National Volunteer Program to Assist Small Business and Promote Volunteer Service to Persons with Business Experience, Service Corps of Retired Executives (SCORE), and Active Corps of Executives (ACE).

c. Payments received under the Alaska Native Claims Settlement Act; **43 USC.1626 (a)**

d. Income derived from certain submarginal land of the United States that is held in trust for certain Indian tribes; **25 USC. 459e**

e. Payments or allowances made under the Department of Health and Human Services' Low-Income Home Energy Assistance Program; **42 USC 8624 (f)**

f. Payments received under programs funded in whole or in part under the Job Training Partnership Act; **29 USC 1552 (b)**

g. Income derived from the disposition of funds of the Grand River Band of Ottawa

Indians;  P. L. 94-540, 90 State 2503-04

**h.**  The first $2000 of per capita shares received from judgment funds awarded by the Indian Claims Commission or the Court of Claims **25 USC 1407-08**, or from funds held in trust for an Indian Tribe by the Secretary of Interior; and **25 USC 117b, 1407**

i.  Amounts of scholarships funded under Title IV of the Higher Education Act of 1965 including awards under the Federal work-study program or under the Bureau of Indian Affairs student assistance programs. **20 USC 1087 uu**

— Examples of Title IV programs include but are not limited to: Basic Educational Opportunity Grants (Pell Grants), Supplemental Opportunity Grants, State Student Incentive Grants, College Work Study, and Byrd Scholarships.

j.  Payments received from programs funded under Title V of the Older Americans Act of 1965: **42 USC 3056 (f)**

Examples of programs under this act include but are not limited to: Senior Community Services Employment Program (CSEP), National Caucus Center on the Black Aged, National Urban League, Association National Pro Personas Mayores, National Council on Aging, American Association of Retired Persons, National Council on Senior Citizens, and Green Thumb.

k.  Payments received after January 1, 1989 from the Agent Orange Settlement Fund or any other fund established in the In Re Agent Orange product liability litigation;

**l.**  Payments received under Maine Indian Claims Settlement Act of 1980;  **P.L. 96-420,94 Stat. 1785**

m.  The value of any child care provided or arranged (or any amount received as payment for such care or reimbursement for costs incurred for such care) under the Child Care and Development Block Grant Act of 1990;  **42 USC 9858q**

n.  Earned income tax credit refund payments received on or after January 1, 1991 **26 USC 32 (j)**

o.  Payments by the Indian Claims Commission to the Confederated Tribes and Bands of Yakima Indian Nation or the Apache Tribe of Mescalero Reservation;

p.  Allowances, earnings and payments to AmeriCorps participants under the National and Community Service Act of 1990;

q.  Any allowance paid under the provisions of **38 U.S.C. 1805** to a child suffering from spina bifida who is the child of a Vietnam veteran;

r.  Any amount of crime victim compensation (under the Victims of Crime Act) received through crime victim assistance (or payment or reimbursement of the cost of such assistance) as determined under the Victims of Crime Act because of the commission of a crime against the applicant under the Victims of Crime Act;

s.  Allowances, earnings, and payments to individuals participating in programs under the Workforce Investment Act of 1998;

t.  Exclusion of Tax Rebate from the IRS under Economic Stimulus Act;

u.  Exclusion of income earned under temporary employment with the U.S. Census

**Appendix 574**

Bureau; and

    v.   Kinship Guardian assistance payments and other guardianship care payments;

C.    <u>Anticipating Annual Income</u>  **24 CFR § 5.609(d)**

If it is not feasible to anticipate income for a 12-month period, the Authority may use the annualized income anticipated for a shorter period, subject to an Interim Adjustment at the end of the shorter period. (This method would be used for school bus drivers or classroom aides who are only paid for 9 months, or for tenants receiving unemployment compensation.)

D.    <u>Adjusted Income</u>  **24 CFR § 5.611**

Adjusted Income (the income upon which income-based rent is based) means Annual Income less the following deductions:

<u>All Families Eligible if Verified:</u>

1.    Child Care Expenses — A deduction of amounts anticipated to be paid by the family for the care of children under 13 years of age for the period for which Annual Income is computed, BUT ONLY when such care is necessary to enable a family member to be gainfully employed, to seek employment or to further his/her education. Amounts deducted must be unreimbursed expenses and shall not exceed: (a) the amount of income earned by the family member released to work; or (b) an amount determined to be reasonable by DHA when the expense is incurred to permit education or to seek employment.

