5.  A bedroom will not be allocated to house furniture and a bedroom will not be allocated for medical equipment unless it is verified necessary for a resident with a disability. DHA will conduct an inspection to determine that the size and type of medical equipment verified to be needed by the participant with a disability warrants an additional bedroom. For example, a participant will not be approved for an extra bedroom to house a wheelchair.

**F.    Unit Size Selected by Voucher Holder**

The family may select a dwelling unit of a different size than that listed on the Voucher; however, the unit must meet housing quality standards. The unit must provide adequate space so that there are no more than two family members for each living or sleeping room in the unit.

The Housing Assistance Payment is based upon the lower of the Payment Standard for family unit size or the Payment Standard for the unit size rented by the family

**G.    Remaining Family Member**

1.  Under certain circumstances the original Family composition may be altered when the Head of Household leaves the unit. A Remaining Family Member, as defined by HUD, is an adult Family member already in the household at the time the Head of Household permanently leaves the household.

2.  If the Head of Household dies, or otherwise permanently leaves the household for any reason unrelated to criminal activity or incarceration, and there is another eligible adult Family member capable of assuming the Head of Household position, the voucher assistance will pass to that Remaining Family Member, who will then become the Head of Household.

3.  When the Head of Household leaves the unit because of criminal activity or incarceration, DHA will terminate assistance, not permit another family member to take over the voucher.

4.  If there are more than one qualified remaining Family members, the Family may designate any qualified Family member as the Head of Household. The Head of Household must have the legal capacity to enter into a lease under state and local law. A minor who is emancipated under state law may be designated as Head of Household.

5.  Whenever an adult family member takes over the position of head as the remaining family member, he or she becomes responsible for any debts to the owner or DHA incurred by the previous head.

6.  If the head of household dies or leaves the household permanently, the remaining family members must report this fact to DHA in writing within 10 days after the head of household's departure.

**H.    Temporary Absence of Head of Household**

1.  If the Head of Household is temporarily absent from the home due to illness requiring hospitalization, nursing home confinement, or employment outside the local area, including military service, the Section 8 HAP will be provided for a maximum of 90 days. The absent Head of Household's income will continue to be counted and the Family will be responsible for their portion of rent to the Landlord for the 90 day period. If the Head of Household is unable to return to the Section 8 Housing Program assisted unit after the 90-day period, DHA will no longer consider

the absent Family member the Head of Household and the Family may utilize the provisions of section F.

2. An exception will be considered for the benefit of minor children where there is no eligible remaining Family member that has the legal capacity to enter a lease under state and local law. If there is another eligible adult that was not previously a member of the household and is available to move into the unit and assume the role as Head of Household, DHA may consider the addition of this adult as the Head of Household. The adult assuming the role as Head of Household must assume legal custody of the minor children. The newly designated Head of Household must meet DHA's eligibility standards and their income will be used to determine the Family's share of housing assistance. For the benefit of the minor children, the newly designated Head of Household may assume permanent status as Head of Household if the initial Head of Household is unable to return to the unit and grants written authorization. In such cases, the initial Head of Household's claim to Section 8 assistance is lost. The new Head of Household would assume any outstanding debt incurred by the former Head of Household.

**I.     Separation or Divorce**

In cases of divorce or separation under a settlement or judicial decree, DHA shall follow a court's ruling in determining which Family members continue to receive Section 8 assistance. In cases where no settlement or judicial decree exists, DHA will:

1. grant the voucher to the Family member who retains custody of the minor children or who cares for Disabled Family members;

2. grant the voucher to the Family members forced to leave a unit as a result of actual or threatened physical violence against Family members by a spouse or other Family members of the household;

3. will grant the voucher to the Family member that provides housing for the minor children 51% or more of the time in the case of joint custody.

4. will not grant both parents of minor children a voucher.

**J.     Determination of Family Share of Housing Cost**

The Family's contribution to the housing cost will be based upon the verified Annual and Adjusted Income as defined in HUD regulations.

The amount of the Total Tenant Payment will be calculated based on the highest of:

1. ten percent (10%) of the monthly unadjusted Family Income;

2. thirty Percent (30%)of the Family's monthly adjusted income;

3. DHA minimum rent of $50.00, effective January 1, 2005.

4. The actual amount of the family's contribution will be the Total Tenant Payment unless the family chooses a unit with a gross rent higher than the payment standard. In this instance the family's contribution to housing cost will equal the Total Tenant Payment plus the amount by which the gross rent exceeds the payment standard.

**K.     Exemption from Minimum Rent Requirement**

Families paying the minimum rent required by DHA may request an exemption from the minimum rent requirements if they believe the imposition of minimum rent creates a hardship for their Family. DHA will consider the following hardships:

1. The Family has lost eligibility for, or is awaiting an eligibility determination for federal, state, or local assistance program;

2. The income of the Family has decreased because of changed circumstances including loss of employment; or

3. A death in the Family (as defined in DHA Policy 500-6) has occurred.

**L.     Adjustments to Income**

Adjusted income is the annual income of all household members after making the mandatory deduction as identified in **24 CFR 5.611 and 24 CFR 5.617.**

1. Mandatory Deductions include:
   a. $480 for each dependent;

   b. $400 for elderly or disabled Families;

   c. un-reimbursed anticipated annual medical expenses of Elderly or Disabled Families that exceed three percent (3%) of annual adjusted income;

   d. un-reimbursed disability assistance expenses for care or apparatus for disabled Family members that exceed three percent (3%) of annual adjusted income and permit an adult family member to work; and

   e. reasonable child care expenses to allow an adult Family member to work, actively seek work, or attend school.

**M.     Earned Income Disallowance for Qualified Participants with Disabilities**

Qualified disabled family members may be eligible for an earned income disallowance as prescribed by applicable HUD regulations. For these qualified disabled families, the Authority will disregard for 12 months the:

1. Incremental earned income of family members who were unemployed for a year or more and became employed (A person is considered to have been unemployed if he/she was employed, but earned less in the previous 12 months than would be earned by a person working 10 hours per week making minimum wage working 50 weeks);

2. Incremental earned income of Family members income whose employment income increases during participation in a family self-sufficiency program or job training program, or

3. Incremental earned income of family members whose employment income has increased AND who, within the last six months have received either any amount of cash grant from TANF or in-kind services funded through the TANF agency worth at least $500.

An additional 12 months of 50% earned income disallowance is allowed after the 100% 12 month disallowance has been exhausted.

The family has 48 months to take advantage of the full 24 month earned income disallowance from the date they are initially eligible to take advantage of the disallowed income allowance.

**N.     Verification of Income, Assets and Deductions**

DHA shall follow HUD's regulations and guidance on the verification of income, assets and asset income and deductions from income. See **Procedure on Verification of Information**.

**O.     Non-Cash Contributions To Families**

In determining Annual Income, regular non-cash contributions from persons outside the Family are included. This information shall be obtained from the Zero Income Interview Questionnaire, Contribution Form and Personal Declaration and Questionnaire; DHA shall verify the type and value of the non-cash contribution by contacting the source and obtaining an acceptable third party.

**P.     Maximum Initial Rent Burden**

A family shall not initially pay more than 40% of their monthly adjusted income toward their portion of the rent and utility allowance for occupancy of a newly leased Section 8 assisted unit. This rent burden test is applied at the initial lease-up of a new unit (Including whenever a family moves) but is not applied during subsequent years of occupancy in a unit already under lease.

**Q.     Utility Allowance**

At least annually, the Housing Authority shall obtain and analyze utility rate data for Utility providers in the local jurisdiction, and will determine whether there has been a Change of 10% or more in the rate for any utility since the last revision of the Utility Allowance Schedule.

If there has been a change of 10% or more, an appropriate adjustment to the schedule shall be made. No adjustment shall be made for any increase less than $1 per unit month.

**R.     Utility Reimbursements**

When the unit leased by a participating family has tenant paid utilities and the amount of utility allowance exceeds the Family's total tenant payment, DHA shall send the Family a check each month for the amount by which the utility allowance exceeds the total tenant payment. This is the Utility Reimbursement.

