IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITES STATES ex rel. | § | |
| CURTIS LOCKEY, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3-11-CV-354-O |
| | § | ECF |
| CITY OF DALLAS, et al., | § | |
| Defendants. | § | |

**CITY OF DALLAS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
FOR WANT OF JURISDICTION PURSUANT TO 31 U.S.C. § 3730(e)(3)**

THOMAS P. PERKINS, JR.
Dallas City Attorney

Charles Estee
Assistant City Attorney
Texas Bar No. 17827020
charles.estee@dallascityhall.com

Peter B. Haskel
Senior Assistant City Attorney
Texas Bar No. 09198900
peter.haskel@dallascityhall.com

City Attorney's Office
1500 Marilla Street, Room 7B North
Dallas, Texas  75201
Telephone:     214-670-3519
Telecopier:    214-670-0622

Attorneys for Defendant City of Dallas

**TABLE OF CONTENTS**

I.     FACTUAL AND PROCEDURAL OVERVIEW ................................................. 1

II.    31 U.S.C. § 3730(e)(3)'s JURISDICTIONAL BARRIER ................................. 2

III.   THE INVESTIGATION OF A HOUSING DISCRIMINATION
       COMPLAINT IS  "AN ADMINISTRATIVE CIVIL MONEY PENALTY
       PROCEEDING" ........................................................................................... 3

IV.    THIS *QUI TAM* LAWSUIT IS BASED ON THE ALLEGATIONS AND
       TRANSACTIONS THAT WERE THE SUBJECT OF A CIVIL SUIT AND
       AN ONGOING ADMINSTRATIVE CIVIL MONEY PENALTY
       PROCEEDING IN WHICH THE GOVERNMENT WAS A PARTY ........................... 6

       A.     Comparison of Allegations and Transactions .................................... 6

              1.     Allegedly Defective Analysis of Impediments ............................. 6

              2.     LIHTC Project Locations ......................................................... 7

              3.     TIF Districts ....................................................................... 8

              4.     Intown Housing Program ........................................................ 8

              5.     Atmos Project ...................................................................... 9

              6.     Continental and Shamburger Projects ....................................... 10

              7.     Interest Rates ..................................................................... 11

              8.     HERA ............................................................................... 12

              9.     Alleged Statement by City Representative ................................. 12

              10.    City Declines to Offer Financial Assistance to Relators'
                     Project ............................................................................. 13

              11.    Relator's Joint Declaration .................................................... 14

              12.    Other Communication by Relators with HUD .............................. 15

              13.    Relators' Admit an On-Going Investigation ................................ 15

              14.    HUD's Investigation ............................................................. 16

       B.     This Action is Based Upon *Walker* and Administrative Civil Penalty
              Proceeding .......................................................................... 16

PRAYER .......................................................................................................................... 17

CERTIFICATE OF SERVICE ...................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Foundation for Fair Contracting, Ltd. v. G & M Eastern Contracting & Double E, LLC.*,
   259 F. Supp. 2d 329 (D. N.J. 2003) ..................................................................... 3, 16

*Little v. Shell Exploration & Prod. Co.*,
   690 F.3d 282 (5th Cir. 2012) ...................................................................................... 2

*U.S. ex re.l Stone v. AmWest Savings Assoc.*,
   999 F. Supp. 852 (N. D. Tex. 1997) ......................................................... 2, 3, 6, 16

*United States ex rel. Findley v. FPC–Boron Employees' Club*,
   105 F.3d 675 (D.C.Cir.1997),
   *cert. denied*, 522 U.S. 867 (1997) ............................................................................... 2

*United States ex rel. S. Prawer and Company v. Fleet Bank of Maine*,
   24 F.3d 320 (1st Cir.1994) ......................................................................................... 3

*Walker, et al v. City of Mesquite, et al*,
   Civil Action No. 3:85-CV-01210-O (N. D. Tex.) ...................................................... 6

**Statutes**

29 U.S. C. § 794a(a)(2) ................................................................................................... 5

31 U.S.C. § 3730(b) ........................................................................................................ 2

31 U.S.C. § 3730(e)(3) ............................................................................................ 1, 2, 3

31 U.S.C. § 3730(e)(4) ................................................................................................ 3, 4

42 U.S.C. § 2000d ........................................................................................................... 5

42 U.S.C. § 3610(a)(1(A)(i) ........................................................................................... 4

