# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel. CURTIS LOCKEY and CRAIG MACKENZIE** | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No. 3:11-cv-354-O** |
| **CITY OF DALLAS, TEXAS, et al.,** | § § § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant City of Dallas's ("the City") Motion to Dismiss for Lack of Jurisdiction (ECF No. 26) and Brief in Support (ECF No. 27); the City's Motion to Dismiss for Failure to State a Claim (ECF No. 28) and Brief in Support (ECF No. 29); Defendant Dallas Housing Authority's ("DHA") Motion to Dismiss (ECF No. 31) and Memorandum in Support (ECF No. 32); Relators' Consolidated Response in Opposition to Defendants' Motions to Dismiss (ECF No. 52); the City's Reply to Relators' Response to the City's Motion to Dismiss for Lack of Jurisdiction (ECF No. 56); the City's Reply to Relator's Response to the City's Motion to Dismiss for Failure to State a Claim (ECF No. 57); and DHA's Reply Brief in Support of its Motion to Dismiss (ECF No. 58).

Also before the Court are the City's Motion to Strike and Objections to Relators' Exhibits in Support of Relators' Consolidated Response in Opposition to Defendants' Motion to Dismiss (ECF No. 59); Relators' Response in Opposition to the City's Motion to Strike and Objections to Relators' Exhibits (ECF No. 60); and the City's Reply (ECF No. 63). Finally, before the Court are

Relators' Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss (ECF No. 61); the City's Response (ECF No. 62); and DHA's Response (ECF No. 64).

Having reviewed the motions, pleadings, and applicable law, the Court finds that the City's Motion to Dismiss for Lack of Jurisdiction (ECF No. 26) should be and is hereby **GRANTED**. Also, DHA's Motion to Dismiss (ECF No. 31) should be and is hereby **GRANTED in part** and **DENIED as moot in part**. In addition, Relators' Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss (ECF No. 61) should be and is hereby **GRANTED** and the City's Motion to Strike and Objections to Relators' Exhibits in Support of Relators' Consolidated Response in Opposition to Defendants' Motion to Dismiss (ECF No. 59) should be and is hereby **DENIED**. Finally, the following are **DENIED as moot**: the City's Motion to Dismiss for Failure to State a Claim (ECF No. 28); the City's Motion to Dismiss for Lack of Jurisdiction pursuant to 31 U.S.C. Section 3730(e)(3) (ECF No. 89); the City's Second Motion to Stay Discovery and Motion for Protective Order (ECF No. 92); and the City's Motion to Strike Portions of Relators' Response to the City's Motion to Dismiss for Lack of Jurisdiction Pursuant to 31 U.S.C. Section 3730(e)(3) (ECF No. 96).

## I.     BACKGROUND

### A.     HUD and Affirmatively Further Fair Housing

Congress has developed a scheme for the U.S. Department of Housing and Urban Development ("HUD") to provide funding "for the development of viable urban communities, by providing decent housing and a suitable living environment . . . principally for persons of low and moderate income." 42 U.S.C. § 5301(c) (2006). To further these purposes, the Secretary "is authorized to make grants to . . . units of general local government." *Id.* § 5303. To receive a grant,

the grantee must certify, *inter alia*, that "the grant will be conducted and administered in conformity with the Civil Rights Act of 1964 and the Fair Housing Act, and the grantee will affirmatively further fair housing." *Id.* § 5304(b). In its regulations, HUD defines the affirmatively furthering fair housing certification as requiring the grantee to "conduct an analysis to identify impediments to fair housing choice within the jurisdiction, take appropriate actions to overcome the effects of any impediments identified through that analysis, and maintain records reflecting the analysis and actions in this regard." 24 C.F.R. § 91.225(a)(1) (2012). Depending on the type of grant for which a city or other unit of local government applies, there is a detailed regulatory scheme involving items the grantee must submit to HUD, such as a Consolidated Plan, annual action plan, annual performance reports, and an Analysis of Impediments ("AI"). *See* 24 C.F.R. §§ 91.5, 91.220, 91.520, 91.225(a)(1).

Because the City and DHA received various grants from HUD, they are required to comply with their obligation to affirmatively further fair housing and certify that they are in compliance each year. *See* 24 C.F.R. §§ 91.225, 903.7(o)(1), (3).

B.     **Relators' Involvement**

Relators, Curtis Lockey ("Lockey") and Craig MacKenzie ("MacKenzie"), began working with the City in May 2008 on a proposal for an affordable housing project called the LTV Tower Redevelopment ("LTV Tower"). Relators' App. Tab 3 (Lockey & MacKenzie Decl.), at R. 44, ¶ 1, ECF No. 53-2. The LTV Tower would convert a vacant thirty-two-story, high-rise office building in downtown Dallas into a large affordable housing project, and a majority of people who would qualify for this type of housing would be minorities, particularly African-American and Latino individuals and families. *Id.* at 44–45, ¶¶ 1, 3. In a meeting at City Hall on October 10, 2008,

Relators met with Karl Zavitkovsky, Director of Economic Development at the time, regarding funding sources for the LTV project, including funding from HUD programs. *Id.* at 45, ¶ 5. Relators allege that "Mr. Zavitkovsky told us that Downtown Dallas is not the right place for low-income housing and that low-income housing 'is not part of the vision for Downtown Dallas.'" *Id.* Relators understood those to be "code words" indicating that the City did not want racially integrated and low-income housing in Downtown Dallas. *Id.* at 46, ¶ 9.

Relators contend that the City imposed various hurdles hindering development of the project, and that these hurdles were imposed intentionally to avoid development of low-income housing in Downtown Dallas. *Id.* at 46, ¶ 10. Based on these and other firsthand personal experiences, Relators concluded that "the City was actively discouraging the development of low-income housing available for people of color outside of the Southern Sector, and in particular that the City did not want such housing to be in Downtown Dallas." *Id.* at 50, ¶ 25.

