IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. CURTIS LOCKEY and CRAIG MACKENZIE,** § § § § § § | |
| Relators, § | Civil Action No. 3:11-cv-354-O |
| v. § § | |
| **CITY OF DALLAS, TEXAS, et al.,** § § § | |
| Defendants. § § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Relators' Rule 60(b)(2) Motion for Relief from Final Judgment and Request for Expedited Indicative Ruling under Rule 62.1 ("Rule 60(b)(2) Motion") (ECF No. 146), filed December 9, 2013; Relators' Brief in Support of Rule 60(b)(2) Motion (ECF No. 147), filed December 9, 2013; City of Dallas's Response to Relators' Rule 60(b)(2) Motion (ECF No. 150), filed December 17, 2013; The Housing Authority of the City of Dallas, Texas's Response to Relators' Rule 60(b)(2) Motion (ECF No. 151), filed December 17, 2013; and Relators' Reply in Support of their Rule 60(b)(2) Motion (ECF No. 152), filed December 20, 2013.

Relators, Curtis Lockey ("Lockey") and Craig MacKenzie ("MacKenzie") (collectively, "Relators"), seek an indicative ruling, pursuant to Federal Rule of Civil Procedure 62.1, on their motion for relief from judgment brought under Federal Rule of Civil Procedure 60(b)(2). This case is currently on appeal to the United States Court of Appeals for the Fifth Circuit. Having reviewed the motion, the related briefing, and the applicable law, the Court finds that Relators' Rule 60(b)(2) Motion should be and is hereby **DENIED**.

I.   **FACTUAL & PROCEDURAL BACKGROUND**

Relators began working with the City of Dallas ("the City") in May 2008 on a proposal for an affordable housing project called the LTV Tower Redevelopment ("LTV Tower"). Relators' App. Resp. Mot. Dismiss Tab 3 (Lockey & MacKenzie decl.), App. 44, ¶ 1, ECF No. 53-2. The LTV Tower would convert a vacant thirty-two story high-rise office building in downtown Dallas into a large affordable housing project, and a majority of people who would qualify for this type of housing would be minorities, particularly African-American and Latino individuals and families. *Id.* at 44-45, ¶¶ 1, 3. In a meeting at City Hall on October 10, 2008, Relators spoke with Karl Zavitkovsky ("Zavitkovsky"), Director of Economic Development at the time, regarding funding sources for the LTV Tower, including funding from the U.S. Department of Housing and Urban Development ("HUD"). *Id.* at 45, ¶ 5.

Relators allege that "Mr. Zavitkovsky told us that Downtown Dallas is not the right place for low-income housing and that low-income housing 'is not part of the vision for Downtown Dallas.'" *Id.* Relators understood those to be "code words" indicating that the City did not want racially integrated and low-income housing in Downtown Dallas. *Id.* at 46, ¶ 9. Based on this conversation and other firsthand personal experiences, Relators suspected that the City was actively discouraging the development of low-income housing available for people of color outside of the Southern Sector, particularly any development of low-income housing in Downtown Dallas. *Id.* at 50, ¶ 25. Relators then embarked on "an extensive 15-month independent investigation" to corroborate their suspicions of the City's actions. *Id.* at 50, ¶ 26.

On February 22, 2011, Relators filed this suit on behalf of the United States alleging that the City and DHA (collectively, "Defendants") violated the False Claims Act ("FCA") regarding their

application to HUD for federal housing and community development funds. *See* Am. Compl., ECF No. 16. By requesting funds from the United States government, the City and DHA expressly and impliedly certified that they were complying with federal law and fulfilling their obligations to affirmatively further fair housing. Relators allege that, because the City and DHA were not in fact in compliance, their actions of requesting funds and certifying they were in compliance resulted in fraud against the government. *See generally id.*

In March 2012, Defendants filed motions to dismiss and attacked Realtors' FCA claims on two grounds: (1) lack of subject-matter jurisdiction under the FCA's public disclosure bar, and (2) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Def. City's Mot. Dismiss Lack Jurisdiction, ECF No 26; Def. City's Mot. Dismiss Failure State Claim, ECF No. 28; Def. DHA's Mot. Dismiss, ECF No. 31. The Court granted Defendants' motions to dismiss because of a lack of subject-matter jurisdiction and denied the 12(b)(6) motions as moot. *See* Order, Jan. 23, 2013, ECF No. 101.