2.    Dependent Deduction — An exemption of $480 for each member of the family residing in the household (other than the head of household, or spouse, Live-in Aide, foster adult or foster child) who is under eighteen years of age or who is eighteen years of age or older and disabled, or a full-time student.

3.    Work-related Disability Expenses — a deduction of unreimbursed amounts paid for attendant care or auxiliary apparatus expenses for family members with disabilities where such expenses are necessary to permit a family member(s), including the disabled member, to be employed.  In no event may the amount of the deduction exceed the employment income earned by the family member(s) freed to work.

Equipment and auxiliary apparatus may include but are not limited to:  wheelchairs, lifts, reading devices for the visually impaired, and equipment added to cars and vans to permit their use by the disabled family member.  Also included would be the annualized cost differential between a car and the cost of a van required by the family member with disabilities.

    a.    For non-elderly families and elderly or disabled families without medical expenses:  the amount of the deduction equals the cost of all unreimbursed expenses for work-related disability expense less three percent of Annual Income, provided the amount so calculated does not exceed the employment income earned.

    b.    For elderly or disabled families with medical expenses: the amount of the deduction equals the cost of all unreimbursed expenses for work-related disability expense less three percent of Annual Income (provided the amount so calculated does not exceed the employment income earned) PLUS medical expenses as defined below.

<u>Only elderly and disabled families eligible, when verified</u>:

4.  Medical Expense Deduction — A deduction of unreimbursed Medical Expenses, including insurance premiums, anticipated for the period for which Annual Income is computed.

Medical expenses include but are not limited to:  services of physicians and other health care professionals, services of health care facilities, health insurance premiums (including the cost of Medicare), prescription and non-prescription medicines, transportation to and from treatment, dental expenses, eyeglasses, hearing aids and batteries, attendant care (unrelated to employment of family members), and payments on accumulated medical bills.  To be considered by DHA for the purpose of determining a deduction from income, the expenses claimed must be verifiable.

a.  For elderly or disabled families without work-related disability expenses:  The amount of the deduction shall equal total medical expenses less three percent of annual income.

b.  For elderly or disabled families with both work-related disability expenses and medical expenses: the amount of the deduction is calculated as described in paragraph 3 (b) above.

5.  Elderly/Disabled Household Exemption — An exemption of $400 per household. See Definitions in the next section.

6.  Optional Deductions/Exemptions:  DHA may amend this policy and grant further deductions.  Any such deduction would be noted here.  HUD does not increase operating subsidy to offset additional deductions.  At the time of adoption, no optional deductions are in effect.

E.  <u>Computing Income-based Rent and Choice of Rent in Public Housing</u>  **24 CFR § 5.628**

1.  Total Tenant Payment (TTP)

a.  The first step in computing income-based rent is to determine each family's Total Tenant Payment or TTP.

b.  Then, if the family is occupying an apartment that has tenant-paid utilities, the Utility Allowance is subtracted from the Total Tenant Payment.

c.  The result of this computation, if a positive number, is the Tenant Rent.

d.  If the Total Tenant Payment minus the Utility Allowance is a negative number, the result is the utility reimbursement, which is paid directly to the utility company by the DHA.

2.  Total Tenant Payment (income-based rent) is the higher of:

a.  30% of adjusted monthly income;

or

b.  10% of monthly income;

but never less than the

c.  Minimum Rent of $50;

and not more than the

d.  Flat Rent, if chosen by the family

3. Tenant rent

    a. Tenant rent is computed by subtracting the utility allowance for tenant supplied utilities (if applicable) from the Total Tenant Payment.

    b. In developments where the DHA pays all utility bills directly to the utility supplier, Tenant Rent equals Total Tenant Payment. **24 CFR § 5.634**

4. Minimum Rent

    a. The public housing Minimum Rent shall be $50 per month.