Source: Excerpt from *Dallas Housing Authority Administrative Plan for Housing Voucher Programs, May 2010.*

**6.4     Operation and Management**

The Housing Authority of the City of Dallas, Texas (DHA) was created in 1937. Its five-member Board of Commissioners is appointed by the mayor of the City of Dallas. The organizational chart on the following page shows DHA's management structure and organization.



# Organizational Chart

Housing Authority of the City of Dallas Texas (DHA)

- Board of Commissioners
- President/CEO M. Russ
  - Administrative Counsel
  - Director of Compliance
  - Sr. Administrative Assistant
  - Policy Analyst/Trainer
- Chief Financial Officer (CFO)
  - Controller
  - Director of Human Resources
  - Director of General Services
- Sr. Vice President/COO
  - Vice President of Housing Operations
    - Director of Information Technology & Resources
    - Director of Economic Self Sufficiency & Resident Services
      - Assistant Director
    - Director of Occupancy
      - Physical Asset Manager
      - Sr. Asset Manager
      - Sr. Asset Manager
      - Sr. Asset Manager
  - Vice President of Capital Programs
    - Director of Capital Programs
  - Vice President of Voucher Programs
    - Director of Landlord Services
    - Director of Client Services Operations
    - Director of Quality Assurance

**Appendix 585**

DHA operates 3,381 public housing units and administers 18,169 Section 8 Housing Choice Vouchers.  The following DHA policies and procedures provide the rules, standards, and policies for the management and maintenance of DHA's public housing program and administration of the Section 8 Housing Choice Voucher program.

Public Housing Maintenance and Management)

*Dallas Housing Authority Admissions and Continued Occupancy Policy for Low Rent
      Housing (Policy number 600-1)*
*Work Orders (Procedure Number 700-1.1)*
*Exterminating Services (Procedure number 727-1.1)*

Section 8 Housing Choice Voucher Program

*Dallas Housing Authority Administrative Plan for Housing Voucher Programs
      (Policy number 500-1)*

## 6.5    Grievance Procedures

DHA provides a grievance and information hearing and review process for program participants and applicants who wish to appeal an action of failure to act by DHA in accordance with DHA policies and procedures or the individual tenant's lease that adversely affects the individual applicant's or tenant's rights, duties, welfare and status.

Applicants

Applicants who are determined to be ineligible will be so notified in writing of the reason(s) for the determination of ineligibility and the Applicant's right to submit a written request for an informal hearing within ten (10) calendar days of the date of the notice.

Applicant determined to be ineligible will be notified in writing of the reason(s) for the determination of ineligibility and the Applicant's right to submit a written request for an informal hearing within ten (10) calendar days of the date of the notice.  DHA will schedule the hearing and will provide the Appliance with a copy of any information DHA used to determine the Applicant is ineligible.

Public Housing Tenants

A tenant must begin the grievance process by requesting and attending an informal settlement conference with DHA to discuss whether the grievance can be settled without a hearing. The informal conference will be held within 10 days of the tenant making the request. Following the conference, DHA will provide a written summary of the information discussion, along with the procedures by which a tenant may obtain a formal hearing. Should the tenant fail to attend the informal conference, DHA will provide procedures by which the tenant may request a formal hearing.  The hearing panel will consist of three hearing officers, including two impartial and disinterested parties appointed by the Counsel of Presidents and the DHA Hearing Officer. The tenant will be afforded a fair hearing. Following the formal hearing, the DHA Hearing Officer will prepare a written decision, together with the reasons for the decision.

Section 8

An informal hearing is offered to a Family participating in the Section 8 Housing Choice Voucher Program based on DHA's decision affecting the Family in the Housing Choice Voucher Program in accordance with DHA procedures for Informal Hearings.

DHA shall give a participant an opportunity for an informal hearing in disputes involving the following cases:

1. A determination of the amount of the total tenant payment or tenant rent;
2. A determination of appropriate utility allowance;
3. A determination of family unit size under payment standard; and
4. A decision to terminate assistance.

DHA will designate a hearing officer to conduct the informal hearing. The hearing officer shall be a person other than a person who made or approved the decision under review, or a subordinate of such person. Following the informal hearing, the hearing officer shall make his/her decision based upon factual determinations relating to the individual circumstances of the participant as demonstrated by the evidence presented at the hearing. The hearing officer shall make his/her decision in writing and based on the facts established, HUD regulations, DHA policies and rules, and applicable law. The decision will clearly state the reasons on which the decision is arrived. A copy of the decision shall be furnished promptly to the participant.

## 6.6    Designated Housing for Elderly and Disabled Families

The Dallas Housing Authority does not anticipate making an application to designate any public housing sites for occupancy by elderly and/or disabled families. The Housing Authority has four elderly/disabled public housing sites – Park Manor (TX009000009 – 196 units), Brooks Manor (TX009000010 – 227 units), and Audelia Manor (TX009000012 – 123 units). DHA anticipates the construction of an 85-unit elderly/disabled housing facility at the Roseland Homes site. Additionally, DHA plans an 85-unit senior building at the Turner Courts HOPE VI site. A designated housing plan will be submitted to HUD in the fall of 2010 for the senior building at the Turner Courts HOPE VI site.

## 6.7    Community Service and Self-Sufficiency

### Services and Amenities

DHA is committed to assisting its families to become economically and socially self-sufficient and offers the Family Self-Sufficiency Program (FSS) to both its public housing and Section 8 residents. DHA provides, either itself or through agreements with other service entities, a large variety of programs and services to assist families to become self sufficient. These include education programs for all ages, job training and job search assistance, and support services such as transportation, health services and child care.

### Education

Through its partners, DHA offers numerous education programs such GED training, adult literacy, early childhood education at four on-site Head Start facilities, and home study centers at each of its housing developments for school-age children. DHA also provides Neighborhood Network or Computer Centers at nine housing developments, providing computer training and access to computers, fax machines, and copiers to assist with employment and education opportunities.

### Job Training and Job Search Assistance

DHA provides facilities for it partners to provide on-site job training. This training includes optical technician training, computer skills, computer literacy, keyboarding, and business development. DHA and its partners also provide job readiness programs, resume writing assistance, pre-employment skills training, and job search assistance. DHA also promotes and helps to coordinate several job fairs each year.

*Support Services*

To assist families to become economically and socially self-sufficient, DHA also provides numerous services to its families including case management, health fairs, homeownership training, youth and adult leadership mentoring.  As funds are available, DHA also provides transportation assistance and childcare services.  Additionally, Head Start facilities are located on four of DHA's public housing developments.

## Section 3

DHA has an active Section 3 program and strongly supports residents' efforts to access education and training and to become employed.  Where applicable, DHA procurements include a selection criteria in Requests for Proposals (RFPs) for commitments to employ Section 3 residents.  DHA actively monitors and enforces the contractual Section 3 language included in its contracts with vendors and service providers.

## Community Service Requirements

DHA's community service policy is included in its *Admissions and Continued Occupancy Policy for Low Rent Housing* (ACOP).  This section of the ACOP is reprinted below.

**Dallas Housing Authority**
**Admissions and Continued Occupancy Policy for Low Rent Housing**
(excerpt)

## XIV.  DHA PUBLIC HOUSING COMMUNITY SERVICE POLICY

A.    Background

1.   As all staff of DHA know, the Community Service requirement is only applicable to residents of public housing properties or residents living in ACC subsidized units at mixed finance properties.  No one living in a multifamily property or a project based voucher property or using a tenant based voucher in a market rate unit at a mixed finance property is subject to the Community Service requirement.

2.   DHA is working to enable its residents to become fully economically independent. In support of this goal and HUD requirements, DHA requires that all non-exempt members of resident families meet monthly targets for neighborhood service or economic self sufficiency, as monitored monthly.

3.   The Community Service requirement is 8 hours per month for each non-exempt adult (not for each family with a non-exempt adult).