42 U.S.C. § 3610(a)(1(A)(iii) ......................................................................................... 4

42 U.S.C. § 3610(b)(1) ................................................................................................... 4

42 U.S.C. § 3610(g)(1) ................................................................................................... 4

42 U.S.C. § 3612 ............................................................................................................. 4

42 U.S.C. § 3612(g)(3) ................................................................................................... 4

42 U.S.C. § 3614(a), (d) ................................................................................................. 4

42 U.S.C. § 5309 ........................................................................................................... 5

42 U.S.C. § 5311 ........................................................................................................... 5

42 U.S.C. §§ 3610(g)(2) and (3) ................................................................................... 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES ex rel.** | | |
| **CURTIS LOCKEY, et al** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3-11-CV-354-O** |
| | § | **ECF** |
| **CITY OF DALLAS, et al.,** | § | |
| **Defendants.** | § | |

**CITY OF DALLAS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR WANT**
**OF JURISDICTION PURSUANT TO 31 U.S.C. § 3730(e)(3)**

TO THE HONORABLE COURT:

Defendant, City of Dallas (the "City"), files this brief in support of its motion to dismiss for want of jurisdiction pursuant to 31 U.S.C. § 3730(e)(3).

**I.**
**FACTUAL AND PROCEDURAL OVERVIEW**

Relators' recent responses to discovery and pleadings have revealed an additional basis for the lack of subject-matter jurisdiction. The allegations and transactions in this case are part of pre-existing litigation to which the United States was a party and a pre-existing administrative civil penalty proceeding. *See* 31 U.S.C. § 3730(e)(3). Relators were the owners of an entity that attempted to develop a vacant office building in downtown Dallas. After they were unsuccessful in securing financial support from the City for the project, they initially complained to the Department of Housing and Urban Development ("HUD"). They subsequently filed a housing discrimination complaint with HUD. While HUD was investigating the complaint, Relators filed this *qui tam* action. (Dkt. No. 2). The United States elected not to intervene and the complaint was unsealed. (Dkt. No. 12). Relators amended their complaint. (Dkt. No. 16). After

eventually being served, the Defendants moved to dismiss for want of jurisdiction because of prior public disclosures and also moved to dismiss for a failure to state a claim.  (Dkt. Nos. 26-30).  Those motions remain pending.

Discovery has revealed additional information and documents.  Under the False Claim Act, a court lacks subject-matter jurisdiction if the False Claim Act case is based upon the allegations and transaction raised in a civil suit or administrative proceeding in which the United States is already a party.  31 U.S.C. § 3730(e)(3).  *See Little v. Shell Exploration & Prod. Co.*, 690 F.3d 282, 287 (5th Cir. 2012) ("Suits duplicative of civil suits or administrative actions with the government as a party are barred.")  Prior litigation in the *Walker* case and the ongoing investigation by HUD of Relators' housing discrimination complaint are such proceedings and previously presented the same allegations and transactions.  As a result, the Court lacks subject-matter jurisdiction.

## II.
## 31 U.S.C. § 3730(e)(3)'s JURISDICTIONAL BARRIER

The *qui tam* provisions of the False Claims Act authorize private persons to bring actions on behalf of the United States against those who have committed fraud on the federal government. 31 U.S.C. § 3730(b). To prevent abuses, Congress has expressly limited the district courts' power to hear certain enumerated classes of *qui tam* suits. *U.S. ex rel. Stone v. AmWest Savings Assoc.*, 999 F. Supp. 852, 855 (N. D. Tex. 1997).[1]  One of those limitation is 31 U.S.C. § 3730(e)(3) which prohibits "piggy-back" *qui tam* lawsuits. *Id.*  The statute states:

> In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

---

[1] Citing *United States ex rel. Findley v. FPC–Boron Employees' Club,* 105 F.3d 675, 680 (D.C.Cir.1997), *cert. denied,* 522 U.S. 867 (1997); *United States ex rel. S. Prawer and Company v. Fleet Bank of Maine,* 24 F.3d 320, 326 (1st Cir.1994).