Relators then embarked on "an extensive 15-month independent investigation" to corroborate their conclusion of the City's actions. *Id.* at 50, ¶ 26. This investigation included compiling data and performing analyses of DHA properties and Low-Income Housing Tax Credit ("LIHTC") project locations to reveal that "the City and DHA actively discouraged the development of low-income housing and minority residents in certain sectors of the City, particularly in Downtown Dallas." *Id.* at 50–51, ¶¶ 26–29. The investigation also included analyzing the City's Tax Increment Finance ("TIF") Plans, annual reports, and data on budgeted expenditures from which Relators "deduce[d] the negative collective impact that the City's TIF policies have on low-income and fair housing." *Id.* at 52, ¶ 29. Ultimately, Relators contend that their "firsthand experiences revealed that the City and DHA actively discouraged the development of low-income housing and minority residents in

certain sectors of the City, particularly in Downtown Dallas" and their "extensive independent investigation corroborated that conclusion." *Id.* at 52, ¶ 29.

### C.     The Statutory Scheme

The False Claims Act ("FCA") imposes monetary liability on any person who knowingly makes a false statement in order to have a false or fraudulent claim paid or approved by the government. 31 U.S.C. § 3729(a)(2). The *qui tam* provisions of the FCA authorize private persons to bring actions on behalf of the United States against those who have committed fraud on the federal government. *See id.* § 3730(b). However, the Courts have limited subject-matter jurisdiction when adjudicating *qui tam* actions under the FCA. *See id.* § 3730(e)(4)(A) (2006), *amended by* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011). The Act states that a court does not have jurisdiction over the action when there has been a "public disclosure of allegations or transactions . . . unless . . . the person bringing the action is an original source of the information." *Id.* This public disclosure bar is designed to "(1) promot[e] private citizen involvement in exposing fraud against the government and (2) prevent[] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *U. S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004) (quoting *U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 351 (5th Cir. 2003)) (internal quotation marks omitted).

### D.     Summary of Claims

On February 22, 2011, Relators filed this suit on behalf of the United States alleging that the City and DHA violated the FCA regarding their application to HUD for federal housing and community development funds. Am. Compl. ¶ 1, ECF No. 16. Specifically, Relators allege that "Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment

or approval in connection with the submission of requests for federal block grant and [Public and Indian Housing] funds," thereby violating 31 U.S.C. § 3729(a)(1)(A), and "Defendants knowingly made, used, and caused to be made and used, false records and statements material to the false or fraudulent claims for federal block grants and PIH funds," thereby violating 31 U.S.C. § 3729(a)(1)(B).[1] Am. Compl. ¶¶ 156–57, 165–66, ECF No. 16.

The crux of Relators' complaint is that "the City and DHA falsely represented . . . that they were in compliance with their federal civil rights certifications, which certifications are a precondition for eligibility for the federal housing and community development funds at issue in this litigation." *Id.* ¶ 22. Included in these federal civil rights certifications is the obligation to affirmatively further fair housing. *See* 42 U.S.C. § 5304(b). Within the obligation to affirmatively further fair housing there are many requirements, such as "conduct[ing] an analysis to identify impediments to fair housing choice within the jurisdiction," also called an Analysis of Impediments ("AI"). *See* 24 C.F.R. § 91.225(a)(1). The complaint introduces a number of "impediments" and includes data showing these impediments perpetuate or increase segregation. *See, e.g.*, Am. Compl. ¶¶ 68–84 (housing efforts), 86–115 (zoning, land use, and funding policies), ECF No. 16. Most sections introduce statistics showing the impediment in Dallas and then conclude with either (1) "The City knowingly failed to properly include and analyze this information in its AIs" or (2) "These DHA impediments are not identified in the City's AIs or DHA's Public Housing Plan as required by federal law." *See generally id.* By requesting funds from the government, the City and

---

[1] In the amended complaint, Relators also allege violations of 31 U.S.C. § 3729(a)(1)(D) in Count III and "Reverse" False Claims Act violations and other violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (G) in Count IV. However, in the Consolidated Response Relators state "[t]o streamline the case, Relators abandon Counts III and IV as alleged in their [First Amended Complaint]." Relator's Consolidated Resp. 5 n.3, ECF No. 52. Accordingly, the Court will not address these two counts.

DHA expressly and impliedly certified that they were complying with federal law and fulfilling their affirmatively further fair housing obligations, including properly analyzing impediments among other requirements. The complaint alleges that, because the City and DHA were not in fact in compliance, their actions of requesting funds and certifying they were in compliance resulted in fraud against the government. *See generally id.*

In March 2012, Defendants filed Motions to Dismiss and attacked Relators' FCA claims on two grounds: (1) lack of subject-matter jurisdiction under the FCA's public disclosure bar, and (2) failure to state a claim under 12(b)(6). Def. City's Mot. Dismiss Lack Jurisdiction, ECF No 26; Def. City's Mot. Dismiss Failure State Claim, ECF No. 28; Def. DHA's Mot. Dismiss, ECF No. 31. Relators filed a consolidated response to these three Motions to Dismiss. Relators' Consolidated Resp., ECF No. 52. Both Defendants filed their respective replies. Def. City's Reply Lack Jurisdiction, ECF No. 56; Def. City's Reply Failure State Claim, ECF No. 57; Def. DHA's Reply, ECF No. 58. Accordingly, these matters are fully briefed and ripe for consideration.

## II. PRELIMINARY MATTERS

### A. The City's Motion to Strike

As a preliminary matter, the Court will address the City's Motion to Strike (ECF No. 59). The City asks the Court to strike some exhibits attached to Relators' Response (ECF No. 52) to the City's and DHA's motions to dismiss. Def. City's Mot. Strike, ECF No. 59. The City makes objections to Tab 3, the Relators' joint declaration because it asserts that portions are irrelevant, conclusory, vague, and contain hearsay.[2] *Id.* Having reviewed the motions, pleadings, and

_____

[2] Originally, Relators also moved to strike the official HUD forms attached as Tabs 4 and 5, but they later withdrew those objections. *See* Def. City's Reply Relators' Resp. City's Mot. Strike 10, ECF No. 63.

applicable law, the Court finds that the City's Motion to Strike (ECF No. 59) should be and is hereby **DENIED** because the Court does not consider the joint declaration to be irrelevant, conclusory, vague, or hearsay.

### B. Relator's Motion to File Surreply

Relators seek leave to file a surreply to address Defendants' argument that Relators did not voluntarily provide the information on which their allegations are based to the federal Government prior to filing suit, as is required to qualify as an "original source" under the FCA. Relators' Mot. Leave File Surreply 1, ECF No. 61. Relators contend that neither Defendant raised this challenge in its motion to dismiss or memorandum in support and thus Relators had no opportunity to address the argument. *See id.* The City responds that Relators have failed to state a basis for the Court to grant leave. Def. City's Resp. Relators' Mot. Leave File Surreply 1, ECF No. 62. Having reviewed the motions, pleadings, and applicable law, the Court finds that Relators' Motion for Leave to File Surreply (ECF No. 61) should be and is hereby **GRANTED**.