Relators' claims originated prior to and continued past the Patient Protection and Affordable Care Act's ("PPACA") amendments to the FCA's public disclosure bar. *Id.* at 8-11. Having found that the PPACA amendments did not apply retroactively, the Court applied the pre- and post-amendment versions of the statute to Relators' claims, respectively. *See id.* at 12, 24. Under both versions, the Court found that Relators claims had been publicly disclosed and that Relators were not original sources. *See generally id.* After the Court dismissed their claims, Relators filed a Rule 59(e) motion to alter or amend the judgment, which the Court denied. *See* Order, July 30, 2013, ECF No. 138.

On August 15, 2013, Relators filed their notice of appeal to the Fifth Circuit. *See* Notice

Appeal, ECF No. 139. Relators now seek relief from the Court's final judgment based on newly discovered evidence under Rule 60(b)(2). Because this case is on appeal, the motion is brought pursuant to Rule 62.1. Under Rule 62.1, if a timely motion for relief is made that a court lacks authority to grant because an appeal is docketed and pending, a court may (1) defer ruling on the motion, (2) deny the motion, or (3) "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *See* Fed. R. Civ. P. 62.1(a). After the Court ordered expedited briefing, Defendants filed their responses on December 17, 2013, and Relators filed their reply on December 20, 2013. Accordingly, this matter has been fully briefed and is ripe for determination.

## II.     LEGAL STANDARD

### A.     False Claims Act

The False Claims Act ("FCA") imposes monetary liability on any person who knowingly makes a false statement in order to have a false or fraudulent claim paid or approved by the government. 31 U.S.C. § 3729(a)(2). The *qui tam* provisions of the FCA authorize private persons to bring actions on behalf of the United States against those who have committed fraud on the federal government. *See id.* § 3730(b). However, courts have limited subject-matter jurisdiction when adjudicating *qui tam* actions under the FCA. *See id.* § 3730(e)(4)(A) (2006), *amended by* 31 U.S.C. § 3730(e)(4)(A) (Supp. 2011). The FCA states that a court does not have jurisdiction over the action when there has been a "public disclosure of allegations or transactions . . . unless . . . the person bringing the action is an original source of the information." *Id.* This public disclosure bar is designed to "(1) promot[e] private citizen involvement in exposing fraud against the government and (2) prevent[] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud."

4

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004) (quoting *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 351 (5th Cir. 2003)) (internal quotation marks omitted).

### B. Rule 60(b)(2)

Under Rule 60(b)(2), a court may relieve a party from final judgment because of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." *See* Fed. R. Civ. P. 60(b)(2). To prevail under Rule 60(b)(2), the movant must show: "(1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003) (citing *Provident Life & Accidental Ins. Co. v. Goel*, 274 F.3d 984, 999 (5th Cir. 2001)).

The newly discovered evidence must be admissible and credible and "must be evidence of facts existing at the time of the original trial." *Id.*; *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1358 (5th Cir. 1988) (citing *N.L.R.B. v. Jacob E. Decker and Sons*, 569 F.2d 357, 364 (5th Cir. 1978); *Mumford v. Bowen*, 814 F.2d 328, 330 (7th Cir. 1986); *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981); *Still v. Townsend*, 311 F.2d 23, 24 (6th Cir. 1962); *Ryan v. United States Lines Co.*, 303 F.2d 430, 434 (2d Cir.1962); *Brown v. Pa. R.R. Co.*, 282 F.2d 522, 526-27 (3d Cir. 1960), *cert. denied*, 365 U.S. 818 (1961); 11 Wright & Miller ¶ 2859, at 182). Importantly, "[a] judgment will not be reopened if the evidence is merely cumulative or impeaching and would not have changed the result." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005).