    b. The multifamily housing Minimum rent shall be $25 per month

5. Minimum rent hardship exemption

A hardship exemption shall be granted to residents who can document that they are unable to pay the $50 because of a long-term hardship (over 90 days). Examples of situations under which residents would qualify for the hardship exemption to the minimum rent are limited to the following: **24 CFR § 5.630**

    a. The family has lost eligibility for or is applying for an eligibility determination for a Federal, State or local assistance program;

    b. The family would be evicted as result of the imposition of the minimum rent requirements;

    c. The income of the family has decreased because of changed circumstances, including loss of employment;

    d. A death in the family has occurred;

6. Being exempted from paying minimum rent does not mean the family automatically pays nothing. Instead, the family is required to pay the greater of 30% of Adjusted Monthly Income or 10 percent of monthly income.

7. Choice of Rent (public housing only)

At initial certification and at each subsequent annual reexamination the resident shall be offered a choice of paying either the income-based rent or the Flat Rent applicable to the apartment they will be occupying.

Source: Excerpt from *Dallas Housing Authority Admissions and Continued Occupancy Policy for Low Rent Housing, May 2010.*

**Appendix 577**

<u>**Section 8 Housing Choice Voucher Program**</u>

DHA's policies governing rent determination for the Section 8 Housing Choice Voucher Program are included in the *Dallas Housing Authority Administrative Plan for Housing Voucher Programs*, relevant portions of which are provided below.

***Dallas Housing Authority***
***Administrative Plan for Housing Voucher Programs***
(excerpt)

**Section VI.     Payment and Subsidy Standards**

DHA shall determine the Family's unit size and Family contribution of housing cost in accordance with HUD regulations, as revised, using the verification hierarchy outlined in HUD's regulations and verification guidance.  The Applications and Assignments division will determine the initial income and Family composition.

**A.     Payment Standards**

1. DHA will establish program Payment Standards by balancing the competing needs of setting Payment Standards as low as possible to assist as the highest number of Families within available funding, while still setting the Standards high enough to ensure that Families can find and lease housing in non-impacted neighborhoods.  The range of possible Payment Standards is between 110 percent and 90 percent of HUD's Fair Market Rent standard.  HUD has established a payment standard equal to 125% of the FMR for Class Members participating in the Walker Settlement Program utilizing the vouchers in predominantly white areas.

2. DHA will monitor the effect of the Payment Standard it sets by tracking the percentage of families who lease housing within the time limit established for their voucher (the "success rate") and the locations where families actually lease.  If the success rate decreases or the pattern of leasing shows families leasing fewer units in non-impacted neighborhoods, staff will recommend an increase in the Payment Standard to the Board of Commissioners.

3. The Payment Standard for Housing Choice Vouchers shall be determined annually following the publication of the final Fair Market Rent (FMR) by HUD and shall be made effective January 1 of the following year for all existing Housing Choice Voucher Families including Families in the Walker Settlement Voucher program.

4. The payment standard for new and relocating Walker Settlement Vouchers and Housing Choice Voucher Participants shall be made effective the first of the month following HUD's publication.  The payment standard may also be changed periodically through a resolution of the Board of Commissioners.

5. The President and CEO shall determine the payment standard with the following criteria and/or objectives:

    a. DHA shall consider the amount received from HUD in its Annual Contributions Contract;

    b. DHA shall avoid concentration of Section 8 Families in high poverty areas.

    c. DHA shall seek to provide housing opportunities in all areas of its jurisdiction with particular emphasis on non-poverty areas; and

**Appendix 578**

d.   DHA shall ensure that the majority of Families are not paying more than 40% of their income for their housing cost.

DHA shall analyze its rental market quarterly to ensure these objectives are met. DHA will ensure that the applicable payment standards are distributed to pertinent staff

**B.   Family Subsidy Standard at Admission**

1.   DHA shall exercise prudence in the determination and administration of housing Subsidy Standards.   Maximum Subsidy Standards for an eligible Family is determined based upon the members included on the application.  All adult members must appear in person with photo identification.