4.   Compliance with Community Service activities is monitored by monthly contact between the non-exempt resident and the Manager.

B.    Definitions

1.   Community Service - volunteer work that benefits the property or the local neighborhood includes, but is not limited to:

a.   Work at a local institution, including but not limited to: school, community

center, hospital, hospice, recreation center, senior center, adult day care program, homeless shelter, meals or feeding program, library or bookmobile, before- or after-school education program, or child care center, etc.;

b.   Work with a non-profit organization that serves DHA residents or their children, including but not limited to:  Boy Scouts, Girl Scouts, Boys or Girls Club, 4-H Club, PAL, Garden Center, Neighborhood clean-up programs, Beautification programs, etc.;

c.   Work with a community arts program involving performing arts, fine arts, visual arts or crafts including but not limited too community theater, dance, music (orchestra, voice, choir, band, small ensemble, etc.) , etc.;

d.   Work with any program funded under the Older Americans Act, including but not limited to:  Green Thumb, Service Corps of Retired Executives, Meals on Wheels, etc.;

e.   Work with service programs sponsored by churches so long as they do not involve religious education or the practice of religion (e.g. a meals program for the homeless sponsored by a church and provided in the parish hall would be acceptable, teaching Sunday School would not);

f.   Work with other youth, disability service or advocacy, or senior organizations;

g.   Work at the property to help improve physical conditions (for example as a grounds or building captain, or on a beautification program for the building or grounds);

h.   Work at the property to help with children's programs;

i.   Work at the property to help with senior programs;

j.   Help neighborhood groups with special projects;

k.   Work through the Resident Association to help other residents with problems, serving as an officer in an RA, serving on the RA or Resident Advisory Board;

l.   Care for the children of other residents so they may volunteer.

2.   Political activity is excluded.

3.   Work activity must not take the place of work performed by paid employees.

4.   Self Sufficiency Activities - include, but are not limited to:

a.   Job readiness programs;

b.   Job training programs;

c.   Skills training programs;

d.   Higher education (Junior college or college);

e.   Vocational education;

f.   GED classes;

g.   Verifiable job search activities;

h.   Apprenticeships;

i.   Substance abuse or mental health counseling;

j.   English proficiency or literacy (reading) classes;

k.   Parenting classes;

l.   Budgeting and credit counseling;

m.  Any kind of class that helps a person toward economic independence;

n.   Carrying out any activity required by the Department of Public Assistance as part of welfare reform.

o.   The self sufficiency hours counted toward the 8 hour per month requirement will be only hours when a non-exempt adult is actually attending class or engaged in job training.  It will not include time in transit.

5.  Exempt Adult - an adult member of the family who is not required to perform Community Service because he/she:

a.   Is 62 years of age or older

b.   Has a disability that can be verified to prevent him/her from being gainfully employed

c.   Is verified to be the fulltime caretaker of a disabled person

d.   Is working at least 20 hours per week

e.   Qualifies as a full-time student at a secondary school or an institution of higher learning

C.   Requirements of the Program

1.  Each non-exempt adult in a family paying at least the minimum rent must contribute and document some combination of 8 hours per month of Community service or self sufficiency activity.

2.  The 8 hours per month may be either volunteer work or self sufficiency program activity or a combination of the two.

3.  At least 8 hours of activity must be performed each month. An individual may not skip a month and then double up the following month, unless special circumstances warrant special consideration. DHA will make the determination of whether to allow or disallow a deviation from the schedule.

4.  Activities must be performed within the neighborhood and not outside the jurisdictional area of the DHA.  The exception to this rule would be adults who are enrolled in full-time higher education or vocational training.   Their hours of education would count toward the requirement.

5.  Family obligations

a.   At lease execution or re-examination after the effective date of this policy, all adult members (18 or older) of a public housing resident family must

1)  provide documentation that they are exempt from Community Service requirement if they qualify for an exemption, and

2)  sign a certification that they have received and read this policy and understand that if they are not exempt, failure to comply with the Community Service requirement will result in termination of their lease.

b.   Once each month non-exempt family members must present a completed

documentation form (provided by DHA) of activities performed over the previous month to the Housing Manager.

c.  At each annual re-examination, non-exempt family members must present a completed documentation form (provided by DHA) of activities performed over the previous twelve months. Both forms will include places for signatures of supervisors, instructors, or counselors certifying to the number of hours contributed each month by month.

6.  Change in exempt status:

a.  If, during the twelve (12) month period, a non-exempt person becomes exempt, it is his/her responsibility to report this to DHA and provide documentation of such.

b.  If, during the twelve (12) month period, an exempt person becomes non-exempt, it is his/her responsibility to report this to DHA and the property manager.

c.  The Housing Manager will provide the person with the Recording/Certification documentation form and a list of agencies in the neighborhood that provide volunteer and/or training opportunities.

D.  <u>DHA obligations</u>

1.  To the greatest extent possible and practicable, DHA and its property managers will

a.  provide names and contacts at agencies that can provide opportunities for residents, including those with disabilities, to fulfill their Community Service/Self Sufficiency obligations;

b.  include in the Community Service requirement a disabled person who is otherwise able to be gainfully employed, since such an individual is not exempt from the Community Service requirement; and

c.  provide referrals for volunteer work or self sufficiency programs.

2.  The property manager will provide the family with exemption verification forms and Recording/ Certification documentation forms and a copy of this policy at initial application and at lease execution.

3.  DHA will make the final determination as to whether or not a family member is exempt from the Community Service/Self Sufficiency requirement.

4.  Residents may use DHA's Grievance Procedure if they disagree with DHA's determination.

E.  <u>Noncompliance of a non-exempt family member</u>

1.  If a non-exempt adult fails to report to the Manager or fails to complete the required eight hours of neighborhood service or self sufficiency activity, the non-exempt adult shall be considered to be in noncompliance.

2.  When a property manager receives a report of a non-exempt adult's failure to either report or complete the required activity, the property manager shall send a Notice of Lease Violation to the head of household.

3.  The non-exempt adult may be granted additional time to make up any lost hours, properly reported to the Manager.

4.  If the non-exempt adult who fails to make up the required hours is someone other

than the head of household, the remaining family members may retain their tenancy if the noncompliant adult leaves the household;

5.   The family may use DHA's Grievance Procedure to contest the lease termination.

Source: Excerpt from *Dallas Housing Authority Admissions and Continued Occupancy Policy for Low Rent Housing, May 2010.*


**6.8     Safety and Crime Prevention**

To reduce the amount of crime at DHA's housing sites and the surrounding community, DHA has implemented several safety and crime prevention measures.  These measures include physical improvements such as additional security lighting and access gates, additional police presence at the housing sites, and safety and crime prevention programs.  All housing sites are required to have a crime watch organization. If there is not an active resident council at the site, the manager will chair the crime watch program. Representatives from the City of Dallas Police Department attend the monthly crime watch meetings at each housing site.  DHA meets regularly with the Police Department to develop and refine strategies to reduce the incidence of crime at the housing sites.  DHA has also implemented lease provisions aimed at reducing the amount of crime at its properties.


**6.9     Pets**

DHA's policies and requirements regarding pet ownership are included in the *Dallas Housing Authority Pet Ownership Policy*, relevant portions of which are reprinted below.


**Dallas Housing Authority**
**PET OWNERSHIP POLICY**
(excerpt)

**A.     <u>Exemption From the Pet Rules for Assistive Animals</u> (Service and Companion Animals for Individuals with Disabilities)**

The rules contained in this pet policy do not apply to service or companion animals needed by a person with a documented disability who has a disability-related reason for needing an animal. For these individuals, the Housing Authority may require documentation from a qualified medical practitioner limited to:

1.   Verification that the person making the request is a person with a disability;

2.   Verification that the animal is needed by a person with a disability, either to provide a service or to act as a companion;

3.   Verification that the animal owned by the individual with a disability will meet the need identified;

4.   Verification that someone in the household is able to care for the animal or that alternative arrangements have been made that will not impair the animal's health or safety.