31 U.S.C. § 3730(e)(3).  In interpreting this statute, this Court looked to authority outside of the Circuit and held:

> In the absence of Fifth Circuit authority, this court is persuaded by the First Circuit's analysis of this statute in *Prawer*. *See generally Prawer,* 24 F.3d at 327–29.  Under *Prawer,* the determination of whether a *qui tam* suit is "based upon allegations or transactions which are the subject of" previous government litigation, *see* § 3730(e)(3) above, requires the court to examine the relationship between the suits. *Id.*  If the *qui tam* action receives support from the earlier case without giving the government any useful return (other than the potential for monetary recovery), the basis and the subject of the lawsuits are the same. *Id.* at 328.

*Stone*, 999 F. Supp. at 855 (footnote omitted).  The Court added that in determining whether the *qui tam* suit is based upon the existing matter "does not require identical allegations; rather, it turns on a *similarity* of pleading that creates a host/parasite relationship." *Id.* at 855, note 4 (emphasis original).  If the two proceedings exhibit the host/parasite relationship, then the district court lacks jurisdiction to hear the False Claims Act case. *Id.* at 856.

### III.
### THE INVESTIGATION OF A HOUSING DISCRIMINATION COMPLAINT IS "AN ADMINISTRATIVE CIVIL MONEY PENALTY PROCEEDING"

The False Claims Act does not provide a definition of what constitutes "an administrative civil money penalty proceeding" found in 31 U.S.C. § 3730(e)(3).  In *Foundation for Fair Contracting, Ltd. v. G & M Eastern Contracting & Double E, LLC.*, 259 F. Supp. 2d 329, 336-39 (D. N.J. 2003), the court held that an investigation by the Department of Labor constituted an administrative civil money penalty proceeding.  The court observed that the broad interpretation given to the term "hearing" found in the public disclosure jurisdictional bar, 31 U.S.C. § 3730(e)(4), favored a broad interpretation of the term "proceeding". *Id.* at 336-37.  The court concluded that the investigation was an administrative civil money proceeding because of Department of Labor's abilities under the regulatory provisions setting forth the procedure for disputes concerning wages.  Under the procedures, the defendant could be subject to penalties of

debarment, restitution, liquidated damages, or criminal investigation resulting from the Department's investigation. *Id*. at 339. The court also noted that it did not matter that the Department of Labor had not plead all possible violations and remedies in its investigation. *Id*.

Relators initially wrote to HUD complaining about City actions. (City Appx. at 1-6, 9-15, 20-24, 117-127 [Tabs 1, 3, 4, 6, 31]). They then submitted a document titled "Housing Discrimination Complaint" on behalf of their failed development project. (City Appx. at 25-26, 27-41 [Tabs 7, 7a]). [2] They submitted supplements to the complaint. (City Appx. at 47-51, 57-58, 64-72, 128-142, 144 [Tabs 9, 10, 13, 16-19, 32-40, 42]). HUD requested information and documents from the City based on the asserted claims. (City Appx. at 7-8, 16-19, 42-44, 52-56, 59-60, 61-63, 73-78 [Tabs 2, 5, 8, 11, 12, 14, 15, 20-22]).

The procedure for filing a housing discrimination complaint is found in 42 U.S.C. § 3610(a)(1(A)(i). HUD is also authorized to investigate and determine if there is reasonable cause for HUD to institute action. *Id*. § 3610(a)(1(A)(iii). During the investigation, HUD has the power to issue subpoenas and engage in discovery. *Id*. § 3612. HUD can seek a conciliation agreement. *Id*. § 3610(b)(1). If an agreement is not reached, HUD completes its investigation to determine if there is reasonable cause to believe discriminatory practices occurred or are about to occur. *Id*. § 3610(g)(1). If no reasonable cause is found, the complaint is dismissed. If reasonable cause is determined HUD issues a charge to the respondent. *Id*. § 3610(g)(2) and (3). If a charge is issued, the respondent has the election to have the matter heard in either an administrative or a judicial proceeding. *Id*. § 3612. In either proceeding, the United States may seek injunctive relief, damages, and civil penalties. *Id*. §§ 3612(g)(3), 3614(a), (d).

---

[2] In support of the various assertions in his housing complaint, Lockey referenced and attached publicly disclosed documents. (*See* City Appx. at 27-41)

In addition to a claim under the Fair Housing Act, Lockey's housing discrimination complaint also alleged that the City violated Title VI of the Civil Rights Act[3], Section 109 of Title I of the Housing and Community Development Act of 1974[4], and Section 504 of the Rehabilitation Act of 1973.[5] (City Appx. at 26 [Tab 7]).