### C. Applicable False Claims Act Language – Retroactivity

On March 23, 2010, the President signed into law the Patient Protection and Affordable Care Act (PPACA), Pub. L. No. 111-148, 124 Stat. 119. Section 10104(j)(2) of this legislation replaces the prior version of 31 U.S.C. § 3730(e)(4) (2006) with new language. Prior to enactment of the PPACA, § 3730(e)(4)(A) stated:

> *No court shall have jurisdiction* over an action under this section *based upon* the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of information.

31 U.S.C. § 3730(e)(4)(A) (2006), *amended by* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011) (emphasis added). The PPACA amended the statute to currently read:

> The court *shall dismiss* an action or claim under this section, unless opposed by the Government, if *substantially the same* allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a *Federal* criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other *Federal* report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (Supp. 2011) (emphasis added).

As an initial matter, Relators argue that the PPACA amendment of § 3730(e)(4)(A) changes the provision so that it no longer provides a jurisdictional bar to actions filed after March 23, 2010. Relators' Consolidated Resp. 16, ECF No. 52. In making this argument, Relators separate (1) the PPACA's substantive changes—for example, narrowing the sources of disclosure that trigger the bar—and (2) the PPACA's procedural change—identifying the public disclosure bar as requiring dismissal rather than jurisdictional. *Id.* In separating these two, Relators first submit that the substantive changes to the public disclosure bar are not retroactive and only apply to Relators' claims based on Defendants' conduct occurring after the PPACA's effective date of July 22, 2010. *Id.* at 16, 25–26. The Court agrees that these substantive changes are not retroactive because they change "the existing cause of action for *qui tam* defendants by 'attaching a new disability, in respect to transactions or considerations already passed.'" *See Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 948 (1997) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)) (internal

citations omitted).  Accordingly, the presumption against retroactivity applies and the substantive

changes do not apply to conduct that occurred before their effective date.

However, Relators insist that the change in language from "[n]o court shall have jurisdiction

over an action" to "[t]he court shall dismiss an action" is merely a procedural change.  *See* Relators'

Consolidated Resp. 16, ECF No. 52.  Relators argue that this procedural change applies retroactively

"[b]ecause rules of procedure regulate secondary rather than primary conduct" and should apply to

suits filed after the amendment's effective date.  *Id.* (quoting *Landgraf*, 511 U.S. at 274).  Thus,

Relators argue this change applies to claims based on Defendants' conduct both before and after the

PPACA's effective date.  *Id.*

Before determining whether this change applies retroactively, the Court should consider what

effect this change would have.  Relators maintain that the PPACA changes the public disclosure bar

from a jurisdictional inquiry to an affirmative defense.  Relators' Consolidated Resp. 16, ECF No.

52.  Relators also contend that the public disclosure provision's status as an affirmative defense

requires Defendants to have the burden of proof, and therefore Defendants must "establish beyond

peradventure *all* of the essential elements of the defense."  *Id.* (citing *United States v. Renda Marine,

Inc.*, 667 F.3d 651, 659 (5th Cir. 2012)).  Defendants contend that public disclosure remains a

jurisdictional barrier.  *See* Def. City's Reply 2–3, ECF No. 56.  The Court finds that, even assuming

Relator is correct, Defendants would meet this burden of proof of the public disclosure provision.

*See infra* Part IV.A.[3]  In other words, if the Court accepted Relators' arguments and required

---

[3] Assuming that the PPACA changes the public disclosure provision to an affirmative defense, the
Court may convert a motion to dismiss that asserts this affirmative defense into a motion for summary
judgment provided the Court "abides by the procedural safeguards of Rule 56."  *See Capital Films Corp. v.
Charles Fries Prods., Inc.*, 628 F.2d 387, 390–91 n.1 (5th Cir. 1980).  When parties submit evidence outside
the pleadings at the motion to dismiss stage, the parties are on notice that the Court could convert the motion

Defendants to "establish beyond peradventure *all* of the essential elements" of the public disclosure

bar, Defendants would still prevail and Relators would be barred under the public disclosure

provision from moving forward with this action. Thus, the Court need not decide whether the

PPACA changes the public disclosure bar from a jurisdictional inquiry to an affirmative defense.

Further, the Court need not determine whether this procedural change should apply retroactively.

Because the Court finds that the PPACA's substantive amendments do not apply

retroactively, the Court must separately address Relators' claims before and after the PPACA's

effective date of July 22, 2010. Accordingly, the Court will first address Relators' claims based on

Defendants' conduct before July 22, 2010, under the old version of the statute and then address

Relators' claims based on Defendants' conduct after July 22, 2010, under the PPACA-amended

statute.[4]

---

to dismiss into a motion for summary judgment. *See Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195 (5th Cir. 1988) (finding Rule 56(c)'s notice requirement satisfied when plaintiff had over ten days' notice after the district court accepted for consideration matters outside the pleadings). For example, in *Mackey v. Owens*, the Fifth Circuit found that Rule 56(c)'s notice requirement was satisfied because plaintiff "had over two months between the date that the motion [to dismiss] was served and the date that summary judgment was granted in which to object or present opposing evidence." 182 F.3d 915 (5th Cir. 1999). Here, the Court can properly convert the motion to dismiss into a motion for summary judgment because (1) both parties submitted evidence outside the pleadings in their motion to dismiss briefing, urging the Court to consider the evidence, and (2) Relators had over nine months to respond and present summary judgment evidence contesting Defendants' affirmative defense. *See* Relators' App., ECF No. 53; City App., ECF No. 30; DHA App., ECF No. 33. Further, Relators themselves even assert that using the summary judgment standard is proper. *See* Relators' Consolidated Resp. 17, ECF No. 52 ("Thus, the Court should treat Defendants' public disclosure challenges as affirmative defenses to be resolved on summary judgment."). Accordingly, if the public disclosure provision is now an affirmative defense as Relators assert, they were on notice that the Court could properly treat Defendants' motion to dismiss as a motion for summary judgment.

    [4] Specifically, Relators allege Dallas City Manager Mary K. Suhm submitted to HUD certifications that it would affirmatively further fair housing in its programs and activities in August of 2004 through 2011. Accordingly, the Court will look at those certifications from 2004–2009 under the old version of the statute and those certifications in August 2010 and August 2011 under the PPACA-Amended version of the statute.