### III. ANALYSIS

The Court dismissed this action for lack of subject matter jurisdiction under the public

disclosure bar to the FCA. *See generally* Order, Jan. 23, 2013, ECF No. 101. Under both versions of the statute, the Court found that Relators claims had been publicly disclosed and that Relators were not original sources. *Id.* Relators claims were publically disclosed in the following ways: a June 10, 2010 news article, the *Walker v. City of Mesquite* litigation, the Texas Affordable Housing Project's report card, and Relators' HUD complaint. Relators do not challenge this prong of the public disclosure bar in their Rule 60(b)(2) Motion. Rather, Relators argue that the Court's finding as to the second prong, whether Relators' where the original source of the publically disclosed information, was in error. *See* Mot. Relief J., ECF No. 146.

Relators contend two types of evidence warrant relief from judgment. The first is HUD's letter of findings ("Findings") issued November 22, 2013. *See id.* The second is the surrounding news coverage. *Id.* Relators argue "this newly discovered evidence undercuts this Court's judgment that Relators are not original sources." *Id.* at 1. The Findings are the culmination of the investigation HUD conducted as a result of Relators' complaint. *Id.* Ex. 1 (Findings), 1, 4, ECF No. 146-1. Specifically, HUD found "the evidence shows that there was a pattern of negative reactions to projects that would provide affordable housing in the Northern Sector of Dallas and that those decisions were inconsistent with the goals required by HUD program obligations." *Id.* at 4.

The surrounding news coverage identified Relators as "whistleblowers" and as the catalyst for the HUD investigation. *Id.* Ex. 2 (Observer article), 3, ECF No. 146-2 ("[T]he HUD report paints [Relators] as whistleblowers, canaries in a much bigger and deeper coal mine of wrongdoing that never could have been unearthed but for their decision to go public."); *id.* Ex. 3 (Dallas Morning News article), 3, ECF No. 146-3 ("A 2010 complaint filed by developers Craig MacKenzie and Curtis Lockey started the HUD investigation."). The reporter for the Dallas Observer article cited

by Relators is the same reporter for the June 10, 2010 news article that the Court found constituted a public disclosure of Relators' claims. *See* Br. Supp. Mot. Relief J. 3, ECF No. 147. Accordingly, Relators offer the above evidence to demonstrate that they were the sources behind two of the public disclosures listed by the Court in its order dismissing Relators' claims.

The City and DHA counter that this evidence is cumulative and does not demonstrate that Relators were the original source of the information provided to HUD or the news outlets. *See generally* City's Resp. Mot. Relief J., ECF No. 150; DHA's Resp. Mot. Relief J. 151. The Court agrees. The Court previously considered Relators' involvement in the June 10, 2010 news article and HUD complaint and analyzed whether Relators were the original source of the information contained therein. Order 19-23, 27-29, Jan. 23, 2013, ECF No. 101. Moreover, in denying Relators' Rule 59(e) motion, the Court rejected Relators' contention that their exchange with Zavitkovsky transformed Relators into original sources:

> Even if the Court took Relators' declaration as true, the information and allegations that Relators discovered were already in the public domain such that the fraud would not "otherwise go unnoticed" and did not constitute "qualitatively different" information than what the public already knew.

*See* Order 5-9, July 30, 2013, ECF No. 138. In reply, Relators argue that their personal knowledge exposed that the City was not just in non-compliance with fair housing requirements "but was intentionally keeping low-income housing away from downtown." Reply Mot. Relief J. 1, ECF No. 152; *see also* App. Resp. Mot. Dismiss Tab 3 (Lockey & MacKenzie decl.), App. 45, ¶ 5, ECF No. 53-3 (" Mr. Zavitkovsky told us that Downtown Dallas is not the right place for low-income housing and that low-income housing 'is not part of the vision for Downtown Dallas.'"). In short, Relators contend that the publically available information merely demonstrated non-compliance, while Relators'

personal interaction with Zavitkovsky confirmed intentional segregation.