2.   Adult members that are not identified at the time of the application will not be considered as a member of the assisted household unless they are the spouse of the family head (and were married after the application was received) or were minors at the time of application who have become adults while on the waiting list.  Children added by birth, adoption or court awarded custody between the time of application and admission will be added to the household when verification of the birth, adoption or court awarded custody to a family member listed on the application is provided to DHA.

3.   The Head of Household will be required to provide legal documentation to DHA verifying that the adult member being considered for addition is a spouse. All individuals added to the household are subject to HUD's eligibility and DHA's suitability standards.  DHA will not approve the addition of adults to a client family if the addition will increase the voucher size for which the family qualifies or if the adults do not pass the criminal history screening.

4.   The Vice President of voucher programs shall review requests for additions to the household that are not described in the paragraph above to ensure additions are within DHA's policy.   DHA will provide the Head of Household with written notification of the Director's determination within ten calendar days of the Family's request.  Families denied the opportunity to add an individual to their household will be provided with the reason for denial.

**C.   Live-in Aides**

1.   DHA's decision about whether or not to permit the addition of a Live-in Aide to a voucher household shall be based upon verification that:

a.   The person to be assisted by the live-in aide qualifies as an Individual with a disability as defined at **24 CFR part 8.3**; and

b.   A qualified medical practitioner verifies that the live-in aide is needed because of the disability; and

c.   That the individual proposed as the Live-in Aide possesses the skills needed to provide the services needed by the person with a disability.

d.   Dallas Housing Authority shall notify the Family of the decision to approve or deny the Live-in Aide in writing within 10 business days from the date all required documentation is provided

2.   The Family and Live-in Aide will be required to submit a certification that the Live-in Aide is (1) not obligated to the support of the person(s) needing the care, and (2) would not be living in the unit except to provide the necessary supportive services.

3. Under this guideline, a spouse or boyfriend/girlfriend cannot be a live-in aide (since they would be living in the unit anyway).

4. A live-in aide cannot have a job outside the unit or another place to live since he/she is verified to be necessary to provide care on a live-in basis.

5. Live-in Aides are required to attend the annual recertification appointments with the Head of Household and DHA must determine annually the eligibility of the household for a Live in Aide. .

6. Although family members may be qualified to perform the services needed by the individual with disabilities, a live-in aide is not a family member, his/her income is not counted for eligibility or rent purposes, and the live-in aide cannot receive the voucher as a "remaining member of a tenant/client family".

7. The Live-In Aide must meet DHA's screening criteria. Further, the live-in aide must not currently owe rent or other amounts to DHA or any other housing authority in connection with the HCV or Public Housing programs.

**D.     Family Subsidy Standard during participation**

1. DHA will permit the addition of minors who are born to or adopted by a family member listed on the lease and voucher, or when a Court awards custody to a family member listed on the lease and voucher although such additions to the family must be reported within 10 days of occurrence;

2. DHA will not permit the addition of adult family members to the family unless such addition will not increase the unit size for which the family qualifies;

3. DHA shall review the composition of the household at each annual recertification. If the addition of a family member results in overcrowding (more than two persons per living/sleeping room, DHA will notify the Head of Household of the need to move and issue the Family another Housing Choice Voucher at the termination of the family's lease.

4. The standards applicable to adding a Live-in Aide to the household (who is, by definition a household member but not a family member) during the family's participation are the same as those listed under "Family Subsidy Standards at Admission"

**E.     Occupancy Standards**

In an effort to administer federal funds responsibly, DHA takes a conservative and stringent approach in determining the unit size for the voucher holder. DHA shall issue a voucher for the smallest sized unit possible using the following standards:

1. At least one person must occupy each bedroom.

2. A maximum of two (2) persons may occupy a bedroom. Children will not be assigned a separate bedroom until they are 5 years of age. Children 4 and under may be assigned a bedroom with someone of the opposite sex.

3. Persons of opposite sex will not be assigned a single bedroom, unless they are married couples or children under 4 years of age. A single parent and child may occupy the same bedroom until the child reaches 5 years of age.

4. A bedroom may be allocated for an approved Live-In Aide to provide continuous medical assistance to a Disabled Family member. Since a live-in aide is one person, no space will be considered for the Live-In Aide's Family.

**Appendix 580**