5.   Verification that the animal is current on any required inoculations.

**B.     <u>Pet Rules</u>**

The following rules shall apply for the keeping of common household pets by Residents living in

the units operated by the Housing Authority.

1. Common household pets as authorized by this policy means a domesticated animals, such as cats, dogs, fish, birds, rodents (including rabbits), that are traditionally kept in the home for pleasure rather than for commercial purposes.

2. Each resident family will be allowed to house only one (1) warm blooded mammal at any time, one 10 gallon fish tank or one cage with up to 4 birds. Visiting guests with pets will not be allowed.  Since assistive animals are not pets, visiting guests with service animals are permitted.

3. Each resident must register his/her pet with the Authority **BEFORE** it is brought onto the Authority premises, and must update the registration annually at the annual re-examination. The registration will include: *(Appendix 1)*

    • Information sufficient to identify the pet and to demonstrate that it is a common household pet, including a picture;

    • A certificate signed by a licensed veterinarian or a State or Local Authority empowered to inoculate animals, stating that the pet has received all inoculations required by applicable State and Local Law;

    • The name, address, and telephone number of one or more responsible parties who will care for the pet if the pet owner dies, is incapacitated, or is otherwise unable to care for the pet.

    • A statement indicating that the pet owner has read the pet rules and agrees to comply with them; *(Appendix 2)*

    • The Authority may refuse to register a pet if:

        a) The pet is not a common household pet;

        b) The keeping of the pet would violate any applicable house pet rule;

        c) The pet owner fails to provide complete pet registration information;

        d) The pet owner fails to update the pet registration annually;

        e) The Authority reasonably determines, based on the pet owners' habits and practices and the pet's temperament, that the pet owner will be unable to keep the pet in compliance with the pet rules and other legal obligations;

    • Financial ability to care for the pet will not be a reason for the Authority to refuse to register a pet.

    • The Authority will notify the pet owner if the Authority refuses to register a pet. The notice will:

        a) State the reasons for refusing to register the pet;

        b) Be served on the pet owner in accordance with procedure outlined in paragraph B1 of this policy; and

        c) Be combined with a notice of a pet rule violation if appropriate.

4. Cats and dogs shall be limited to small breeds where total adult weight shall not exceed twenty five (25) pounds and total height at the shoulder shall not exceed eighteen (18) inches. The size limitations do not apply to service animals or to companion animals already owned by an applicant at admission.

**Appendix 593**

5. No pit bulls, dobermans, rottweilers, or any other known fighter breed will be allowed on the premises.

6. All cat and dog pets shall be verified by veterinarian to be neutered or spayed, cost to be paid by the owner. Pet owners will be required to present a certificate of health from their veterinarian verifying all required annual vaccines, initially and at re-examination.

7. A non-refundable pet fee of $100 per bedroom in the pet owner's unit shall be made to the Housing Authority. Such fee will be a one-time fee (per pet) and shall be used to help cover cost of damages to the unit caused by the pet.  This fee does not apply to assistive animals for persons with disabilities.

8. Pets shall be quartered in the Resident's unit.

9. Dogs and cats shall be kept on a leash or in a crate or carrier and controlled by a responsible individual when taken outside.

10. No dog houses will be allowed on the premises.

11. Visiting guests with pets (other than service animals to assist visitors with disabilities) will not be allowed.  Pets (dogs and cats), shall be allowed to run only on the owner's lawn and owners shall clean up after pet after each time the animal eliminates.

12. Pet owners must comply with all applicable City Ordinances concerning pets.

13. The pet owner is responsible for the pet's health and condition.

14. Pets shall be removed from the premises when their conduct or condition is duly determined to constitute a nuisance or a threat to the health and safety of the pet owner, other occupants of the Authority, or the pet, in accordance with paragraph C3 below.

15. Birds must be kept in regular bird cages and not allowed to fly throughout the unit.

16. Dishes or containers for food and water will be located within the owner's apartment. Food and/or table scraps, will not be deposited on the owner's porches or yards.

17. Residents will not feed or water stray animals or wild animals.

18. Pets will not be allowed on specified common areas (under clotheslines, social rooms, office, maintenance space, playgrounds, etc.).

19. Each resident family will be responsible for the noise or odor caused by their pet. Obnoxious odors can cause health problems and will not be tolerated.

**C.    Pet Rule Violation Procedure**

NOTICE OF PET RULE VIOLATION *(Appendix 3):*

1. When the Authority determines on the basis of objective facts supported by written statements, that a pet owner has violated one or more of these rules governing the owning or keeping of pets, the Authority will:

   • Serve a notice of the pet rule violation on the owner by sending a letter by first class mail, properly stamped and addressed to the Resident at the leased dwelling unit, with a proper return address, or

   • serve a copy of the notice on any adult answering the door at the Residents' leased dwelling unit, or if no adult responds, by placing the notice under or through the door, if possible, or else by attaching the notice to the door;

2. The notice of pet rule violation must contain a brief statement of the factual basis for the

determination and the pet rule or rules alleged to be violated;

3. The notice must state that the pet owner has ten (10) days from the effective date of service of notice to correct the violation (including, in appropriate circumstances, removal of the pet) or to make a written request for a meeting to discuss the violation. The effective date of service is the day that the notice is delivered or mailed, or in the case of service by posting, on the day that the notice was initially posted;

4. The notice must state that the pet owner is entitled to be accompanied by another person of his or her choice at the meeting;

5. The notice must state that the pet owner's failure to correct the violation, to request a meeting, or to appear at a requested meeting may result in initiation of procedures to terminate the pet owner's lease.

PET RULE VIOLATION MEETING:

If the pet owner makes a timely request for a meeting to discuss an alleged pet rule violation, the Authority shall establish a mutually agreeable time and place for the meeting to be held within fifteen (15) days from the effective date of service of the notice of pet rule violation (unless the Authority agrees to a later date).

- The Authority and the pet owner shall discuss any alleged pet rule violation and attempt to correct it and reach an understanding.

- The Authority may, as a result of the meeting, give the pet owner additional time to correct the violation.

- Whatever decision or agreements, if any, are made will be reduced to writing, signed by both parties, with one copy for the pet owner and one copy placed in the Authority's Resident file.

NOTICE OF PET REMOVAL:

If the pet owner and the Authority are unable to resolve the pet rule violation at the pet rule violation meeting, or if the Authority determines that the pet owner has failed to correct the pet rule violation within any additional time provided for this purpose under paragraph B.3 above (or at the meeting, if appropriate), requiring the pet owner to remove the pet. This notice must:

- Contain a brief statement of the factual basis for the determination and the pet rule or rules that have been violated;

- State that the pet owner must remove the pet within ten (10) days of the effective date of service of notice or pet removal (or the meeting, if the notice is served at the meeting);

- State the failure to remove the pet may result in initiation of procedures to terminate the pet owner's residency.

INITIATION OF PROCEDURE TO TERMINATE PET OWNERS RESIDENCY:

The Authority will not initiate procedure to terminate a pet owners' residency based on a pet rule violation unless:

- The pet owner has failed to remove the pet or correct the pet rule violation within the applicable time period specified above;

- The pet rule violation is sufficient to begin procedures to terminate the pet owner's residency under the terms of the lease and application regulations,

- Provisions of Resident's Lease, Section XIV: Termination of Lease will apply in all cases.

**D.     Protection of the Pet**

If the health or safety of a pet is threatened by the death or incapacity of the pet owner, or by other factors that render the pet owner unable to care for the pet, the Authority may:

- Contact the responsible party or parties listed in the registration form and ask that they assume responsibility for the pet;

- If the responsible party or parties are unwilling or unable to care for the pet, the Authority may contact the appropriate State or Local Animal Control Authority, Humane Society or designated agent of such Authority and request the removal of the pet;

- If the Authority is unable to contact the responsible parties despite reasonable efforts, action as outlined in 1 b above will be followed; and

- If none of the above actions produce results, the Authority may enter the pet owner's unit, remove the pet, and place the pet in a facility that will provide care and shelter until the pet owner or a representative of the pet owner is able to assume responsibility for the pet, but no longer than thirty (30) days. The cost of the animal care facility provided under this section shall be charged to the pet owner.