Under the regulations for the Civil Rights Act, a person may submit to HUD a complaint that a recipient of federal funds has discriminated. 24 C.F.R. 1.7. HUD is to investigate the complaint. If no action is warranted, HUD advises the complainant. 24 C.F.R. 1.7(d)(2). If the investigation indicates a failure to comply, HUD is to seek an informal resolution. 24 C.F.R. 1.7(d)(1). If an informal resolution cannot be reached compliance can be sought through termination, refusal, or suspension of federal funds, or through a referral to the Department of Justice, or other lawful remedies. 24 C.F.R. 1.8.

Under the Housing and Community Development Act, if HUD determines there is a failure to comply, it can terminate, reduce, or limit CDBG funding. 42 U.S.C. § 5311. HUD can also refer the matter to the Attorney General to institute a civil suit to recover funds or seek injunctive relief. *Id.*

Relators invoked all of these administrative remedies with possible damages, corrective action, penalties, and the possibility of civil litigation by the United States. HUD's investigation into a Relators' complaint is an administrative civil money penalty proceeding.

---

[3] 42 U.S.C. § 2000d.
[4] 42 U.S.C. § 5309.
[5] 29 U.S. C. § 794a(a)(2).

# IV.
## THIS *QUI TAM* LAWSUIT IS BASED ON THE ALLEGATIONS AND TRANSACTIONS THAT WERE THE SUBJECT OF A CIVIL SUIT AND AN ONGOING ADMINSTRATIVE CIVIL MONEY PENALTY PROCEEDING IN WHICH THE GOVERNMENT WAS A PARTY

### A.      Comparison of Allegations and Transactions

To determine if jurisdiction exists, the Court must compare the proceedings to determine if a host/parasite relationship exists.     *Stone*, 999 F. Supp. at 856.   As explained below, the complaint about the 1998 Analysis of Impediments ("1998 AI") was raised in 1998 in a civil lawsuit to which HUD was a party.   Also, Relators have previously initiated an administrative proceeding with HUD.   These are the host proceedings.   In their False Claims Act pleading, Relators alleged the same allegations and transactions.   This lawsuit is the parasite proceeding.

### 1.      Allegedly Defective Analysis of Impediments

**Host**.   In 1998, the City prepared an analysis of impediments ("1998 AI").   At the time, the City was a party to a lawsuit in *Walker, et al v. City of Mesquite, et al*, Civil Action No. 3:85-CV-01210-O (N. D. Tex.) and was subject to an agreed consent decree.   HUD was a party to the lawsuit.   A copy of the 1998 AI was provided to HUD, the Plaintiffs, and a master appointed in the *Walker* case.   The *Walker* plaintiffs did not believe the 1998 AI was sufficient and filed a motion challenging it.   (*See* City Appx. at 94-107 [Tab 26]).   The *Walker* plaintiffs claimed the City was not affirmatively furthering fair housing, the 1998 AI omitted references to impediments and remedial action, the AI used boiler-plate list of certifications to affirmatively further fair housing, and as relief sought a revised analysis of impediments.   (*Id*.).   The motion remained pending until the consent decree was terminated in August 2003 when all pending motions were dismissed with prejudice.   (City Appx. at 108 [Tab 27]).   As part of the

supplements to the housing complaint, Lockey asserted the City had failed to affirmatively further fair housing.  (City Appx. at 132, 135, 140, 144 [Tabs 34, 36, 39, 42]).

**Parasite**.       In the amended complaint, Relators made complaints about the sufficiency of the 1998 AI, including a failure to assess all of the impediments and take remedial action.  (Dkt. No. 16, ¶¶ 63-66, 69).  Relators also alleged that the City failed to affirmatively further fair housing.  (*e.g. id*. at ¶¶ 21-23).  These allegations were raised and based upon the allegations and transactions already before the court in the *Walker* case and were based upon the ongoing administrative civil money penalty proceeding.

### 2.     LIHTC Project Locations

**Host.**   On January 25, 2010**,** Lockey wrote HUD and asserted that during the last decade the City had sponsored numerous LIHTCs developments but all were in southern Dallas.  (City Appx. at 20 [Tab 6]).    On February 3, 2010, Lockey submitted his housing discrimination complaint.  As support for the claim he included the allegation that the City had encouraged development of LIHTCs projects in southern Dallas but discouraged such development in northern Dallas.  (City Appx. at 25, 31 [Tabs 7, 7a]).