## III.   SUBJECT-MATTER JURISDICTION: CONDUCT BEFORE JULY 22, 2010

Defendants argue that the Court lacks subject-matter jurisdiction under 31 U.S.C. § 3730(e)(4)(A) (2006) because (1) "[a]ll of the matters asserted by the Relators have been publicly disclosed" and (2) Relators "have no first-hand knowledge of the allegations and transactions that form the basis of their claim." Def. City's Br. Supp. Mot. Dismiss 1–2, ECF No. 27; *see also* Def. DHA's Mem. Supp. Mot. Dismiss 3–16, ECF No. 32. Relators respond that the public documents are not sufficient for the public disclosure bar to apply and that Relators are an original source under the statute. Relators' Consolidated Resp. 15–30, ECF No. 52.

### A.  Legal Standard

"'[A] challenge under the FCA jurisdictional bar is necessarily intertwined with the merits' and is, therefore, properly treated as a motion for summary judgment." *Reagan*, 384 F.3d at 173 (quoting *Laird*, 336 F.3d at 352). "A grant of summary judgment is proper if, viewing the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)).

### B.    Public Disclosure Bar

In determining whether there has been a public disclosure, the Fifth Circuit employs a burden-shifting framework. First, defendants must identify public documents plausibly containing allegations or transactions on which the realtor's claim is based. *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011). If defendants identify public documents, the relator then has the burden to show a genuine issue of material fact as to whether his action was based on those public disclosures. *Id.* The Court will now turn to the three public disclosure bar steps outlined by

the Fifth Circuit: (1) whether there was public disclosure of allegations or transactions, (2) that the action is based upon, and (3) if so, whether the relator is the original source of the information.

The Fifth Circuit has stated that courts "need not follow the three steps rigidly" and "combining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the 'allegations or transactions' that must be publicly disclosed in step one." *Id.* at 327 (citing *U.S. ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008)). Accordingly, the Court combines these two steps here.

The City alleges that all of Relators' claims based on the City's actions have been publicly disclosed. Def. City's Br. Supp. Mot. Dismiss 4, 11, ECF No. 27. The City proceeds to walk through each of Relators' claims and point to evidence of public disclosure. *Id.* at 4–11, 11–22. DHA alleges that "[a]ll of the allegations in [Relators'] Amended Complaint are regurgitations of HUD published guidelines, census data, publicly disclosed reports, information disclosed by news media, and other information disclosed in statutory sources." Def. DHA's Mem. Supp. 4, ECF No. 32. Relators respond that these sources do not disclose "allegations or transactions" from which fraud is apparent and contend that simply disclosing information is not sufficient to trigger the public disclosure bar. Relators' Consolidated Resp. 16, ECF No. 52. Relators argue that "the sources identified by Defendants consist of only innocuous information, insufficient to raise the specter of fraud on the Government." *Id.* at 24. Thus, this issue turns on what constitute sufficient allegations or transactions under the public disclosure bar and whether any of the public disclosures constitute "allegations or transactions" when compared to the scope of Relators' complaint.

### 1. What Constitute "Allegations or Transactions" Under the Act

The Supreme Court has specified that the "allegations or transactions" language of § 3730(e)(4)(A) (2006) "suggests a wide-reaching public disclosure bar" and has pointed out that "Congress covered not only the disclosure of 'allegations' but also 'transactions,' a term that courts have recognized as having a broad meaning." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011). The Fifth Circuit explains that "the publicly disclosed allegations or transactions need only be as broad and as detailed as those in the relator's complaint." *Jamison*, 649 F.3d at 327. "When specifics are alleged, it is crucial to consider whether the disclosures correspond in scope and breadth." *Little v. Shell Exploration & Prod.*, 690 F.3d 282, 293 (5th Cir. 2012). Another helpful factor is whether Relators "'could have produced the substance of the complaint merely by synthesizing the public disclosures' description of' the scheme." *Id.* (quoting *Jamison*, 649 F.3d at 329). "An irreducible minimum is that the disclosures furnish evidence of the fraudulent scheme alleged." *Id.*

District Courts in the Fifth Circuit have also utilized the influential *Springfield* opinion, where the D.C. Circuit explained:

> if X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed.

*U.S. ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994); *see also U.S. ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 519 (N.D. Tex. 2012) (citing *Springfield* and using the X + Y = Z analysis).

### 2. Whether Sufficient "Allegations or Transactions" Have Been Disclosed

DHA agrees that the *Springfield* equation is the proper analysis to determine whether the allegations and transactions have been publicly disclosed. Def. DHA's Reply 7, ECF No. 58. DHA alleges that its submission to HUD constitutes "X" and the events that allegedly show these submissions to be false constitute "Y." *Id.* Further DHA argues that the submission to HUD ("X") and the federal pleadings, news reports, census data, and scholarly articles that highlighted the impediments to fair housing in Dallas ("Y"), when viewed together, publicly disclose the allegation of falsely certifying compliance with the obligation to affirmatively further fair housing. *Id.* at 8.

One of Relators' main arguments in response to the public documents is that they only disclose the "predicate violation" of failing to affirmatively further fair housing, and thus these sources fail to disclose "allegations or transactions." *See* Relators' Consolidated Resp. 20, ECF No. 52 (citing *Smart v. Christus Health*, 626 F. Supp. 2d 647 (S.D. Tex. 2009)). However, as Defendants correctly argue, "the precise allegation of fraud . . . need not be publicly disclosed if the essential facts or transaction on which it is based has been disclosed." *U.S. ex rel. Ward v. Commercial Metals Co.*, No. C-05-56, 2007 WL 1390612, *6 (S.D. Tex. May 9, 2007); *see* Def. City's Reply 3, ECF No. 56 (citing *Ward*, 2007 WL 1390612 at *6); Def. DHA's Reply 37, ECF No. 58. Furthermore, courts have not focused on whether sources disclose a predicate violation or not. *Colquitt*, 864 F. Supp. 2d at 519 (citing *Smart*, 626 F. Supp. 2d at 653–54) ("[T]hus, public disclosure of a predicate allegation of fraud—*one that does not by itself lead to an inference of a false or fraudulent claim* on the government—does not disclose 'allegations or transactions' for purposes of the FCA." (emphasis added)). Instead, the main inquiry is "if the disclosures, taken together, would enable the government to draw an inference of fraud." *Id.* (quoting *U.S. ex rel. Heath v. Dall./Fort Worth Int'l Airport Bd.*, No. 3:99-cv-100-M, 2004 WL 1197483, at *5 (N.D.