Relators, however, do not provide the import of this distinction, and the Court does not find any. The crux of Relators' complaint is that "the City and DHA falsely represented . . . that they were in compliance with their federal civil rights certifications, which certifications are a precondition for eligibility for the federal housing and community development funds at issue in this litigation." Am. Compl. ¶ 22, ECF No. 16. "Specifically, Defendants, as grant recipients, were required to make certifications to HUD that, *inter alia*, each grant will be conducted and administered in conformity with the Civil Rights Act of 1964 and the Fair Housing Act, and the grantee will affirmatively further fair housing." *Id.* ¶ 20 (citing 42 U.S.C. § 5304(b)(2); 42 U.S.C. §§ 3608(e)(5), 12705(b)(15); 24 C.F.R. §§ 91.225, 570.601, 570.602, 903.7(o)).

By requesting funds from the government, the City and DHA expressly and impliedly certified that they were complying with federal law and affirmatively fulfilling their fair housing obligations, including properly analyzing impediments among other requirements. The complaint alleges that, because the City and DHA were not in fact in compliance, their actions of requesting funds and certifying they were in compliance resulted in fraud against the government. *See generally id.* The Court finds that the information to which Relators claim to be original sources—that Defendants were acting intentionally to promote segregation—is surplusage to their FCA claim. In requesting funds, Defendants certified: (1) they were in compliance with federal law and (2) they were affirmatively furthering their fair housing obligations. As discussed in the Court's previous orders, the publically disclosed information to which Relators were not original sources revealed the City's non-compliance. *See generally* Order, Jan. 23, 2013, ECF No. 101; Order 7,9, July 30, 2013, ECF No. 138 ( "Although these limited 'personal experiences' with City employees were not previously disclosed, they do not

reveal anything 'qualitatively different' than what the public already knew.").

Because their FCA claim turns on whether Defendants knowingly made a false statement to the government, the Court acknowledges that Relators' personal experience with Zavitkovsky strengthens their claim to the extent it shows intentional segregation. 31 U.S.C. § 3729(a)(2). Under the public disclosure bar, however, allegations or transactions have been publically disclosed if the critical elements of the fraudulent transaction have been sufficiently disclosed so that the government could draw an inference of fraud. *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 539 (N.D. Tex. 2012) (Lynn, J.). Here, based on the publically available sources, the government could infer that the City fraudulently certified that it was in compliance with the federal requirements. The fact that Relators contend to have personal experience which demonstrates the City's intent does not change the fact that, in light of the already available information, the City was in non-compliance with the federal requirements. As the Court previously stated:

> The claims in Relators' complaint are not much different from the allegations or transactions of the public disclosures. The main difference is that many of the public disclosures only allege that the City and DHA failed to affirmatively further fair housing, while the complaint specifically alleges fraud on the government. However, the Court finds that this leap only involves knowledge of the laws regarding HUD grants and the FCA, and it does not "materially add[] to the publicly disclosed allegations or transactions. Simply recognizing that the failure to affirmatively further fair housing may lead to fraud on the government cannot constitute a material addition because the documents already lead to "an inference of a false or fraudulent claim on the government" by disclosing the failure to affirmatively further fair housing.

Order 29, Jan. 23, 2013, ECF No. 101 (citing *Colquitt*, 864 F. Supp. 2d at 519). Accordingly, the Court finds that Relators' newly discovered evidence would not change the Court's decision and is merely cumulative of the evidence already presented.

IV.    **CONCLUSION**

In light of the foregoing, the Court concludes that Relators have not met their burden to merit relief from judgment based on newly discovered evidence. The Court, therefore, **DENIES** Relators' Rule 60(b)(2) Motion for Relief from Final Judgment and Request for Expedited Indicative Ruling under Rule 62.1 (ECF No. 146).

**SO ORDERED** on this **6th day** of **January, 2014**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**