**E.     Nuisance or Threat to Health or Safety**

Nothing in this policy prohibits the Authority or the appropriate City authority from requiring the removal of any pet from the Authority property if the pet's conduct or condition is duly determined to constitute, under the provisions of State or Local Law, a nuisance or a threat to the health or safety of other occupants of the Authority property or of other persons in the community where the project is located.

**F.     Application of Rules**

1. Pet owners will be responsible and liable for any and all bodily harm to other residents or individuals. Destruction of personal property belonging to others caused by owner's pet will be the financial obligation of the pet owner.

2. All pet rules apply to resident and/or resident's guests.

Source: Excerpt from *Dallas Housing Authority Pet Ownership Policy,* August 2009.


**6.10    Civil Rights Certification**

DHA carries out its activities in compliance with Title VI of the Civil Rights Act of 1964, the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990. DHA regularly examines its programs and any proposed programs to identify any impediments to fair housing choice within those programs. DHA addresses those impediments in a reasonable fashion in view of the available resources; works with the local jurisdiction to implement any of the jurisdiction's initiatives to affirmatively further fair housing, and assures that its annual plan is consistent with the City of Dallas' Consolidated Plan.


**6.11    Fiscal Year Audit**

FY2009 Audit under Single Audit Act has been completed and submitted to HUD and Federal Audit Clearing House. The audit report on financial statement is "Unqualified". This audit report

contains 5 findings related to internal controls and program compliance which are being addressed and cured with an action.

**6.12    Asset Management**

DHA has converted to asset management including AMP-based accounting and budgeting for all its public housing sites.  DHA annually assesses the physical needs of each of its properties and updates its long-range repair, renovation, and modernization plans for each property.  DHA also annually reviews the operations of each of its housing sites to assess strengths at each properties and areas for improvement.

**6.13      Violence Against Women**

DHA is sensitive to the possibility that certain actions of a resident may be related to or the result of domestic violence, dating violence or stalking.  DHA staff including housing managers and service coordinators work with residents who report being victims of such violence by providing referrals to outside agencies who can assist the these residents.  DHA also coordinates on-site programs to help residents who may be victims of abuse. DHA will offer a resident in this situation an opportunity to relocate if necessary.  Further, in compliance with the Violence Against Women Act, DHA will not terminate the lease or evict victims of criminal activity related to their victimization.  Victims have 14 days to certify or provide other documentation of their status.

**Dallas Housing Authority**

**FY 2010 PHA 5-Year and Annual Plan**

**Attachment C**
**7.0. HOPE VI, Mixed Finance Modernization or Development,**
**Demolition and/or Disposition, Conversion of Public Housing,**
**Homeownership Programs, and Project-based Vouchers**

**7.0    HOPE VI, Mixed Finance Modernization or Development**

**7.1    HOPE VI or Mixed Finance Modernization or Development**

**7.1.1    Description of any housing for which the PHA will apply for HOPE VI or Mixed Finance Modernization**

DHA anticipates submitting a HOPE VI application or mixed finance proposal for one or more of the following sites: Rhoads Terrace (TX009000007), Cedar Springs Addition (TX009000003), and/or Little Mexico Village (TX009000002). DHA will submit a mixed finance proposal for the first phase of the Turner Courts HOPE VI project in the fall of 2010.  DHA anticipates submitting a mixed-finance proposal for the second phase of the Turner Court HOPE VI project following receipt of the low-income tax credits in 2011.

**7.1.2    Timetable for submission of applications or proposals**

Any HOPE VI application will be submitted per the requirements published in the Notice of Funding Availability (NOFA).

**7.2    Demolition and/or Disposition**

**7.2.1    Description of any housing for which the PHA will apply or is currently pending for demolition or disposition**

DHA anticipates requesting demolition and/or disposition approval of Little Mexico Village, Cedar Springs Place, and Cedar Springs Addition. DHA received disposition approval for Pebbles Apartments late last year.  Information regarding these sites is provided in the table below.

| Housing Development | AMP Number | # of Units | # of Accessible Units | Bedroom Distribution |
|---|---|---|---|---|
| Little Mexico Village | TX009000002 | 102 | 5 | 1 br – 24<br>2 br – 33<br>3 br – 32<br>4 br – 13 |
| Cedar Springs Place | TX009000003 | 182 | 8 | 1 br – 72<br>2 br – 88<br>3 br – 18<br>4 br – 0<br>5 br – 5 |
| Cedar Springs Addition | TX009000003 | 220 | 11 | 1 br – 92<br>2 br – 73<br>3 br –42<br>4 br – 13 |

| Housing Development | AMP Number | # of Units | # of Accessible Units | Bedroom Distribution |
|---|---|---|---|---|
| Pebbles Apartment | TX009000015 | 42 | 2 | 1 br – 26<br>2 br – 8<br>3 br – 8 |

#### 7.2.2   Timetable for the demolition or disposition

DHA has disposed of Pebbles Apartments to Metro Dallas Homeless Alliance. DHA anticipates disposition of Cedar Springs in early 2011 and demolition and mixed-finance disposition of Cedar Springs Addition in late 2011.

### 7.3   Conversion of Public Housing

#### 7.3.1   Description of any building or buildings that the PHA is required to convert to tenant-based assistance or that the public housing agency plans to voluntarily convert

DHA is not required to convert any of its buildings to tenant-based assistance, nor does DHA anticipate voluntarily converting any buildings.

#### 7.3.2   Analysis of projects or buildings required to be converted

Not applicable.

#### 7.3.3   Statement of the amount of assistance received to be used for rental assistance or other housing assistance in connection with such conversion

Not applicable.

### 7.4   Homeownership

DHA has participated in several homeownership programs including two programs at Lakewest where DHA sold public housing property to a private developer and Habitat for Humanity. The first of these homeownership programs, with market rate and affordable housing was complete in 2004.  Construction on the second program, also being developed by a private developer and Habitat for Humanity, will include both market-rate and affordable homeownership units.

As part of its HOPE VI program at Frazier Courts, DHA has entered into a master development agreement for the development of 51 affordable homeownership units.  The developer includes Habitat for Humanity, ICDC – a non-profit organization, and Townhaven Homes – a for-profit contract.  These homeownership units will be constructed on approximately 6.4 acres of land of the former Frazier Courts site. As of June 2010, 28 homes have been completed and sold. Eight (8) additional homes are scheduled for completion in August 2010. Construction began on four (4) homes in June.

As part of the HOPE VI program for Turner Courts, DHA will partner with Habitat for Humanity to develop twelve (12) homeownership units in the South Dallas neighborhood that includes the Turner site.

### 7.5   Project-Based Vouchers

DHA reserves the right to allocate up to 20 percent of its Section 8 Housing Choice Vouchers for the potential use under the Section 8 Project-Based Voucher Assistance Program.  The proposed units may be located throughout DHA's jurisdiction. This

potential reallocation of the Section 8 Project-Based Assistance is consistent with DHA's Agency Plan and goal of providing quality affordable housing to low-income families and will increase housing choices for these families.  DHA anticipates using 193 Section 8 Project-Based Vouchers in connection with its recently funded HOPE VI program for Turner Courts.