**Parasite**.   The same allegation as in the housing complaint was made in Relators' pleadings.  (Dkt. No. 16, ¶ 93).  In response to contention interrogatories, Relators repeated their claims concerning LIHTCs and referenced the documents they submitted to HUD in support of the housing complaint.  (*Compare* City Appx. at 88, 92, citing R001152, to City Appx. at 31).  These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

### 3.    TIF Districts

**Host**.  On October 12, 2009, Mr. Lockey wrote HUD and complained that the downtown TIF districts had not created more affordable units.  (City Appx. at 1-6 [Tab 1]).  On November 17, 2009, Lockey again wrote and complained about TIF funding.  (City Appx. 118, 120-121 [Tab 31]).  On February 3, 2010, Lockey submitted his housing complaint and among the allegations were allegations that the City used TIFs to create re-developments but not affordable units in downtown Dallas.  (City Appx. at 25, 32 [Tabs 7, 7a]).  On November 2, 2010, Lockey wrote to HUD and said "TIF Districts funding perpetuates segregation and not AFFH" and also complained about the differences in TIF funding in north and south Dallas.  (City Appx. at 144 [Tab 42]).

**Parasite**.   In their pleadings, Relators complained about the minimal funding for affordable housing in the TIF districts, about differences in affordable housing funding for TIFs located in the north as compared to south Dallas, and that the Downtown Connection TIF plan restricts support to affordable housing.  (Dkt No. 16, ¶¶ 95-97, 102).  In response to contention interrogatories, Relators repeated their claims concerning TIFs and referenced the documents they submitted to HUD in support of the fair housing complaint.  (*Compare* City Appx. at 89, citing R001213, R001259-1359, R001361, R001362, R002606-2610, to City Appx. at 20-24, 32-35 [Tabs 6, 7a]).[6]  These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

### 4.    Intown Housing Program

**Host**.  On October 12, 2009, Mr. Lockey wrote HUD and complained about the Intown Housing Program that started in 1996. (City Appx. at 1-6 [Tab 1]).  On November 17, 2009,

---

[6] R001260-R001359 was a copy of TIF plans.  (*See* City Appx. at 145, 161 [Tabs 43, 45]).

Lockey again wrote and complained about the program.  (City Appx. 118, 120 [Tab 31]). On March 24, 2010, in a letter to HUD, Lockey repeated his complaints about the Intown Housing Program.  (City Appx. at 47-49 [Tab 9]).   In particular, he complained about the Santa Fe conversion and the buy backs of the loans by the owners of the Kirby and Davis Buildings.  He complained that the affordable units in downtown Dallas had been lost. (City Appx. at 47-48 [Tab 9]).  On February 3, 2010, Lockey submitted his housing complaint and among the allegations were allegations that the Intown Housing Program had been eradicated by the buy-back of the loans.  (City Appx. at 25, 36 [Tabs 7, 7a]).

**Parasite**.  In their pleadings, Relators alleged that the Intown Housing Program was all but defunct, that the Santa Fe had been converted to condo's, that the owners of Kirby and Davis Buildings had purchased their loans.   (Dkt. No. 16, ¶ 109). In response to contention interrogatories, Relators repeated their claims concerning the Intown Housing Program and referenced the documents they submitted to HUD in support of the fair housing complaint. (*Compare* City Appx. at 89, citing R001363, R001365, R016022, R016287 to City Appx. at 36, 120, 146, 147 [Tabs 7a, 31, 43]).   These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

### 5.    Atmos Project

**Host.** On October 12, 2009, Mr. Lockey wrote HUD and complained about the City's support of the Atmos project.   (City Appx. at 1-6 [Tab 1]).  On June 16, 2010, Lockey wrote HUD and again complained about the City's support of the Atmos project and complained about discrimination from the concentration of the affordable units in one of four buildings.  (City Appx. at 64-65 [Tab 16]).   He claimed that approval of the Atmos project would violate multiple

federal laws and said he said he feared HUD had been mislead.   (*Id*.).   (*See also* City Appx. at 123-124,128, 130-131 [Tabs 31, 32, 33]).