Tex. May 28, 2004)).  Accordingly, the Court will not focus on whether the sources disclose a predicate violation, but whether the disclosure of the predicate violation leads to "an inference of a false or fraudulent claim on the government."  *See Colquitt*, 864 F. Supp. 2d at 519.

After reviewing Defendants' evidence, the Court finds that there has been a public disclosure of the allegations or transactions.  The most glaring example is Jim Schutze's June 10, 2010 news article where Schutze specifically states:  "I'm trying to figure out whether Dallas City Hall scammed the U.S. Department of Housing and Urban Development out of hundreds of millions of dollars over the years by submitting what the law calls 'false claims.'"  DHA App. Supp. Ex. A-16 (Schutze News Article), ECF No. 33-21.  Clearly, this constitutes an allegation ("Z") and mirrors what the complaint alleges, i.e., it is related in scope. *See Little*, 690 F.3d at 293 (explaining correlation in scope is a helpful inquiry, although not the only question).  Further, this article explains that to receive money from HUD, "Dallas must 'certify' or swear to the feds every year that it is using the money to 'affirmatively further fair housing'" and "[Developers Lockey and MacKenzie] say Dallas has not done the due diligence it claims to have done in its annual certifications to HUD and that in fact its own policies work against compliance with HUD requirements."  This article alone constitutes a public disclosure because it contains specific allegations of fraud on the government.

Relators argue that this source does not implicate or mention DHA, and thus does not constitute a sufficient disclosure upon which Relators' claims are based.  Relators' Consolidated Resp. 25, ECF No. 52.  The Fifth Circuit has found that "the public disclosures need not name particular defendants so long as they 'alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation.'" *Jamison*, 649

16

F.3d at 329 (quoting *In re Natural Gas Royalties*, 562 F.3d 1032, 1039 (10th Cir. 2009)). Accordingly, the Court rejects Relators' argument that this source does not implicate DHA.

Other than this newspaper article, there are other public disclosures that, when taken together, lead to "an inference of a false or fraudulent claim on the government." *See Colquitt*, 864 F. Supp. 2d at 519. One such disclosure is a previous lawsuit filed in 1985 and lasting through 2004, *Walker v. City of Mesquite*, in which both DHA and HUD were parties. *See Walker v. City of Mesquite*, No. 3:85-cv-1210-O (N.D. Tex.). In this case, a motion—the Plaintiff's Motion to Require City [of Dallas] to Affirmatively Further Fair Housing Desegregation—specifically alleges that the City is failing to affirmatively further fair housing and points to deficiencies in the City's Impediment Analysis from April 1998. City App. Ex. 9 (Pl.'s Mot. Require City Affirmatively Further Fair Housing), at 376–82, ECF No. 30-5. The Fifth Circuit has held that "[a]ny information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for the purposes of section 3730(e)(4)(A)." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995) (quoting *U.S. ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994)). Relators argue that this motion "could not have disclosed the fraud on which Relators' action is based," because these accusations "could be characterized as merely of the '*predicate* violation,' (*i.e.*, a failure to [affirmatively further fair housing])." Relators' Consolidated Resp. 21–22, ECF No. 52. The Court finds Relators' arguments unpersuasive. This litigation alleges that the City is failing to affirmatively further fair housing, which it implies it is complying with when submitting claims for funding to the government. Thus, this publicly disclosed transaction leads to an "an inference of a false or fraudulent claim on the government." *See Colquitt*, 864 F. Supp. 2d at 519.

17

In addition, the Texas Affordable Housing Project reviewed the City's 1998 AI and criticized it for similar defects that Relators now assert. City App. Ex. 14 (Tex. City Housing Report Card: Dallas) 595–609, ECF No. 30-8 (criticizing the City for (1) "fail[ing] to develop a strategy for addressing local fair housing issues," (2) for having a 1998 AI that "lacked any analysis of the impact of city policies or programs on fair housing conditions" and "offers little guidance for city action to improve conditions," and (3) for remaining "highly segregated by race and ethnicity"). The Court finds these disclosures, when taken together, constitute the "Y" part of the equation by disclosing that the City and DHA were failing to affirmatively further fair housing and that their submissions to HUD were insufficient. Thus, these disclosures lead to "an inference of a false or fraudulent claim on the government." *See Colquitt*, 864 F. Supp. 2d at 519.

In addition, Relators disclosed these precise allegations before filing suit by making a complaint to HUD. *See* Relators' App. Tab 7 (Housing Discrimination Compl.), R. 102, ECF No. 53-6. Specifically, the HUD complaint details many of the activities that the complaint in this case recites, and the HUD complaint alleges that "the City's actions violate the Federal Fair Housing Act." *Id.* Relators argue that this HUD complaint "does not accuse the City of the predicate violation of a failure to [affirmatively further fair housing], nor does it mention any civil-rights certification fraud upon the Government, and therefore it likewise does not constitute a disclosure under the FCA." Relators' Consolidated Resp. 25, ECF No 52. The Court disagrees and finds that accusing the City and DHA of violating the Federal Fair Housing Act could also lead to "an inference of a false or fraudulent claim on the government," thus constituting a public disclosure. *See Colquitt*, 864 F. Supp. 2d at 519.

18

In summary, the Court finds that the sources submitted constitute a "public disclosure of allegations and transactions" under the Act. Because the Court has found that these were publicly disclosed, it must now determine whether Relators are an original source under the statute.

##       C.       Original Source

The FCA provides that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2006), *amended by* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011). To qualify as an "original source" under the statute, a relator must have "direct and independent knowledge of the information on which the allegations are based and ha[ve] voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B) (2006)*amended by* 31 U.S.C. § 3730(e)(4)(B) (Supp. 2011). To prove Relators are an original source, "[t]he burden [is] on [them] to show that the information and allegations [they] discovered were 'qualitatively different information than what had already been discovered' and not merely the 'product and outgrowth' of publicly disclosed information." *Fried*, 527 F.3d at 443 (quoting *Fed. Recovery Servs.*, 72 F.3d at 452).