**Dallas Housing Authority**
**FY 2010 PHA 5-Year and Annual Plan**

**Attachment D**
**8.0 Capital Improvements**

8.1     Capital Fund Program Annual Statement/Performance and Evaluation Report

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires  4/30/2011

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

**Part I: Summary**

| PHA Name: Dallas Housing Authority | Grant Type and Number<br>Capital Fund Program Grant No:<br>Replacement Housing Factor Grant No:<br>Date of CFFP: | | FFY of Grant: 2011<br>FFY of Grant Approval: |

Type of Grant

X  Original Annual Statement    ☐ Reserve for Disasters/Emergencies    ☐ Revised Annual Statement (revision no:           )
☐ Performance and Evaluation Report for Period Ending:    ☐ Final Performance and Evaluation Report

| Line | Summary by Development Account | Total Estimated Cost | | Total Actual Cost [1] | |
|---|---|---|---|---|---|
| | | Original | Revised [2] | Obligated | Expended |
| 1 | Total non-CFP funds | $0.00 | | | |
| 2 | 1406 Operations (may not exceed 20% of line 21) [3] | $1,128,200 | | | |
| 3 | 1408 Management Improvements | $100,000 | | | |
| 4 | 1410 Administration (may not exceed 10% of line 21) | $629,000 | | | |
| 5 | 1411 Audit | $0 | | | |
| 6 | 1415 Liquidated Damages | $0 | | | |
| 7 | 1430 Fees and Costs | $265,000 | | | |
| 8 | 1440 Site Acquisition | $0 | | | |
| 9 | 1450 Site Improvement | $950,000 | | | |
| 10 | 1460 Dwelling Structures | $800,000 | | | |
| 11 | 1465.1 Dwelling Equipment—Nonexpendable | $ | | | |
| 12 | 1470 Non-dwelling Structures | $1,568,543 | | | |
| 13 | 1475 Non-dwelling Equipment | $ | | | |
| 14 | 1485 Demolition | $850,000 | | | |
| 15 | 1492 Moving to Work Demonstration | $0 | | | |
| 16 | 1495.1 Relocation Costs | $0 | | | |
| 17 | 1499 Development Activities [4] | $0 | | | |

[1] To be completed for the Performance and Evaluation Report.
[2] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[3] PHAs with under 250 units in management may use 100% of CFP Grants for operations.
[4] RHF funds shall be included here.

Page 1

form HUD-50075.1 (4/2008)

Appendix 602

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

Part I: Summary

| PHA Name: Dallas Housing Authority | Grant Type and Number Capital Fund Program Grant No: Replacement Housing Factor Grant No: Date of CFFP: | FFY of Grant:2011 FFY of Grant Approval: |

Type of Grant
[X] Original Annual Statement    [ ] Reserve for Disasters/Emergencies    [ ] Revised Annual Statement (revision no:        )
[ ] Performance and Evaluation Report for Period Ending:    [ ] Final Performance and Evaluation Report

| Line | Summary by Development Account | Total Estimated Cost | | Total Actual Cost [1] | |
| | | Original | Revised [2] | Obligated | Expended |
| 18a | 1501 Collateralization or Debt Service paid by the PHA | $0 | | | |
| 18ba | 9000 Collateralization or Debt Service paid Via System of Direct Payment | $0 | | | |
| 19 | 1502 Contingency (may not exceed 8% of line 20) | $0 | | | |
| 20 | Amount of Annual Grant:: (sum of lines 2 - 19) | $6,290,743 | | | |
| 21 | Amount of line 20 Related to LBP Activities | $0 | | | |
| 22 | Amount of line 20 Related to Section 504 Activities | $0 | | | |
| 23 | Amount of line 20 Related to Security - Soft Costs | | | | |
| 24 | Amount of line 20 Related to Security - Hard Costs | $ | | | |
| 25 | Amount of line 20 Related to Energy Conservation Measures | $ | | | |

Signature of Executive Director                Date                Signature of Public Housing Director                Date

[1] To be completed for the Performance and Evaluation Report.
[2] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[3] PHAs with under 250 units in management may use 100% of CFP Grants for operations.
[4] RHF funds shall be included here.

form HUD-50075.1 (4/2008)

Page2

Appendix 603

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

Part II: Supporting Pages

PHA Name: Dallas Housing Authority

Grant Type and Number
Capital Fund Program Grant No:
CFFP (Yes/ No) No
Replacement Housing Factor Grant No:

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|
| | | | | Original | Revised[1] | Funds Obligated[2] | Funds Expended[2] | |
| **AMP 1** **TX009000001** | | | | | | | | |
| Roseland Townhomes | 1. Landscape & Sprinkler System | 1450 | | $100,000 | | | | |
| | 2. Landscape Architect | 1430 | | $15,000 | | | | |
| | 3. Operating | 1406 | | $40,000 | | | | |
| | | | | | | | | |
| Roseland Estates | 1. Landscape & Sprinkler System | 1450 | | $100,000 | | | | |
| | 2. Landscape Architect | 1430 | | $15,000 | | | | |
| | | | | | | | | |
| Carroll Townhomes | | | | | | | | |
| | | | | | | | | |
| Monarch Townhomes | | | | | | | | |
| | | | | | | | | |
| Roseland Scattered Sites | | | | | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[2] To be completed for the Performance and Evaluation Report.

form HUD-50075.1 (4/2008)

Page3

Appendix 604

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

Part II: Supporting Pages

PHA Name: Dallas Housing Authority

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|
| | | Grant Type and Number<br>Capital Fund Program Grant No:<br>CFFP (Yes/ No): No<br>Replacement Housing Factor Grant No: | | Original | Revised[1] | Funds Obligated[2] | Funds Expended[2] | |
| **AMP 2**<br>**TX009000002** | | | | | | | | |
| Little Mexico Village | 1. Operating | 1406 | | $10,000 | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **AMP 3**<br>**TX009000003** | | | | | | | | |
| Cedar Springs Place | 1. Security | 1406 | | $78,000 | | | | |
| | 2. Operating | 1406 | | $30,000 | | | | |
| | | | | | | | | |
| Cedar Springs Pl. Add | 1. Security | 1406 | | $78,000 | | | | |
| | 2. Demolition | 1485 | | $850,000 | | | | |
| | 3. Abatement & Air Monitoring | 1430 | | $80,000 | | | | |
| **AMP 4**<br>**TX009000004** | | | | | | | | |
| Frazier Fellowship | 1. Install back porch canopies | 1460 | | $200,000 | | | | |
| | 2. Operating | 1406 | | $30,000 | | | | |
| | 3. Security | 1406 | | $48,000 | | | | |
| | | | | | | | | |
| Wahoo Frazier | 1. Install back porch canopies | 1460 | | $300,000 | | | | |
| | 2. Security | 1406 | | $48,000 | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[2] To be completed for the Performance and Evaluation Report.

Page4

form HUD-50075.1 (4/2008)

**Appendix 605**

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

form HUD-50075.1 (4/2008)

**Part II: Supporting Pages**

PHA Name: Dallas Housing Authority

Grant Type and Number
Capital Fund Program Grant No:
CFFP (Yes/ No): No
Replacement Housing Factor Grant No:

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|
| | | | | Original | Revised [1] | Funds Obligated [2] | Funds Expended [2] | |
| Mill City | 1. Install back porch canopies | 1460 | | $300,000 | | | | |
| | 2. Security | 1406 | | $48,000 | | | | |
| | | | | | | | | |
| Frazier Scattered Sites | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **AMP 5** **TX009000005** | | | | | | | | |
| Brackins Village | 1. Security | 1406 | | $54,000 | | | | |
| | 2. Operating | 1406 | | $10,000 | | | | |
| | | | | | | | | |
| **AMP 6** **TX009000006** | | | | | | | | |
| Turner Courts | | | | | | | | |
| **AMP 7** **TX009000007** | | | | | | | | |
| Rhoads Terrace | | | | | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[2] To be completed for the Performance and Evaluation Report.