      **Parasite.**   In their pleadings, Relators repeated the allegation about the concentration of affordable housing in one of four buildings.   (Dkt. No. 16, ¶¶ 100, 101).   In response to contention interrogatories, Relators repeated their claims concerning the Atmos project and referenced the documents they submitted to HUD in support of the housing complaint. (*Compare* City Appx. at 89, citing R002891 and R016982 to City Appx. at 65, 131).   These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

      **Host.**   On July 29, 2010, Lockey wrote HUD and complained that the City's approval of a stock purchase agreement related to the Atmos project restricted the use of the property as affordable housing and complained about deed restrictions.   (City Appx. at 70-72 [Tab 19]). (*See also* City Appx. at 141-142 [Tab 40]).

      **Parasite.**   In their pleadings, Relators repeated the allegation.   (Dkt. No. 16, ¶ 98).   In response to contention interrogatories, Relators repeated their claims and referenced the documents they submitted to HUD in support of the housing complaint.   (*Compare* City Appx. at 92, citing R017119, to City Appx. at 70-72, 148 [Tabs 19, 43]).   These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

      **6.**    **Continental and Shamburger Projects**

      **Host.**   On October 12, 2009, Mr. Lockey wrote HUD and complained about the City's support of the Continental project.   (City Appx. at 1-6 [Tab 1]).   On March 24, 2010**,** Mr. Lockey wrote HUD and complained that the Continental project was only setting aside one

bedroom apartments as affordable units.  (City Appx. at 48 [Tab 9]).  On July 12, 2010, Mr. Lockey wrote HUD and complained that the Shamburger and Continental projects were only setting aside one bedroom apartments as affordable units.  (City Appx. at 68 [Tab 18]).  Lockey asked that the letter be considered as part of the housing complaint.  (City Appx. at 69 [Tab 18]).  (*See also* City Appx. at 124, 128-129 [Tab 31, 32]).

**Parasite.**    In their pleadings, Relators repeated the allegations about one bedroom affordable units in the Shamburger and Continental projects.  (Dkt. No. 16, ¶ 99).  (*See also* City Appx. at 92).    In response to contention interrogatories, Relators repeated their claims concerning these two projects and referenced the documents they submitted to HUD in support of the housing complaint.  (*Compare* City Appx. at 92, citing R016633 to City Appx. at 128, citing R017098 to City Appx. at 68-69, 149 [Tabs 18, 44]); (*compare* City Appx. at 93, citing R016724, to City Appx. at 64, 150 [Tabs 16, 44])).  These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

### 7.    Interest Rates

**Host.**    On May 12, 2010, Mr. Lockey wrote HUD and complained about the higher interest the City was charging developers receiving Section 108 loan guarantees.  He claimed that it was an attempt to deter development of affordable housing projects and was contrary to the CDBG goals and objectives.  He requested that the allegation be considered as part of his housing complaint.  (City Appx. at 57 [Tab 13]).  Lockey asked that the letter be considered as part of their housing complaint.  (*Id*.).    On July 12, 2010, Mr. Lockey again wrote HUD and repeated his complaint about the higher interest the City was charging developers.  (City Appx. at 69 [Tab 18]).  Lockey asked that the letter be considered as part of their housing complaint.  (*Id*.).  (*See also* City Appx. at 130-131 [Tab 33]).

**Parasite**.   In their pleadings, Relators complained that the City charged higher interest rates and thereby discouraged the production of affordable housing.  (Dkt. No. 16, ¶ 115).  These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

### 8.   HERA

**Host.**  On November 17, 2009, Lockey wrote and complained about the handling of HERA bonds regarding their failed project.  (City Appx. 118, 122-123 [Tab 31]).  (*See also* 136-137 [Tab 37]).  On April 22, 2010, Lockey wrote HUD to complain about the planned allocation of $75 million back to the State.  (City Appx. at 133 [Tab 35]).

**Parasite.**        Relators complained about the City's receipt of an allocation of $150 million in HERA bonds in December 2008 but then transferring $75 million to a state entity in April 2010.  (Dkt. No. 16, ¶ 114).  These allegations and transaction were already part of and were based upon the ongoing administrative civil money penalty proceeding.

### 9.   Alleged Statement by City Representative

**Host.**  In their housing complaint, Lockey claimed that a city representative in discussing Relators' project said affordable housing was not part of the vision for downtown Dallas.  (City Appx. at 26, 41 [Tabs 7, 7a]).  In their July 29, 2010 letter, Relators again referenced the alleged statement.  (City Appx. at 72 [Tab 19]).  (*See also* City Appx. at 118-119 [Tab 31]).