The City argues that Relators cannot be an original source because the matters in their complaint have "been a matter of public disclosure, discussion, and debate" and Relators admit that their information is from public sources. Def. City's Mot. Dismiss 24, ECF No. 27 (citing City App. 1708, 1722). DHA argues that Relators failed to comply with both elements of the original source exception: (a) independent and direct knowledge of the allegations and (b) disclosing those allegations of fraud to the Government prior to filing its *qui tam* claim. Def. DHA's Reply 8, ECF

No. 58.  Relators respond that they have direct and independent knowledge of the information on which the allegations are based.  Relators' Consolidated Resp. 27, ECF No. 52.  Particularly, they focus on their personal involvement with their affordable housing project, the LTV Tower, and how their meeting with Karl Zavitkovsky, the Director of Economic Development for the City of Dallas, clued them in to the City's active discouragement of low-income housing in Downtown Dallas.  Relators' Resp. 29, ECF No. 52.  Relators urge that this personal experience and "subsequent independent investigation qualify them as an 'original source.'"  Relators' Consolidated Resp. 29, ECF No. 52.

### 1. Direct and Independent Knowledge

The Fifth Circuit has explained that knowledge is direct if it is "derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others."  *Reagan*, 384 F.3d at 177; *see also Fried*, 527 F.3d at 442 (requiring "firsthand knowledge" of the information for it to be "direct").  "Knowledge that is based on research into public records, review of publicly disclosed materials, or some combination of these techniques is not direct."  *U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 59 (1st Cir. 2009) (citing *Reagan*, 384 F.3d at 178–79) (finding relator did not have direct knowledge when his investigation involved "direct[ing] his employees to search public records, interview local developers and others with knowledge of the City's housing policies, and obtain documents submitted by the City to HUD").

Further, knowledge is independent "if it is not derived from the public disclosure."  *Id.* (quoting *Laird*, 336 F.3d at 355).  "In order to be 'independent,' the information known by the relator cannot depend or rely on public disclosures."  *Fried*, 527 F.3d at 442–43 (quoting *U.S. ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 690 (D.C. Cir. 1997)) (internal quotation marks

omitted).  The Fifth Circuit "requires independent knowledge of 'information *on which the publicly disclosed allegations are based . . . .*'" *Reagan*, 384 F.3d at 178 (quoting *Laird*, 336 F.3d at 355).

"As an initial matter, the record must show that [relator] did more than apply his expertise to publicly-disclosed information."  *Fried*, 527 F.3d at 443; *see also Ondis*, 587 F.3d at 59–60 ("Expertise that enables a relator to understand the significance of publicly disclosed information, without more, is insufficient to qualify him as an original source." (citing *Fried*, 527 F.3d at 443)). The Fifth Circuit in *Reagan* explains:

> [S]econd-hand information may [not] be converted into "direct and independent knowledge" simply because the plaintiff discovered through investigation or experience what the public already knew. Instead, the investigation or experience of the relator either must translate into some additional compelling fact, or must demonstrate a new and undisclosed relationship between disclosed facts, that puts a government agency "on the trail" of fraud, where that fraud might otherwise go unnoticed.

*Reagan*, 384 F.3d 179.  In *Reagan*, the Fifth Circuit decided relator's knowledge was not "independent" because the knowledge was "derived almost entirely from information that has been publicly disclosed."  *Id.* at 178 (noting relator's knowledge was based entirely on public records of testimony of executives).  Also, the knowledge was not "direct" because it was "based on research and review of public records, not, with minor exceptions, her own observation."  *Id.*

In this case, the Court finds that Relators do not have direct and independent knowledge of the information on which the publicly disclosed allegations are based.  Relators' "extensive investigation" can only be said to involve looking through public documents detailing racial and ethnic housing information in Dallas.  Relators' App. Tab 3 (Lockey & MacKenzie Decl.), at R. 50–51, ¶¶ 26–28, ECF No. 53-2.  Other than that analysis, Relators researched "the City's TIF

Plans and Annual Reports, data on budgeted expenditures, and rules and policies regarding affordable housing." *Id.* at 51, ¶ 28. These acts are not sufficient to constitute "direct and independent knowledge." The Fifth Circuit is not one that has recognized that relators may meet the "direct and independent knowledge" requirement by contributing their own investigative efforts and experience to develop allegations of fraud. *See Reagan*, 384 F.3d at 179 ("It is true that some other circuits have held that a relator may meet the 'direct and independent knowledge' requirement by contributing her own investigative efforts and experience to develop allegations of fraud." (citing *U.S. ex rel. Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562 (11th Cir. 1994)).

Relators make the argument that even if the June 10, 2010 article constituted a "public disclosure" under the FCA, they were the source of the information for the article and thus their knowledge is "independent." Relators cite to *Laird*, where the relator was responsible for filing the publicly disclosed information and thus the Court found that "it is beyond dispute that dismissal on the basis that his knowledge is not 'independent' of the public disclosure . . . would have been in error." *Laird*, 336 F.3d at 355; *see* Relators' Consolidated Resp. 27, ECF No. 52.

The Court finds that Relators do not qualify as an original source for two reasons. First, there are other sources besides the June 10, 2010 article that constitute "public disclosure of allegations or transactions" under the FCA. *See supra* Part III.B.2 (finding that the *Walker* litigation, Texas Affordable Housing Project's Report Card of Dallas, and HUD Complaint constitute a public disclosure of allegations or transactions). The fact that Relators' knowledge did not depend on this particular article does not mean that it was independent of *other* sources that publicly disclosed the allegations or transactions. For example, Relators cite to the *Walker v. HUD* litigation in their complaint. *See* Am. Compl. ¶¶ 105, 122, ECF No. 16. Second, even if this article were the only

public disclosure of the allegations in this case, the fact that Relators were responsible for the public disclosure satisfies the "independent" prong of the original source inquiry, but not the "direct" prong. In *Laird*, the Court remanded to the district court for findings of fact on whether relator had "direct" knowledge. In this case, Relators' knowledge is still not direct because they learned of the information in the article from other public documents, rather than their own observations. *See Ondis*, 587 F.3d at 59 (citing *Reagan*, 384 F.3d at 178–79) ("Knowledge that is based on research into public records, review of publicly disclosed materials, or some combination of these techniques is not direct."); Relators' App. Tab 3 (Lockey & MacKenzie Decl.), at R. 44, ¶ 1, ECF No. 53-2 (stating their research involved analyzing the City's TIF Plans and Annual Reports, and data on budgeted expenditures).