Page5

Appendix 606

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

Part II: Supporting Pages

PHA Name: Dallas Housing Authority

Grant Type and Number
Capital Fund Program Grant No:
CFFP (Yes/ No) No
Replacement Housing Factor Grant No:

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|
| | | | | Original | Revised[1] | Funds Obligated[2] | Funds Expended[2] | |
| **AMP 8 TX009000008** | | | | | | | | |
| Hamptons at Lakewest | 1. Operating | 1406 | 225 | $60,000 | | | | |
| | 2. Security | 1406 | 225 | $45,000 | | | | |
| | | | | | | | | |
| Kingsbridge Crossing | 1. Security | 1406 | | $45,000 | | | | |
| | 2. Landscape & Sprinkler System | 1450 | | $100,000 | | | | |
| | | | | | | | | |
| Villa Creek | 1. Security | 1406 | | $45,000 | | | | |
| | 2. Landscape & Sprinkler System | 1450 | | $125,000 | | | | |
| | | | | | | | | |
| Lakeview Townhomes | 1. Landscape & Sprinkler System | 1450 | | $125,000 | | | | |
| | 1. Security | 1406 | | $45,000 | | | | |
| | | | | | | | | |
| Lakewest Village | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[2] To be completed for the Performance and Evaluation Report.

form HUD-50075.1 (4/2008)

Appendix 607

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

Part II: Supporting Pages

PHA Name: Dallas Housing Authority

Grant Type and Number
Capital Fund Program Grant No:
CFFP (Yes/ No): No
Replacement Housing Factor Grant No:

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|
| | | | | Original | Revised[1] | Funds Obligated[2] | Funds Expended[2] | |
| **AMP 9**<br>**TX009000009** | | | | | | | | |
| Park Manor | 1. Landscape & Sprinkler System | 1450 | | $100,000 | | | | |
| | 2. Architect | 1430 | | $20,000 | | | | |
| | 3. Remodel Common Areas | 1470 | | $450,000 | | | | |
| | 4. Operating | 1406 | | $15,000 | | | | |
| | 5. Security | 1406 | | $69,600 | | | | |
| **AMP 10**<br>**TX009000010** | | | | | | | | |
| Brooks Manor | 1. Landscape & Sprinkler System | 1450 | 1 | $100,000 | | | | |
| | 2. Architect | 1430 | | $20,000 | | | | |
| | 3. Remodel Common Areas | 1470 | | $468,543 | | | | |
| | 3. Operating | 1406 | | $15,000 | | | | |
| | 4. Security | 1406 | | $93,600 | | | | |
| **AMP 11**<br>**TX009000011** | | | | | | | | |
| Cliff Manor | 1. Landscape & Sprinkler System | 1450 | | $100,000 | | | | |
| | 2. Architect | 1430 | | $20,000 | | | | |
| | 3. Remodel Common Areas | 1470 | | $450,000 | | | | |
| | 3. Operating | 1406 | | $15,000 | | | | |
| | 4. Security | 1406 | | $54,000 | | | | |
| **AMP 12**<br>**TX009000012** | | | | | | | | |
| Audelia Manor | 1. Landscape & Sprinkler System | 1450 | | $100,000 | | | | |
| | 2. Architect | 1430 | | $15,000 | | | | |
| | 3. Operating | 1406 | | $12,000 | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[2] To be completed for the Performance and Evaluation Report.

Page7

form HUD-50075.1 (4/2008)

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

| Part II: Supporting Pages | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PHA Name: Dallas Housing Authority | Grant Type and Number Capital Fund Program Grant No: CFFP (Yes/ No): No Replacement Housing Factor Grant No: | | | | Federal FFY of Grant: 2011 | | | |
| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
| | | | | Original | Revised[1] | Funds Obligated[2] | Funds Expended[2] | |
| | 4. Security | 1406 | | $36,000 | | | | |
| | 5. Remodel Common Areas | 1470 | | $200,000 | | | | |
| **AMP 13 TX009000013** | | | | | | | | |
| Barbara Jordan Square | 1. Security | 1406 | | $54,000 | | | | |
| | 2. Operating | 1406 | | $10,000 | | | | |
| | | | | | | | | |
| Larimore Lane | | | | | | | | |
| | | | | | | | | |
| **AMP 14 TX009000014** | | | | | | | | |
| Frankford Townhomes | 1. Operating | 1406 | | $10,000 | | | | |
| | | | | | | | | |
| Kelly Blvd. | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Villas at Hillcrest | | | | | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.

[2] To be completed for the Performance and Evaluation Report.

form HUD-50075.1 (4/2008)

Page8

Appendix 609

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

Part II: Supporting Pages

PHA Name: Dallas Housing Authority

Grant Type and Number
Capital Fund Program Grant No:
CFFP (Yes/No): No
Replacement Housing Factor Grant No:

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|
| | | | | Original | Revised[1] | Funds Obligated[2] | Funds Expended[2] | |
| **AMP 15 TX009000015** | | | | | | | | |
| Hidden Ridge | 1. Operating | 1406 | | $20,000 | | | | |
| | 2. Security | 1406 | | $79,200 | | | | |
| | | | | | | | | |
| Pebbles Apartments | | | | | | | | |
| | | | | | | | | |
| **AMP 16 TX009000016** | | | | | | | | |
| Scattered Site 9-29 | 1. Operating | 1406 | | $10,000 | | | | |
| | | | | | | | | |
| Scattered Site 9-30 | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[2] To be completed for the Performance and Evaluation Report.

form HUD-50075.1 (4/2008)

**Appendix 610**

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

Part II: Supporting Pages

PHA Name: Dallas Housing Authority

Grant Type and Number
Capital Fund Program Grant No:
CFFP (Yes/ No): No
Replacement Housing Factor Grant No:

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|
| | | | | Original | Revised[1] | Funds Obligated[2] | Funds Expended[2] | |
| Scattered Site 9-37 | | | | | | | | |
| | | | | | | | | |
| Scattered Site 9-40 | | | | | | | | |
| | | | | | | | | |
| Scattered Site 9-42 | | | | | | | | |
| | | | | | | | | |
| Conner Drive | | | | | | | | |
| Military Parkway | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[2] To be completed for the Performance and Evaluation Report.

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Page10

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
form HUD-50075.1 (4/2008)

Capital Fund Financing Program

OMB No. 2577-0226
Expires 4/30/2011

Part II: Supporting Pages

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| PHA Name: Dallas Housing Authority | | | Grant Type and Number<br>Capital Fund Program Grant No:<br>CFFP (Yes/ No): No<br>Replacement Housing Factor Grant No: | | | Federal FFY of Grant: 2011 | |

| Development Number Name/PHA-Wide Activities | General Description of Major Work Categories | Development Account No. | Quantity | Total Estimated Cost | | Total Actual Cost | | Status of Work |
|---|---|---|---|---|---|---|---|---|
| | | | | Original | Revised[1] | Funds Obligated[2] | Funds Expended[2] | |
| PHA Wide | | | | | | | | |
| | 1. Fees and Costs | 1430 | | $10,000 | | | | |
| | 2. Construction Inspector | 1430 | | $70,000 | | | | |
| | 3. Computer Software & Equipment | 1408 | | $100,000 | | | | |
| | 4. Administration | 1410 | | $629,000 | | | | |

[1] To be completed for the Performance and Evaluation Report or a Revised Annual Statement.
[2] To be completed for the Performance and Evaluation Report.