**Parasite.**  In their pleadings, Relators repeat their allegation that a City representative said that affordable housing was not part of the vision for downtown Dallas.  (Dkt. 16, ¶ 104). These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

**10.    City Declines to Offer Financial Assistance to Relators' Project**

**Host.**    In the housing complaint, Lockey asserted various reasons why the City's decision not to provide assistance to his project was improper.  (City Appx. at 25-26, 37, 38, 39, 40 [Tabs 7, 7a]).  On March 24, 2010, Lockey again complained about the City's denial of assistance for his project.  (City Appx. at 48-49 [Tab 9]).   On July 12, 2010, Mr. Lockey wrote HUD and complained that the City had "misled HUD" regarding one of the stated reasons for denying assistance to the Relators' development.  (City Appx. at 69 [Tab 18]).  (*See also* City Appx. 117-127, 133, 136-137, 139-140 [Tabs 31, 35, 37, 39]).

**Parasite.**    There are no allegations in Relators' pleadings regarding the City's actions in dealing with Relators' failed development.  (Dkt Nos. 2, 16).  However, in efforts to oppose the Defendants' motions to dismiss, Relators sought to rely on the unalleged events regarding their failed project.  In response to the motions to dismiss for failing to state a claim, they asserted that through their interaction with the City, Relators learned of City's efforts to discourage unspecified developments.  (Dkt No. 52 at 6).  In an effort to avoid the public disclosure jurisdictional bar, Relators claimed their alleged experience with their failed development lead them to the conclusion that the City was discouraging development of affordable housing in downtown Dallas and elsewhere.  (Dkt. No. 52 at 28-29).   In response to contention interrogatories, Relators now rely on these unalleged events regarding their failed project and cite to the documents submitted to HUD in support of the housing complaint.  (*Compare* City Appx. at 88, 89 citing R000850-51, R001553, R001542 to City Appx. at 38, 39, 113-114 [Tabs 7a, 29]).  These allegations and transactions were already part of and were based upon the ongoing administrative civil money penalty proceeding.

11.      **Relator's Joint Declaration**

**Host.**   On October 12, 2009, Lockey wrote HUD and contended that the City had solicited projects that required HUD waivers of its 51% low/moderate income occupant national objective. (City Appx. at 6 [Tab 1]).   In the housing complaint, Lockey asserted the City concentrated its housing expenditures in southern Dallas. (City Appx. at 25, 28 [Tabs 7, 7a]).

**Parasite**.         In opposing the Defendants' motions to dismiss, Relators submitted a joint declaration.   (Dkt. No. 53-2).   They again made reference to their dealings with the City as evidence of the City's discrimination.   (*Id*. at 1 to 7).   The Relators then stated they performed an investigation and discovered that the City concentrated its housing expenditures in southern Dallas and the City solicited proposals for development in northern Dallas that required HUD waivers of its 51% low/moderate income occupant national objective.   (*Id*. at 7-8).   While none of these allegations appear in the Relators' pleadings, they all appeared in housing discrimination complaint and supplements.[7]   In response to contention interrogatories, Relators now rely on these unalleged events regarding their failed project and cite to the documents submitted to HUD in support of the housing complaint.   (*Compare* City Appx. at 91 citing R001365, R001590, R001706, R002595-2607, R002837-R002839, R016015-R016018, R016287, R016633, R017098 to City Appx. at 9-21, 29, 36, 40, 47-49, 128, 146, 147, 149, 161 [Tabs 3, 7a, 9, 32, 43, 45]).   (*See also* City Appx. 118, 129 [Tabs 31, 32]).   These allegations and transaction were already part of and were based upon the ongoing administrative civil money penalty proceeding.

---

[7] In their pleadings, Relators allege that contrary to national objective for CDBG and HOME funded housing projects that 51% of the units be affordable, the Downtown Connection TIF District restricts the number to 30%. (Dkt. No. 16, para. 102).   Relators subsequently admitted that the national objective has no application to any TIF project unless it was also receiving CDBG or HOME funding.  (City Appx. at 83-84 [Tab 24, RFA No. 96]).

### 12. Other Communication by Relators with HUD

On March 24, 2010, Lockey wrote HUD seeking a waiver of copying costs for his FOIA request related to obtaining copies of the City's consolidated plans and annual action plans. (City Appx. at 50-51 [Tab 10]).   He stated he had an ongoing housing complaint, he intended to analyze and comprehend the information in the plans, and he would use the information in support of the ongoing HUD proceedings.  He further said he hoped the resolution of the matter would lead to "appropriate use/allocation of CDBG funds by the City of Dallas, as well as the execution by the City of Dallas to Affirmatively Further Fair Housing, which we believe has been neglected to date."  (City Appx. at 51 [Tab 10]).