Here, the burden was on Relators to show "that the information and allegations [they] discovered were 'qualitatively different information than what had already been discovered' and not merely the 'product and outgrowth' of publicly disclosed information." *Fried*, 527 F.3d at 443. Relators have not met this burden. Because the Court finds that Relators do not have direct and independent knowledge of the information publicly disclosed, there is no need to determine whether Relators satisfied the second prong of disclosing the fraud to the government.

In conclusion, the Court finds that there has been "a public disclosure of allegations and transactions on which the complaint is based" and that Relators are not an original source. Thus, the public disclosure bar applies and this Court lacks jurisdiction over Relators' claims based on Defendants conduct from 2004–2009. Accordingly, the City's Motion to Dismiss for Lack of Jurisdiction (ECF No. 26) is **GRANTED** and DHA's Motion to Dismiss (ECF No. 31) is

**GRANTED in part** and **DENIED in part**.  DHA's Motion to Dismiss for lack of jurisdiction is **GRANTED** and DHA's Motion to Dismiss for failure to state a claim is **DENIED** as moot.

## IV.    CONDUCT AFTER JULY 22, 2010

Because the PPACA's amendments do not apply retroactively, the Court must separately address the Relators' claims before and after the amendment's effective date of July 22, 2010. Accordingly, the Court will now address Relators' claims based on Defendants' conduct after July 22, 2010, under the PPACA-amended statute.  Under the new statute, the Court finds that 1) there has been a public disclosure of allegations or transactions, and 2) Relators are not an original source.

### A.    Public Disclosure Bar

Historically, the Fifth Circuit has treated the public disclosure bar as a jurisdictional threshold.  However, the FCA was amended in 2010 and the language "[n]o court shall have jurisdiction" was replaced with "[t]he court shall dismiss an action or claim under this section, unless opposed by the Government."  *Compare* 31 U.S.C. § 3730(e)(4)(A) (2006) *with* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011).  As discussed above, the Court need not decide whether this change in language transforms the public disclosure provision to an affirmative defense because even if it is an affirmative defense, Relators would still not be able to prevail.[5]  *See supra* Part II.C.  More specifically, Defendants can "establish beyond peradventure *all* of the essential elements of the defense." *See Renda Marine*, 667 F.3d at 659.  Thus, the Court need not decide whether the PPACA changes the public disclosure bar from a jurisdictional inquiry to an affirmative defense.  Even with

---

[5]  The Supreme Court has stated that to classify a statutory limitation as jurisdictional, there must be a clear statement from Congress. *See Sebelius v. Auburb Reg'l Med. Ctr.*, 568 U.S. __, No. 11-1231, 2013 WL 215485, at *6 (Jan. 22, 2013).  "[A]bsent such a clear statement . . . 'courts should treat the restriction as nonjurisdictional in character.'" *Id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006)).

this change in statutory language, because this jurisdictional threshold must be resolved preliminarily, the Court's analysis, as a practical matter, remains the same. *See U.S. ex rel. Osheroff v. Humana, Inc.*, No. 10-24486-cv-SCOLA, 2012 WL 4479072, at *4 (S.D. Fla. Sept. 28, 2012) (analyzing the new statute).

After a review of the evidence submitted by Defendants, the Court finds that there has been a public disclosure of the allegations or transactions under the newly amended statute. Under the pre-PPACA-amended statute, the Fifth Circuit has routinely combined the first step—public disclosure of allegations or transactions—and second step—that the action is based upon—of the analysis, focusing instead on whether the disclosures were related in scope to the Relators' complaint. *See Jamison*, 649 F.3d at 327 ("[C]ombining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the 'allegations or transactions' that must be publicly disclosed in step one." ). Under the amended statute, the first step remains the same, but the second step requires analysis of whether the publicly disclosed allegations or transactions are "substantially the same allegations or transactions as alleged in the action." *See* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011). The Court finds it helpful to combine these two steps of the amended statute in the same way the Fifth Circuit has previously done. Accordingly, the Court combines these two steps here.

By combining the first two steps of the anlaysis, the inquiry essentially remains the same: whether the scope of Relators' action is similar to the allegations or transactions that are publicly disclosed. The only difference then involves what types of documents the Court may consider in determining whether allegations or transactions were publicly disclosed. *See* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011) (mainly limiting available disclosures to news media and Federal

sources).  Even with this limitation, the Court finds that there has been a public disclosure in the sources that remain viable under the amended statute.  For example, both Jim Schutze's June 10, 2010 news article and the *Walker* case that involved HUD, which is a federal agency, constitute sufficient public disclosures under the newly amended statute.  As previously discussed, these sources contain "allegations or transactions" that are related in scope to the Relators' claims.  *See supra* Part III.B.2.  Accordingly, the Court finds that there has been a public disclosure and this action must be dismissed, unless Relators prove that they are an original source of the information.

## B.    Original Source

Prior to enactment of the PPACA, § 3730(e)(4)(B) stated:

> For purposes of this paragraph, "original source" means an individual who has *direct and independent knowledge* of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(B) (2006), *amended by* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011) (emphasis added).  The amended statute currently reads:

> For purposes of this paragraph, "original source" means an individual who either (i) *prior to a public disclosure* under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has *knowledge that is independent of and materially adds to* the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(A) (Supp. 2011) (emphasis added).  Thus, under the new statute, there are two separate and independent ways to qualify as an original source.  *See id.*

### 1. Voluntary Disclosure Prong

Relators argue that their February 4, 2010 HUD complaint constitutes voluntary disclosure under the Act and thus satisfies the first prong of the "original source" provision: "(i) prior to a public disclosure under subsection (e)(4)(A), [an individual] has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based." 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011); *see* Relators' Consolidated Resp. 30, ECF No. 52. The Court finds that this disclosure is not sufficient under the Act's voluntary disclosure prong.