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

Page11

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226

form HUD-50075.1 (4/2008)

**Appendix 612**

Expires 4/30/2011

Part III: Implementation Schedule for Capital Fund Financing Program

PHA Name: Dallas Housing Authority

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | All Fund Obligated (Quarter Ending Date) | | All Funds Expended (Quarter Ending Date) | | Reasons for Revised Target Dates[1] |
|---|---|---|---|---|---|
| | Original Obligation End Date | Actual Obligation End Date | Original Expenditure End Date | Actual Expenditure End Date | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

[1] Obligation and expenditure end dated can only be revised with HUD approval pursuant to Section 9) of the U.S. Housing Act of 1937, as amended.

form HUD-50075.1 (4/2008)

Page12

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
OMB No. 2577-0226
Expires 4/30/2011

Annual Statement/Performance and Evaluation Report
Capital Fund Program, Capital Fund Program Replacement Housing Factor and
Capital Fund Financing Program

Part III: Implementation Schedule for Capital Fund Financing Program

PHA Name: Dallas Housing Authority

Federal FFY of Grant: 2011

| Development Number Name/PHA-Wide Activities | All Fund Obligated (Quarter Ending Date) | | All Funds Expended (Quarter Ending Date) | | Reasons for Revised Target Dates [1] |
|---|---|---|---|---|---|
| | Original Obligation End Date | Actual Obligation End Date | Original Expenditure End Date | Actual Expenditure End Date | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

[1] Obligation and expenditure end dated can only be revised with HUD approval pursuant to Section 9j of the U.S. Housing Act of 1937, as amended.

form HUD-50075.1 (4/2008)

Page13

Appendix 614

**Dallas Housing Authority**
**FY 2010 PHA 5-Year and Annual Plan**

**Attachment E**
**8.0 Capital Improvements**

**8.2      Capital Fund Program Five-Year Action Plan**

**Capital Fund Program—Five-Year Action Plan**

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
Expires 4/30/20011

**Part I: Summary**

| PHA Name/Number<br>Dallas Housing Authority | | Locality (City/County & State)<br>Dallas, Dallas, Texas | | ☒Original 5-Year Plan ☐Revision No: | |
|---|---|---|---|---|---|
| A. | Development Number and Name | Work Statement for Year 1<br>FFY 2011 | Work Statement for Year 2<br>FFY 2012 | Work Statement for Year 3<br>FFY 2013 | Work Statement for Year 4<br>FFY 2014 | Work Statement for Year 5<br>FFY 2015 |
| B. | Physical Improvements Subtotal | Annual Statement | $6,303,000 | $4,426,400 | $4,752,700 | $5,160,000 |
| C. | Management Improvements | | $1,136,400 | $1,136,400 | $1,136,400 | $1,136,400 |
| D. | PHA-Wide Non-dwelling Structures and Equipment | | | | | |
| E. | Administration | | $220,000 | $220,000 | $220,000 | $220,000 |
| F. | Other | | $80,000 | $80,000 | $80,000 | $80,000 |
| G. | Operations | | | | | |
| H. | Demolition | | | | | |
| I. | Development | | | | | |
| J. | Capital Fund Financing – Debt Service | | | | | |
| K. | Total CFP Funds | | $7,739,400 | $5,862,800 | $6,189,100 | $6,596,400 |
| L. | Total Non-CFP Funds | | | | | |
| M. | Grand Total | | $7,739,400 | $5,862,800 | $6,189,100 | $6,596,400 |

**Appendix 616**

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
Expires 4/30/20011

**Capital Fund Program—Five-Year Action Plan**

## Part II: Supporting Pages – Physical Needs Work Statement(s)

| Work Statement for Year 1 FFY 2011 | Work Statement for Year 2012 FFY | | | Work Statement for Year 2013 FFY | | |
|---|---|---|---|---|---|---|
| | Development Number/Name General Description of Major Work Categories | Quantity | Estimated Cost | Development Number/Name General Description of Major Work Categories | Quantity | Estimated Cost |
| See Attached | **AMP 1** | | | **AMP 1** | | |
| $665,950 | **Roseland TX00900001** | | | **Roseland TX00900001** | | |
| | Roseland Townhomes | | | Roseland Townhomes | | |
| | 1. Landscape | 1 | $25,000 | 1. Replace water heaters | 152 | $121,600 |
| | 2. Gutter repair | 1 | $15,000 | | | |
| | **Roseland Estates** | | | **Roseland Estates** | | |
| | 1. Landscape | 1 | $25,000 | 1. Replace water heaters | 138 | $110,000 |
| | 2. Gutter repair | 1 | $15,000 | | | |
| | **Monarch** | | | **Monarch** | | |
| | 1. Replace carpet | 65 | $165,000 | | | |
| | **Carroll** | | | **Carroll** | | |
| | 1. Replace carpet | 71 | $200,000 | | | |
| | **Scattered Sites** | | | **Scattered Sites** | | |
| | 1. Replace Carpet | 64 | $220,000 | 1. Restripe Parking lot | 1 | $9,000 |
| | 2. Repair Sprinkler System | 1 | $20,000 | 2. Landscape | 1 | $5,000 |
| | Subtotal of Estimated Cost | | $685,000 | Subtotal of Estimated Cost | | $245,600 |

(4/2008)

form HUD-50075.2

**Appendix 617**

**Capital Fund Program—Five-Year Action Plan**

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
Expires 4/30/2011

| Work Statement for Year 1 FFY 2011 | Work Statement for Year 2014 | | | Work Statement for Year 2015 | | |
|---|---|---|---|---|---|---|
| | Development Number/Name General Description of Major Work Categories | Quantity FFY | Estimated Cost | Development Number/Name General Description of Major Work Categories | Quantity FFY | Estimated Cost |
| *See 50081 Subtotal* | **AMP 1** **Roseland TX009000001** | | | **AMP 1** **Roseland TX009000001** | | |
| | **Roseland Townhomes** | | | **Roseland Townhomes** | | |
| | 1. Replace Kitchen Cabinets | 152 | $1,216,000 | 1. Paint exterior | 1 | $150,000 |
| | **Roseland Estates** | | | **Roseland Estates** | | |
| | 1. Replace Kitchen Cabinets | 138 | $1,104,000 | 1. Paint exterior | 1 | $130,000 |
| | **Monarch** | | | **Monarch** | | |
| | 1. Replace fence | 1 | $20,000 | 1. Replace water heaters | 65 | $52,000 |
| | **Carroll** | | | **Carroll** | | |
| | | | | 1. Replace water heaters | 71 | $57,000 |
| | **Scattered Sites** | | | **Scattered Sites** | | |
| | 1. Paint Exterior | 1 | $100,000 | 1. Replace fence | 1 | $42,000 |
| | Subtotal of Estimated Cost | | $2,440,000 | Subtotal of Estimated Cost | | $431,000 |

form HUD-50075.2

(4/2008)

**Appendix 618**

Capital Fund Program—Five-Year Action Plan

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
Expires 4/30/20011

## Part II: Supporting Pages – Physical Needs Work Statement(s)

### Work Statement for Year 1 FFY 2011

See Annual Statement

| Development Number/Name General Description of Major Work Categories | | |
|---|---|---|

### Work Statement for Year 2012 FFY

| Development Number/Name General Description of Major Work Categories | Quantity | Estimated Cost |
|---|---|---|
| **Amp 2** | | |
| **Little Mexico TX009000002** | | |
| 1. Install Ceramic Tile at community Bldg. | 1 | $25,000 |
| Subtotal of Estimated Cost | | $25,000 |

### Work Statement for Year 2013 FFY

| Development Number/Name General Description of Major Work Categories | Quantity | Estimated Cost |
|---|---|---|
| **AMP 2** | | |
| **Little Mexico TX009000002** | | |
| 1. Playground repair | 1 | $20,000 |
| 2. Parking lot repair | 1 | $120,000 |
| 3. Paint fence | 1 | $10,000 |
| Subtotal of Estimated Cost | | $150,000 |

form HUD-50075.2

(4/2008)

Appendix 619

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing
Expires 4/30/20011

Capital Fund Program—Five-Year Action Plan

## Part II: Supporting Pages – Physical Needs Work Statement(s)

| Work Statement for Year 1 FFY 2011 | Work Statement for Year 2014 | | | Work Statement for Year: 2015 | | |
|---|---|---|---|---|---|---|
| Development Number/Name General Description of Major Work Categories | Development Number/Name General Description of Major Work Categories | FFY Quantity | Estimated Cost | Development Number/Name General Description of Major Work Categories | FFY Quantity | Estimated Cost |
| *(shaded)* | **AMP 2** **Little Mexico TX009000002** | | | **AMP 2** **Little Mexico TX009000002** | | |
| *(shaded)* | 1. Paint exterior | 1 | $125,000 | 1. Office furniture | 1 | $10,000 |
| *(shaded)* | | | | 2. Replace Kitchen cabinets | 102 | $400,000 |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | | | | | | |
| *(shaded)* | Subtotal of Estimated Cost | | $125,000 | Subtotal of Estimated Cost | | $410,000 |

(4/2008)

form HUD-50075.2