### 13. Relators' Admit an On-Going Investigation

During 2010, Relators spoke with an opinion writer for a local weekly paper.   The conversations were reported in the paper on June 10, 2010, approximately six months prior to the "voluntary" disclosure required by the False Claim Act.  (*See* City Appx. at 109-112 [Tab 28]). The article stated that Lockey and MacKenzie had filed a housing discrimination complaint and "they want HUD to look at Dallas' past waiver requests downtown as evidence of a larger pattern of false claims."  (City Appx. at 111 [Tab 28]).   The article described the AFFH requirements to receive federal funding and the City's certifications and the false claim act.  The article certainly suggests that the housing discrimination complaint investigation included all of those matters.  Relators sent a copy of the article to HUD.  (City Appx. at 138 [Tab 38]).

The City sent production requests to the Relators and sought all communications between the Relators and the United States concerning or relating to the development of the failed project and the allegations and transactions in the First Amended Complaint.  Relators objected in part that "their communications with HUD were made in the course of an on-going confidential

investigation process and in anticipation of litigation." (City Appx. at 81 [Tab 23, Responses to RFP Nos. 95, 96)]. Relators' objections acknowledge that the allegations and transactions in their pleadings are based upon the HUD's ongoing administrative civil penalty proceeding.

Relators continue to provide information to HUD and HUD continues to seek information. (City Appx. at 151-159 [Tab 44]).

### 14.    HUD's Investigation

As a result of the letters, the housing complaint, and the supplements, HUD has requested that the City and Lockey provide documents and information to address the various allegations. (City Appx. at 7-8, 16-19, 42-46, 52-56, 59-63, 73-78, 115-116, 143 [Tabs 2, 5, 8, 11, 12, 14, 15, 20, 21, 22, 30, 41]). In October 2010, the City received a letter from HUD advising it that HUD had not completed its investigation within 100 days. (City Appx. at 59-60 [Tab 14]). The investigation remains open.

### B.    This Action is Based Upon *Walker* and Administrative Civil Penalty Proceeding

In *Stone*, the defendant had sued the federal government concerning the scope and application of an agreement. *Id*., 999 F.Supp. at 856-57. Relator subsequently brought a False Claim Act claim that concerned the propriety of payment made and the management of the agreement. This court concluded the similarity between the two lawsuits brought the cases within the jurisdictional bar. *Id*. at 856. The court noted that the first suit sought to remedy the "fraud" claimed in the second. *Id*. *See also*, *Foundation for Fair Contracting,* 259 F. Supp. 2d at 339. ("In this case, all allegations in the Amended Complaint arise from the very same *transaction* previously the subject of the DOL's proceeding …. It would not matter that the precise claims here are not identical to the claim upon which DOL focused, where the

transactions are identical between DOL's penalty proceeding and the present case.") (emphasis original).

Here, Relators submitted a complaint to HUD seeking to punish the City for not underwriting their project. The purpose of this action is the same. Relators, even though not alleged, seek to rely on the City's denial of underwriting their project to avoid dismissal and support the claims in this case. To support their administrative complaint, Relators made assorted allegations concerning the City. Relators have repeated those allegations in this lawsuit. This False Claim Act action "receives support" from the HUD investigation and provided the United States nothing in return. The case should be dismissed for lack of jurisdiction. In the alternative, the City requests that those allegations and transactions that are subject to and part of the HUD investigation be dismissed.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, the City requests that the Court grant in whole, or alternatively in part, its motion to dismiss for lack of jurisdiction.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY
CITY OF DALLAS, TEXAS

By  s/ Charles Estee
      CHARLES ESTEE
      Assistant City Attorney
      State Bar of Texas No. 06673600
      PETER B. HASKEL
      State Bar of Texas No. 09198900
      7BN Dallas City Hall
      1500 Marilla Street
      Dallas, Texas 75201
      Telephone – 214/670-3519
      Telecopier – 214/670-0622

**CERTIFICATE OF SERVICE**

I certify that on December 14, 2012, I electronically filed the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas using the electronic case failing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means.


_s/ Charles Estee_____
CHARLES ESTEE