First, even though Relators assert that the HUD complaint was made prior to any disclosure *in the media*, namely the June 10, 2010 article, it was not made "prior to a public disclosure under (e)(4)(A)." There were other sources disclosed prior to the HUD complaint that constitute a public disclosure under subsection (e)(4)(A). *See, e.g.*, City App. Ex. 9 (Pl.'s Mot. Require City Affirmatively Further Fair Housing) 376–82, ECF No. 30-50 (documents from the *Walker* case). Second, even if the HUD complaint was made prior to a public disclosure, this HUD complaint does not meet the specific requirements under the Act. "The explicit terms of the Act require that '[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses' must be served on the government to give it the opportunity to intervene." *Reagan*, 384 F.3d at 175 (citing 31 U.S.C. § 3730(b)(2)). Because the HUD complaint does not include these specific requirements, it cannot constitute a voluntary disclosure under the Act. Finally, Relators defeat their own argument by asserting that they filed the confidential disclosure on December 17, 2010. *See* Relators' Mot. Leave File Surreply Opp'n Defs.' Mots. Dismiss Ex. 1 (Relators' Surreply Opp'n Defs.' Mots. Dismiss), at 2, ECF No. 61-1. According to Relators, the statutorily required government disclosure was thus made on December 17, 2010 when they mailed

the Government their confidential disclosure with an accompanying CD-ROM containing supporting documents. *See id.* App. II, Tab 2 (Letter of Disclosure), ECF No. 61-3. The HUD complaint, on the other hand, was submitted *before* Relators filed their December 17, 2010 confidential disclosure. For this additional reason, the HUD complaint cannot satisfy the voluntary disclosure prong and Relators do not qualify as an original source under this prong.

## 2. Knowledge Prong

The Court previously found that Relators' knowledge was not independent of the publicly disclosed transactions. *See supra* Part III.C.1. This finding is the same for conduct occuring after July 22, 2010 even considering that the amended statute limits the sources that may constitute publicly disclosed allegations or transactions. *See* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011). Accordingly, Relators cannot be considered an original source under the knowledge prong. In the alternative, the Court finds that Relators fail to "have knowledge that . . . materially adds to the publicly disclosed transactions" and thus, Relators are not an original source.

Defendant DHA argues that "Relators have added nothing material to the information that is not [sic] readily available to the public through the vast public disclosures on the matter." Def. DHA's Reply 10, ECF No. 58. Relators do not make any specific arguments regarding whether they have knowledge that materially adds to the publicly disclosed transactions. *See generally* Relators' Consolidated Resp., ECF No. 52.

Because the statute has been recently amended, the Fifth Circuit has not yet determined what the new language "materially adds to" involves. However, previous Fifth Circuit decisions regarding what constitutes an original source under the old statute is valuable in interpreting this new statutory language. For example, the Fifth Circuit has stated "[t]he burden [is] on [relators] to show that the

information and allegations [they] discovered were 'qualitatively different information than what had already been discovered' and not merely the 'product and outgrowth' of publicly disclosed information." *Fried*, 527 F.3d at 443 (quoting *Fed. Recovery Servs.*, 72 F.3d at 452. Similarly, the Fifth Circuit has specified that "the investigation or experience of the relator either must translate into some additional compelling fact, or must demonstrate a new and undisclosed relationship between disclosed facts . . . ." *Reagan*, 384 F.3d at 179.

The claims in Relators' complaint are not much different from the allegations or transactions of the public disclosures. The main difference is that many of the public disclosures only allege that the City and DHA failed to affirmatively further fair housing, while the complaint specifically alleges fraud on the government. However, the Court finds that this leap only involves knowledge of the laws regarding HUD grants and the FCA, and it does not "*materially* add[] to the publicly disclosed allegations or transactions." Simply recognizing that the failure to affirmatively further fair housing may lead to fraud on the government cannot constitute a material addition because the documents already lead to "an inference of a false or fraudulent claim on the government" by disclosing the failure to affirmatively further fair housing. *See Colquitt*, 864 F. Supp. 2d at 519.

Thus, the Court finds that Realtors do not qualify as an original source under either the voluntary disclosure prong or the knowledge prong of the statute. Accordingly, 31 U.S.C. § 3730(e)(4) (Supp. 2011) requires Relators' claims based on Defendants' conduct after July 22, 2010 to be dismissed. Accordingly, the City's Motion to Dismiss for Lack of Jurisdiction (ECF No. 26) as to claims based on Defendants conduct after July 22, 2010 is **GRANTED** and DHA's Motion to Dismiss (ECF No. 31) as to claims based on Defendants conduct after July 22, 2010 is

**GRANTED in part** and **DENIED in part**.[6] DHA's Motion to Dismiss for lack of jurisdiction is **GRANTED** and DHA's Motion to Dismiss for failure to state a claim is **DENIED** as moot.

## V. CONCLUSION

Accordingly, it is **ORDERED** that the City's Motion to Dismiss for Lack of Jurisdiction (ECF No. 26) should be and is hereby **GRANTED**. It is further **ORDERED** that DHA's Motion to Dismiss (ECF No. 31) should be and is hereby **GRANTED in part** based on its motion to dismiss for lack of jurisdiction and **DENIED as moot in part** based on its motion to dismiss for failure to state a claim. It is further **ORDERED** that Relators' Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss (ECF No. 61) should be and is hereby **GRANTED** and the City's Motion to Strike and Objections to Relators' Exhibits in Support of Relators' Consolidated Response in Opposition to Defendants' Motion to Dismiss (ECF No. 59) should be and is hereby **DENIED**. Finally, it is **ORDERED** that the following are **DENIED as moot**: the City's Motion to Dismiss for Failure to State a Claim (ECF No. 28); the City's Motion to Dismiss for Lack of Jurisdiction pursuant to 31 U.S.C. Section 3730(e)(3) (ECF No. 89); the City's Second Motion to Stay Discovery and Motion for Protective Order (ECF No. 92); and the City's Motion to Strike Portions of Relators' Response to the City's Motion to Dismiss for Lack of Jurisdiction Pursuant to 31 U.S.C. Section 3730(e)(3) (ECF No. 96).

---

[6] In the alternative, if the amended statute is determined to be nonjurisdictional, see *Sebelius v. Auburb Reg'l Med. Ctr.*, 568 U.S. __, No. 11-1231, 2013 WL 215485, at *6 (Jan. 22, 2013), then the Court converts Defendants' motions to dismiss based on the public disclosure provision to motions for summary judgment. *See supra* note 3. The Court previously found that if the provision is now an affirmative defense, Defendants meet the burden of establishing the elements of this defense. *See supra* Part IV.A. Accordingly, the Court would grant Defendants' motion for summary judgment and dismiss with prejudice Relators claims based on conduct after July 22, 2010.

**SO ORDERED** on this **23rd day** of **January, 2013**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**